## IN THE DISTRICT COURT OF WASHINGTON COUNTY
## STATE OF OKLAHOMA

AMANDA FEENSTRA;
SHARONICA CARTER;
and LONNIE FEENSTRA,

       Plaintiffs,

v.

JARED SIGLER, Special Judge of the District
Court of Washington County, in his official
capacity; JOHN GERKIN, Special Judge of the
District Court of Washington County, in his
official capacity; CURTIS DELAPP, former
Judge of the District Court of Washington
County, in his official capacity; OKLAHOMA
INDIGENT DEFENSE SYSTEM, an
Oklahoma state agency; STATE OF
OKLAHOMA, ex rel. OKLAHOMA
INDIGENT DEFENSE SYSTEM; CRAIG
SUTTER, Executive Director of the
OKLAHOMA INDIGENT DEFENSE
SYSTEM; and OKLAHOMA INDIGENT
DEFENSE SYSTEM BOARD OF
DIRECTORS,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DISTRICT COURT WASHINGTON CO. OK
JILL L. SPITZER, COURT CLERK

FILED

MAR 21 2019

BY _____ DEPUTY

Case No.: CV-2019-12

## PETITION

       Plaintiffs Amanda Feenstra, Sharonica Carter, and Lonnie Feenstra, for their Complaint

against Defendants Judge Jared Sigler, Judge John Gerkin, former Judge Curtis DeLapp

(collectively, the "Judicial Defendants"), the State of Oklahoma ex rel. Oklahoma Indigent

Defense System, the State of Oklahoma Indigent Defense System, and the State of Oklahoma

Indigent Defense System Board of Directors (collectively, "OIDS Defendants"), allege and state

as follows:

# Exhibit 1

## INTRODUCTION

1.      This is an action for declaratory and injunctive relief arising out of Defendants' violations of the United States and Oklahoma Constitutions, the law of Oklahoma and the rules of the Oklahoma Courts.  The Defendants' unlawful and unconstitutional policies and practices have perpetuated the contemporary equivalent of a debtors' prison in in this Judicial District, especially in Washington County.

2.      The Defendants' conduct has occurred within a state that incarcerates its citizens with unusual frequency, even for petty offenses.  Oklahoma recently surpassed Louisiana in maintaining the highest incarceration rate in the country: 1,079 of every 100,000 Oklahomans are incarcerated.  The state has long held the distinction of incarcerating women at a rate greater than any other state.  Eighty-five percent of these women are mothers.  There are also profound racial disparities within Oklahoma's incarceration of women, with African American women incarcerated at nearly twice the rate of their share of Oklahoma's adult population and for Native American women, nearly triple.

3.      Contributing to Oklahoma's high rate of incarceration is the way the state manages its community supervision process, which regularly sends people back to prison and jail for minor probation and parole violations, like failure to pay outstanding fines and fees.  In 2018, approximately one-third of Oklahoma's prison admissions were generated by probation violations.

4.      Oklahoma's high incarceration rates are exacerbated by its fiscal decisions: Oklahoma has one of the lowest effective tax rates in the country, and its legislature has refused to raise the revenue necessary to administer its criminal justice system except on the backs of its most economically disadvantaged citizens.  Today, Oklahoma's court system is funded almost

**Exhibit 1**

entirely by fines and fees collected from defendants. Eighty percent of criminal defendants in Oklahoma are indigent.

5.     Regardless of Oklahoma's fiscal predilections and its consequent need for alternative sources of revenue, no state lawfully can punish an individual just because she or he cannot afford to pay judicially imposed fines and fees. The rights afforded by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution protect an individual from arrest, detention, incarceration, or imposition of other penalty, solely because of an inability to pay court-imposed fine, costs, fees, or restitution. The Oklahoma Constitution enshrines these same protections.

6.     Oklahoma embeds these constitutional protections in Oklahoma Statutes, Title 22, Chapter 18, Rules 8.1 – 8.8 – which require courts to make an ability to pay determination *both* (i) when fines, fees, and costs are assessed and, if appropriate, imposed initially assessed, and (ii) at *any and every subsequent* hearing at which punishment is to be imposed. (The full text of Oklahoma Statutes, Title 22, Chapter 18, Rules 8.1 – 8.8 is attached as Exhibit A.)

7.     As to the former, Rule 8.1, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2018) ("Rule 8.1") expressly requires that: "When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, *a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs*." 22 Okl. St. Chap. 18, Appx., Rule 8.1 (emphasis added).

8.     As to the latter, Rule 8.4, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2018) ("Rule 8.4") provides that "[i]f the defendant fails to make an installment payment when due, he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due." 22 Okl. St. Chap. 18, Appx., Rule 8.4.

**Exhibit 1**

9.      Moreover, Rule 8.5, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2018) ("Rule 8.5"), provides that "[i]n the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs[.]" 22 Okl. St. Chap. 18, Appx., Rule 8.5.

10.     Despite these federal and state law requirements, Oklahoma courts—and the Judicial Defendants in particular—have incarcerated and continue to incarcerate people who never could afford to pay their court fines, fees, and costs. Judicial Defendants have systemically failed to conduct an inquiry into criminal defendants' ability to pay *either* before imposing those fines and fees at sentencing, or before sanctioning indigent defendants for non-payment—including by incarceration.

11.     In derogation of the Rules of this Court and of the Constitutions of this State and the United States, Oklahoma's offender-funded system creates a perverse incentive for prosecutors and even indigent defendants' own lawyers to impose and enforce fines and fees without regard for criminal defendants' ability to pay.

12.     For example, one type of fine imposed on criminal defendants is a "drug fund fee" payable to the District Attorney's office. The "drug fund fee" is neither a flat fee nor a fee calibrated to the severity of the offense. Rather, it is a percentage of the total fine imposed, thus giving prosecutors an incentive, unrelated to the severity of the offense, to seek the highest possible fine. Likewise, Defendant Oklahoma Indigent Defense System —the state agency responsible for providing public defense services to indigent defendants—has created powerful financial incentives to get its attorneys to close cases as quickly as possible, even when it means forfeiting their clients' right to an inquiry into the clients' ability to pay fines and fees.

4

**Exhibit 1**

13.     Every time criminal defendants are jailed for failure to pay, new fines are added to their outstanding debt, including for failure to pay, which is treated as a separate contempt offense that carries its own fines and fees. Daily incarceration fees are added as well. Thus, defendants are expected to pay the cost of incarceration, which occurs only because they could not pay the fees and costs with which they were *already* burdened. Because the Judicial Defendants fail to conduct meaningful ability to pay inquiries, in violation of constitutional and statutory mandates, the poorest Oklahomans, including Plaintiffs, are trapped in an unconstitutional cycle of inescapable debt and incarceration.

14.     Proceedings in Washington County provide an extreme example of Oklahoma's broken fines and fees system. No ability to pay inquiry is made at the time of sentencing, nor are defendants advised of their right to such an inquiry by their OIDS public defenders. Instead, Washington County uses a "Rule 8 Form" (attached hereto as Exhibit B) that defendants fill out when setting up the payment plan for the fines and fees *which they have already been ordered to pay*. The form contains no questions about defendants' income, expenses, or ability to pay; it is neither sufficient as a constitutional matter nor a substitute for the inquiry mandated by Rule 8.1. Indeed, rather than inquire as to criminal defendants' indigence, the Judicial Defendants routinely tell defendants that they will be sent to jail if they fail to make the ordered payments. Consistent with that practice, the Judicial Defendants imposed fines, fees, and costs that indigent criminal defendants (including Plaintiffs) had no ability to pay.

15.     Following sentencing, criminal defendants in Washington County are ordered to appear before the "cost docket," in which a judge is supposed to oversee the payments of fines, fees, and costs in a manner consistent with the federal and Oklahoma Constitutions, and the governing rules of court. Despite the guarantees of Rule 8.4, criminal defendants do not receive,

**Exhibit 1**

and Plaintiffs have not received, any meaningful ability to pay determinations at the cost docket. Requests to lower monthly payments are often denied, even though Rule 8.5 requires courts to suspend or vacate fines, fees, and costs when the criminal defendant cannot pay due to physical disability or poverty. Instead, Defendant Judge Sigler, who has overseen the cost docket in Washington County for several years, instructs criminal defendants in his court to make a same-day payment or be sent to jail.

16.     Each Plaintiff has been convicted of criminal offenses—mostly traffic and poverty-related. Each Plaintiff still owes debt relating to those convictions, in the form of fines, fees, and costs, often totaling thousands of dollars. None of the Plaintiffs—at any relevant stage of their proceedings—has received a meaningful inquiry into her or his ability to pay fines and fees. And each Plaintiff has been and will continue to be harmed by Washington County's unconstitutional and illegal policies and practices. They have forgone basic necessities to make the required payments; requested with good reason that their payment amount be lowered or expunged; and been arrested or threatened with arrest, on warrants for failure to pay. But, having been denied any meaningful inquiry, at any point, regarding their ability to pay judicially-imposed fines and fees, Plaintiffs continue to find themselves unable to escape the cycle of debt and incarceration.

## JURISDICTION AND VENUE

17.     This action arises under 42 U.S.C. § 1983, the Sixth and Fourteenth Amendments to the United States Constitution, the Second Article of the Oklahoma Constitution, and Oklahoma Rule of Criminal Procedure Rules 8.1, 8.4, and 8.5.

18.     This Court has personal jurisdiction over the parties pursuant to 12 Okl. St. Ann., § 2004, which provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." This Court has subject



matter jurisdiction pursuant to OK Const. Art. VII, § 7 of the Oklahoma Constitution, which provides that "[t]he District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article."

19.     Venue in this court is proper against all Defendants under Okla. Stat. Ann. tit. 12, § 133, which provides that venue is proper in the county where the cause arose or where there was an undertaking by a public officer.   The acts complained of herein occurred principally in Washington County, Oklahoma.

## PARTIES

### *Plaintiffs*

20.     **AMANDA FEENSTRA** is a 33-year-old resident of Claremore, Oklahoma.  In April 2015, Mrs. Feenstra pleaded guilty to false personation, forgery, identity theft, and conspiracy charges in this Court.  Defendant DeLapp, acting under the authority of the Court, ordered Mrs. Feenstra to pay over $3,000 in fines, fees, and costs, without conducting an inquiry into her ability to pay, as required by both the federal and Oklahoma Constitutions and the rules of the Oklahoma courts.

21.     Mrs. Feenstra was, and remains, indigent and is unable to make her payments.  She is a working wife and mother of six children, and has taken an additional child into her care after the child's mother began using drugs again.  Her husband, Plaintiff Lonnie Feenstra, is medically disabled and thus unable to work.  Mrs. Feenstra is therefore her family's primary source of income.  Although Mrs. Feenstra struggled with addiction in the past, she has been sober for more than three years, and currently works approximately 60-80 hours per week at multiple waitressing jobs to provide for her family.

22.     Mrs. Feenstra is regularly forced to prioritize court debt over the basic needs of herself and her family, and often goes without food in order to make her monthly payments.  She

Exhibit 1

has been incarcerated for her failure to make those payments. Despite Mrs. Feenstra's indigence, Defendant Sigler, who oversees Mrs. Feenstra's fines and fees, has refused to conduct sufficient inquiry into her ability to pay or expunge her financial obligations. In doing so, Defendant Sigler has perpetuated an ongoing violation of the rights guaranteed to Mrs. Feenstra by the United States Constitution, the Oklahoma Constitution, and the Rules of the Courts of the State of Oklahoma.

23.    Mrs. Feenstra currently owes almost $11,800 in court-ordered fines, fees, and costs, more than double the approximately $4,900 in fines and fees she was assessed in 2015. The debt Mrs. Feenstra owes is crippling and she remains – despite her own Herculean efforts to work and provide for herself and her family – in imminent danger of incarceration for failure to pay.

24.    **SHARONICA RENEE CARTER** is a 23-year-old resident of Tulsa, Oklahoma. In September 2011, when she was 16, Ms. Carter pleaded no contest to a youthful offender charge before this Court and was sentenced by Defendant DeLapp, acting under the authority of this Court, to pay over $2,700 in fines, fees, and costs. Ms. Carter spent the next two years in a juvenile correctional facility and was released in October 2013, at which time she was unemployed, yet ordered by Defendant DeLapp to pay her court-ordered fines, fees, and costs at a rate of $75 per month. This obligation posed a substantial barrier to Ms. Carter's successful reentry. Neither at the time of Ms. Carter's original sentencing nor at the time of her release did Defendant DeLapp conduct an inquiry into Ms. Carter's ability to pay, as required by the Oklahoma Constitution and the rules of the Oklahoma courts.

25.    Ms. Carter was, and remains, indigent and is unable to make her court-ordered payments. She has had trouble finding steady employment due to her criminal history and is currently unemployed despite her efforts to find a job. On at least two occasions, she was incarcerated for her failure to make her court-ordered payments. Despite Ms. Carter's indigence,

**Exhibit 1**

Defendant Sigler, who oversees Ms. Carter's fines and fees, has refused to conduct sufficient inquiry into her ability to pay, or to reduce or expunge her financial obligations. In doing so, Defendant Sigler has perpetuated an ongoing violation of the rights guaranteed to Ms. Carter by the United States Constitution, the Oklahoma Constitution, and the Rules of the Courts of the State of Oklahoma.

26.     Ms. Carter is unemployed and currently owes over $5,000 to Washington County District Court, almost double the approximately $2,700 in fines and fees originally assessed in 2011. The debt endangers Ms. Carter's ability to afford basic necessities; her indigence and consequent inability to pay her fines and fees places her in imminent danger of repeated incarceration.

27.     **LONNIE FEENSTRA** is a 36-year-old resident of Claremore, Oklahoma and the husband of Plaintiff Amanda Feenstra. In April 2016, Mr. Feenstra pleaded guilty to misdemeanor traffic charges before this Court. Defendant Gerkin, acting under the authority of the Court, has ordered Mr. Feenstra to pay over $1,000 in fines, fees, and costs without making an inquiry into his ability to pay, as required by both the federal and Oklahoma Constitutions and the rules of the Oklahoma courts.

28.     Mr. Feenstra was and remains indigent and is unable to make his court-ordered payments. Mr. Feenstra has physical and psychological disabilities which prevent him from working. He is under the care of multiple physicians and needs several daily medications for treatment and pain management. Mr. Feenstra is indigent and physical disabled. Defendant Sigler, who oversees Mr. Feenstra's fines and fees, has refused to conduct sufficient inquiry into Mrs. Feenstra's indigence and disability or to expunge his financial obligations. In doing so, Defendant Sigler has perpetuated an ongoing violation of the rights guaranteed to Mr. Feenstra by

9

**Exhibit 1**

the United States Constitution, the Oklahoma Constitution, and the Rules of the Courts of the State of Oklahoma.

29.     Mr. Feenstra currently owes more than $2,500 in outstanding fines and fees from a dismissed charge.  Without the ability to work to pay his fines and fees, Mr. Feenstra faces imminent danger of repeated incarceration for failure to pay.

*Defendants*

30.     **JARED SIGLER** is a judge of this Court who presides over the "cost docket" of this Court.  Defendant Sigler, in his official capacity, maintains a policy and practice of ordering criminal defendants, including Plaintiffs, to pay fines and fees without adequately inquiring into their ability to pay, and failing to adjust or abolish their fines and fees in a manner consistent with such inquiry.  Defendant Sigler, in his official capacity, also maintains a policy and practice of incarcerating those who cannot afford to pay, without first making the required determination into ability to pay.

31.     **JOHN GERKIN** is a Special Judge in this Court.  Defendant Gerkin, in his official capacity, maintains a policy and practice of ordering criminal defendants to pay fines and fines without adequately inquiring into their ability to pay.

32.     **CURTIS DELAPP** is a former judge of this Court.  Defendant DeLapp, in his official capacity as District Judge of Washington County, maintained a policy and practice of ordering criminal defendants, including Plaintiffs, to pay fines and fees without adequately inquiring into their ability to pay, and failing to adjust or abolish their fines and fees in a manner consistent with such inquiry.  Defendant DeLapp, in his official capacity, also had a policy and practice of incarcerating those who cannot afford to pay, without first making the required determination into ability to pay.

**Exhibit 1**

33.     The **OKLAHOMA INDIGENT DEFENSE SYSTEM** is a state agency created

to implement the Indigent Defense Act, 22 O.S. Section 1355 et seq., by providing trial, appellate

and post-conviction criminal defense services to persons who have been judicially determined to

be entitled to legal counsel at the State's expense since July 1, 1999.  OIDS is governed by the

**OKLAHOMA INDIGENT DEFENSE SYSTEM BOARD OF DIRECTORS**, comprised of

five individuals appointed by the Oklahoma Governor for five-year terms with the advice and

consent of the state Senate.  The Board of Directors has "authority to provide for representation

for indigent criminal defendants and others for whom representation is required by either the

Constitution or laws of [Oklahoma] by attorneys employed by the System." 22 Okl St. Chap. 1355,

Rule 6(d).  OIDS is managed by the **CRAIG SUTTER**, the Executive Director who has been

employed by the Board since March 2017.   As the Executive Director, Craig Sutter is Chief

Executive Officer for OIDS and has authority to "enter into contracts to provide counsel in cases

in which the defendant is indigent and unable to employ counsel." 22 Okl St. Chap. 1355, Rule

4(c)(2).

34.     OIDS implements its obligations to provide defense representation to indigent

clients by, among others, executing flat-rate fiscal year contracts with private attorneys in 55

counties, including, upon information and belief, Washington County.  Those contracts, including,

upon information and belief, the contracts with attorneys in Washington County, contain a

provision delaying the final 10% of the annual contractual payment until the end of the year and

upon verification that all of the contract attorney's cases are closed, thus incentivizing OIDS

attorneys to close cases as quickly as possible.  This provision creates a powerful, personal

financial incentive to avoid expending the time necessary to challenge the imposition fines and

fees against their clients absent the ability to pay hearing mandated by Rule 8.1.  That incentive,

Exhibit 1

and the conduct of OIDS attorneys in conformity therewith, is fundamentally in conflict with their clients' interest in having the Rule 8.1 hearing, thus depriving OIDs clients their right to a meaningful (and constitutionally required) inquiry into their ability to pay fines and fees, as well as their right to conflict-free counsel, as contemplated by the Sixth Amendment to the United States Constitution.

35.     Each Plaintiff was represented by Court-appointed counsel working pursuant to the applicable OIDS contract. Consistent with the structural conflicts created by the OIDS contract, none of the Plaintiffs was advised by his or her OIDS-supplied attorney that he or she possessed the right to demand an inquiry, and an explicit, fact-based finding, with regard to their ability to pay fines and fees. Each Plaintiff has suffered a deprivation of property and/or liberty (including, for Plaintiffs Amanda Feenstra and Sharonica Carter, including incarceration) and therefore, has standing to bring the above alleged against OIDS.

## FACTUAL BACKGROUND

I. **IN WASHINGTON COUNTY, NO ABILITY TO PAY INQUIRY IS MADE AT THE TIME OF SENTENCING, NOR ARE CRIMINAL DEFENDANTS ADVISED OF THEIR RIGHT TO SUCH AN INQUIRY.**

36.     As noted above, Oklahoma Rule of Criminal Procedure Rule 8.1 requires that: "When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs." 22 Okl. St. Chap. 18, Appx., Rule 8.1 (emphasis added). Rule 8.5 further requires that "[i]n the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs[.]" 22 Okl. St. Chap. 18, Appx., Rule 8.5. Despite those clear statutory mandates, in Washington County, no ability to pay inquiry is made at the time of sentencing; instead, defendants are required to fill out a "Rule 8

12

**Exhibit 1**

Form" after they are sentenced, when setting up a "payment plan" for their court-ordered fines and fees. Nor are criminal defendants advised of their right to such an inquiry by their OIDS public defenders, who, as noted above, have a financial incentive to close their assigned cases as quickly as possible and thus to refrain from demanding an inquiry into their clients' ability to pay fines and fees.

37.      Consistent with that practice and policy, Defendant DeLapp, acting under the authority of the Court, did not conduct the required ability-to-pay hearing, and thereafter imposed fines, fees, and costs in violation of Oklahoma law, and mandated unsustainable, and equally unlawful, monthly payments from Plaintiffs Amanda Feenstra and Sharonica Carter.

38.      Mrs. Feenstra was both unemployed and suffering a drug addiction when Defendant DeLapp ordered her to pay over $3,000 in fines, fees, and costs in April of 2015. He did so without conducting an inquiry into Mrs. Feenstra's ability to pay, despite his obligation to do so. Nor was Mrs. Feenstra advised of her right to such an inquiry by her public defense attorney. Mrs. Feenstra informed Defendant DeLapp, at the time of her sentencing, that she would be unable to make payments toward her fines, fees, and costs, either immediately or upon her release from jail. Rather than suspend or vacate her payments, Defendant DeLapp informed Mrs. Feenstra that she could work one day per month at the courthouse to satisfy her obligations to this Court. Mrs. Feenstra is and remains indigent and cannot afford to pay the amounts imposed.

39.      Ms. Carter was a juvenile defendant in September 2011, when Defendant DeLapp sentenced her to pay over $2,700 in fines, fees, and costs. In October 2013, Ms. Carter had reached the age of majority, was released from juvenile custody. Despite knowing that Ms. Carter was unemployed at the time of her release, Defendant DeLapp created a substantial barrier to her successful reentry by ordering her to pay her outstanding fines, fees, and costs at $75 per month.

**Exhibit 1**

Neither at sentencing nor upon her release from juvenile custody did Defendant DeLapp conduct an inquiry into Ms. Carter's ability to pay, despite his obligation to do so. Nor was Ms. Carter advised of her right to such an inquiry by her public defense attorney. Ms. Carter was indigent both at the time of sentencing in 2011 and at the time her payment plan was established in 2013 and could not afford the amount imposed.

40.     Likewise, Defendant Gerkin, also acting under the authority of the Court, imposed unattainable fines, fees, and costs on Plaintiff Lonnie Feenstra without conducting an ability to pay inquiry. From February to April 2016, Mr. Feenstra spent 61 days in jail on a felony charge. Mr. Feenstra's OIDS attorney advised him that the felony charge would be dismissed if he agreed to pay $200 transportation costs and a $150 fine. Mr. Feenstra agreed. However, upon dismissal of the felony charge, Defendant Gerkin transferred over $2,500 in incarceration and court fees from the dismissed charge to an unrelated misdemeanor traffic offense to which Mr. Feenstra had pleaded guilty before Defendant Gerkin in April 2016. Defendant Gerkin did not conduct an inquiry into Mr. Feenstra's ability to pay those fees, despite his obligation to do so. Nor was Mr. Feenstra advised of his right to such an inquiry by his OIDS attorney. Mr. Feenstra is and remains indigent and cannot afford to pay the amounts imposed.

## II.    NO ABILITY TO PAY INQUIRY IS MADE AT WASHINGTON COUNTY'S "COST DOCKET," NOR ARE FINES AND FEES DEBTORS ADVISED OF THEIR RIGHT TO SUCH AN INQUIRY.

41.     Following sentencing, criminal defendants before this Court are ordered to appear at the "cost docket," during which a judge is supposed to oversee the payments of fines, fees, and costs in a manner consistent with the federal and state Constitutions and the Oklahoma rules of court. Individuals are not represented by counsel at "cost docket" appearances, nor are they advised of their right to an inquiry into their indigence or ability to pay. Defendant Sigler currently presides over this Court's "cost docket." Despite the directive of Rule 8.4 –which

**Exhibit 1**

mandates a hearing concerning defendants' ability to pay—and in contravention of Rule 8.5—

which requires the Court to relieve defendants of fines and costs they are unable to pay because

of physical disability or poverty—Defendant Sigler fails to conduct a meaningful inquiry into

defendants' ability to pay and routinely denies requests to lower monthly payments. Instead,

Defendant Sigler uses a form Order Remanding Defendant to Jail for Failure to Pay Fines and

Costs, which contains a *predetermined* conclusion that "the Defendant has willfully refused or

neglected to pay the amounts . . . previously ordered." (An illustrative example of one of the

plaintiffs' Order Remanding Defendant to Jail for Failure to Pay Fines and Costs is attached as

Exhibit C. The order, dated May 10, 2018, remands Amanda Feenstra to jail for failure to pay

the $330.00 amount.) The space for the "findings of fact[] and conclusions of law" supporting

that conclusion is typically left blank (or contains, at most, a note about the date of a missed or

upcoming court appearance or the total amount owed). These practices are both constitutionally

deficient and in derogation of Rule 8.5. Moreover, said practices create substantial barriers to

reentry for individuals released to community supervision and appearing before the cost docket.

42.     Consistent with his practices, Defendant Sigler, acting under the authority of the

Court and without conducting the required ability-to-pay inquiry, imposed unlawful fines, fees,

and costs and mandated unsustainable, and equally unlawful, monthly payments on Mrs. Feenstra,

Ms. Carter, and Mr. Feenstra.   When Plaintiffs explained in their respective, multiple cost docket

appearances that they could not make the monthly payment due to their poverty, and in the case of

Mr. Feenstra, also his physical disability, Defendant Sigler refused to suspend or relieve their

financial obligations and threatened them with incarceration for failure to pay. Defendant Sigler

has never asked Mrs. Feenstra, Ms. Carter, or Mr. Feenstra about their salary, bills and expenses,

**Exhibit 1**

or debt obligations to other courts, nor has he requested (or provided them an opportunity to produce) documentation of their indigence (which they could easily provide).

43.     On February 2, 2017, less than two weeks after her release from prison, Judge Sigler ordered Mrs. Feenstra to pay $50 per month towards fines, fees and costs.  In making this order, Defendant Sigler refused to honor the arrangement Mrs. Feenstra had made with Defendant DeLapp at the time of her sentencing, to work one day per month at the courthouse to satisfy her obligations to this Court.  (Mrs. Feenstra does not concede that even that arrangement would pass constitutional muster.)  At her cost docket appearances, Mrs. Feenstra informed Defendant Sigler that she was and remains indigent and unable to make payments.  Rather than go to jail for failure to pay (as Defendant Sigler threatened), Mrs. Feenstra has been forced to prioritize her court debt over the basic needs of herself and her family.  She has gone without food in order to make payments.  Despite the mandate of Rule 8.5, Defendant Sigler has only reduced Mrs. Feenstra's minimum payments to $40 per month.  He has refused to suspend or vacate Mrs. Feenstra's payments, thus creating a substantial and unnecessary barrier to her successful reentry.

44.     Ms. Carter has repeatedly raised her inability to pay at her cost docket appearances before Defendant Sigler, to no avail.  As a result, she has faced significant barriers to her successful reentry.  In October 2017, Ms. Carter had just been released from prison following a charge for using counterfeit money when Defendant DeLapp ordered her to pay $75 per month towards her court-ordered fines and fees.  In September 2018, Ms. Carter asked Defendant Sigler that her monthly payments be deferred or reduced because she was unable to pay the set amount ($75 per month).  He refused to honor this request and told Ms. Carter that she had to "find" $50 before 3 p.m. *that day* or face jail.  Ms. Carter did not have $50 but was able to borrow the money from an aunt to avoid jail.  Her court-ordered monthly payments remained at $75 per month.  On another

**Exhibit 1**

occasion, Ms. Carter told the clerk that she could afford to pay $25 per month, yet she received no relief; her monthly payment still remained at $75 and remains at $75 to this day. Ms. Carter was, and remains, indigent and unable to pay that amount.

45.     Mr. Feenstra was unemployed due to a physical disability when, in May 2018, Defendant Sigler ordered him to pay $75 per month toward fines, fees, and costs. Mr. Feenstra told Defendant Sigler that he could not afford to make payments due to his physical disability (which, along with poverty, is one of the grounds enumerated under Rule 8.5 for relief from payment of fines and fees). Defendant Sigler refused to relieve him of this obligation despite the requirements of Rule 8.5. Mr. Feenstra was still unemployed in November 2018 when Defendant Sigler lowered his minimum monthly payments to $50 per month. Mr. Feenstra remains both physically disabled and indigent and thus, unable to afford the court-ordered payments. Mrs. Feenstra is therefore forced to pay her husband's court debt, in addition to her own, to keep then both out of jail and available to care for their children.

## III.   FINES AND FEES DEBTORS ARE INCARCERATED FOR FAILURE TO PAY WITHOUT THE REQUIRED INQUIRY INTO THEIR ABILITY TO PAY.

46.     In Washington County, fines and fees debtors are routinely incarcerated for failure to pay. The practice is pervasive: 1,688 arrest warrants were issued for failure to pay court fines and fees between November 1, 2015 and May 15, 2018 in Washington County, a county of about 40,000 adults. Despite the mandate of Rule 8.4, which limits incarceration of individuals for nonpayment to those occasions when "no satisfactory explanation is given at the hearing on failure to pay," and in violation of the Oklahoma and U.S. Constitutions, Judicial Defendants routinely fail to make inquiry, let alone a determination, prior to incarceration that debtors are financially able (and merely "unwilling") to make payments. As a result of this practice, Plaintiffs live in the constant, credible fear that they will be sent to jail because of their inability to pay .

**Exhibit 1**

47.     Consistent with this practice, Defendant Sigler—who, as noted above, uses a *pre-populated* form reflecting his "findings" that "the Defendant has willfully refused or neglected to pay the amounts . . . previously ordered"—ordered Plaintiff Amanda Feenstra to jail when she failed to make the monthly payments she had previously told him she could not afford.  Prior to issuing warrants for her arrest, Defendant Sigler failed to provide them "an opportunity to be heard as to the refusal or neglect to pay the installment when due" as required by Rule 8.4.  At no time prior to subjecting her to the penalty of incarceration did Defendant Sigler inquire into, let alone adduce facts sufficient to determine, whether Mrs. Feenstra was financially able, and in fact just "unwilling," to make payments.

48.     In the second week of May 2018, after calling the court to confirm her next cost docket appearance, Mrs. Feenstra was informed by the clerk with whom she spoke that she had mixed up her dates, missed the cost docket, and was therefore subject to an active warrant for arrest issued on Monday, May 7.  Mrs. Feenstra asked how she could rectify her honest mistake, and was told that if she came to the courthouse to reschedule her appearance, the warrant would be recalled. Mrs. Feenstra immediately went to the courthouse as instructed, and met with Defendant Sigler in his chambers.  Defendant Sigler said she owed an additional $40, but refused to reschedule her appearance until the following day's arraignments docket.  And, while that was happening, the clerk's office notified the police that Mrs. Feenstra was at the courthouse.  She was arrested, and spent the night in jail without receiving the opportunity to be heard prior to incarceration, as mandated by Rule 8.4.  The following day, Defendant Sigler presented Mrs. Feenstra with two options: pay $330 immediately, or remain in jail.  Plaintiff Lonnie Feenstra was forced to borrow $330 in order to make the payment.

**Exhibit 1**

49.     In May, September, and November 2018, Mrs. Feenstra was required to make an additional $40 payment, on top of the monthly payment she already owed, ostensibly because she was "behind" her scheduled payments, though this Court never provided her with a proper accounting of her payments or outstanding debt. Mrs. Feenstra had been making regular payments before she confused her May 2018 court date—a date that was never provided to her in writing. Strapped for cash, Mrs. Feenstra did not make her $40 payment to Washington County Court in October 2018, but paid double the following month. The court clerk told Mrs. Feenstra she must pay an additional $40, on top of the $80 she had paid already for two months, to prevent the issuance of a warrant for her arrest. Mrs. Feenstra does not receive receipts documenting the payments she makes, and thus has no way to confirm that her payments are being correctly accounted and applied to her outstanding debt. She currently owes over $11,000 in fines and fees continues to face the imminent and ongoing threat of incarceration for failure to pay.

50.     Likewise, Defendant DeLapp has repeatedly ordered Plaintiff Ms. Carter to jail when she failed to make the payments she could not afford, without conducting the ability to pay hearing required by Rule 8.4 or any meaningful inquiry into her ability to pay, as mandated by federal and Oklahoma state law. In January 2014, Defendant DeLapp incarcerated Ms. Carter, then just 18 years-old, for failure to make her monthly court-ordered payment of $75. At that time, Ms. Carter was unemployed and had been out of juvenile detention for only three months. A month later, in February 2014—still eighteen years of age and unemployed, and also aware Judge DeLapp would send her back to jail for missing a payment —Ms. Carter missed her next appearance before Judge DeLapp because she had no money to make her monthly payment and was afraid she would be sent to jail again. Judge DeLapp promptly ordered her incarcerated. At neither occasion did Defendant DeLapp conduct an inquiry into Ms. Carter's ability to pay, let

**Exhibit 1**

alone establish that she was able, and merely "unwilling," to make those payments. Ms. Carter currently owes over $5,000 in fines and fees, and continues to face the imminent and ongoing threat of incarceration for failure to pay.

## CAUSES OF ACTION

### COUNT ONE: FAILURE TO PROVIDE NOTICE AND AN OPPORTUNITY TO BE HEARD PRIOR TO ARREST AND DETENTION,

**in violation of the Due Process clause of Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983
(Against Defendant Sigler)**

51.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 50 as if fully set forth herein.

52.     In order to protect individuals not represented by counsel from being incarcerated solely based on their financial status, due process demands notice to a defendant that ability to pay is a critical issue, and a meaningful opportunity to be heard on the question of his or her financial circumstances. *See, Turner v. Rogers*, 564 U.S. 431, 447-448 (2011).

53.     Upon information and belief, Defendant Sigler, acting under color of state law, routinely issues arrest warrants as a means of debt collection.

54.     On or about May 2018, Defendant Sigler issued an arrest warrant for Plaintiff Amanda Feenstra for failure to pay and caused her to be arrested pursuant to that warrant and detained overnight until her arraignment the next day. At no time prior to said detention did Defendant Sigler notify Plaintiff Amanda Feenstra that her ability to pay was a critical issue or provide her a meaningful opportunity to be heard concerning her ability to pay prior.

55.     Defendant Sigler's actions caused Plaintiff Amanda Feenstra to suffer a deprivation of liberty, in violation of the due process cause of the Fourteenth Amendment to the United States Constitution.



## COUNT TWO: PUNISHMENT SOLELY ON THE BASIS OF POVERTY,

**in violation of the Due Process and Equal Protection Clauses of the United States
Constitution and 42 U.S.C. § 1983
(Against Defendants Sigler and DeLapp)**

56.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 50 as if fully set forth herein.

57.    The Fourteenth Amendment prohibits "punishing a person for his poverty." *Bearden v. Georgia*, 461 U.S. 660, 671 (1983).

58.    Defendants Sigler and DeLapp had an affirmative duty to inquire into individuals' ability to pay prior to incarcerating them for nonpayment of fines and fees.

59.    Defendant Sigler, acting at all times under color of state law, has or has had a policy, practice, or custom of failing to make the required inquiry into criminal defendants' ability to pay during "cost docket" review hearings.

60.    Defendants Sigler and DeLapp, acting at all times under color of state law, have had policies, practices, or customs of issuing arrest warrants for non-payment of court fines and fees without providing notice that failure to pay is a critical issue or an opportunity for defendants to be heard on their ability to pay.

61.    Defendants Sigler and DeLapp, acting at all times under color of state law, have had policies, practices, or customs of incarcerating indigent defendants who were or are unable to pay their court-ordered fines and fees without conducting an inquiry into their ability to pay and without establishing that their nonpayment was willful.

62.    Defendants Sigler and DeLapp's imprisonment of Mrs. Feenstra and Ms. Carter exemplify these policies, practices and customs. Each instance of incarceration for failure to pay Count, individually and cumulatively, deprived Plaintiffs of their right to liberty, in violation of

21



the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States

Constitution.

## COUNT THREE: DENIAL OF RIGHT TO COUNSEL,

**in violation of the assistance of counsel clause of the Sixth Amendment to the United States Constitution, the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983**
**(Against OIDS Defendants)**

63.     Plaintiffs re-allege and incorporate by reference each and every allegation

contained in Paragraphs 1 through 50 as if fully set forth herein.

64.     The Sixth Amendment guarantees the right to counsel in any criminal proceeding

that may result in incarceration. *Scott v. Ill.*, 440 U.S. 367, 373 (1979); *Argersinger v. Hamlin*,

407 U.S. 25, 37 (1972).

65.     The right to counsel includes the right to conflict free counsel. *Glasser v. U.S.* , 315

U.S. 60, 70 (1942).

66.     Pursuant to the Oklahoma Indigent Defense Act, 22 O.S.2001, § 1355.4, the OIDS

Executive Director has the duty "[t]o maintain and improve effective representation for the

indigent criminal defendant."

67.     Defendant OIDS, acting at all times under color of state law, mandates that 10% of

overall payments to its public defender contractors be withheld until the disposition of cases at the

trial court level.  In so doing, OIDS provides a powerful financial incentive for OIDS-appointed

attorneys to "close out" cases quickly and refrain from other courses of action that might

complicate or prolong their clients' cases, including objecting to the imposition fines and costs

against their clients absent the ability to pay hearing mandated by Rule 8.1.

68.     As such, Defendant OIDS has structured its contractual agreements in a way that

subjects its contractors to pervasive conflicts of interest, in which the lawyer's personal financial

22



interest conflicts with, and becomes paramount to, their clients' right to a vigorous and comprehensive defense.

69.     Plaintiffs Amanda Feenstra, Sharonica Carter, and Lonnie Feenstra each were represented by OIDS-appointed counsel at the sentencing hearings wherein fines and fees were imposed.  At no point prior to, during, or after these hearings did OIDS-appointed counsel inform Plaintiffs of their right to an ability to pay hearing pursuant to Rule 8.1, nor did OIDS-appointed counsel challenge the imposition of fines and fees against Plaintiffs due to their poverty.

70.     Upon information and belief, Defendant OIDS does not provide counsel to indigent defendants during "cost docket" hearings, despite knowledge that indigent defendants routinely face incarceration during these proceedings and are routinely denied procedural safeguards, including notice and an opportunity to be heard, prior to incarceration.

71.     Plaintiffs Amanda Feenstra, Sharonica Carter, and Lonnie Feenstra did not receive OIDS-appointed counsel during any of their "cost docket" hearings, despite Judge Sigler's and Judge DeLapp's well known policies, practices and customs of incarcerating defendants upon failure to make installment payments.

72.     OIDS' failure to provide indigent defendants with conflict-free representation of counsel and failure to provide counsel during criminal proceedings likely to result in incarceration violate the Sixth and Fourteenth Amendments to the U.S. Constitution.

## COUNT FOUR:  DENIAL OF DUE PROCESS,

### in violation of Article 2, Section 7 of the Oklahoma Constitution
### (Against Defendants Sigler and DeLapp)

73.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 50 as if fully set forth herein.


**Exhibit 1**

74.    Article 2, Section 7 of the Oklahoma Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." OK Const. Art. 2, § 7.

75.    Judges Sigler and DeLapp, acting at all times under color of state law, have had policies, practices, or customs of imprisoning indigent individuals who had no ability to pay their court-ordered fines and fees.  Judges Sigler and DeLapp have issued arrest warrants for non-payment of court fines and fees without pre-deprivation notice and an opportunity be heard on whether the non-payment was willful.  These policies, practices, or customs violate the Due Process Clauses of the Oklahoma Constitution.  The unconstitutional policies, practices and customs are exemplified by Judges Sigler's and DeLapp's imprisonment of Mrs. Feenstra and Ms. Carter.

### COUNT FIVE: FAILURE TO PROVIDE RELIEF DUE TO POVERTY AND DISABILITY,

#### in violation of Oklahoma Statutes, Title 22, Chapter 18, Rule 8.5
#### (Against Defendants Sigler and DeLapp)

76.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 50 as if fully set forth herein.

77.    Rule 8.5 mandates that defendants unable to pay due to physical disability or poverty "must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs." 22 Okl. St. Chap. 18, Appx., Rule 8.5.

78.    Judges Sigler and DeLapp, acting at all times under color of state law, have had policies, practices, or customs of enforcing fines and/or costs against individuals who are unable to pay because of poverty.  Judges Sigler and DeLapp have not relieved indigent individuals of

24



their fines and/or costs or required these individuals to report back to consider whether a change of condition permitted them to commence making payments. Instead, Judges Sigler and DeLapp have ordered indigent individuals to make payments they could not afford and incarcerated them when they were too poor to do so.

79.     The facts alleged above regarding Mrs. Feenstra, Ms. Carter, and Mr. Feenstra exemplify these unconstitutional policies, practices and customs.

### COUNT SIX:  FAILURE TO CONDUCT ABILITY TO PAY HEARINGS PRIOR TO INCARCERATION FOR NONPAYMENT,

#### in violation of Oklahoma Statutes, Title 22, Chapter 18, Rule 8.4 (Against Defendants Sigler and DeLapp)

80.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 50 as if fully set forth herein.

81.     Rule 8.4 provides that defendants who fail to make an installment payment "must be given an opportunity to be heard" and are subject to incarceration if "no satisfactory explanation" is provided at "the hearing on failure to pay." 22 Okl. St. Chap. 18, Appx., Rule 8.4.

82.     Judges Sigler and DeLapp, acting at all times under color of state law, have had policies, practices, or customs of incarcerating individuals for failing to make installment payments without providing the opportunity to be heard prior to incarceration and without determining whether there is a satisfactory explanation for their failure to pay.

83.     As alleged above, Judge Sigler did not provide Plaintiff Amanda Feenstra with an opportunity to be heard and provide a satisfactory explanation of her nonpayment prior to incarcerating her for missed installment payments pursuant to the form "Order Remanding Defendant to Jail for Failure to Pay Fines and Costs."



84.     As alleged above, Judge DeLapp did not provide Ms. Carter with an opportunity to be heard and provide a satisfactory explanation of her nonpayment prior to incarcerating her for missed installment payments.

## COUNT SEVEN: FAILURE TO CONDUCT ABILITY TO PAY HEARINGS AT JUDGMENT AND SENTENCING,

### in violation of Oklahoma Statutes, Title 22, Chapter 18, Rule 8.1 (Against Defendants Gerkin, DeLapp, and Sigler)

85.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 to 50 as if fully set forth hearing.

86.     Incarceration for debt is prohibited by the Bill of Rights to the Oklahoma Constitution.  OKLA. CONST. art. II, § 13.

87.     Rule 8.1 mandates a hearing concerning defendants' ability to pay "[w]hen the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant." 22 Okl. St. Chap. 18, Appx., Rule 8.1.

88.     Judges Gerkin, DeLapp, and Sigler, acting at all times under color of state law, have had policies, practices, or customs of imposing fines and fees without conducting a hearing and without making a determination about individuals' ability to immediately satisfy the fines and costs, as required by Rule 8.1.

89.     These policies, practices, or customs violate Oklahoma Rules of Criminal Procedure Rule 8.1, which provides that "[w]hen the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs." 22 Okl. St. Chap. 18, Appx., Rule 8.1.

**Exhibit 1**

90.    Despite knowing that Plaintiff Lonnie Feenstra was unemployed and physically disabled, and being aware that Plaintff Lonnie Feenstra had been incarcerated for 61 days prior, Judge Gerkin ordered Plaintiff Lonnie Feenstra to pay $2,500 in incarceration fees and costs transferred from a dismissed charge to an unrelated offense.

91.    Despite knowing that Plaintiff Carter was unemployed and knowing that she had been only recently released from a two-year period of juvenile detention, Defendant DeLapp ordered Plaintiff Carter to pay over $2,700 in fines, fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, for their claims for relief and causes of action herein, respectfully pray for judgment in their favor and against Defendants as follows:

a)    A judgment in favor of Plaintiffs and against Defendants on all causes of action alleged herein;

b)    Permanent injunctive relief as requested herein to prevent Defendants for engaging in the unlawful and unconstitutional acts alleged herein;

c)    Declaratory judgment that Defendants' conduct as alleged herein is unlawful;

d)    Vacatur of all outstanding fines, fees and costs currently outstanding and assessed against each Plaintiff, in accordance with Rule 8.5;

e)    Plaintiffs' reasonable attorney's fees;

f)    All costs of this action, including any expenses, filing fees, and/or other fees and costs; and

g)    Any such other relief the Court deems just and proper.



Dated: March 21, 2019

Respectfully submitted,

/s/

Spencer Bryan
Bryan & Terrill
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com

Myesha Braden (*pro hac vice pending*)
Leah Watson (*pro hac vice pending*)
Lawyers' Committee for
Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
MBraden@lawyerscommittee.org
LWatson@lawyerscommittee.org

Michael Lacovara *(pro hac vice pending)*
Lilia Vazova *(pro hac vice pending)*
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1377
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Mrs. Amanda
Feenstra, Ms. Sharonica Carter, and Mr.
Feenstra*

**Exhibit 1**

# EXHIBIT A

**Exhibit 1**

## TITLE 22. CRIMINAL PROCEDURE
## CHAPTER 18
## APPENDIX. RULES OF THE COURT OF CRIMINAL APPEALS

### SECTION VIII: PROCEDURES RELATING TO DISTRICT AND MUNICIPAL COURTS RELATING TO IMPRISONMENT FOR NONPAYMENT OF FINES AND COSTS

- **Rule 8.1 Judicial Hearings**

  When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs. See Section 983(D) of Title 22.

- **Rule 8.2 Immediate Confinement on Refusal or Neglect to Pay Fine and/or Costs**

  If the defendant, by judicial finding, is financially able but refuses or neglects to pay the fine and/or costs in accordance with the court order, he/she may be immediately confined. See Section 983(A) of Title 22.

- **Rule 8.3 Ordering Installment Payments and Fixing the Date**

  After a judicial finding that the defendant may be able to pay the fine and/or costs in installments, the court may order the defendant to make payment of installments in reasonable amounts and fix the due date of each payment, and may order the defendant to appear before the court on each due date. In event of imprisonment as a part of the judgment rendered, a determination shall be made as to the defendant's ability to make installment payments after completion of the term of imprisonment. *See* Section 983(B) of Title 22

- **Rule 8.4 Failure to Make Installment Payments When Due**

  If the defendant fails to make an installment payment when due, he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due. If no satisfactory explanation is given at the hearing on failure to pay, the defendant may then be incarcerated. If a defendant has the ability to pay but due to exigent circumstances or misfortune fails to make payment of a particular installment when due, he/she may be given further opportunity to satisfy the fine and/or costs, at the discretion of the court, to be governed by the facts and circumstances of each particular case.

- **Rule 8.5 Inability to Pay Installments Because of Physical Disability or Poverty**

  In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs.



**Exhibit 1**

- ### Rule 8.6 Change of Conditions; Incarceration for Failure to Appear or Satisfy Fine and/or Costs.

  At any time so fixed by the court for the defendant to appear on due date of installment or to appear for examination to determine change of condition set out in Rule 8.5, and the defendant fails to appear, he/she may be incarcerated to satisfy the fine and/or costs. In addition, if the defendant fails to pay fine and/or costs in accordance with the court's order, and the court determines the failure to pay was willful in accordance with Rules 8.1, 8.2, 8.3 and 8.4, the defendant may be incarcerated to satisfy the fine and/or costs.

- ### Rule 8.7 Court Reporter; Judicial Order Reduced to Writing and Filed of Record; Contents of Order

  A court reporter shall be present and report all such judicial hearings required by this Section, PROVIDED HOWEVER, a court reporter is not required to be present if the proceedings were preserved in accordance with Section 106.4(a) of Title 20. Any order of the court, whether there be a court reporter in attendance or not, shall be reduced to writing and filed of record in the case. The order shall set forth the findings of the court regarding the defendant's ability or inability to pay the fine and/or costs, the refusal or neglect to do so, if that be the case, the amount of the installments and due dates, if so ordered, and all other findings of facts and conclusions of law necessary to support the order of the court. Any order directing incarceration for failure to pay fine and/or costs shall provide for immediate release upon full payment of the amount ordered or in lieu thereof set a daily rate to be credited to the satisfaction of the amount of fine and/or costs due which will allow the custodian of the prisoner to compute the amount of time to be served to satisfy the total amount due. *See* Section 101 of Title 28 and Section 15 of Title 57.

- ### Rule 8.8 Direct Appeal from an Order of Detention and Scope of Appeal

  **A. Final Order of Detention for Non-Payment.** The appeal to this Court from a final order of a municipal court of record or a district court directing a defendant to be imprisoned under the provisions of Section 983 of Title 22 or under the foregoing provisions of Section VIII of these Rules shall constitute an appeal from the issues raised in the record below and the judicial findings of fact and conclusions of law made in the trial court, and the trial court's ultimate decision to imprison the defendant. The appeal shall be limited to whether the trial court abused its discretion in entering its final order of detention. The propriety of any fine, cost, or other assessment made within the original judgment and sentence is not a proper subject of an appeal from an order of detention. Such claims must instead be raised in a direct appeal from the judgment and sentence.

  **B. Stay of Execution of Detention Order Pending Appeal.** The trial court may stay the execution of its final order of detention upon the filing by the defendant of a verified motion to stay execution of the order pending appeal. The verified motion must be filed within ten (10) days from the date of the trial court's pronouncement of its order of detention. If the motion is granted, the defendant shall, within five (5) days after the filing of the petition in error in this Court, file a certified copy of the petition in error in the trial court and serve a copy thereof upon the trial judge which entered the order of detention. This shall ensure the trial court is notified that an appeal has in fact been commenced in the Court of Criminal Appeals.

  **C. Notice of Appeal from Order of Detention and Request for Appeal Record.** A defendant desiring to appeal from a final order of detention under these Rules must file a Notice of Appeal from Order of Detention with the Clerk of the District Court within ten (10)



**Exhibit 1**

days from the date the detention order is pronounced. The Notice of Appeal from Order of Detention shall be in substantial compliance with the following language:

> Defendant gives notice of intent to appeal from the trial court's order imprisoning him/her for non-payment of sums due in Case No(s). _____ in the _____[name of the district court or municipal court of record in which the detention order was entered]_____, State of Oklahoma. The final order of detention was pronounced by said court on the _____ day of _____, _____. Defendant requests the clerk of the trial court to prepare an appeal record as required by Section VIII of the *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App.

Form 13.4, Section XIII of these *Rules* shall not be utilized in direct appeals from a final order of detention, and the trial court clerk shall not be required to accept for filing or act upon any pleading which does not comply with this rule.

## D. Petition in Error, Briefs, and Service.

(1) A petition in error WITH A CERTIFIED COPY OF THE DETENTION ORDER ATTACHED and a supporting brief, must be filed with the Clerk of this Court within thirty (30) days from the date the final detention order is pronounced. The filing of a petition in error is jurisdictional and failure to timely file constitutes waiver of the right to appeal.

(2) The brief shall not exceed thirty (30) typewritten, 8-1/2 by 11-inch pages in length. Briefs and pleadings shall comply with the requirements of Rule 3.5.

(3) The party filing the petition in error shall be known as the appellant. The party against whom the appeal is taken shall be known as the appellee.

(4) This Court may direct the appellee to file an answer brief, if necessary; however, the appellee is not required to file an answer brief unless directed by the Court.

(5) All pleadings and briefs filed in a direct appeal from an order of detention shall be signed by the party responsible for their filing or by the party's attorney of record. Additionally, all such pleadings or briefs shall contain a certificate of service upon the adverse party. The party or their attorney of record shall be responsible for service upon the adverse party, except that service upon the Attorney General will be made by the Clerk of this Court when a party so requests. No pleadings, briefs, or motions will be considered by this Court without proof of service to the adverse party.

## E. Record on Appeal from an Order of Detention.

(1) The record on appeal from a final order of detention for non-payment shall be transmitted by the clerk of the trial court in accordance with the procedure set forth in Rule 2.3(B), but within the thirty (30) day time period set forth in Rule 8.8(D)(1).

(2) The record on appeal to be compiled by the trial court clerk and transmitted to the Clerk of this Court is limited to the written order containing findings of fact and conclusions of law and the transcript of the proceedings (both as set out in Rule 8.7) and the judgment and sentence being enforced by means of the detention order.



**Exhibit 1**

# EXHIBIT B

Exhibit 1

IN THE DISTRICT COURT OF WASHINGTON COUNTY
OKLAHOMA

| | | |
|---|---|---|
| THE STATE OF OKLAHMA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. _____ |
| | ) | _____ |
| _____, | ) | _____ |
| Defendant. | ) | _____ |
| | ) | _____ |

### MOTION FOR RULE 8 HEARING ON
### INABILITY TO PAY FINES AND/OR COSTS

Comes now the above-named Defendant and requests the Court to schedule a hearing where the Defendant can present evidence and documentation which establishes the Defendant's inability to pay fines and/or costs.

_____
Defendant

_____
Street Address

_____
City,            State   Zip code

_____
Telephone number

**Exhibit 1**

# EXHIBIT C

**Exhibit 1**

IN THE DISTRICT COURT IN AND FOR WASHINGTON COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA,                    **ORIGINAL**        Case No. *CF·14·465 -orig*
Plaintiff,                            Return To Court Clerk              *CF·14·528*

vs.                                        )        DISTRICT COURT WASHINGTON CO.
                                           )        FILED L. SPITZER, COURT CLERK
*Amanda Marie Ackerson*                    )
                                           )        JUN  5 2018
            Defendant.                     )
                                           )        by *Glenda paul*        DEPUTY

ORDER REMANDING DEFENDANT TO JAIL FOR FAILURE TO PAY FINES AND COSTS

        Now this *10 th* day of *May*, 20*18*, this matter comes on pursuant to Title 22, Chapter
18, Appendix, Rule 8.1 through 8.8 of the Rules of the Court of Criminal Appeals. The Defendant appeared in person. The
State of Oklahoma was represented by *Brett Mize*.

        After having heard testimony and statements from the Defendant, and having reviewed court dockets and
records in the above styled case (s), the Court makes the following findings of facts and conclusions of law:

                    *7·6·18 @ 1:30 pm ftc*

Therefore the Defendant has willfully refused or neglected to pay the amounts as previously ordered by the Court.

        IT IS THEREFORE THE ORDER of the Court that the Defendant is remanded to the custody of the Washington
County Sheriff's Office and Jail in the above-styled case (s) to pay the amount of $ *330.00* at the rate of
$25.00 per day, commencing this date. The Defendant is to serve the $ *330.00* as "flat time", with no
credit for "good time".

                                        _____
                                        Judge of the District Court



**Exhibit 1**