CASE NO.: CV-2019-00234

---

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

---

**AMANDA FEENSTRA, SHARONICA CARTER AND LONNIE FEENSTRA**

**Plaintiffs,**

**v.**

**JARED SIGLER, Special Judge of the District Court of Washington County, et al.,**

**Defendants.**

---

### DEFENDANTS OIDS' MOTION TO DISMISS

---

**Jon Williford, OBA 1598**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:    405.521.3921
Facsimile:    405.521.4518
Email:  jon.williford@oag.ok.gov
*Attorney for Defendant OIDS*

**May 10, 2019**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ii

STANDARD FOR MOTION TO DISMISS ................................................................................3

PROPOSITION I:   OIDS COMPLIED WITH THE STATUTES THAT
GOVERN ITS' OBLIGATIONS TO OKLAHOMANS .............................................5

PROPOSITION II:  OIDS HAD NO ATTORNEY CLIENT
RELATIONSHIPS WITH ANY PLAINTIFFS....................................................7

PROPOSITION III:   SUPERVISORY LIABILITY IS UNAVAILABLE
TO PLAINTIFFS.......................................................................................9

PROPOSITION IV:   PLAINTIFFS FAIL TO MEET THE STANDARDS
FOR INJUNCTIVE RELIEF....................................................................15

PROPOSITION V:  PLAINTIFFS FAIL TO ALLEGE THEIR CONVICTIONS
HAVE BEEN OVERTURNED OR OTHERWISE NEGATED...........................16

PROPOSITION VI:   OIDS IS NOT STATE ACTOR FOR 1983 CLAIMS......................17

CONCLUSION .............................................................................................................18

CERTIFICATE OF MAILING .......................................................................................19

## **TABLE OF AUTHORITIES**

## CASES

*Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)................................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S.Ct. 1937,
    1953, 173 L.Ed.2d 868 (2009) ................................................ 4, 9, 10, 11, 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) ........................4, 11, 12

*Bistrian v. Levi*, 696 F.3d 352, 366 n.5 (3d Cir. 2012)......................................................14

*Cuyler v. Sullivan*, 446 U.S. 335..................................................................................8, 9

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir.2010)..............................................14

*Heck v. Humphrey*, 512 U.S. 477 ............................................................................. 16, 17

*Heyerman v. County of Calhoun*, 680 F.3d 643, 647 (6th Cir. 2012)...................................14

*Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ........................................................4

*Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013)...........................................................14

*Kurtenbach v. TeKippe,* 260 N.W.2d 53, 56 (Iowa 1977)..................................................8

*Lacy v. Maricopa County*, 693 F.3d 986, 916 (9th Cir. 2012) ...........................................14

*Leavitt v. Correctional Medical Services, Inc.* 645 F.3d 484 (1st Cir. 2011) .........................14

*McCreary v. Parker*, 456 Fed.Appx. 790 (11th Cir. 2012)................................................14

*Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002) ....................4

*Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001) .............................................................9

*Parrishe v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010) ..................................................14

*Polk Cty. v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981)................................17

*Powell Briscoe, Inc. v. Peters*, 1954 OK 107, 269 P.2d 787 ...............................................15

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)............................4

*Robbins v. State of Okla., et al.*, 519 F.2d 1242, 1247 (10th Cir. 2008) ..................................4

*Serna v. Colo. Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006)........................14

*Smith v. Massey*, 235 F.3d 1259, 1265 (10th Cir. 2000) ..................................................9

*State ex rel. Oklahoma Bar Ass'n v. Green*, 1997 OK 39, 936 P.2d 947, 952 ......................8

*Taylor v. City of Bixby*, 2018 OK CIV APP 18, 415 P.3d 537 ...................................................17

*Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) *cert.* denied, 133 S.Ct. 2796 (2013) ..........14

*Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013) .................................................................14

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013).................................................................14

**STATUTES**

22 O.S. 1082 ..................................................................................................................15

22 O.S. 1355 ....................................................................................................................5

22 O.S. 1355.3 ..............................................................................................................2, 5

22 O.S. 1355.4 ..............................................................................................................3, 5

22 O.S. 1355.6 ..................................................................................................................6

22 O.S. 1355.8 ..............................................................................................................2, 6

22 O.S. 1356 ..................................................................................................................15

12 O.S. 1381 ..................................................................................................................15

28 U.S.C. § 2254 ............................................................................................................16

42 U.S.C. 1983 .......................................................................................................1, 16, 17

Fed. R. Civ. P. (12)(b)(6)……………………………………………………………………....3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA; SHARONICA
CARTER; and LONNIE FEENSTRA

               Plaintiffs,

v.

JARED SIGLER, Special Judge of the
District Court of Washington County, in his
official capacity, *et al.,*

               Defendants.

**Case No.: CV-2019-00234**

**(Washington County Case No. CV-2019-12)**

## <u>DEFENDANTS, OIDS' MOTION TO DISMISS</u>

Plaintiff's Petition needs to be dismissed because it does not state a claim upon which relief can be granted. Oklahoma Indigent Defense System, State of Oklahoma, ex rel., Oklahoma Indigent Defense System, Craig Sutter, Executive Director of the Oklahoma Indigent Defense System, and Oklahoma Indigent Defense System Board of Directors ("OIDS") is governed by Oklahoma Statutes. The attorneys OIDS contracts with to provide independent services conduct a vital service to indigent Oklahomans. Without OIDS contracted counsel a huge segment of the Oklahoma population would be without vital criminal defense services. The primary question this Court must answer:

> **The Oklahoma Legislature limited the powers and duties of OIDS, the OIDS Executive Director, and the OIDS Board of Directors. Plaintiffs claim these OIDS Defendants violated their Sixth Amendment right to "conflict free counsel." Plaintiffs failed to appeal or seek post-conviction relief. If OIDS complied with Oklahoma law, Plaintiffs have not invalidated their convictions, and the OIDS Defendants never represented Plaintiffs, can liability attach under 42 U.S.C. 1983.**

The Petition makes many claims against numerous defendants but only one claim against the OIDS Defendants – violation of 6th Amendment right to "conflict free counsel." Plaintiffs appear to argue that because OIDS contracts are back weighted, then a conflict is created between the OIDS attorneys and Plaintiffs.  However, at no time in the Petition or in reality, did any of the named OIDS Defendant actually provide any legal advice to any of these Plaintiffs.  OIDS as an entity certainly did not.  Craig Sutter as the Executive Director of OIDS also provided no legal representation.

The Oklahoma Legislature crafted a strict set of rules for OIDS, its Board, and Executive Director to follow.  These rules were codified in statutes and limit what these entities have the power to do.  The apparent lynch pin of Plaintiff's assertion of a conflict of interest is that fact that OIDS holds out 10% of its contract payment until the cases are closed.  Plaintiff fails to describe how this causes any such conflict.  The 10% reservation is required by Oklahoma law.  22 O.S. 1355.8.  OIDS must hold that back or violate Oklahoma law.  If Plaintiffs want to change that requirement, then they need to petition the Legislature to change the law or seek to have that provision struck as unconstitutional.  They make no argument in the Petition that the 10% reservation somehow violates the Federal or Oklahoma Constitution.

The duties of the OIDS board are limited by statute.  22 O.S. 1355.3.  The Board lacks the power to advise criminal defendants.  Providing legal advice to a criminal defendant by the OIDS Board of Directors would violate Oklahoma law.  Plaintiffs complain that they were not properly advised as to the particularities of a Rule 8 hearing regarding costs and

fees and an ability to pay. See Petition paragraph 69. Under no circumstances could the OIDS Board of Directors provide such granular and individualized legal advice.

The Executive Director of OIDS, Defendant Craig Sutter, also has his powers directly limited by statute. 22 O.S. 1355.4. Plaintiffs attempt to create liability here by citing to Mr. Sutter's duty to "6. To maintain and improve effective representation for the indigent criminal defendant." Petition at 66. This section plainly does not apply to advising individual criminal defendants on the best legal strategy for that particular case. This is a broad directive to improve representation as a whole, not give legal advice to a client on his or her ability to pay costs and fees.

The petition alleges that "OIDS has structured its contractual agreements …" Petition at paragraph 68. OIDS doesn't "structure" its contracts as suggested. As stated above, these terms are required under Oklahoma law.

Plaintiff also ignores the fact that these Defendants all entered plea bargains. Plaintiff mentions "sentencing hearings" at paragraph 69. These were the plea bargained sentences that Plaintiffs and their non-party OIDS contracted attorneys negotiated with the prosecutors. Plaintiffs all agreed to these terms, or the pleas would not happen. Despite all of the above, Plaintiffs are suing the OIDS governing bodies for failing to provide proper legal advice at the trial level.

## STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. (12)(b)(6) empowers a court to dismiss a complaint for failure to state claims upon which relief may be granted. Motions to dismiss are properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 1965, 1974 (citations omitted). The Supreme Court's standard for 12(b)(6) dismissal is "whether the complaint contains 'enough facts to state a claim that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). The court should "look for plausibility in th[e] complaint." *Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Bell Atl.*, 127 S.Ct. At 1974). The specific allegations in the complaint must be reviewed "to determine whether they plausibly support a legal claim for relief." *Id.* at 1215, n.2; see also *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Entitlement to relief requires more than just "labels and conclusions or a formulaic recitation of the elements" to state a cause of action. *Robbins v. State of Okla., et al.*, 519 F.2d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl.*, 127 S.Ct. At 1965. Although decided within an antitrust context, the United States Supreme Court held that *Twombly* "expounded the pleading standard for all civil actions." *Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009). In deciding a 12(b)(6) motion a court must accept all the well-pleaded allegations of the complaint as true, and must construe the allegations in the light most favorable to the claimant. *Id.* at 1965; *Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

## PROPOSITION I: OIDS COMPLIED WITH THE STATUTES THAT GOVERN ITS' OBLIGATIONS TO OKLAHOMANS

The Oklahoma Indigent Defense System ("OIDS") was created by the Oklahoma Legislature to serve those Oklahomans facing criminal charges that were unable to afford a proper legal defense. See 22 O.S. 1355, *et. seq.* The Legislature created very specific duties and powers of the OIDS Board. See 22 O.S. 1355.3. Plaintiffs cited to none of these provisions in their Petition. Plaintiffs point to no violation of any statutorily outlined duty of the OIDS Board.

Plaintiffs also named OIDS Executive Director, Craig Sutter, as a Defendant. His duties and powers are also statutorily limited. See 22 O.S. 1355.4. Plaintiffs claim "6. To maintain and improve effective representation for the indigent criminal defendant;" applies to the present case and creates a specific duty to these individual Plaintiffs. See Paragraph 66 of Plaintiffs' Petition. Sutter, as Executive Director, does not represent individual criminal defendants. That power and duty does not exist under Oklahoma law.

Plaintiffs allege that "10% of overall payments to its public defender contractors be withheld until the disposition of cases at the trial court level." Paragraph 67 of Plaintiff's Petition. Plaintiffs argue that this creates a conflict for trial counsel that prevents OIDS contracted attorneys from performing their ethical duties to these particular Plaintiffs[1]. Plaintiffs provide no facts that support this bare assertion other than this conclusory statement. Plaintiffs also fail to note that this 10% holdback is required by Oklahoma law. Specifically:

---

[1] Importantly, Plaintiffs did not sue any of the individual counsel that actually represented them that allegedly provided ineffective assistance.

> 2. Attorneys paid for indigent defense pursuant to paragraph 1 of this subsection shall receive the balance of ten percent (10%) of the total value of the contract upon completion of all felony and misdemeanor matters covered by the contract. A matter is completed for purposes of this paragraph when no additional services are required under the contract.

22 O.S. 1355.8 (G)(2).  By following this provision, OIDS is in compliance with Oklahoma law.  Plaintiffs make no challenges to this law.  Plaintiffs fail to mention that this 10% requirement is Oklahoma law.

Plaintiffs seem to allege that OIDS should provide counsel for potential Rule 8 hearings.  Importantly, these hearings occur only **after** Plaintiffs have entered a plea of guilty or no contest to the pending criminal charges.  These Plaintiffs all agreed to the terms of the plea prior to entering it, which included costs and fees.  Plaintiffs categorize these follow up matters as "contempt" offenses.  See paragraph 13 of Plaintiffs' Petition.  Rule 8 hearings do not expose an individual to criminal liability.  One cannot acquire a felony or misdemeanor charge solely due to a Rule 8 hearing.

Oklahoma law limits when an OIDS contracted attorney may be appointed.

> A. The Indigent Defense System shall have the responsibility of defending all indigents, as determined in accordance with the provisions of the Indigent Defense Act in all capital and felony cases and in all misdemeanor and traffic cases punishable by incarceration. …

22 O.S. 1355.6(A).  A Rule 8 hearing is not a capital, felony, misdemeanor, or traffic case.  If a motion is made by the State of Oklahoma, either at the Rule 8 hearing, or elsewhere, to revoke a suspended sentence, or accelerate a deferred, that event generates OIDS representation.  Plaintiffs' Petition makes no such assertion.

The above statute does not state that every possible situation which may involve incarceration subjects one to OIDS representation.  For example, an indigent who faced

6

possible incarceration related to unpaid child support would not be a candidate for OIDS representation.  OIDS is statutorily limited to representation on criminal charges.

All told, OIDS has limited abilities according to Oklahoma law.  Plaintiffs fail to provide any evidence or specific facts which would tend to show that these OIDS Defendants violated any statutes or laws.

**PROPOSITION II:          OIDS HAD NO ATTORNEY CLIENT RELATIONSHIPS WITH ANY PLAINTIFFS**

Plaintiffs appear to raise an ineffective assistance of counsel argument.  See Paragraph 69 of Plaintiffs' Petition for example and various other mentions of Plaintiffs not being advised by OIDS contracted attorneys.  Plaintiffs ignore the simple fact that these OIDS Defendants **never** had an attorney client relationship with any of these Plaintiffs. It is elementary that in order for a party to succeed on an ineffective assistance of counsel argument, an attorney client relationship must first exist.

The Petition contains no facts which would even suggest an attorney client privilege existed between OIDS and these Plaintiffs.  Plaintiffs never sought legal advice from any OIDS Defendant.  These OIDS Defendants never offered any legal advice.  Plaintiffs never related any direct communication with these OIDS Defendants.  There is no allegation that an attorney client representation contract exists.  There are no allegations by these Plaintiffs that they believed these OIDS Defendants were actually their attorneys.

The Oklahoma Supreme Court has held that the attorney client relationship rests upon contract.  The parties conduct may create the contract.

> Further, even though the attorney-client relationship rests on contract, it is not necessary the contract be express or that a retainer be requested or

> paid. *Kurtenbach v. TeKippe,* 260 N.W.2d 53, 56 (Iowa 1977). The contract
> may be implied from the conduct of the parties. *Id.*

*State ex rel. Oklahoma Bar Ass'n v. Green*, 1997 OK 39, 936 P.2d 947, 952. Plaintiff has failed

to allege any set of facts which would imply the existence of an attorney client relationship.

These OIDS Defendants simply cannot provide "ineffective assistance of counsel" to a non-

client.

Relatedly, Plaintiffs combine the assertion of ineffective assistance of counsel with

the argument that the 10% retention creates a conflict of interest. While these complaints (if

meritorious at all) might be more accurately directed to the appointed counsel, they lack any

merit as applied to these OIDS Defendants. The United States Supreme Court has held that

a mere **allegation** of a conflict is insufficient to create a Constitutional violation. The party

claiming the conflict must show that the conflict adversely impacted the representation. In

*Cuyler v. Sullivan*, 446 U.S. 335, the Supreme Court examined a case of an alleged Sixth

Amendment violation created by an alleged conflict of interest. The *Cuyler* Court stated:

> The Court of Appeals granted Sullivan relief because he had shown that the
> multiple representation in this case involved a possible conflict of interest.
> We hold that the possibility of conflict is insufficient to impugn a criminal
> conviction. In order to demonstrate a violation of his Sixth Amendment
> rights, a defendant must establish that an actual conflict of interest
> adversely affected his lawyer's performance.

*Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719, 64 L. Ed. 2d 333 (1980). Plaintiffs

fail to demonstrate that this 10% provision impacted these OIDS Defendants ability to

represent these Plaintiffs in any way. Primarily because these OIDS Defendants never

represented these Plaintiffs, but also because Plaintiffs demonstrate no facts to support such

an argument.

8

Plaintiffs assert that they are entitled to "conflict free counsel." This is true, but again, does not apply to these OIDS Defendants. Citing to *Cuyler*, the 10th Circuit has found that a plaintiff must actually show the conflict impacted the adequacy of his representation.

> Where, as here, a defendant raises no objection at trial, her later assertion that her counsel was representing *potentially* conflicting interests is insufficient to establish a Sixth Amendment violation. *Id.* at 348, 100 S.Ct. 1708. Instead, "[i]n order to establish a violation of the Sixth Amendment [right to effective counsel], a defendant who raised no objection at trial must demonstrate that an *actual* conflict of interest adversely affected h[er] lawyer's performance." *Id.* (emphasis added).

*Smith v. Massey*, 235 F.3d 1259, 1265 (10th Cir. 2000), abrogated on other grounds by *Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). Plaintiffs fail to allege any facts which would plausibly demonstrate this 10% holdback affected the actual representation. The mere appearance of a conflict is insufficient to establish a Constitutional violation. When the Plaintiffs fail to present any facts which show these OIDS Defendants actually represented these Plaintiffs, showing a conflict is an insurmountable barrier.

**PROPOSITION III:          SUPERVISORY LIABILITY IS UNAVAILABLE
                                          TO PLAINTIFFS**

It is possible that Plaintiffs intend to argue that OIDS is liable as "supervisors" of Plaintiffs' trial counsel. However, such liability is unavailable to these Plaintiffs. The landscape of supervisory liability under § 1983 dramatically changed with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). In that case the Court was faced with the issue of whether or not Plaintiff's Complaint adequately pled supervisory liability against former Attorney General John Ashcroft and FBI Director Robert Mueller. The Court framed the issue on appeal as:

Respondent's account of his prison ordeal could, if proven, demonstrate unconstitutional misconduct by some governmental actors.   But the allegations and pleadings with respect to these actors are not before us here. This case instead turns on a narrower question: Did respondent, as the plaintiff in the District Court, plead factual matter that, if taken as true, states a claim that petitioners [Ashcroft and Mueller] deprived him of his clearly established constitutional rights.

*Id.* at 666.

Iqbal was a citizen of Pakistan and a Muslim. Following the attacks on 9-11, the federal government began a massive investigation "to identify the assailants and prevent them from attacking anew." *Id.* at 667.   More than 1,000 suspects were questioned, some 763 were held on immigration charges, and a subset of 184 immigration detainees were deemed to be "of high interest." *Id.* at 667.   Iqbal was one of those 184 subset illegal immigrants deemed to be "of high interest."   He was arrested and detained by federal officials on criminal charges for fraud in relation to identification documents and conspiracy to defraud the federal government.   *Id.* at 667.   He later pled guilty to the criminal charges, served a term of imprisonment, and was removed to his native Pakistan. *Id.* at 668. He sued, under *Bivens,* 34 current and former federal officials alleging that they were acting under an unconstitutional policy created, adopted, and implemented by Ashcroft and Mueller which subjected him "to harsh conditions of confinement on account of his race, religion, or national origin." *Id.* at 666.   His allegations were not challenging the reasons for his arrest or his confinement, but rather his treatment while confined.   He alleged that "jailors kicked him in the stomach, punched him in the face, and dragged him across his cell without justification." *Id.* at 668.   He further alleged that he was subjected "to serial strip and body-cavity searches when he posed no safety risk to himself or others [and that Defendants] ...

refused to let him and other Muslims pray because 'there would be no prayers for terrorists'." *Id.* at 668.  His specific allegations against Ashcroft and Mueller were that:

> "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." It further alleges that "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation." *Id* at 669. [*citations* to the Record on Appeal omitted].

In addressing Ashcroft and Mueller's Motion to Dismiss pursuant to their *Twombly* qualified immunity argument, the Court held that "the sufficiency of [Iqbal's] pleadings [are] both inextricably intertwined with, and directly implicated by the *qualified immunity* defense" (*Id.* at 673 [internal citations omitted]), because "[i]n the context of determining whether there is a violation of [a] *clearly established right* ... **purpose rather than knowledge is required**....". *Id.* at 677. [emphasis added].  In applying that purpose vs. knowledge rule to supervisory liability, the Court held that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's <u>own</u> individual actions, has violated the Constitution." *Id.* at 676.[2]  Because Iqbal had pled violations under the First and Fifth Amendments based upon discriminatory

---

[2] That "personal participation" requirement has long been a cornerstone for establishing liability under § 1983 in the Tenth Circuit. *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir.1976) ("Personal participation is an essential allegation in a Section 1983 claim.").

purpose, the Court held that he must allege "sufficient factual matter" in his Complaint that Ashcroft and Mueller "adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 677. "[P]urposeful discrimination" the Court held, "requires more than intent as volition or intent as awareness of consequences.  It instead involves a decision maker's undertaking a course of action 'because of', not merely 'in spite of' the action's adverse effects upon an identifiable group." *Id.* at 676-77. (Internal citations and quotations omitted).

With *Iqbal*, the Court has made it clear that a Complaint must contain "sufficient factual matter" that if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* at 678 (*citing* Rule 8 and *Twombly*).[3]   The Court explained that Iqbal's allegations that Ashcroft as the principle architect, and Mueller who was instrumental in adopting and executing the alleged invidious policy[4]  were mere conclusory statements that the Court was not required to accept as true.  The Court held that those allegations did not satisfy Rule 8's pleading requirements, not based upon it's judgment that any factual allegations contained therein were not "plausible", but rather "[i]t is the conclusory nature of [the] allegations,

---

[3] See *Iqbal* at 678-79, wherein the Court discussed in detail *Twombly's* "Two working principles" that (1) allegations that are mere legal conclusion do not have to be accepted as true by a District Court at the motion to dismiss stage, and (2) only factual allegations that are "plausible" can survive dismissal.  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." (Internal citation omitted).

[4] See *Iqbal* at 680, where in the court discusses the Complaint's allegations that Ashcroft and Mueller "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest."

rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.* 681.

The Court then addressed the remaining allegations against Ashcroft and Mueller, that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11" and that "[t]he policy of holding post-September - 11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." *Iqbal* at 681. The Court did acknowledge that if "taken as true" those allegations "are consistent with [Ashcroft and Mueller's] purposefully designating detainees of high interest because of their race, religion, or national origin. But given more likely explanations, they do not plausibly establish this purpose." *Id.* at 681. Drawing on its own "judicial experience and common sense" under *Twombly's plausibility* requirement (see *supra.* fn.2), the Court held that "[t]o prevail on [his] theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September -11 detainees as 'of high interest' because of their race, religion, or national origin." *Id.* at 682. [emphasis added]. Iqbal failed to meet that requirement with plausible factual allegations showing Ashcroft and Mueller undertook their course of action with the "purpose" (or "state of mind") of violating Iqbal's constitutional rights.   While it is true that *Iqbal* did discuss qualified immunity extensively at the motion to dismiss stage, its relevance and precedent is still useful in resolving Plaintiffs' claims in this case, because the Court did emphasize that in order to

13

hold a supervisor liable, Plaintiffs must prove that Defendants possessed the relevant "state of mind" regarding the Constitutional claim at issue, as this Circuit has observed.

Prior to *Iqbal*, the Tenth Circuit had held in  *Serna v. Colo. Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006), that a defendant supervisor who "acquiesced" in a constitutional violation was ***personally involved*** (and hence possibly liable) <u>only</u> if he shared the same "state of mind" with his subordinates who actually committed the actual violation.  See 455 F.3d at 1151.  In the wake of *Iqbal*, the Tenth Circuit announced its [so called] "*stricter liability standard*" for supervisory liability for § 1983 claims. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir.2010), cert. denied, — U.S. —, 131 S.Ct. 2150, 179 L.Ed.2d 935 (2011); *Keith v. Koerner*, 707 F.3d 1185 (10th Cir. 2013).   Under *Dodds*, a supervisor can (now) only be held liable if a Plaintiff can prove (1) the supervisor promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the **state of mind** required to establish the alleged constitutional deprivation. *Dodds* at 1200; *Keith v. Koerner*, 707 F.3d at 1188.  It is the "**culpable state of mind**" requirement that the Circuit Courts have struggled with, and which is the key to understanding *Iqbal* in resolving this case.[5]

OIDS does not tell contracted attorneys what legal advice to give to clients.  OIDS requires each contracted attorney perform up to the standards required for any Oklahoma licensed attorney.  The Plaintiffs do not allege any of these OIDS Defendants participated in

---

[5] *Leavitt v. Correctional Medical Services, Inc.* 645 F.3d 484 (1st Cir. 2011); *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013); *Bistrian v. Levi*, 696 F.3d 352, 366 n.5 (3d Cir. 2012); *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013); *Heyerman v. County of Calhoun*, 680 F.3d 643, 647 (6th Cir. 2012); *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) *cert.* denied, 133 S.Ct. 2796 (2013); *Parrishe v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010); *Lacy v. Maricopa County*, 693 F.3d 986, 916 (9th Cir. 2012); *McCreary v. Parker*, 456 Fed.Appx. 790 (11th Cir. 2012).

any way with these Plaintiffs criminal cases. Any policy complaints are not OIDS policy, but Oklahoma law. Plaintiffs make no allegations as to any of these OIDS Defendants state of mind. In short, Plaintiffs provide nothing that would suggest supervisory liability would apply.

**PROPOSITION IV:      PLAINTIFFS FAIL TO MEET THE STANDARDS FOR INJUNCTIVE RELIEF**

Plaintiffs' Petition prays for "permanent injunctive relief." Injunctions are defined by Oklahoma law as "a command to refrain from a particular act." 12 O.S. 1381. As with anything, Plaintiffs must show their claims are eligible for such relief. As it applies to these OIDS Defendants, Plaintiffs do not describe what such an injunction would be. It is possible Plaintiffs do not intend to apply the request for injunctive relief to these Defendants.

Oklahoma law has long held that an injunction will not lie when an adequate remedy at law already exists. See, *Powell Briscoe, Inc. v. Peters*, 1954 OK 107, 269 P.2d 787. So, if Plaintiffs have an adequate remedy at law, then they are not entitled to any injunctive relief. These Plaintiffs have adequate remedies at law.

Plaintiffs could have appealed the criminal conviction. OIDS contracted attorneys would have been available for a direct appeal. 22 O.S. 1356. Plaintiffs' Petition does not allege Plaintiff attempted such an appeal.

Plaintiffs could have applied for post-conviction relief. While OIDS contracted attorneys are not available for such work, Oklahoma law allows indigent people to apply for appointed representation. 22 O.S. 1082. Plaintiffs' Petition does not mention any facts which would suggest that any Plaintiff attempted to seek any post-conviction relief.

Plaintiffs decided to ignore these available remedies at their own peril.  Both routes provided court appointed counsel.  Both routes could have sought to address the allegedly excessive fines and fees.  Both routes could have raised a conflict of interest argument and alleged Constitutional violations.  Simply failing to take advantage of an available remedy does not entitle them to any relief from this Court.

**PROPOSITION V:          PLAINTIFFS FAIL TO ALLEGE THEIR CONVICTIONS HAVE BEEN OVERTURNED OR OTHERWISE NEGATED.**

Plaintiff asserts that 42 U.S.C. 1983 applies to the claims in this case.  The claims in this case all relate to Plaintiffs various criminal convictions.  Plaintiffs seek as relief in this case "vacatur of all outstanding fines, fees and costs." Such a ruling would negate the convictions of Plaintiffs.  In other words, Plaintiffs are making a collateral attack upon their convictions.   Collateral attacks of criminal convictions are only allowed under certain circumstances, none of which apply here.

In H*eck v. Humphrey*, 512 U.S. 477, an inmate sued various law enforcement defendants alleging his conviction violated his constitutional rights.   The United States Supreme Court held that in order to succeed, he had to show his conviction:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

16

*Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 2367, 129 L. Ed. 2d 383 (1994). *Heck* has been examined and explained in many subsequent cases, but the fundamental holding remains true. Absent invalidation of the underlying convictions, Plaintiffs claims are not cognizable.

*Heck* was cited approvingly by the Oklahoma Court of Civil Appeals in a case similar to the present one. In *Taylor v. City of Bixby*, 2018 OK CIV APP 18, 415 P.3d 537, the plaintiff sued for various Oklahoma and Federal Constitutional violations, one of which was a violation of his Sixth Amendment rights. Taylor claimed, in part, that a fine he was assessed violated his Constitutional rights. As to the fine, the Court of Civil Appeals stated:

> Taylor paid the $300 fine imposed after his second conviction and does not challenge the imposition of that fine in this case. Consequently, Taylor "has no cause of action under § 1983 unless and until [his] ... sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489, 114 S.Ct. 2364. And, Taylor has cited no authority to suggest that the result would be different with respect to his Article 2 § 9 claim.

*Id.* at ¶ 29, 546. Just as the plaintiff in *Taylor* sought to eliminate his criminal fines, these Plaintiffs seek the same. Absent a finding that these convictions have been invalidated, Plaintiffs claims are not cognizable. Plaintiffs' Petition makes no allegations that the underlying convictions have been invalidated and dismissal is proper.

**PROPOSITION VI:       OIDS IS NOT STATE ACTOR FOR 1983 CLAIMS**

42 U.S.C. § 1983 requires a party act under the color of state law. The United States Supreme Court has held that public defenders, when performing a lawyer's traditional functions as counsel to a defendant, are not acting under color of state law. See *Polk Cty. v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981).

The allegations in this case center around either a failure to represent a client at a Rule 8 post- conviction hearing or failing to properly advise Plaintiffs about such matters pre-conviction. Attending hearings and advising clients are two of the most basic traditional lawyer roles.  Not to belabor the point, but these named OIDS Defendants never actually provided any traditional lawyer work to these Plaintiffs nor had any attorney client relationship.  However, the specific acts alleged fit under the definition of traditional lawyer roles, for which these Defendants would be immune from suit because they are not "state actors."

## CONCLUSION

Plaintiffs have failed to state a claim for which relief can be granted.  The Plaintiffs knowingly and voluntarily entered into plea bargain agreements which included fines and fees.  These convictions remain valid.  OIDS never had an attorney client relationship with these Plaintiffs.  OIDS complied with all of the limited powers and duties afforded to it by Oklahoma law.  In short, Plaintiffs claims against these OIDS Defendants are not legally cognizable and should be dismissed.

Respectfully submitted,

_____

**Jon Williford, OBA 1598**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:    405.521.3921
Facsimile:      405.521.4518
Email:  jon.williford@oag.ok.gov
*Attorney for Defendant OIDS*

18

## CERTIFICATE OF MAILING

I hereby certify that on this 10th day of May 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.

J. Spencer Bryan                           Bryan & Terrill Law, PLLC
3015 E. Skelly Dr., Ste 400                9 East 4th Street
Tulsa, OK 74105                            Tulsa, OK 74103

Stefanie Lawson
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105

                                    /s/ Jon Williford