**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AMANDA FEENSTRA, SHARONICA CARTER, and LONNIE FEENSTRA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 19-CV-00234-GKF-FHM |
| JARED SIGLER, Special Judge of the District Court of Washington County, in his official capacity; JOHN GERKIN, Special Judge of the District Court of Washington County, in his official capacity; CURTIS DELAPP, former Judge of the District Court of Washington County, in his official capacity; OKLAHOMA INDIGENT DEFENSE SYSTEM, an Oklahoma State Agency; STATE OF OKLAHOMA ex rel. OKLAHOMA INDIGENT DEFENSE SYSTEM; CRAIG SUTTER, Executive Director of the Oklahoma Indigent Defense System; and OKLAHOMA INDIGENT DEFENSE SYSTEM BOARD OF DIRECTORS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss [Doc. 10] of defendants Jared

Sigler, Special Judge of the District Court of Washington County, in his official capacity; John

Gerkin, Special Judge of the District Court of Washington County, in his official capacity; and

Curtis DeLapp, former Judge of the District Court of Washington County, in his official capacity.

The court conducted a hearing on the motion on October 10, 2019. For the reasons discussed

below, the motion is granted in part and denied in part.

# I.    Background and Procedural History

Since at least Magna Carta in 1215, Anglo-American law has reflected a deeply rooted concern regarding the imposition of penal fines. *See generally Timbs v. Indiana*, — U.S. —, 139 S. Ct. 682 (2019) (tracing the history of the prohibition against excessive fines). Although painted against the backdrop of that jurisprudence, this motion requires the court to contend only with a single, discrete issue: the procedures employed by three judges of Washington County, Oklahoma with regard to fines, fees, and costs arising from criminal charges filed against the three individual plaintiffs—Amanda Feenstra, Sharonica Carter, and Lonnie Feenstra.

Plaintiffs generally allege that defendants Jared Sigler, Special Judge of the District Court of Washington County, in his official capacity; John Gerkin, Special Judge of the District Court of Washington County, in his official capacity; Curtis DeLapp, former Judge of the District Court of Washington County, in his official capacity (collectively, "Judicial Defendants") "have systemically failed to conduct an inquiry into criminal defendants' ability to pay *either* before imposing those fines and fees at sentencing, or before sanctioning indigent defendants for non-payment—including by incarceration." [Doc. 3-1, ¶ 10]. Plaintiffs initiated this case in the District Court in and for Washington County, asserting seven (7) separate claims: (1) failure to provide notice and opportunity to be heard prior to arrest and detention in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 against Sigler; (2) punishment solely on the basis of poverty in violation of the Due Process and Equal Protection Clauses of the U.S. Constitution and 42 U.S.C. § 1983 against Sigler and DeLapp; (3) denial of the right to counsel in violation of the assistance of counsel clause of the Sixth Amendment to the U.S. Constitution, the Equal Protection and Due Process Clauses of the Fourteenth Amendment in the U.S. Constitution and 42 U.S.C. § 1983 against the four Oklahoma Indigent Defense System defendants; (4) denial

of due process in violation of article 2, § 7 of the Oklahoma Constitution against Sigler and DeLapp; (5) failure to provide relief due to poverty and disability in violation of OKLA. STAT., tit. 22, ch. 18, Rule 8.5 against Sigler and DeLapp; (6) failure to conduct ability to pay hearings prior to incarceration for nonpayment in violation of OKLA. STAT., tit. 22, ch. 18, Rule 8.4 against Sigler and DeLapp; and (7) failure to conduct ability to pay hearings at judgment and sentencing in violation of OKLA. STAT., tit. 22, ch. 18, Rule 8.1 against DeLapp, Sigler, and defendant John Gerkin, Special Judge of the District Court of Washington County, in his official capacity. Defendants the State of Oklahoma *ex rel.* Oklahoma Indigent Defense System; the State of Oklahoma Indigent Defense System; Craig Sutter, Executive Director of the Oklahoma Indigent Defense System; and the State of Oklahoma Indigent Defense System Board of Directors (collectively, "OIDS Defendants") removed the case to this court on May 3, 2019 pursuant to the court's federal question jurisdiction, 28 U.S.C. § 1331.  [Doc. 3].  The Judicial Defendants then filed their motion to dismiss, seeking dismissal of all claims asserted against them.[1]  [Doc. 10].  The motion is ripe for the court's decision.

## II.    Allegations of the Complaint[2]

The Complaint's factual allegations arise from three separate, but related, courses of conduct:  (1) the imposition of fines, fees, and costs at sentencing, (2) appearances at the "cost docket," and (3) incarceration for failure to pay outstanding fines, fees, and costs.

_____

[1] The OIDS Defendants also filed a motion to dismiss as to the claim asserted against those defendants.  [Doc. 11].  The court will determine the OIDS defendants' motion to dismiss under separate order.

[2] As previously stated, plaintiffs originally filed a Petition in the District Court in and for Washington County, and the OIDS Defendants removed the matter to this court.  For consistency with the Federal Rules of Civil Procedure, the court refers to the Petition filed in this case as the Complaint.

*First*, with respect to sentencing, plaintiffs allege that, in Washington County, no ability-to-pay inquiry is made as to a criminal defendant's ability to pay fines, fees, and costs at the time of sentencing as required by Oklahoma Rule of Criminal Procedure Rule 8.1. [Doc. 3-1, ¶ 36]. Instead, plaintiffs allege that, *after sentencing*, while setting up a payment plan as to those fines and fees *already imposed*, Washington County criminal defendants are required to complete a "Rule 8" Form. [*Id.*]; *see also* [*id.* ¶ 14]. The form contains no questions about the defendants' income, expenses, or ability to pay. [*Id.* ¶ 14].

*Second*, after sentencing, criminal defendants in Washington County are ordered to appear at the "cost docket," in which a judge is supposed to oversee the payment of fines, fees, and costs in a manner consistent with the federal and Oklahoma Constitutions, as well as the governing rules of the court. [*Id.* ¶ 15]. Special Judge Sigler has overseen the cost docket in Washington County for several years, and currently presides over the docket. [*Id.* ¶¶ 15, 41]. At the cost docket, debtors do not receive any "meaningful inquiry" into their ability to pay. [*Id.* ¶ 41]. Instead, requests to reduce monthly payments are often denied, and Special Judge Sigler allegedly instructs debtors to make same-day payments or be sent to jail. [*Id.* ¶ 15].

*Third*, at the "cost docket," Special Judge Sigler allegedly uses a form document, entitled "Order Remanding Defendant to Jail for Failure to Pay Fines and Costs," that contains a predetermined conclusion that "the Defendant has willfully refused or neglected to pay the amounts . . . previously ordered." [*Id.* ¶ 41]. Moreover, allegedly, the space for "findings of fact[] and conclusions of law" is typically left blank "(or contains, at most, a note about the date of a missed or upcoming court appearance or the total amount owed)." [*Id.*].

The Complaint also includes specific factual allegations as to each plaintiff, which are set forth below:

<u>Allegations as to Amanda Feenstra</u>

Amanda Feenstra is a thirty-three-year-old resident of Claremore, Oklahoma. [*Id.* ¶ 20]. In April 2015, Feenstra pleaded guilty to false personation, forgery, identity theft, and conspiracy charges in Washington County. Former Judge DeLapp ordered Feenstra to pay over $3,000 in fines, fees, and costs, without conducting an inquiry into her ability to pay. [*Id.*]. At the time, Feenstra was unemployed and suffering from a drug addiction. At sentencing, Feenstra advised former Judge DeLapp that she would be unable to make the payments, either immediately or upon her release from jail. [*Id.* ¶ 38]. Former Judge DeLapp did not suspend or vacate her payments, but informed her that she could work one month per day at the courthouse to satisfy her obligations. [*Id.*].

On February 2, 2017, less than two weeks after her release from prison, Special Judge Sigler ordered Feenstra to pay $50 per month towards her fines, fees, and costs. Special Judge Sigler allegedly never asked Feenstra about her salary, bills, and expenses, and refused to honor former Judge DeLapp's statement at sentencing that she could work one month per day at the courthouse to satisfy her obligations. [*Id.* ¶ 43]. Feenstra informed Special Judge Sigler of her indigency and inability to make her payments. [*Id.*].

On May 7, 2018, Special Sigler issued a warrant for Feenstra's arrest based on Feenstra's failure to make monthly payments. Feenstra alleges that, prior to the issuance of the warrant, Special Judge Sigler failed to provide Feenstra "an opportunity to be heard as to the refusal or neglect to pay the installment when due" as required by OKLA. STAT. tit. 22, ch. 18, R. 8.4, or inquire into her ability to pay. [*Id.* ¶ 47]. In the second week of May 2018, during a call with the Washington County Court Clerk to confirm her next cost docket appearance, Feenstra was informed by the Court Clerk that she had mixed up her dates, missed the cost docket, and was

therefore subject to an active warrant for her arrest. [*Id.* ¶ 48]. Feenstra was told that if she came to the courthouse to reschedule her appearance, the warrant would be recalled. Feenstra immediately went to the courthouse and met with Special Judge Sigler in his chambers. Sigler said that she owed an additional $40 and refused to reschedule the appearance until after the following day's arraignment docket. [*Id.*].

While Feenstra was meeting with Special Judge Sigler, the Court Clerk's office notified police that Feenstra was at the courthouse and she was arrested. Feenstra did not receive the opportunity to be heard prior to her incarceration pursuant to Rule 8.4, and spent the night in jail. [*Id.*]. The following day, Special Judge Sigler informed Feenstra that she could either pay $330 immediately or remain in jail. Plaintiff Lonnie Feenstra was forced to borrow $330 in order to make the payment. [*Id.*].

Feenstra currently owes almost $11,800.00 in court-ordered fines, fees, and costs, more than double the fines and fees she was assessed in 2015.[3] [*Id.* ¶ 23]. Feenstra alleges that she is indigent and unable to make her payments. [*Id.* ¶ 21].

### Allegations as to Sharonica Carter

Sharonica Carter is a twenty-three-year-old resident of Tulsa, Oklahoma. [*Id.* ¶ 24]. In September of 2011, when she was sixteen, Carter pleaded no contest to a youthful offender charge in Washington County and was sentenced by former Judge DeLapp to pay over $2,700 in fines, fees, and costs. [*Id.*]. Carter spent the next two years in a juvenile-correctional facility and was released in October 2013. Although Carter was unemployed, former Judge DeLapp ordered Carter

---

[3] The Complaint includes inconsistent allegations as to the amount of fines, fees, and costs assessed against Feenstra in 2015. *Compare* [Doc. 3-1, ¶ 20 (over $3,000)] *with* [Doc. 3-1, ¶ 23 (approximately $4,900)].

to pay $75 per month toward her fines, fees, and costs.  Neither at sentencing nor at her release did DeLapp inquire into Carter's ability to pay.  [*Id.*].

In January 2014, former Judge DeLapp ordered Carter to be incarcerated for failure to make her monthly court-ordered payment of $75.  [*Id.* ¶ 50].  At that time, Carter was unemployed.  The next month, in February 2014, Carter missed her appearance before former Judge DeLapp "because she had no money to make her monthly payment and was afraid she would be sent to jail again."  [*Id.*].  former Judge DeLapp issued an order for her arrest without conducting an ability-to-pay inquiry.  [*Id.*].

In September 2018, Carter asked Special Judge Sigler to defer or reduce her monthly payment of $75 due to her inability to pay.  [*Id.* ¶ 44].  Special Judge Sigler allegedly refused and told Carter that she had to "find" $50 before 3:00 p.m. that day or be incarcerated.  [*Id.*].  Carter borrowed the money in order to avoid jail.  [*Id.*].  On another occasion, Carter told the Court Clerk that she could afford to pay $25 per month, but her monthly payment of $75 was not reduced.  [*Id.*].

Carter alleges that she currently owes $5,000, almost double the fines and fees originally assessed against her.  [*Id.* ¶ 26].  Carter alleges that she is indigent, currently unemployed, and has had trouble finding steady employment due to her criminal history.  [*Id.* ¶¶ 25-26].

Allegations as to Lonnie Feenstra

Lonnie Feenstra is a thirty-six-year old resident of Claremore, Oklahoma and the husband of plaintiff Amanda Feenstra.  [*Id.* ¶ 27].  From February to April 2016, Feenstra spent 61 days in jail on a felony charge.  [*Id.* ¶ 40].  Feenstra alleges that his OIDS attorney advised him that the felony charge would be dismissed if he agreed to pay $200 in transportation costs and $150 fine.  However, upon dismissal of the felony charge, retired Special Judge Gerkin transferred over

$2,500 in incarceration and court fees from the dismissed felony charge to an "unrelated misdemeanor traffic offense to which [Feenstra] had pleaded guilty before Defendant Gerkin in April 2016." [*Id.*]. Retired Special Judge Gerkin allegedly did not conduct an inquiry into Feenstra's ability to pay. [*Id.*].

In May 2018, Special Judge Sigler ordered Feenstra to pay $75 per month toward the fines, fees, and costs. [*Id.* ¶ 45]. Feenstra informed Sigler that he could not afford to make the payments due to his physical disability, but Sigler did not reduce or suspend the monthly payments. [*Id.*]. However, in November 2018, Special Judge Sigler lowered the minimum monthly payments to $50 per month. [*Id.*]. Nevertheless, Feenstra maintains that he is unable to afford the court-ordered payments. [*Id.*]. Feenstra alleges that he has physical and psychological disabilities which prevent him from working, and is under the care of multiple physicians and needs several daily medications. [*Id.* ¶ 28]. Feenstra asserts that he currently owes more than $2,500 in outstanding fines and fees. [*Id.*].

## III.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

**IV.    Analysis**

The Judicial Defendants seek dismissal of all of plaintiffs' claims against them on five separate grounds:  (1) the claims are time-barred by the statute of limitations; (2) plaintiffs lack standing to bring the claims; (3) declaratory relief is unavailable; (4) plaintiffs are not entitled to the injunction they seek; and (5) the state-law tort claims are barred by the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 *et seq.*[4]  The court separately considers each ground.

*A.    Statute of Limitations*

The Judicial Defendants argue that plaintiffs' claims are barred by the statute of limitations. "Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"  *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).[5]

The Judicial Defendants contend, and plaintiffs do not dispute, that a two-year statute of limitations applies.  *See* [Doc. 10, p. 13; Doc. 24, pp. 25-29]; *see also Prince v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).  Plaintiffs filed this case on March 21, 2019 and, therefore, the

---

[4] In their reply brief, for the first time, the Judicial Defendants argued that the Rules of the Oklahoma Court of Criminal Appeals do not provide a private cause of action.  [Doc. 29]. However, the court struck this argument, and therefore does not consider it to resolve the Judicial Defendants' motion to dismiss.  *See* [Doc. 40].

[5] "Unpublished decisions are not precedential, but may be cited for their persuasive value."  10TH CIR. R. 32.1(A).

Judicial Defendants contend that, "any actions, which [plaintiffs] believe entitle them to relief that occurred prior to March 21, 2017 are time barred by the statute of limitations." [Doc. 10, p. 13].[6]

The court first considers plaintiffs' § 1983 claims. Under the federal rule, claims generally accrue "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). In a civil rights action, the relevant "injury" is the alleged constitutional violation. *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790 (10th Cir. 2019). "[T]he standard for determining whether a federal claim has accrued is objective." *Alexander,* 382 F.3d at 1219 n. 6.

Plaintiffs' first § 1983 claim—asserted solely by A. Feenstra against Special Judge Sigler—is timely because the Complaint asserts that Sigler issued an arrest warrant for A. Feenstra for failure to pay fines and fees on May 2018, a date within the limitations period. For the same reason, to the extent plaintiffs' second § 1983 claim is asserted by A. Feenstra against Special Judge Sigler, that claim is also timely. However, the second § 1983 claim is also asserted by Carter against former Judge DeLapp. The Complaint alleges that former Judge DeLapp ordered Carter's incarceration for failure to pay fines, fees, and costs without providing an ability-to-pay inquiry in January and February of 2014. [Doc. 3-1, ¶ 50]. Thus, the relevant "injury"—the alleged constitutional violation—occurred outside of the statute of limitations period. That Carter may not have understood the full extent of her injuries is not dispositive. *See generally Young v. Davis*,

---

[6] It is not clear to the court whether defendants challenge all of plaintiffs' claims as being barred by the statute of limitations, or only those claims premised on the failure to conduct an ability-to-pay inquiry at the time of sentencing. Regardless, each plaintiff alleges that he or she appeared at the "cost docket" in separate instances in 2018 and therefore count five—failure to provide relief due to poverty and disability in violation of OKLA. STAT., tit. 22, ch. 18, Rule 8.5—is not barred by the statute of limitations.

554 F.3d 1254, 1258 (10th Cir. 2009); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (claims accrued when amendment to pension requiring retirement after five years occurred, rather than when consequence manifested itself in required retirement); *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991); *Schrader v. Richardson*, 461 F. App'x 657, 660 (10th Cir. 2012) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).

Plaintiffs argue that, to the extent the federal claims are deemed to have accrued outside of the statute of limitations period, the court should deem the statute tolled based on defendants alleged false, fraudulent, or misleading conduct, and due to the alleged "extraordinary circumstances."[7] Plaintiffs assert that "it's not just the fact that the plaintiffs weren't advised [of their right to an ability-to-pay inquiry]; it's that the system that was applied to them give [*sic*] them reason to believe they don't have a right to a hearing." [Doc. 46, p. 40:5-8].

Oklahoma state-law tolling principles apply. *See Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013) (internal citation and quotation omitted) ("A federal court sitting in diversity applies the substantive law of the state where it is located, including the state's statutes of limitations. We must also apply the state's tolling rules, as they are an integral part of the several policies served by the statute of limitations."); *Alexander*, 382 F.3d at 1217 (internal citation and quotations omitted) ("Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983—a void which is commonplace in federal statutory law. As such, state law governs the application of tolling in a civil rights action.").

---

[7] The Tenth Circuit has recognized that Oklahoma permits tolling of the statute of limitations when a legal disability exists. *Alexander*, 382 F.3d at 1217. Plaintiffs do not argue that this tolling principle applies.

As recognized by the Tenth Circuit, under Oklahoma law, "if defendants engage in 'false, fraudulent or misleading conduct' calculated to lull plaintiffs into sitting on their rights, the limitations period may not be triggered." *Alexander*, 382 F.3d at 1217 (quoting *Jarvis v. City of Stillwater*, 732 P.2d 470, 473 (Okla. 1987)). The Judicial Defendants do not address tolling in the reply brief, but, at the hearing on the motion to dismiss, counsel for the Judicial Defendants stated that tolling should not apply because, at the time of sentencing, plaintiffs should have known if they could pay the fines or fees or not and are "noticed that they're going to come back to talk about their fines or they contact someone to let them know they cannot make their fines." [Doc. 46, pp. 8:1 to 9:12]. The Judicial Defendants argue that the notice to plaintiffs is "pretty clear from the docket sheets and from their plea agreement." [*Id.* at p. 9:9-10]. However, this case is before the court at the motion to dismiss stage, and neither the complete docket sheets nor plaintiffs' plea agreements are before the court.

Further, taking the Complaint's allegations as true and viewing them in the light most favorable to plaintiffs, the Complaint includes sufficient facts that defendants engaged in false, fraudulent, or misleading conduct calculated to lull plaintiffs into sitting on their rights and therefore a potential basis for tolling the statute of limitations period. Plaintiffs allege that were not advised at "cost docket" appearances of their right to an ability-to-pay inquiry, nor were they represented by counsel. [Doc. 3-1, ¶ 41]. The Complaint also includes allegations that "[r]equests to lower monthly payments are often denied," and that Special Judge Sigler routinely "instructs criminal defendants in his court to make a same-day payment or be sent to jail." [*Id.* ¶ 15]; *see also* [*Id.* ¶¶ 42, 44 (alleging Sigler refused to honor Carter's request for a deferral or reduction of payment and telling Carter she "had to 'find' $50 before 3 p.m. *that day* or face jail")]. Taken as true, the court may reasonably infer from these allegations, not only that plaintiffs were not

informed of their right to an ability-to-pay inquiry, but also that defendants' conduct led plaintiffs to effectively believe that they had no right to such an inquiry. Thus, the Complaint plausibly asserts a potential basis for tolling the statute of limitations for Carter's § 1983 claim, subject to later proof.

The court next considers the state-law claims. Like the federal § 1983 claims, counts four and six relate to the issuance of arrest warrants at "cost docket" hearings by Special Judge Sigler and former Judge DeLapp without providing plaintiffs an opportunity to be heard as to their ability to pay.[8] Thus, for the same reasons discussed above, the Complaint plausibly asserts a potential basis for tolling.

Count seven is premised on plaintiffs' initial sentencing, rather than "cost docket" appearances. With respect to sentencing, the Complaint includes allegations that plaintiffs entered into guilty pleas and were sentenced as follows: Carter in September of 2011, A. Feenstra in April 2015, and L. Feenstra in April of 2016. [Doc. 3-1, ¶¶ 20, 24, and 27]. Thus, the Complaint alleges that plaintiffs were each sentenced outside of the limitations period. However, plaintiffs also allege that, at the time of sentencing, plaintiffs were not advised of their right to an ability-to-pay inquiry [*Id.* ¶ 36], and that "rather than inquire as to criminal defendants' indigence, the Judicial Defendants routinely tell defendants that they will be sent to jail if they fail to make the ordered payments," [*Id.* ¶ 14]. Further, plaintiffs allege that, immediately after sentencing, criminal defendants are required to set up a "payment plan" for the court-imposed fines and fees. [*Id.* ¶ 36]. Taking these allegations as true, the court may reasonably infer that the Judicial Defendants acted so as to create the impression on plaintiffs that no right to an ability-to-pay inquiry existed and

---

[8] As previously stated, count five includes allegations that each plaintiff appeared at the "cost docket" but were not provided an ability-to-pay inquiry within the statute of limitations period.

therefore the Complaint plausibly states a basis for tolling the statute of limitations. Accordingly, the court denies the Judicial Defendants' motion to dismiss based on the statute of limitations.

### B. Standing

The Judicial Defendants next contend that plaintiffs lack standing. The parties agree that constitutional standing requires three elements: (1) injury in fact, (2) causation, and (3) redressability. *See Habecker v Town of Estes Park*, 518 F.3d 1217, 1224 (10th Cir. 2008). "Standing is determined as of the time the action is brought." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). "The party invoking federal jurisdiction bears the burden of establishing the[] elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

*First, injury-in-fact.* The U.S. Supreme Court defines an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (internal citations and quotations omitted) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990)). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Nova Health Sys.*, 416 F.3d at 1155 (quoting *Whitmore,* 495 U.S. at 158).

Relying on the U.S. Supreme Court's decision in *O'Shea v. Littleton,* 414 U.S. 488 (1974), the Judicial Defendants argue plaintiffs' allegations constitute mere speculation of a potential injury. In *O'Shea*, plaintiffs brought a civil rights action against various state court judges in Alexander County, Illinois, among others, alleging that they "ha[d] intentionally engaged in, and [were] continuing to engage in, various patterns and practices of conduct in the administration of the criminal justice system in Alexander County that deprive[d]" plaintiffs of various constitutional and statutory rights. *Id.* at 490. Plaintiffs alleged three patterns of unconstitutional conduct against the county, magistrate, and associate county judge defendants: (1) setting bond in

criminal cases according to an "unofficial bond schedule" without regard to the criminal defendants' individual circumstances; (2) setting higher sentences and imposing harsher conditions on black defendants than white defendants; and (3) requiring black defendants to pay for a jury trial when charged with violations of city ordinances that carry fines and possible jail time if the fine is not paid. *Id.* at 492.

With respect to plaintiffs' standing, the Supreme Court noted that, although some of the named plaintiffs had previously appeared before the judicial defendants, at the time the complaint was filed, none of the named plaintiffs were serving an allegedly illegal sentence or awaiting trial before the judicial defendants. *Id.* at 495-96. Further, while recognizing that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," the Court reasoned that, under the facts of that case, the prospect of future injury "rests on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." *Id.* at 496. The Court concluded that whether plaintiffs would again be brought before the judicial defendants required the court to speculate and therefore, under the circumstances, the threatened injury was "too remote" to satisfy the injury-in-fact requirement. *Id.* at 498.

*O'Shea* dictates that this court dismiss count seven, plaintiffs' claim arising from the Judicial Defendants' alleged failure to inquire as to ability to pay at judgment and sentencing. Plaintiffs do not seek damages for past wrongs. Rather, plaintiffs seek only prospective, equitable relief. However, as in *O'Shea*, the prospective future injury—the denial of an ability-to-pay inquiry at the time of judgment and sentencing—requires the court to speculate as to the likelihood that plaintiffs will again be arrested for and charged with a violation of criminal law, and then sentenced again before the Judicial Defendants. *O'Shea,* 414 U.S. at 497 ("[I]t seems to us that

attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture."). The court may not assume that plaintiffs will not conduct their activities within the law. *Id.*

However, as to plaintiffs' remaining claims (counts one through six), *O'Shea* is factually distinguishable and therefore unpersuasive. Unlike in *O'Shea*, plaintiffs allege that they each owe outstanding fines and fees, but have an inability to pay. *Cf. O'Shea*, 414 U.S. at 496; [Doc. 3-1, ¶¶ 49-51]. Further, plaintiffs allege that, in separate "cost docket" appearances, each plaintiff has informed the Washington County court of their respective inability to pay, but that the court failed to provide meaningful relief. [*Id.* ¶¶ 42-45]. Rather, the court threatened plaintiffs with imprisonment. [*Id.* ¶ 15]. Although not determinative, these allegations of past conduct inform the immediacy of plaintiffs' alleged potential injury. Under the circumstances and viewing the allegations of the Complaint in the light most favorable to plaintiffs, plaintiffs' allegations of potential future injury are "certainly impending" and therefore sufficiently allege a concrete and particularized injury-in-fact. *See Nova Health Sys.*, 416 F.3d at 1155; *see also Ray v. Judicial Corrs. Servs.*, No. 12-CV-02819-RDP, 2013 WL 5428360, at *13 (N.D. Ala. Sept. 26, 2013) (concluding plaintiffs had constitutional standing to challenge municipal methods of assessing fines when all defendants were on probation and still owed fines and fees).

*Second, causation.* To satisfy the causation criteria for Article III standing, "a plaintiff must show that his or her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Nova Health Sys.*, 416 F.3d at 1156 (quoting *Lujan*, 504 U.S. at 560). The Tenth Circuit has noted that "an official who is charged with enforcing a state statute on behalf of the entire state is a proper defendant, so long as the plaintiff shows an appreciable threat of injury flowing directly from the

statute." *Id.* at 1158. However, "[t]he plaintiff's burden of demonstrating causation is not satisfied when '[s]peculative inferences are necessary to connect [its] injury to the challenged actions.'" *Id.* at 1157 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 25, 45-46 (1976)).

The Judicial Defendants argue that, pursuant to a recent decision of the Oklahoma Court of Criminal Appeals in *Winbush v. State*, 433 P.3d 1275 (Okla. Crim. App. 2018), plaintiffs bear the burden to show inability to pay and their own failure to do so does not confer them standing. [Doc. 10, p. 19].

The Judicial Defendants read *Winbush* too broadly. In *Winbush*, the Oklahoma Court of Criminal Appeals held that "once the State proves that the probationer has failed to make restitution payments, the burden shifts to the probationer to prove that his failure to pay was not willful or that he has made sufficient bona fide efforts to pay." *Winbush*, 433 P.3d at 1278 (citing *McCaskey v. Oklahoma*, 781 P.2d 836, 837 (Okla. Crim. App. 1989)). In reaching its conclusion, the court interpreted the U.S. Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660 (1983), to require a sentencing court to consider the explanatory reasons offered by a defendant for the failure to pay. *Winbush,* 433 P.3d at 1279 (citing *Bearden*, 461 U.S. at 672); *see also Winbush*, 433 P.3d at 1280 (emphasis added) ("[I]n accord with *Bearden*, if the probationer presents evidence to show non-payment was not willful, the hearing court *must consider such evidence and make a finding of fact* regarding the probationer's ability to pay.").

Here, plaintiffs allege that they each informed the Judicial Defendants of their inability to pay the imposed fines, fees, and costs at various "cost docket" appearances, but the defendants failed to "meaningfully inquire" or permit plaintiffs to present evidence of their inability to pay. [Doc. 3-1, ¶¶ 41, 43-45]. Instead, Special Judge Sigler allegedly utilized a form that included a predetermined conclusion that "the Defendant has willfully refused or neglected to pay the

amounts . . . previously ordered," [*Id.* ¶ 41], and routinely failed to complete the space for "findings of fact and conclusions of law" or included only a cursory note regarding scheduling. [*Id.*]. Because plaintiffs allege that they raised their inability to pay but that the Judicial Defendants failed to meaningfully inquire or permit plaintiffs to present evidence, plaintiffs establish the causation criteria for standing as to their remaining claims.[9]

*Third, redressability.* The Judicial Defendants contend plaintiffs fail to satisfy this element because "[i]t will not have any effect on Plaintiffs' underlying criminal cases—their cases will remain open pending satisfaction of costs, fines and fees, unless those obligations are later waived by the court following the proper procedure, which Plaintiffs have not alleged they have participated in properly." [Doc. 10, p. 20]. The Judicial Defendants' argument presumes that plaintiffs have not sufficiently alleged participation in the Oklahoma procedural process, but, as discussed above, plaintiffs have sufficiently alleged that they raised their inability to pay at cost docket appearances, but were not provided a meaningful inquiry or the opportunity to present evidence. Further, a judgment in this matter would affect plaintiffs' obligations to the extent it would require Washington County to make findings of fact and conclusions of law with respect to

---

[9] The Judicial Defendants attach copies of the dockets in plaintiffs' state-court criminal cases and various "Court Minutes" filed therein to demonstrate that plaintiffs' payments have, in fact, been reduced. *See* [Doc. 10-1, Doc. 10-2, Doc. 10-3]. The court declines to consider the attached materials for that purpose at the motion to dismiss stage. *See Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016) (quoting *Lee v. City of L.A.,* 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'")). Further, plaintiffs allege that, despite reductions in payments, plaintiffs are still unable to satisfy their monthly obligations. *See* [Doc. 3-1, ¶ 45].

plaintiffs' ability to pay at "cost docket" appearance. Thus, the redressability element is satisfied and plaintiffs have standing with respect to the claims asserted in counts one through six.

### C.    Entitlement to a Declaratory Judgment

The Judicial Defendants next argue that plaintiffs are not entitled to a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Pursuant to that Act

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Thus, "a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). The determinative question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 1244 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).

To argue declaratory relief is unavailable, the Judicial Defendants first raise similar arguments as those raised with respect to standing. Because the court concludes that plaintiffs have standing to pursue the claims asserted in counts one through six, an actual controversy exists between the parties as to those claims. *See Surefoot LC*, 531 F.3d at 1240 (equating the "actual controversy" requirement in the FDJA with the "case or controversy" requirement for constitutional standing).[10]

---

[10] With respect to count seven—plaintiffs' claims arising from the failure to conduct an ability to pay inquiry at judgment and sentencing—no actual controversy exists between the parties for the

The Judicial Defendants also argue that a declaratory judgment is inappropriate because plaintiffs seek redress only for past conduct. The Tenth Circuit has recognized that an actual case or controversy exists "where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior." *Lippoldt v. Cole,* 468 F.3d 1204, 1217 (10th Cir. 2006) (citing *Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997)). As set forth above, in counts one through six, plaintiffs allege that they each owe outstanding fines and fees, which they are unable to pay, and, in the past, Special Judge Sigler and former Judge DeLapp either jailed plaintiffs or refused to modify their payment obligations without making the requisite findings of fact and conclusions of law as to plaintiffs' ability to pay. Thus, plaintiffs allege a prior constitutional violation which may affect their future rights, as well as Sigler's future behavior.

The court takes judicial notice, however, that defendant Judge DeLapp has left the Washington County bench. *Estate of Lockett ex rel. Lockett*, 841 F.3d at 1111. Thus, any judgment entered by this court cannot affect defendant DeLapp's future behavior in his official capacity as a Judge of the District Court of Washington County. During the hearing on the motion to dismiss, counsel for plaintiffs suggested that substitution pursuant to FED. R. CIV. P. 25 may be appropriate. However, plaintiffs have neither moved to substitute the current District Judge of Washington County as a party nor requested leave to amend the Complaint. Thus, the issue is not properly before the court. In the event plaintiffs seek to substitute, the court directs plaintiffs to brief the propriety of amendment or substitution, including whether the alleged violations were

---

same reasons discussed with respect to standing. Count seven is dismissed for this additional reason.

personal to former Judge DeLapp, pursuant to the schedule set forth below.[11]  *See Spomer v. Littleton*, 414 U.S. 514 (1974).  The court will hold in abeyance its ruling on the motion to dismiss plaintiffs' request for a declaratory judgment against former Judge DeLapp pending lapse of the deadline set forth herein for filing a motion to amend/substitute or resolution of the substitution/amendment issue.

Finally, the Judicial Defendants contend that a declaratory judgment is inappropriate because more suitable remedies exist—specifically, the state appellate process or appearance and presentation of evidence of inability to pay at the Washington County cost docket.  [Doc. 10, p. 23].  However, as discussed above, plaintiffs allege that they have appeared and asserted an inability to pay at the Washington County cost docket, but that Special Judge Sigler failed to provide a "meaningful review" or permit plaintiffs to present evidence.  *See* [Doc. 3-1, ¶¶ 41-47]. With respect to the appellate procedure, the Oklahoma Procedures Relating to District and Municipal Courts Relating to Imprisonment for Nonpayment of Fines and Costs is limited to an appeal from an order of detention, and does not include a district court's decision as to whether to reduce or stay monthly payments.[12]  *See* OKLA. STAT. tit. 22, ch. 18, R. 8.8.  Further, plaintiffs contend the procedure would require plaintiffs to submit to incarceration.

---

[11] The court also takes judicial notice of defendant Special Judge Gerkin's retirement.  However, plaintiffs assert only one claim against Gerkin, count seven, premised on failure to conduct an ability to pay hearing at judgment and sentencing.  *See* [Doc. 3-1].  As discussed herein, count seven is subject to dismissal for several reasons and therefore any amendment or substitution with respect to the claim would be futile.

[12] To the extent that the Judicial Defendants point to the criminal appellate procedure with respect to plaintiffs' sentences, including the imposed fines and fees, in counts one through six—plaintiff's only remaining claims—plaintiffs do not challenge the imposition of his or her respective judgment or sentence.  Rather, plaintiffs challenge the procedures employed after the fact with respect to an ability-to-pay inquiry.  *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 604-05 (6th Cir. 2007).

Regardless, whether an alternative remedy exists relates to the court's discretionary decision as to whether or not to hear a declaratory action rather than whether or not the controversy is justiciable. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (availability of alternative remedies is one of five factors for district court to consider). The Judicial Defendants do not explicitly ask the court to exercise its discretion to decline to hear the declaratory judgment claim, nor do the briefs include any argument directed to the other four *Mhoon* factors. Thus, the court cannot properly weigh the *Mhoon* factors, and the court therefore declines to exercise its discretion to refrain from hearing the declaratory action.

D.      *Injunction*

The Judicial Defendants next argue that plaintiffs are not entitled to the permanent injunction sought. The Judicial Defendants first argue that plaintiffs' request for relief with respect to the federal § 1983 claims is barred by the Federal Courts Improvement Act, pursuant to which "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996), *codified at* 42 U.S.C. § 1983. Plaintiffs do not allege that the Judicial Defendants violated a declaratory decree or that declaratory relief is unavailable. In fact, plaintiffs seek a declaratory judgment in this case. Thus, plaintiffs' request for injunctive relief with respect to the federal claims fails. *See Deters v. Ky. Bar Ass'n*, 130 F. Supp. 3d 1038, 1048 (E.D. Ky. 2015); *Patterson v. Rodgers,* 708 F. Supp. 2d 225, 236 n.14 (D. Conn. 2010).

With respect to plaintiffs' state law claims, to obtain a permanent injunction, plaintiffs must establish: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4)

the injunction, if issued, will not adversely affect the public interest." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (citing *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)). The Judicial Defendants challenge plaintiffs' ability to satisfy the second, third, and fourth elements.[13]

First, the Judicial Defendants argue that plaintiffs have not established the danger of irreparable harm absent issuance of an injunction and state, "[t]he proper mechanism for challenging or seeking waiver is to appear on the cost docket and present evidence of disability or poverty or to seek appellate review from the Court of Criminal Appeals if necessary." [Doc. 10, pp. 25-26]. However, the Judicial Defendants' argument fundamentally mischaracterizes the nature of plaintiffs' claims. Plaintiffs explicitly allege that they appeared at the cost docket and attempted to raise their inability to pay, but were denied meaningful review. [Doc. 3-1, ¶¶ 41, 43-45]. Instead, Special Judge Sigler threatened plaintiffs with imprisonment for failure to pay. [*Id.*]. Thus, plaintiffs allege that appearance at the Washington County cost docket is not a proper mechanism for relief. Nor would review of the Court of Criminal Appeals provide relief, as the review is limited to an order of detention, and would require plaintiffs to either submit to imprisonment or pay fines and fees as ordered by the court without any requested reductions. Taking plaintiffs' allegations as true, the court concludes that the Complaint includes sufficient allegations of a great and immediate threat of harm absent injunctive relief.

Second, the Judicial Defendants argue an injunction would substantially harm defendants and adversely affect the public interest due to disruption of ongoing state court proceedings.

---

[13] The Judicial Defendants also argue that "[p]laintiffs have failed to show a substantial likelihood of success on the merits." [Doc. 10, p. 26]. "Likelihood of success on the merits" is a requirement to obtain a preliminary injunction, not a permanent injunction. *See Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998). Plaintiffs seek only permanent injunctive relief and therefore the Judicial Defendants' argument is misplaced.

However, injunctive suits against a state official are permissible to provide prospective relief from an ongoing constitutional violation. *See Ex parte Young*, 209 U.S. 123 (1908). Plaintiffs have plausibly alleged an ongoing constitutional violation and therefore the Judicial Defendants' argument fails.

E.    *Oklahoma Governmental Tort Claims Act*

Finally, the Judicial Defendants argue that the Oklahoma Governmental Tort Claims Act precludes plaintiffs' state constitutional and statutory claims.[14] Through the Oklahoma Governmental Tort Claims Act, the State of Oklahoma has adopted the doctrine of sovereign immunity and therefore "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." OKLA. STAT. tit. 51, § 152.1(A). The OGTCA defines a "tort" as

> a legal wrong, independent of contract, involving violation of a duty imposed by general law, *statute, the Constitution of the State of Oklahoma*, or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.

OKLA. STAT. tit. 51, § 152(14) (emphasis added). Thus, as recognized by the Oklahoma Supreme Court, "'constitutional' torts are . . . clearly 'torts' governed by the GTCA." *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 239 (Okla. 2018).[15]

---

[14] At the hearing on the motion to dismiss, plaintiffs argued that the OGTCA is inapplicable to the federal § 1983 claims. However, the Judicial Defendants seek dismissal of only plaintiffs' state-law claims based on the OGTCA. Therefore, the argument that the OGTCA is inapplicable to the federal claims is misplaced. *See* [Doc. 10, p. 28 ("The above exceptions clearly exempt State Judges from liability on the state law claims in this case); *id.* at p. 12 ("[T]he Plaintiffs have not complied with state law to assert their state law claims."); Doc. 29, p. 5].

[15] Plaintiffs cite a number of cases for the proposition that plaintiffs have not brought tort claims. *See* [Doc. 24, pp. 24-25]. However, all of the cases were decided prior to the amendment of the

However, plaintiffs also contend that their claims do not fall within the scope of the OGTCA because plaintiffs "have [not] sued for damages (*i.e.*, 'loss')." [Doc. 24, p. 24]. Plaintiffs raise an interesting issue but, unfortunately, neither they nor defendants have adequately briefed the issue.

Most significantly, the Judicial Defendants fail to identify a case or specific provision of the OGTCA supporting the proposition that the Act encompasses claims for equitable relief. Rather, the Judicial Defendants assert that plaintiffs' requested vacatur of outstanding fines, fees, and costs would function as a financial award. [Doc. 29, p. 6]. But, vacatur is an equitable remedy. *See Schell v. OXY USA Inc*., 814 F.3d 1107, 1117 (10th Cir. 2016); *see generally United States v. Throckmorton*, 98 U.S. 61 (1878). Thus, this argument fails. Moreover, in its most recent pronouncement regarding application of the OGTCA, the Oklahoma Supreme Court recognized that the Legislature's decision to allow a tort suit against the government "is, after all, a decision as to whether the People's tax dollars should be used *to pay money damages* to those who successfully sue the state; so this recognition is consonant with our longstanding recognition of the Legislature's exclusive power to set the State's fiscal policy." *Barrios,* 432 P.3d at 237 (emphasis added). Thus, as interpreted by Oklahoma's highest court, the OGTCA reflects a concern regarding the imposition of *money damages* against the State. Accordingly, based on the briefing received to date, it does not appear that the OGTCA applies to suits seeking only equitable relief. Thus, the Judicial Defendants' motion to dismiss plaintiffs' state law claims based on the OGTCA is denied.

---

OGTCA in 2014 to specifically include violations of statutes and the Constitution of the State of Oklahoma. *Barrios*, 432 P.2d at 238.

## V.    Conclusion

WHEREFORE, the Motion to Dismiss [Doc. 10] of defendants Jared Sigler, Special Judge of the District Court of Washington County, in his official capacity; John Gerkin, Special Judge of the District Court of Washington County, in his official capacity; and Curtis DeLapp, former Judge of the District Court of Washington County, in his official capacity, is granted in part and denied in part.

The motion is granted as to Count Seven, failure to conduct ability to pay hearings at judgment and sentencing in violation of OKLA. STAT., tit. 22, ch. 18, Rule 8.1.  Defendant John Gerkin, Special Judge of the District Court of Washington County, is hereby terminated as a party as he was named as a defendant only in Count Seven.  The motion is also granted as to plaintiffs' request for injunctive relief with respect to the § 1983 claims.

The court holds in abeyance its ruling as to Count Two as asserted by plaintiff Sharonica Carter against defendant Curtis DeLapp, former Judge of the District Court of Washington County, pending either lapse of the deadline, set forth below, for plaintiffs to request either substitution or amendment based on former Judge DeLapp's departure from the bench, or resolution of a motion to substitute or amend.

The motion is otherwise denied.

IT IS FURTHER ORDERED that, if plaintiff Sharonica Carter desires to request amendment and/or substitution based on Defendant Curtis DeLapp's departure from the bench, plaintiff shall file a motion together with briefing directed to the propriety of substitution pursuant to FED. R. CIV. P. 25 and/or amendment of the pleadings pursuant to FED. R. CIV. P. 15.  Plaintiff's briefing shall be filed no later than November 27, 2019.  Defendant may file a response no later than December 11, 2019.  Plaintiff may submit a reply brief no later than December 18, 2019.

DATED this 13th day of November, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE