IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA FEENSTRA, SHARONICA CARTER, and LONNIE FEENSTRA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 19-CV-00234-GKF-FHM |
| JARED SIGLER, Special Judge of the District Court of Washington County, in his official capacity; CURTIS DELAPP, former Judge of the District Court of Washington County, in his official capacity; OKLAHOMA INDIGENT DEFENSE SYSTEM, an Oklahoma State Agency; STATE OF OKLAHOMA ex rel. OKLAHOMA INDIGENT DEFENSE SYSTEM; CRAIG SUTTER, Executive Director of the Oklahoma Indigent Defense System; and OKLAHOMA INDIGENT DEFENSE SYSTEM BOARD OF DIRECTORS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss [Doc. 11] of defendants the Oklahoma Indigent Defense System; State of Oklahoma *ex rel.* Oklahoma Indigent Defense System; Craig Sutter, Executive Director of the Oklahoma Indigent Defense System; and the Oklahoma Indigent Defense System Board of Directors (collectively, "OIDS Defendants"). The court conducted a hearing on the motion on October 10, 2019. For the reasons discussed below, the motion is granted in part and denied in part.

I.  **Background and Procedural History**

Plaintiffs bring this case primarily alleging that defendants Jared Sigler, Special Judge of the District Court of Washington County, in his official capacity and Curtis DeLapp, former Judge of the District Court of Washington County, in his official capacity (collectively, "Judicial Defendants") "have systemically failed to conduct an inquiry into criminal defendants' ability to pay *either* before imposing those fines and fees at sentencing, or before sanctioning indigent defendants for non-payment—including by incarceration." [Doc. 3-1, ¶ 10]. Plaintiffs assert five claims against the Judicial Defendants arising from that general allegation.[1] Additionally, plaintiffs assert a single claim against the OIDS Defendants: denial of the right to counsel in violation of the assistance of counsel clause of the Sixth Amendment to the U.S. Constitution, the Equal Protection and Due Process Clauses of the Fourteenth Amendment in the U.S. Constitution and 42 U.S.C. § 1983 (Count Three).

By way of background, the Oklahoma legislature created the Oklahoma Indigent Defense System to "provide counsel in cases, as provided in the Indigent Defense Act, in which the defendant is indigent and unable to employ counsel." OKLA. STAT. tit. 22, § 1355(B). Mandatory representation is extended to "all capital and felony cases and in all misdemeanor and traffic cases punishable by incarceration." *Id.* § 1355.6(A). OIDS provides representation by contracting with private attorneys. *Id.* § 1355.8. Oklahoma statutes include certain requirements as to the award and content of OIDS' contracts with those attorneys. [*Id.*].

Plaintiffs generally allege that, *through the manner in which the OIDS contracts with private attorneys are administered*, "the OIDS Defendants created a system that denies Plaintiffs

---

[1] The Judicial Defendants also filed a motion to dismiss as to the claims asserted against them. [Doc. 10]. The court determined that motion under separate order. *See* [Doc. 47].

conflict-free counsel in relation to the imposition and challenge of fines, fees, and costs." [Doc. 24, p. 34]; *see also* [Doc. 46, pp. 81:3 to 83:21]. The OIDS Defendants have collectively moved to dismiss the single claim asserted against them based on six propositions. The OIDS Defendants do not seek dismissal on any ground specific to any one defendant. The motion is ripe for the court's review.

## II.     Allegations of the Complaint[2]

With respect to the OIDS Defendants, the Complaint includes the following allegations: In derogation of federal and state law requirements, the Oklahoma judicial system creates "a perverse incentive for . . . indigent defendants' own lawyers to impose and enforce fines and fees without regard for criminal defendants' ability to pay." [Doc. 3-1, ¶ 11]. Specifically, the Oklahoma Indigent Defense System ("OIDS")—the state agency responsible for providing public defense services to indigent defendants—has created powerful financial incentives to get its attorneys to close cases as quickly as possible, even when it means forfeiting their clients' right to an inquiry into the clients' ability to pay fines and fees. [*Id.* ¶ 12].

OIDS was created to implement the Indigent Defense Act, and is governed by the Oklahoma Indigent Defense System Board of Directors, which has the "authority to provide for representation of indigent criminal defendants and others for whom representation is required by either the Constitution or laws of [Oklahoma] by attorneys employed by the System." [*Id.* ¶ 33 (quoting OKLA. STAT. tit. 22, ch. 1355, Rule 6(d))]. OIDS is managed by Craig Sutter, the Executive Director employed by the Board since March 2017. [*Id.*]. As Executive Director, Sutter

---

[2] Plaintiffs originally filed a Petition in the District Court in and for Washington County, and the OIDS Defendants removed the matter to this court. For consistency with the Federal Rules of Civil Procedure, the court refers to the Petition filed in this case as the Complaint.

has the authority to "enter into contracts to provide counsel in cases in which the defendant is indigent and unable to employ counsel." [*Id.* (quoting Okla. Stat. ch. 1355, Rule 4(c)(2))].

OIDS implements its obligations to provide defense representation to indigent clients by, among other things, executing flat-rate fiscal year contracts with private attorneys in fifty-five (55) counties, including Washington County. [*Id.* ¶ 34]. Those contracts contain a provision delaying the final ten percent (10%) of the annual contractual payment until the end of the year and upon verification that all of the contract attorney's cases are closed, "thus incentivizing OIDS attorneys to close cases as quickly as possible. [*Id.*]. Specifically, plaintiffs allege that the "10% provision" creates a "powerful, personal financial incentive" to avoid expending time to challenge the imposition of fines and fees against their clients absent the ability to pay hearing mandated by OKLA. STAT. tit. 22, ch. 18, Rule 8.1. [*Id.*]. "That incentive, and the conduct of OIDS attorneys in conformity therewith, is fundamentally in conflict with their clients' interest in having the Rule 8.1 hearing," resulting in deprivation of the criminal defendants' rights to an ability-to-pay inquiry as well as their right to conflict-free counsel as secured by the U.S. Constitution. [*Id.*].

Plaintiffs were represented by court-appointed counsel working pursuant to the applicable OIDS contract with respect to criminal charges filed against them in Washington County. [*Id.* ¶ 35]. Plaintiffs allege that "[c]onsistent with the structural conflicts created by the OIDS contract" plaintiffs were not advised by their respective OIDS-supplied attorney that he or she possessed the right to demand an inquiry and fact-based finding as to their ability to pay fines and fees. [*Id.*; *see also id.* ¶¶ 36, 38-40]. Specifically, plaintiffs allege that they were each represented by OIDS-appointed counsel at the sentencing hearings wherein fines and fees were imposed, and, "[a]t no point prior to, during, or after these hearings did OIDS-appointed counsel inform Plaintiffs of their

right to an ability to pay hearing pursuant to Rule 8.1, nor did OIDS-appointed counsel challenge the imposition of fines and fees against Plaintiffs due to their poverty." [*Id.* ¶ 69].

Finally, plaintiffs allege OIDS routinely does not provide counsel to indigent defendants during "cost docket" appearances in Washington County, "despite knowledge that indigent defendants routinely face incarceration during these proceedings and are routinely denied procedural safeguards, including notice and an opportunity to be heard, prior to incarceration," and that plaintiffs specifically did not receive OIDS-appointed counsel during their "cost docket" hearing, despite "Judge Sigler's and Judge DeLapp's well known policies, practices and customs of incarcerating defendants upon failure to make installment payments." [*Id.* ¶¶ 70-71].

### III. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

### IV. Analysis

The OIDS Defendants seek dismissal of all of plaintiffs' claim against them on the basis of six separate propositions: (1) OIDS complied with applicable Oklahoma statutes; (2) OIDS has no attorney-client relationship with any of the plaintiffs; (3) plaintiffs failed to allege the OIDS

Defendants' "personal participation" in any of the alleged constitutional violations[3]; (4) plaintiffs fail to meet the standards for injunctive relief; (5) plaintiffs fail to allege their convictions have been overturned or otherwise negated pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and (6) OIDS is not a state actor for purposes of a § 1983 claim.[4] The court separately considers each proposition.

    *A.     Compliance with Oklahoma Statutes*

The OIDS Defendants first contend that the 10% withholdance is statutorily required and therefore plaintiffs cannot state a claim premised on the OIDS Defendants' compliance with the statute. *See* OKLA. STAT. tit. 22, § 1355.8(G)(2). In response, plaintiffs contend that the OIDS Defendants "*in implementing the statute as they have*," created a systemic conflict. Plaintiffs argue that the Oklahoma Indigent Defense Act delegates "broad authority" to the OIDS Defendants with respect to contract and "[n]othing in the OIDA . . . compels OIDS to implement statutory provisions in a manner that—as a matter of pleaded fact—ensures that OIDS attorneys would fail, or choose not, to advise clients of their statutory and constitutional rights regarding fines, fees and costs." [Doc. 24, pp. 32-33].

---

[3] The OIDS Defendants characterize this proposition as "supervisory liability is unavailable to plaintiffs." [Doc. 11, p. 13]. However, based on the court's review, the gravamen of OIDS Defendants' third proposition is that plaintiffs failed to adequately allege the OIDS Defendants' personal involvement in the alleged constitutional violation and the requisite state of mind. [Doc. 11, pp. 18-19].

[4] In reply, the OIDS Defendants also argue the Sixth Amendment does not require attorney representation at a Rule 8 hearing. [Doc. 37]. However, this argument was raised for the first time in reply and was therefore stricken. [Doc. 40]. Additionally, during the hearing on the motion to dismiss, the OIDS Defendants sought to "adopt and join in the [Judicial Defendants'] statute of limitations argument [and] the arguments [*sic*] as it applies to standing." [Doc. 46, pp. 64:20 to 65:1]. However, because the arguments were not raised in the OIDS Defendants' motion to dismiss, the court declines to consider the adopted arguments at this stage of the litigation.

Looking to the allegations of the Complaint with respect to the asserted conflict, the Complaint alleges that the 10% fee provision creates a financial incentive to avoid expending the necessary time to challenge the imposition of fees, *and that OIDS attorneys act in conformity therewith*. [Doc. 3-1, ¶¶ 34, 67]. To that end, the Complaint alleges that the plaintiffs were not advised by their OIDS-attorneys of their right to an ability-to-pay inquiry and to demand a fact-based finding at sentencing and that, as a result, plaintiffs have suffered a deprivation of property and liberty without due process. [*Id.* ¶¶ 35, 68]. Accordingly, based on the allegations of the Complaint, the court may reasonably infer that the OIDS Defendants implemented a policy that amounts to deliberate indifference to the plaintiffs' constitutional rights, and that the policy's the moving force behind the constitutional violation. *See Jones v. Grant Cty.*, No. CV-12-0188-EFS, 2014 WL 2196508, at *7 (E.D. Wash. May 27, 2014).

The OIDS Defendants next argue that their powers and responsibilities are statutorily limited and that Rule 8.1 hearings and cost docket appearances do not fall within the scope of OIDS's statutory responsibilities. *See* OKLA. STAT. tit. 22, § 1355.6(A). Pursuant to subsection 1355.6(A), OIDS "shall have the responsibility of defending all indigents, as determined in accordance with the provisions of the Indigent Defense Act in all capital and felony cases and in all misdemeanor and traffic cases punishable by incarceration." *Id.* The OIDS Defendants argue that hearings directed to an ability to pay fines and fees do not constitute capital, felony, misdemeanor, or traffic cases and therefore plaintiffs were not entitled to OIDS representation. The OIDS Defendants take the position that OIDS-appointed representation ends following the entry of a plea agreement or trial verdict and the termination of one direct appeal of conviction. [Doc. 46, pp. 69:24 to 70:4].

However, pursuant to Rule 8.1, "[w]hen the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing *shall be conducted* and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs." OKLA. STAT. tit. 22, ch. 18, Rule 8.1 (emphasis added). The statute makes mandatory an ability-to-pay hearing when a Judgment and Sentence—the entry of which the OIDS Defendants concedes falls within the scope of OIDS's representation—imposes fines and/or costs. Nevertheless, plaintiffs allege that, "[c]onsistent with the structural conflicts created by the OIDS contract," none of the plaintiffs were advised by their OIDS-appointed attorneys prior to, during, or after their sentencing hearings that he or she possessed the right to an ability-to-pay hearing pursuant to Rule 8.1, nor did the OIDS-appointed counsel challenge the imposition of fines and fees against plaintiffs due to their poverty. [Doc. 3-1, ¶¶ 35, 69]. This is because, according to plaintiffs, the manner in which the OIDS Defendants implement the statutory 10% provision included in the OIDS contracts, "provides a powerful financial incentive for OIDS-appointed attorneys to 'close-out' cases quickly and refrain from other courses of action that might complicate or prolong their clients' cases, including objecting to the imposition [of] fines and costs against their clients absent the ability to pay hearing mandated by Rule 8.1." [*Id.* ¶ 67]. Taking the allegations as true and viewing them in the light most favorable to the plaintiffs, plaintiffs plausibly assert that the OIDS Defendants violated plaintiffs' constitutional rights with respect to the initial Rule 8.1 hearings, despite the OIDS Defendants' asserted compliance with Oklahoma statutes.

With respect to the later, post-judgment "cost docket" appearances, however, plaintiffs fail to state a plausible claim. Plaintiffs allege that "Defendant OIDS does not provide counsel to indigent defendants during 'cost docket" hearings, despite knowledge that indigent defendants

routinely face incarceration during these proceedings and are routinely denied procedural safeguards, including notice and an opportunity to be heard, prior to incarceration." [*Id.* ¶ 70]. The Complaint includes no allegations of a specific statute or contract provision requiring, or even permitting, the OIDS Defendants to provide representation to indigent defendants at "cost docket" appearances. In their response to the OIDS Defendants' motion, plaintiffs cite OKLA. STAT. tit. 22, § 1355.6(B), which provides that, "[u]pon prior approval by the Executive Director, the System may also represent indigents in other state proceedings, if such representation is related to the case for which the original appointment of the System was made and if not otherwise prohibited by the Indigent Defense Act," as authorizing OIDS representation at "*every* Rule 8 proceeding." [Doc. 24, p. 33]. However, "when deciding a Rule 12(b)(6) motion, this Court may not consider new allegations contained in a plaintiff's response." *Warad West, LLC v. Sorin CRM USA Inc.,* 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015). Looking only to the allegations of the Complaint, plaintiffs allege no facts which would permit the court to infer that the OIDS Defendants assumed any responsibility or bore any statutory duty with respect to "cost docket" appearances. Therefore, plaintiffs have not nudged their § 1983 claim against the OIDS Defendants premised on "cost docket" appearances "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Based on the foregoing, the Complaint plausibly alleges that the OIDS Defendants acted in a manner so as to deprive plaintiffs of their constitutional rights to the extent that plaintiffs' § 1983 claim is premised on the OIDS Defendants' alleged implementation of the applicable Oklahoma statutes in a manner so as to create a "powerful, personal financial incentive" to avoid expending time to challenge the imposition of fines and fees against the plaintiffs, including through the ability-to-pay hearing mandated by OKLA. STAT. tit. 22, ch. 18, Rule 8.1. Thus, dismissal of the § 1983 claim against the OIDS Defendants is not merited based on asserted

compliance with Oklahoma statutes. However, plaintiffs fail to state a plausible claim based on the OIDS Defendants' failure to proffer advice regarding, or provide representation at, "cost docket" appearances. To the extent premised on post-judgment "cost docket" appearances, plaintiffs' claim is dismissed.

### B. *Lack of Attorney-Client Relationship*

The OIDS Defendants next argue that plaintiffs' claim fails because plaintiffs have not alleged an attorney-client relationship with the OIDS Defendants. [Doc. 11, p. 11]. However, the court does not construe plaintiffs' claim as one for ineffective assistance counsel based on the advice provided by plaintiffs' individual OIDS-appointed counsel. Rather, viewing the allegations in the light most favorable to plaintiffs, the court construes the Complaint to challenge the manner in which the OIDS Defendants implement the statutes governing them—essentially, OIDS's policy—which allegedly resulted in a denial of plaintiffs' constitutional rights. Thus, the court declines to dismiss the § 1983 claim for failure to allege an attorney-client relationship.

### C. *Personal Participation*

The OIDS Defendants next contend that, because plaintiffs include no allegations as to the OIDS Defendants' personal participation in plaintiffs' criminal cases, plaintiffs fail to state a plausible § 1983 claim. However, as recognized by the Tenth Circuit, "'direct participation is not necessary' for liability under § 1983." *Halley v. Huckaby*, 902 F.3d 1136, 1148 (10th Cir. 2018) (citing *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)). Rather, "[t]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* Further, § 1983 permits liability against a defendant "who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy

the enforcement . . . of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'" *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).

Plaintiffs allege that the OIDS Defendants are statutorily obligated to provide legal representation to indigent criminal defendants under Oklahoma law [Doc. 3-1, ¶ 33]; that OIDS implements its obligations through flat-rate fiscal year contracts with private attorneys [*Id.* ¶ 34]; that these contracts include a statutorily-required provision delaying the final 10% of the annual contractual payment until the end of the year and upon verification that all of the contract attorney's cases are closed [*Id.*; *see also id.* ¶ 12]; and that through its implementation of the 10% holdback provision, OIDS creates a powerful financial incentive for attorneys to refrain from courses of action that would complicate or prolong clients' cases, including objecting to the imposition of fines and costs against clients absent the ability-to-pay inquiry mandated by Rule 8.1 [*Id.* ¶ 67]. Plaintiffs further allege that the OIDS Defendants do so despite knowledge that indigent defendants are routinely denied ability-to-pay inquiries pursuant to Rule 8.1 and procedural safeguards prior to incarceration for failure to pay. [*Id.* ¶ 69]. Taking these allegations as true, plaintiffs plausibly allege that the OIDS Defendants engaged in conduct and policies which they knew or should have known would cause plaintiffs and other indigent criminal defendants in Washington County to be deprived of their constitutional rights, subject to later proof. Thus, the Complaint plausibly states a § 1983 claim against the OIDS Defendants.

D.     *Failure to Meet the Standards for Injunctive Relief*

The OIDS Defendants assert that plaintiffs fail to satisfy the requirements for injunctive relief for two reasons.

*First,* the OIDS Defendants argue plaintiffs fail to identify the nature of the injunctive relief sought and therefore the claim is subject to dismissal. [Doc. 11, p. 19]. Construing the Complaint in the light most favorable to plaintiffs, the Complaint requests that the OIDS Defendants be enjoined from implementing the Oklahoma Indigent Defense Act in a manner that infringes on the constitutional right to conflict-free counsel. *See* [Doc. 3-1, ¶¶ 34, 67-72, prayer for relief]. Thus, plaintiffs sufficiently identify the nature of the injunctive relief sought.

*Second,* the OIDS Defendants contend that, because an adequate remedy at law exists, injunctive relief is unavailable. However, plaintiffs seek only equitable relief from the OIDS Defendants. Thus, no adequate remedy *at law* exists. *See Powell Briscoe, Inc. v. Peters*, 269 P.2d 787, 791 (Okla. 1954) (quoting *Marshall v. Homier*, 74 P. 368 (Okla. 1903)) ("Where, in an action for an injunction, the alleged contemplated injury is such that can be fully compensated in money damages, and the defendants are wholly and unquestionably solvent, a temporary injunction should not be granted."). The OIDS Defendants point to the state appellate and post-conviction relief procedures as adequate legal remedies. However, in doing so, defendants seek to engraft an exhaustion requirement onto a § 1983 claim, where none is required. *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) ("[H]abeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not."). The OIDS Defendants' motion to dismiss plaintiffs' request for injunctive relief is denied.

### E. Heck v. Humphrey

The OIDS Defendants next argue that plaintiffs' claim is precluded pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the U.S. Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

> order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (emphasis in original) (internal footnotes omitted). The OIDS Defendants contend that, because plaintiffs ask the court to vacate the costs, fees, and fines imposed upon them, *Heck* applies to preclude plaintiffs' claim.

The OIDS Defendants' argument is contrary to the plain language of *Heck.* In *Heck*, the Court stated that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck,* 512 U.S. at 487 (internal footnote omitted) (emphasis in original). Relying on this language, courts in other circuits have held that *Heck* does not bar suits challenging incarceration for failure to pay fines and fees in the absence of an ability-to-pay hearing. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 604-05 (6th Cir. 2007); *Cain v. City of New Orleans,* 186 F. Supp. 3d 536, 548 (E.D. La. 2016); *Fant v. City of Ferguson*, 107 F Supp. 3d 1016, 1029 (E.D. Mo. 2015), *reversed in part on reconsideration on other grounds*, 2015 WL 4232917. In *Powers*, the Sixth Circuit reasoned that success on the merits of the § 1983 claim arising from deprivation of an indigency hearing would "mean[] only that the failure to grant [plaintiff] an indigency hearing was wrongful, not that the order committing him to jail was wrongful." *Powers*, 501 F.3d at 604. *Powers* is persuasive. Plaintiffs challenge the procedure to impose the fines and fees—specifically the failure to grant an

indigency hearing—not the judgment and sentence of the fines and fees themselves.[5] Thus, *Heck* does not apply to preclude plaintiffs' claim.[6]

F.  *State Actor*

Finally, the OIDS Defendants argue that OIDS is not a state actor for purposes of a § 1983 claim, citing the Supreme Court's decision in *Polk County v. Dodson*, 454 U.S. 312 (1981), wherein the Court held that public defenders are not public actors for purposes of § 1983 when performing a lawyer's traditional functions as counsel. *Id*. at 324-25 (concluding public defender did not act under color of state law "in exercising her independent professional judgment in a criminal proceeding"). However, in *Polk County*, the Supreme Court also stated as follows:

> In concluding that [public defender] did not act under color of state law in exercising her independent professional judgment in a criminal proceeding, we do not suggest that a public defender never acts in that role. In *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L.Ed.2d 574 (1980), for example, we found that a public defender so acted when making hiring and firing decisions on behalf of the State. It may be—although the question is not present in this case—that a public defender also would act under color of state law while performing certain administrative and possibly investigative functions.

*Id.* Further, the court left open the possibility that the pleading would state a plausible § 1983 claim based on the existence of an unconstitutional policy. *Id.* at 326.

---

[5] Further, although plaintiffs seek vacatur, the request is limited to "all outstanding fines, fees and costs *currently outstanding* and assessed against each Plaintiff." [Doc. 3-1, p. 27 (emphasis added)]. Plaintiffs do not seek vacatur of all fines, fees, and costs *assessed* against plaintiffs. Thus, plaintiffs' request for vacatur does not "necessarily imply the invalidity of [plaintiffs'] conviction[s] or sentence[s]." *Heck*, 512 U.S. at 487.

[6] Additionally, although the court has dismissed plaintiffs' claim to the extent premised on post-judgment "cost docket" appearances, the court notes that the OIDS Defendants' argument is misplaced with respect those appearances. If successful in proving that the OIDS Defendants' policy with respect to post-judgment "cost docket" appearances was unconstitutional, plaintiffs would be entitled only to an "opportunity to be heard as to the refusal or neglect to pay the installment when due," OKLA. STAT. tit. 22, ch. 18, Rule 8.4, which "necessarily impl[ies]" nothing about plaintiffs' convictions. *Heck*, 512 U.S. at 487.

OIDS is a state agency which was created to "provide counsel in cases . . . in which the defendant is indigent and unable to employ counsel." OKLA. STAT. tit. 22, § 1355(B); *see also* [Doc. 46, pp. 65:25 to 66:3]. Plaintiffs allege that the OIDS Defendants have structured their contracts in a way so as to create a pervasive conflict of interest. [Doc. 3-1, ¶ 67]. Thus, plaintiffs allegations take the form of a challenge to a state administrative function rather than to an exercise of independent professional judgment. *See Powers*, 501 F.3d at 612 ("Unlike the plaintiff in *Polk County*, [plaintiff] does not seek to recover on the basis of the failures of his individual counsel, but on the basis of an alleged agency-wide policy or custom of routinely ignoring the issue of indigency in the context of non-payment of fines. Although we acknowledge that requesting indigency hearings is within a lawyer's 'traditional functions,' the conduct complained of is nonetheless 'administrative' in character for the reasons already described: [plaintiff] maintains that the Public Defender's inaction is systemic and therefore carries the imprimatur of administrative approval."). Accordingly, plaintiffs plausibly allege the OIDS Defendants were state actors for purposes of a § 1983 claim.

V.  **Conclusion**

WHEREFORE, the Motion to Dismiss [Doc. 11] of defendants the Oklahoma Indigent Defense System; State of Oklahoma *ex rel.* Oklahoma Indigent Defense System; Craig Sutter, Executive Director of the Oklahoma Indigent Defense System; and the Oklahoma Indigent Defense System Board of Directors is granted in part and denied in part. The motion is denied with respect to the extent that plaintiffs' § 1983 claim is premised on the OIDS Defendants' alleged implementation of the applicable Oklahoma statutes in a manner so as to create a "powerful, personal financial incentive" to avoid expending time to challenge the imposition of fines and fees

against their clients absent the ability to pay hearing mandated by OKLA. STAT. tit. 22, ch. 18, Rule 8.1. [*Id.*]. The motion is otherwise granted.

IT IS FURTHER ORDERED that, if plaintiffs desire to amend their Complaint with respect to "cost docket" appearances, plaintiffs must include the proposed amendments in the motion and briefing directed to substitution and/or amendment previously ordered by this court due to Judge DeLapp's departure from the Washington County bench. *See* [Doc. 47]. Plaintiff's briefing shall be filed no later than November 27, 2019. Defendant may file a response no later than December 11, 2019. Plaintiff may submit a reply brief no later than December 18, 2019.

DATED this 14th day of November, 2019.

*/s/ Gregory K. Frizzell*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE