**CASE NO. 19-cv-234-JFH-CDL**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

**AMANDA FEENSTRA and SHARONICA CARTER,**

**Plaintiffs,**

**v.**

**JARED SIGLER,** *et al.,*

**Defendants.**

**OIDS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

**JON WILLIFORD, OBA 19598**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK   73105
Telephone:   (405) 521-3921
Facsimile:     (405) 521-4518
Email: jon.williford@oag.ok.gov
*Attorney for OIDS Defendants*

**February 22, 2021**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

OIDS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN
SUPPORT ............................................................................................................................ 1

STATEMENT OF THE CASE .......................................................................................... 2

STANDARD OF REVIEW ................................................................................................ 3

STATEMENT OF UNCONTROVERTED FACTS .......................................................... 4

ARGUMENT AND AUTHORITIES ................................................................................ 4

PROPOSITION I:

    THE DIXTH AMENDMENT RIGHT TO COUNSEL ENDS WHEN THE TIME
    FOR DIRECT APPEAL RUNS ......................................................................... 11

PROPOSITION II:

    PLAINTIFFS FAIL TO PRESENT ANY EVIDENCE THAT ANY
    ALLEGED CONFLICT IMPACTED REPRESENTATION ............................. 13

PROPOSITION III:

    PLAINTIFFS FAIL TO DEMONSTRATE THE REQUESTED RELIEF
    WILL REDRESS THE ALLEGED INJURIES ............................................... 17

PROPOSITION IV:

    PLAINTIFFS' CLAIMS ARE TIME BARRED BY THE STATUTE OF
    LIMITATIONS .................................................................................................. 20

CONCLUSION ................................................................................................................. 22

CERTIFICATE OF SERVICE ........................................................................................ 23

## TABLE OF AUTHORITIES

### CASES

*Abbott v. Franklin,*
731 F.2d 661 (10th Cir. 1984) ................................................................8, 20

*Akers v. United States,*
20-6062, 2020 WL 6701258 (U.S. Nov. 16, 2020) ...........................................13

*Aldrich v. McCulloch Props., Inc.,*
627 F.2d 1036 (10th Cir. 1980) ...............................................................20

*Allen v. Wright,*
468 U.S. 737, 751, 104 S.Ct. 3315 (1984) ....................................................18

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 248 (1986) ..................................................................3, 4

*Ash Creek Mining Co.,*
969 F.2d at 875.............................................................................18

*Atl. Richfield Co. v. Farm Credit Bank of Wichita,*
226 F.3d 1138, 1148 (10th Cir. 2000) ........................................................3

*Baker v. Board of Regents,*
991 F.2d 628 (10th Cir.1993) ...........................................................20, 21

*Castro v. Ward,*
138 F.3d 810, 821 (10th Cir. 1998) ..........................................................16

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322-23 (1986) .................................................................4

*City of Burlington v. Dague,*
505 U.S. 557, 560–61, 112 S. Ct. 2638, 2640, 120 L. Ed. 2d 449 (1992) ....................16

*Coronado v. Ward,*
517 F.3d 1212, 1218 (10th Cir. 2008) .....................................................12, 13

*Cox v. Phelps Dodge Corp,*
43 F.3d 1345, 1348 (10th 1994) ..............................................................18

*Cuyler v. Sullivan,*
446 U.S. 335, 350, 100 S. Ct. 1708, 1719, 64 L. Ed. 2d 333 (1980) .........................14

*Edens v. Hannigan,*
87 F.3d 1109, 1114 (10th Cir. 1996) ................................................16

*E.E.O.C. v. Horizon/CMS Healthcare Corp.,*
220 F. 3d 1184, 1190 (10th Cir. 2000) ...............................................4

*Eldridge v. Bear,*
833 Fed. Appx. 736, 745 (10th Cir. 2020) ..........................................16

*Franklin v. Massachusetts,*
505 U.S. 788, 825, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) ..................18

*Garcia v. Wilson,*
731 F.2d 640, 651 (10th Cir. 1984)....................................................20

*Hewitt v. Helms,*
482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ..................18

*Hudson v. Miller,*
546 Fed. Appx. 747, 751 (10th Cir. 2013) ..........................................13

*Los Angeles v. Lyons,*
461 U.S., at 111, 103 S.Ct., at 1670 ..................................................19

*Lujan v. Defs. of Wildlife,*
504 U.S. 555, 568, 112 S. Ct. 2130, 2140, 119 L. Ed. 2d 351 (1992)........18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587 (1986) ...................................................................3

*Meade v. Grubbs,*
841 F.2d 1512, 1522 (10th Cir. 1988)................................................20

*Mickens v. Taylor,*
535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) ...........16

*Neill v. Gibson,*
278 F.3d 1044 (10th Cir. 2001) .........................................................15

*Nova Health Systems v. Gandy,*
416 F.3d 1149, 1159 (10th Cir. 2005)................................................18

*Price v. Philpot,*
420 F.3d 1158, 1162 (10th Cir. 2005)................................................21

*Smith v. City of Enid ex rel. Enid City Comm'n,*
149 F.3d 1154, 1155 (10th Cir.1998) ........................................................................ 20, 21

*Smith v. Massey,*
235 F.3d 1259, 1265 (10th Cir. 2000) ......................................................................... 15

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83, 103, 118 S. Ct. 1003, 1017, 140 L. Ed. 2d 210 (1998) ........................ 19, 20

*Swazo v. Wyoming Dep't of Corr.,*
23 F.3d 332, 333-34 (10th Cir.1994) ......................................................................... 12

*United States v. Akers,*
807 Fed. Appx. 861, 867 (10th Cir. 2020) ................................................................. 13

*United States v. Alvarez,,*
137 F.3d 1249, 1252 (10th Cir. 1998) ......................................................................... 16

*United States v. Campos,*
630 Fed. Appx. 813, 816 (10th Cir. 2015) ................................................................. 13

*United States v. Carrillo,*
389 Fed.Appx. 861, 863 (10th Cir.2010) ................................................................... 13

*United States v. Olden,*
296 Fed.Appx. 671, 674 (10th Cir.2008) ................................................................... 13

*Wilson v. Garcia,*
471 U.S. 261, 276-280, 105 S. Ct. 1938 (1985) ......................................................... 20

*Warth v. Seldin,*
422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975) ............................. 19

*Workman,*
342 F.3d at 1107 ....................................................................................................... 16

## STATUTES

12 O.S. § 95(A)(3) ..................................................................................................... 20

22 O.S. 1355.8(G) ....................................................................................................... 6

28 O.S. 135, *et sec* ..................................................................................................... 2

28 U.S.C. § 1983 ....................................................................................................... 20

42 U.S.C. § 1983 .................................................................................................................4

**RULES**

Fed. R. Civ. P. 56(a) .......................................................................................................1, 3

Fed. R. Civ. P. 56(c)(1)(a) ...............................................................................................4

Okla. Ct. Crim. App. R. 8.1 ...........................................................................................10

Okla. Ct. Crim. App. R. 8.2 ...................................................................................3, 10,11

Okla. Ct. Crim. App. R. 8.5 ...........................................................................................11

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and                        )
SHARONICA CARTER,                          )
                                           )
                Plaintiffs,        )
                                           )
vs.                                        )        Case No. 19-cv-234-JFH-CDL
                                           )
JARED SIGLER, et al,                       )
                                           )
                Defendants.        )

## OIDS DEFENDANTS' MOTION FOR SUMMARY
## JUDGMENT AND BRIEF IN SUPPORT

Defendant Craig Sutter, OIDS Board of Directors (collectively "OIDS" or "OIDS Defendants"),  respectfully moves the Court for an order granting summary judgment in his favor pursuant to Fed. R. Civ. P. 56(a) based on the absence of material fact questions supporting judgment as a matter of law because:

1. There are no facts which support any claim of a conflict of interest

2. The 6th Amendment right to counsel ends when the time to file a direct appeal of a conviction runs.

3. The Plaintiffs fail to demonstrate anyway in which this case may redress the injuries they allege.

4. The statute of limitations bars these claims against these Defendants.

## STATEMENT OF THE CASE

The remaining[1] Plaintiffs both entered pleas of guilty or no contest to criminal charges in Washington County, Oklahoma.  Plaintiff, Sharonica Carter, pleaded no contest to a youthful offender charge in 2011.  Plaintiff, Amanda Feenstra, pleaded guilty to false personation, forgery, identity theft and conspiracy in April 2015.  Neither Plaintiff ever filed a direct appeal of any issue related to these convictions.

The Oklahoma Indigent Defense System (OIDS) operates under the authority of the Oklahoma Indigent Defense Act.  22 O.S. 1355, *et. seq.*.  Craig Sutter was the CEO of OIDS at the time of filing.  He has recently retired from that position.  Tim Laughlin has succeeded Mr. Sutter.  OIDS provides criminal defense counsel to indigent individuals across Oklahoma. They operate in every county which lacks a public defender office.  This includes Washington County, Oklahoma.  Individuals seeking OIDS representation must apply and have counsel appointed.  Each of these Plaintiffs were represented by an OIDS contracted attorney. These attorneys are independent contractors and not employees of OIDS.  The OIDS representation ends when the judgment and sentence is entered and the time for direct appeal has run.

As part of each Plaintiffs' plea agreement, they were sentenced to pay certain fines, fees, and costs.  Each Plaintiff testified in open court, under oath, in front of a Judge that they knowingly and willfully entered into these agreements.  Each plea agreement notified these Plaintiffs that they would be required to pay these fines, fees, and costs.

---

[1] Former Plaintiff, Lonnie Feenstra, went to Court after the filing of this case to seek a reduction in his fines, fees, and costs.  Mr. Feenstra appeared without Counsel.  His fines, fees, and costs were significantly reduced. He has now fully paid his debt and has dismissed his own claims.

Neither Plaintiff has any idea about how these OIDS contracts are arranged, nor do they care. The only complaints they had were that the OIDS contracted attorneys did not seem to pay enough attention to them as clients. They believed the OIDS contracted attorneys should be paid more. Neither Plaintiff provided any testimony that would suggest the existence of any conflict. They did not testify in any way that the way the OIDS contracts were structured impacted their cases or representation.

Rule 8 of the Rules of the Court of Criminal Appeals outlines the process for post-conviction costs, fees, and fines management. Rule 8.2 does not allow anyone to be jailed based upon poverty. Rule 8.2 only allows prison time if the individual is found to be able to pay and willfully fails to pay. These Plaintiffs were never facing incarceration due to poverty.

## STANDARD OF REVIEW

The Court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' if, under the governing law, it could have an effect

on the outcome of the lawsuit." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of a summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The existence (or nonexistence) of material fact is established through reference to portions of the record including "depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials…" Fed. R. Civ. P. 56(c)(1)(A).

## STATEMENT OF UNCONTROVERTED FACTS

The OIDS Defendants would assert that the no substantial controversy exists as to the following material facts:

1. Plaintiffs' Amended Complaint only lists one cause of action against these Defendants. *See* Exhibit 1, Amended Complaint. Described as:

   **COUNT FOUR: DENIAL OF RIGHT TO COUNSEL, in violation of the assistance of counsel clause of the Sixth Amendment to the United States Constitution, the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (Against OIDS Defendants)**

2. The Amended Complaint describes this claim as:

   76. Defendant OIDS, acting at all times under color of state law, mandates that 10% of overall payments to its public defender contractors be withheld until the disposition of cases at the trial court level. In so doing, OIDS provides a powerful financial incentive for OIDS-appointed attorneys to "close out" cases quickly and refrain from other courses of action that might complicate or prolong their clients'

cases, including objecting to the imposition of fines and costs against their clients, absent the ability to pay hearing mandated by Rule 8.1.

77. As such, Defendant OIDS has structured its contractual agreements in a way that subjects its contractors to pervasive conflicts of interest, in which the lawyer's personal financial interest conflicts with, and becomes paramount to, their clients' right to a vigorous and comprehensive defense.

3. The Plaintiffs Amended Complaint alleges that the failure of OIDS to provide

   attorneys during Rule 8 or "cost docket" hearings violated the Sixth Amendment.

   81. Plaintiffs Amanda Feenstra, Sharonica Carter, and Lonnie Feenstra did not receive OIDS-appointed counsel during any of their "cost docket" hearings.

4. The factual basis for these allegations is described, in part, earlier in the Amended

   Complaint as follows:

   38. OIDS implements its obligations to provide defense representation to indigent clients by, among others, executing flat-rate fiscal year contracts with private attorneys in 55 counties, including, upon information and belief, Washington County. Those contracts, including, upon information and belief, the contracts with attorneys in Washington County, contain a provision delaying the final 10% of the annual contractual payment until the end of the year and upon verification that all of the contract attorney's cases are closed, thus incentivizing OIDS attorneys to close cases as quickly as possible. This provision creates a powerful, personal financial incentive to avoid expending the time necessary to challenge the imposition of fines and fees against their clients, absent the ability to pay hearing mandated by Rule 8.1. That incentive, and the conduct of OIDS attorneys in conformity therewith, is fundamentally in conflict with their clients' interest in having the Rule 8.1 hearing, thus depriving OIDS clients their right to a meaningful (and constitutionally required) inquiry into their ability to pay fines and fees, as well as their right to conflict-free counsel, as contemplated by the Sixth Amendment to the United States Constitution.

5. The Amended Complaint requests the following relief:

   a) A judgment in favor of Plaintiffs and against Defendants on all causes of action
   alleged herein;
   b) Permanent injunctive relief as requested herein to prevent Defendants from
   engaging in the unlawful and unconstitutional acts alleged herein;
   c) Declaratory judgment that Defendants' conduct as alleged herein is unlawful;

d) Vacatur of all outstanding fines, fees and costs currently outstanding and assessed
against each Plaintiff;
e) Plaintiffs' reasonable attorney's fees;
f) All costs of this action, including any expenses, filing fees, and/or other fees and
costs; and
g) Any such other relief the Court deems just and proper.

6. The Oklahoma Indigent Defense Act created the Oklahoma Indigent Defense
System.  The OIDA governs these Defendants in all they do as an entity and on
behalf of that entity.  22 O.S. 1355, *et. seq.*

7. The OIDA sets specific parameters on how OIDS may structure its
payment to contracting attorneys.  These payments are made in equal
monthly installments, except for the final 10% which is paid upon closing
all matters.

G. 1. Attorneys paid for indigent defense pursuant to a fiscal year
noncapital trial contract awarded or renewed pursuant to this section shall
be paid an annual fee in twelve monthly installments each equaling seven
and one-half percent (7.5%) of the total value of the contract, or as
otherwise provided by contract.
2. Attorneys paid for indigent defense pursuant to paragraph 1 of this
subsection shall receive the balance of ten percent (10%) of the total value
of the contract upon completion of all felony and misdemeanor matters
covered by the contract. A matter is completed for purposes of this
paragraph when no additional services are required under the contract. The
Board, upon recommendation of the Executive Director, may, however,
authorize partial payments on a quarterly basis of the amount retained as
reasonable compensation for those matters which were completed during
the prior quarter. The system may transfer the amount retained from the
total value of the contract pursuant to this subsection to the Contract
Retention Revolving Fund created by Section 1369 of this title.  22 O.S.
1355.8(G)

8.  The Plaintiffs entered pleas of guilty and no contest to criminal charges in Washington County, Oklahoma.  *See* Plea Agreements, Exhibit 2, Sharonica Carter oscn.net docket sheet[2] and Exhibit 3, Plea agreement of Amanda Feenstra.

9.  Plaintiff Feenstra entered her plea on April 29, 2015.  *See* Exhibit 3.

10. Plaintiff Carter entered her plea on August 11, 2011.  *See* Exhibit 2.

11. These plea agreements require criminal defendants in Washington County to attest to having consulted with her lawyer prior to entering these agreements.  *See* Exhibit 3, Plea agreement of Feenstra.

12. These plea agreements require criminal defendants in Washington County to attest that her lawyer has "effectively assisted you in this case" and that the defendant is "satisfied with his/her advice."  *See* Exhibit 3, Plea agreement of Feenstra.

13. These plea agreements require criminal defendants in Washington County to attest to the charges and the ranges of punishments.  These include the fines, fees, and costs.  *See* Exhibit 3, Plea agreement of Feenstra.

14. The Plaintiffs were represented throughout the criminal cases by OIDS contracted attorneys.  *See* Amended Complaint.

15. The Plaintiffs never filed any direct appeals or any other type of attack on the sentence imposed. These Plaintiffs are not currently facing any criminal charges related to the issues described in the Amended Complaint.

---

[2] The Plea Agreement for Plaintiff, Sharonica Carter was entered when she was a juvenile.  In order to avoid filing under seal, the oscn.net docket sheet is attached which shows her entering a plea.  The form is substantially similar to the agreement Plaintiff Amanda Feenstra entered.  While the charges and specific sentences are different on each Plaintiffs' plea agreements, the information is the same.  Should Plaintiff Carter dispute the terms of the plea agreement, Defendant will seek leave to file that document under seal.

16. Plaintiff, Amanda Feenstra, testified that she did not know how her OIDS attorney

was paid.  *See* Exhibit 4, Deposition of Amanda Feenstra.

**Did you ever have any conversations with Ms. Branstetter about how she was being paid for your case?**
A. No.
Page 136

17. Plaintiff, Amanda Feenstra, had no idea how her OIDS attorney's fees were

structured:

22 **Q. Do you know -- did you know at the time --back in 2015, did you have any knowledge as to how her contract with the State of Oklahoma was structured?**
1 A. No. I still don't know --
2 **Q. Okay.**
3 A. -- how it's structured.
4 **Q. So you didn't know if, say, she got all of her money from the State of Oklahoma, say, at the beginning of the year, or at the end of the year, or paid out throughout the year; is that correct?**
8 A. I don't know that information, no.
9 **Q. So, as we sit here today, then, you can't tell us that how she was paid, the structure in which Mrs. Branstetter was paid, had anything whatsoever to do with her representation of you; is that fair?**
13 MR. TERRILL: Object to form.
14 You can answer.
15 THE WITNESS: I mean, not on how she was paid. But, I mean, I believe it was because she was paid little, and I don't know how else to say that. And I feel like you're –

18. Plaintiff, Amanda Feenstra, testified that she believed her OIDS attorney would have

done more had she been paid more.  However, Mrs. Feenstra cannot say how that

would have impacted the representation provided in her case.

**Q. Okay. And do you have any belief, as we sit here today, that how Ms. Branstetter was paid impacted her representation of you?**
A. I don't know how to answer that.
**Q. Well, what are we -- what's your struggle with that question? We'll try to -- let's try to work through it.**

2 A. I mean, because I don't know how -- I mean, I believe that, since she wasn't getting -- I mean, I don't know what she was getting paid. I don't know what OIDS -- I don't know what Oklahoma pays her. I don't know. I know that she is a -- it's either freelance or a very minimal amount of money that OIDS gets when you're a court-appointed attorney, and it's not the amount that -- say, I hired her myself -- what I would have paid her. I believe that if she was getting paid more, by an individual, that she would have worked harder for that individual.

**Q. Okay. I think I understand --**

A. I believe --

**Q. Sorry.**

A. Sorry. I believe -- I believe that OIDS does the work that they get paid for and nothing more.

19. Plaintiff, Amanda Feenstra, would like OIDS attorneys to work harder for their

clients.

> **Let me ask you: As we sit here today, what is it you would like -- what do you think Mr. Sutter individually can do? What would you like to see him do in this case?**
> A. I mean, if I'm correct, that's the attorneys' bosses -- or boss. So if that's who he is, then he should let his OIDS attorneys know that they should work for their clients just like they would if they were paid by an individual.
> **Q. Okay. What about OIDS as an entity, as an institution, what do you think -- what would you like to see them do in this case?**
> A. Again, I want them to work for the defendant as if they were being paid to actually work for that defendant, like fight for them. Don't take just whatever plea comes out of them so you can get out of that case and go on to the next one. That's not fair.
> **Q. Okay.**
> A. It shouldn't matter if it takes a year or two to make -- to come to an agreement that will be good for both sides. Don't -- I mean, take your time and do what you should do as a lawyer.
> Page 154-155

20. Plaintiff, Sharonica Carter, testified she did not think her attorney was being paid at

all. She never asked her attorney how she was being paid.  Exhibit 5, Deposition of

Sharonica Carter.

> **Q At any time during any of your discussions with Ms. Sanders, did she ever mention how she was being paid?**
> A She just -- she always told me that she wasn't getting paid.
> **Q Okay.**

A She was just a public defender. So I don't know.
**Q Do you remember ever asking her about how she was going to be paid?**
A No, sir. I never did.

21. OIDS Executive Director, Defendant Craig Sutter, testified that the criminal case

ends when the judgment and sentence is entered and that appearances at Rule 8.1

hearings are not covered under OIDS responsibilities.  Exhibit 6, Deposition of Craig

Sutter.

**Q. Do you expect OIDS counsel to be present when a judge makes the required finding under Rule 8.1?**
A. Since that often occurs after sentencing, no. We maintain and have maintained, certainly since I've been here, that that -- well, that the case, at that juncture, is resolved. Judgment and sentence has been entered. The individual is no longer facing charges. The criminal case has been resolved. And at that point, it's a collection action that's civil or quasi civil in nature, and we don't have the resources to appear at those hearings.
Page 27

22. Rule 8.1 of the Rules of the Court of Criminal Appeals requires a hearing when a

judgment and sentence imposes fines and/or costs.  These proceedings are to

determine if the individual can *immediately* satisfy the payment of fines and/or costs.

The Rule does not require the hearing occur immediately upon judgment and

sentence.  The word "immediately" modifies the ability to pay.

**Rule 8.1 Judicial Hearings**

When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs. *See* Section 983(D) of Title 22.

23. Rule 8.2 of the Rules of the Court of Criminal Appeals only allow imprisonment

upon two specific findings: 1. The individual must have the ability to pay the

fines/costs **and** 2. The individual must refuse or neglect to pay the fines/costs.

**Rule 8.2 Immediate Confinement on Refusal or Neglect to Pay Fine and/or Costs**

If the defendant, by judicial finding, is financially able but refuses or neglects to pay the fine and/or costs in accordance with the court order, he/she may be immediately confined. *See* [Section 983(D) of Title 22](Section 983(D) of Title 22).

24. Rule 8.5 of the Rules of the Court of Criminal Appeals prevents an individual from being incarcerated simply for being unable to pay due to poverty.  This Rule requires the fines or costs be relieved or additional time be given to commence installment payments.

**Rule 8.5 Inability to Pay Installments Because of Physical Disability or Poverty**

In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs.

**ARGUMENT AND AUTHORITIES**

**PROPOSITION I:** **THE SIXTH AMENDMENT RIGHT TO COUNSEL ENDS WHEN THE TIME FOR DIRECT APPEAL RUNS**

These Plaintiffs allege that the OIDS Defendants violated their Sixth Amendment right to counsel by structuring the fee payments to OIDS contracted attorneys such that 10% of the total contract be paid only upon closing all cases.  According to the Amended Complaint, Plaintiffs allege this conflict prevented OIDS contracted attorneys from being present at Rule 8 style hearings or even advising these Plaintiffs of this mechanism of

reducing fines and/or costs. Plaintiffs complain that they did not have OIDS appointed counsel during these "cost docket" hearings.

These Plaintiffs' plea agreements directly refute the allegation of not being informed of the fines, fees, and costs. The plea agreement of Plaintiff Feenstra (and Carter's youthful offender agreement) inform each Plaintiff the range of punishments. Each agreement also informs each Plaintiff of the imposition of fines, fees, and costs. Each Plaintiff went before a judge, was sworn in, and entered these agreements. Claiming now to have not been informed of this is simply false.

Rule 8 hearings, by definition, do not occur and cannot occur until a judgment and sentence has imposed fines, fees, or costs on an individual. They frequently do not occur for long after the judgment and sentence if the individual is to serve any time incarcerated. The Sixth Amendment right to counsel ends after judgment and sentence and the time to direct appeal has run. In these cases, OIDS could not violate these Plaintiffs Sixth Amendment rights with respect to the Rule 8, or cost docket, hearings because the Sixth Amendment right to counsel does not apply.

In *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008), the Tenth Circuit has held that no right to counsel exists beyond the direct appeal of a criminal conviction.

> Finally, the district court did not err in failing to appoint counsel for Mr. Coronado. There is no constitutional right to counsel beyond the direct appeal of a criminal conviction, and Mr. Coronado, who was not entitled to an evidentiary hearing, has not demonstrated that he was entitled to counsel. *See Swazo v. Wyoming Dep't of Corr.,* 23 F.3d 332, 333-34 (10th Cir.1994) (recognizing the right to counsel in a habeas proceeding when the district court determines that an evidentiary hearing is required).

*Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).  This holding has been upheld in

multiple other opinions as well.  *See*:

> It does not, however, support Akers' contention that the court has a duty
> to ensure that he has access to counsel of his choice to help him with post-
> conviction and habeas motions more than a decade after his conviction
> became final. To the contrary, "[t]here is no constitutional right to counsel
> beyond the direct appeal of a criminal conviction." *Coronado v. Ward*, 517
> F.3d 1212, 1218 (10th Cir. 2008).

*United States v. Akers*, 807 Fed. Appx. 861, 867 (10th Cir. 2020), cert. dismissed, *Akers v.*

*United States*, 20-6062, 2020 WL 6701258 (U.S. Nov. 16, 2020).

> Campos next asserts the district court erred by failing to appoint counsel.
> This argument fails because he has no right to appointment of counsel
> beyond his direct appeal from his conviction. No right to counsel extends
> to a § 3582(c)(2) motion. *See Coronado v. Ward,* 517 F.3d 1212, 1218 (10th
> Cir.2008); *United States v. Carrillo,* 389 Fed.Appx. 861, 863 (10th Cir.2010)
> (unpublished); *United States v. Olden,* 296 Fed.Appx. 671, 674 (10th Cir.2008)
> (unpublished).

*United States v. Campos*, 630 Fed. Appx. 813, 816 (10th Cir. 2015)

> We note that Hudson's right to counsel expired when the time period for
> filing a direct appeal ran out on March 7, 2005. *Coronado v. Ward,* 517 F.3d
> 1212, 1218 (10th Cir.2008).

*Hudson v. Miller*, 546 Fed. Appx. 747, 751 (10th Cir. 2013).  The Rule 8 hearings Plaintiffs

allege violated their Sixth Amendment right to counsel occur after the Sixth Amendment

right to counsel ends. A defendant cannot violate a right which does not exist.

**PROPOSITION II:**          **PLAINTIFFS FAIL TO PRESENT ANY EVIDENCE
THAT ANY ALLEGED CONFLICT IMPACTED
REPRESENTATION**

The Amended Complaint alleges that the 10% holdback required under the OIDA

creates a conflict with counsel.  This argument fails for two main reasons:

1. Plaintiffs themselves could not identify how the structure of the OIDS contract impacted the representation AND

2. The OIDA requires equal monthly payments, save and except the 10% holdback.

The party claiming the conflict must show that the conflict adversely impacted the representation. In *Cuyler v. Sullivan*, 446 U.S. 335, the Supreme Court examined a case of an alleged Sixth Amendment violation created by an alleged conflict of interest. The *Cuyler* Court stated:

> The Court of Appeals granted Sullivan relief because he had shown that the multiple representation in this case involved a possible conflict of interest. We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

*Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719, 64 L. Ed. 2d 333 (1980). Plaintiffs fail to demonstrate that this 10% provision impacted these OIDS Defendants ability to represent these Plaintiffs in any way.

Plaintiffs both testified they had no idea how the OIDS contracts were structured. They could not identify how the structure of the contract impacted their cases. Neither Plaintiff had any idea about how their attorneys were being paid. They both simply complained that the OIDS contracted attorneys did not work hard enough and were not paid enough. These Plaintiffs wholly failed to identify how this actually impacted the criminal cases.

Citing to *Cuyler*, the 10th Circuit has found that a plaintiff must actually show the conflict impacted the adequacy of his representation.

> Where, as here, a defendant raises no objection at trial, her later assertion that her counsel was representing *potentially* conflicting interests is

14

insufficient to establish a Sixth Amendment violation. *Id.* at 348, 100 S.Ct.
1708. Instead, "[i]n order to establish a violation of the Sixth Amendment
[right to effective counsel], a defendant who raised no objection at trial
must demonstrate that an *actual* conflict of interest adversely affected h[er]
lawyer's performance." *Id.* (emphasis added).

*Smith v. Massey*, 235 F.3d 1259, 1265 (10th Cir. 2000), abrogated on other grounds by *Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). Plaintiffs fail to allege any facts which would plausibly demonstrate this 10% holdback affected the actual representation.

Furthermore, the OIDA requires equal monthly payments during the course of the contracts. The OIDS contracted attorneys in these Plaintiffs' cases, were being paid during the representation of these Plaintiffs. The timing of the payments to counsel have not been shown to dictate how these independent contract attorneys represented clients. By mandating equal payments, the OIDS contracted attorneys are being paid. They had no incentive to rush these cases, at least none that has been demonstrated.

As an example, if the contract payment was for $100,000 for the year, under OIDA each month, these attorneys would receive $7500.00, with a balance of $10,000 paid upon completion of all cases. In Plaintiff Amanda Feenstra's case, the OIDS attorney was appointed on December 29, 2014. The Judgment and Sentence was entered on June 24, 2015. Each month, the OIDS attorney is receiving payment for representing Mrs. Feenstra. The 10% holdback would simply never apply to her case. Even if it is assumed that Mrs. Feenstra, or Ms. Carter went to jury trial, the entire case would not last more than one year. Even if it did, the OIDS contracted attorneys know they will be paid. They know they will be paid in full at the close of the contract. The timed monthly payments allow and support these OIDS contracted attorneys throughout the year.

15

Neither Plaintiff could testify how the structure impacted the representation.  This is the essence of a conflict.  At best, the 10% holdback might create a potential conflict in certain cases, but neither Plaintiff here has any actual evidence of any impact on representation based solely upon this structure.  These Plaintiffs merely complain about a potential theoretical conflict, which is insufficient.

> To be clear, "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). Such an actual conflict is present "if counsel was forced to make choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998); *accord Workman*, 342 F.3d at 1107. A petitioner "has the burden of showing specific instances to support his claim of actual conflict of interest." *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996); *accord Castro v. Ward*, 138 F.3d 810, 821 (10th Cir. 1998). A petitioner undisputedly will fail to make this showing if he can only demonstrate that his counsel harbored a "mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171, 122 S.Ct. 1237.

*Eldridge v. Bear*, 833 Fed. Appx. 736, 745 (10th Cir. 2020).  A theoretical complaint alleging division of loyalties is insufficient.

At worst, the 10% holdback is more akin to a contingent fee contract in which the attorney knows for a fact the fee will be paid.  Courts around the country consistently approve of contingent fee contracts.  *See* for example:

> A fee is certain if it is payable without regard to the outcome of the suit; it is contingent if the obligation to pay depends on a particular result's being obtained.

*City of Burlington v. Dague*, 505 U.S. 557, 560–61, 112 S. Ct. 2638, 2640, 120 L. Ed. 2d 449 (1992).  Contingent fee contracts specifically prohibit counsel from a fee unless a certain result is achieved.  In the OIDS Contract, the 10% will be paid without question as soon as all cases are closed.  As the U.S. Supreme Court stated, this knowledge makes these fees

16

"certain."  If contingent fee contracts do not create an impermissible conflict of interest, then the 10% holdback absolutely does not.

**PROPOSITION III:      PLAINTIFFS FAIL TO DEMONSTRATE THE REQUESTED RELIEF WILL REDRESS THE ALLEGED INJURIES**

The relief requested by these Plaintiffs will simply not do anything for them. Plaintiffs do not seek monetary damages for these infractions.  They seek simply a declaration that these policies somehow violated their rights. *See* Amended Complaint and Statement of Facts, *supra*.  Because these Plaintiffs fail to demonstrate the relief requested will redress the injuries alleged, they fail to demonstrate they have standing to bring these claims.

Redressability is an essential element of standing to sue.  Without an injury that can be corrected by the Court's ruling, then the Plaintiffs lack the ability to sue.  These Plaintiffs challenge the program OIDS has created to carry out its legal obligations.   These generalized complaints about the government or its agencies, are rarely proper for judicial review.  This case, at its core, is how OIDS, and the State of Oklahoma, pays for the defense of indigents accused of crimes.

> Besides failing to show injury, respondents failed to demonstrate redressability. Instead of attacking the separate decisions to fund particular projects allegedly causing them harm, respondents chose to challenge a more generalized level of Government action (rules regarding consultation), the invalidation of which would affect all overseas projects. This programmatic approach has obvious practical advantages, but also obvious difficulties insofar as proof of causation or redressability is concerned. As we have said in another context, "suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations … [are], even when premised on allegations of several instances of violations of law, … rarely if

ever appropriate for federal-court adjudication." *Allen,* 468 U.S., at 759–760, 104 S.Ct., at 3329.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568, 112 S. Ct. 2130, 2140, 119 L. Ed. 2d 351 (1992).

The present case seeks a declaratory judgment that OIDS violated these Plaintiffs rights.

The Amended Complaint and the depositions and discovery conducted thus far fail to

describe how a declaratory judgment would impact these Plaintiffs in any way.  The

judgment and sentences have been imposed.  The time to appeal these have run.  The

Plaintiffs are not requesting appointment of counsel for a Rule 8 hearing.  They simply ask

for a declaration of a rights violation.  Plaintiffs fail to meet the requirement that this Court

can actually redress the injuries alleged.

> More fundamentally, it overlooks the principle that it must be the effect of
> the court's judgment on the defendant that redresses the plaintiff's injury,
> whether directly or indirectly. *See Ash Creek Mining Co.,* 969 F.2d at 875 (the
> redressability inquiry looks to whether "the *relief requested* will redress the
> injury claimed") (emphasis added); *Cox v. Phelps Dodge Corp.,* 43 F.3d 1345,
> 1348 (10th Cir.1994) **("[W]hat makes a declaratory judgment action 'a**
> **proper judicial resolution of a 'case or controversy' rather than an**
> **advisory opinion is the settling of some dispute which affects the**
> **behavior of *the defendant* toward the plaintiff.' ")** (superceded by
> statute on other grounds) (emphasis added) (quoting *Hewitt v. Helms,* 482
> U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)). "If courts may
> simply assume that everyone (including those who are not proper parties to
> an action) will honor the legal rationales that underlie their decrees, then
> redressability will always exist. Redressability requires that the court be able
> to afford relief through the exercise of its power, not through the
> persuasive or even awe-inspiring effect of the opinion explaining the
> exercise of its power." *Franklin v. Massachusetts,* 505 U.S. 788, 825, 112 S.Ct.
> 2767, 120 L.Ed.2d 636 (1992) (Scalia, J., concurring) (emphasis omitted).

(emphasis added) *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005).  In no way

will OIDS **or Plaintiffs** be impacted by this Court issuing a ruling which declares that the

rights of these Plaintiffs have been violated.  This likelihood of providing relief is essential to

redressability.

> And third, there must be redressability—a likelihood that the requested
> relief will redress the alleged injury. *Id.,* at 45–46, 96 S.Ct., at 1927–1928; *see*
> *also Warth v. Seldin,* 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343
> (1975).

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103, 118 S. Ct. 1003, 1017, 140 L. Ed. 2d 210

(1998).  Requiring more training for OIDS contracted attorneys in the future will not help

these Plaintiffs.  Requiring OIDS to pay the contract in full and striking down the 10%

holdback provision will not redress any alleged injury to these Plaintiffs.  Finding the 10%

unconstitutional (which has not been requested) will not redress any alleged injury to these

Plaintiffs.

Plaintiffs also seek some undescribed injunction as to these Defendants.  However,

no injunctive relief will have any bearing on these Plaintiffs or Defendants.  Plaintiffs have

not requested representation at future Rule 8 or cost docket hearings.  Generalized

deterrence does not provide grounds for relief.

> … the remaining relief respondent seeks (item (2), giving respondent
> authority to inspect petitioner's facility and records, and item (3),
> compelling petitioner to provide respondent copies of EPA compliance
> reports) is injunctive in nature. It cannot conceivably remedy any past
> wrong but is aimed at deterring petitioner from violating EPCRA tin the
> future. … The latter objective can of course be "remedial" for Article III
> purposes, when threatened injury is one of the gravamens of the complaint.
> If respondent had alleged a continuing violation or the imminence of a
> future violation, the injunctive relief requested would remedy that alleged
> harm. But there is no such allegation here—and on the facts of the case,
> there seems no basis for it. Nothing supports the requested injunctive relief
> except respondent's generalized interest in deterrence, which is insufficient
> for purposes of Article III. *See Los Angeles v. Lyons,* 461 U.S., at 111, 103
> S.Ct., at 1670.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108–09, 118 S. Ct. 1003, 1019, 140 L. Ed. 2d 210 (1998). The injuries as alleged are what Plaintiffs believe are excessive fines, fees, and costs.  Even assuming an ongoing injury to these Plaintiffs, nothing sought by the Amended Complaint will redress these alleged injuries.  OIDS does not have the power to vacate those amounts (an item of relief requested).  Plaintiffs have repeatedly stated they are not seeking monetary damages, thus nothing sought will actually redress these injuries.

**PROPOSITION IV:       PLAINTIFFS' CLAIMS ARE TIME BARRED BY THE STATUTE OF LIMITATIONS**

The statute of limitations period for an action brought under 28 U.S.C. §1983 is governed by the forum state's law pertaining to personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 276-280, 105 S.Ct. 1938 (1985). The limitations period that applies in Oklahoma is therefore two years. *See Meade v. Grubbs*, 841 F.2d 1512, 15§(10th Cir. 1988). That statute of limitations period begins to run when the cause of action accrues according to Federal law. *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1154 (10th Cir.1998). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Board of Regents,* 991 F.2d 628, 632 (10th Cir.1993). Pursuant to Fed. R. Civ. P. 8(c)(1), the lapse of "the statute of limitations is an affirmative defense." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

The Tenth Circuit has determined, as a matter of law, that every §1983 claim is "in essence an action for injury to personal rights," *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984), and therefore applies the most analogous Oklahoma statute, which provides a two-year limitations period. *See* 12 O.S. § 95(A)(3) ("Civil actions ... can only be brought within [two years] after the cause of action shall have accrued, and not afterwards ... for injury to

the rights of another."). *See also Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) ("Oklahoma's two-year statute of limitations applies.") (citing *Abbott v. Franklin*, 731 F.2d 661, 663 (10th Cir. 1984) (en banc)).

Even though the limitations period for § 1983 claims are borrowed from state law, the question of when a cause of action accrues under § 1983 remains one of federal law. *See Smith*, 149 F.3d at 1154 ("[F]ederal law ... dictates when the statute of limitations begins to run for purposes of § 1983."). It is well settled that a "civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). The injury in a § 1983 claim is the violation of a constitutional right, and such claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith*, 149 F.3d at 1154 (citation omitted). The Court must first determine the alleged constitutional violation and identify when it occurred to find the date of accrual. *See Smith*, 149 F.3d at 1155.

Plaintiffs filed this action on March 21, 2019, meaning any actions, which they believe entitle them to relief that occurred prior to March 21, 2017 are time barred by the statute of limitations. Plaintiffs allege the costs, fines and fees at the time of assessment were outside their ability to pay. Each Plaintiff was sentenced and assessed costs and fees prior to March 21, 2017.

According to the Amended Complaint, and her plea agreement, Ms. Feenstra pled guilty and was assessed costs, fines, and fees in April 2015. She then agreed to a payment plan in February 2017. *Id.* Ms. Carter pled and was sentenced in September 2011. *Sharonica Carter Docket Sheet*, attached as Exhibit 2. She was released from custody and entered a

payment plan in October 2013. *Id.*

The only claims against any OIDS Defendant accrued prior to March 2017. The claims against OIDS are limited to a failure to advise these Plaintiffs of either (1) the right to a Rule 8 style hearing OR (2) fighting the imposition of the fines, fees, and costs. Either way, both of these events would have occurred long before 2017. Both of these events had to occur during the representation of each Plaintiff.

## **CONCLUSION**

These Plaintiffs told the Court when entering their plea agreements, they had been advised of the potential fines, fees, and costs associated with that plea. They told the Court they were satisfied with the advice of their attorneys. They never appealed those plea agreements or sought to revoke them. They chose to enter a plea because prison time was worse. That's a reasonable position.

These Plaintiffs have wholly failed to describe how the 10% holdback of the OIDS contracted fee payment impacted their representation. They have simply speculated that somehow their cases were rushed. That is insufficient to demonstrate a violation of their Constitutional rights. Furthermore, the 6th Amendment right to counsel ends as soon as the time to directly appeal the criminal case has run. Meaning these Plaintiffs had no right to counsel at any post-conviction cost docket or Rule 8 type hearings.

Plaintiffs fail to demonstrate how any this Court can grant any relief from these Defendants. The Plaintiffs do not seek further representation by any OIDS related individuals. The time to appeal the fines, fees, and costs has long since run. These Plaintiffs

fail to demonstrate that any of the relief sought will redress any injury to these particular individual Plaintiffs.

In short, there are no substantial controversies over any facts.  Summary judgment is appropriate in this case for the OIDS Defendants.

Respectfully submitted,


 s/Jon Williford
**JON WILLIFORD, OBA 19598**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK  73105
Telephone:   (405) 521-3921
Facsimile:   (405) 521-4518
Email: jon.williford@oag.ok.gov
*Attorney for OIDS Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants (names only are sufficient) in the above captioned case.

s/ Jon Williford
**Jon Williford**