```
 1            IN THE UNITED STATES DISTRICT COURT FOR THE

 2                   NORTHERN DISTRICT OF OKLAHOMA

 3

 4
        AMANDA FEENSTRA, et al.,
 5
              Plaintiff,
 6
        vs.                     Case No. 19-cv-234-JFH-FHM
 7

 8      JARED SIGLER, et al.,

 9            Defendants.

10

11

12
                DEPOSITION OF SHARONICA CARTER
13           TAKEN ON BEHALF OF THE DEFENDANTS
         ON NOVEMBER 2, 2020, BEGINNING AT 10:44 A.M.
14                        (via Zoom)

15

16

17                          APPEARANCES

18    On behalf of the PLAINTIFFS:

19    Michael Lacovara
      Alysha Naik
20    LATHAM WATKINS
      885 Third Avenue
21    New York, New York  10022
      212.906.1605
22    michael.lacovara@lw.com
      alysha.naik@lw.com
23    lilia.vazova@lw.com

24

25    REPORTED BY:  Karen Dauphin Albert, CSR, RPR
```

Professional Reporters
800.376.1006
www.proreporters.com

Exhibit 5

Page 138

1 mentioned a prior felony conviction?
2   A   Uh-huh.
3   Q   I think you told us earlier that that
4 was not true.
5       Do you remember that testimony?
6   A   Yes.
7   Q   Just so I'm clear and we're not
8 confusing terminology or the terms of something,
9 had you maybe entered a plea of guilty or no
10 contest to another charge before this Washington
11 County case?
12   A   Not that I can recall.
13   Q   Any of the discussion that we looked at
14 on that transcript about any prior cases, does
15 that ring any bell or refresh your memory about
16 any prior cases?
17   A   Not that I can recall.  I mean, I don't
18 know what you really mean.
19   Q   Okay.  I'm just trying to get a sense
20 of, you know, the other cases that you may have
21 had already before you that maybe went into
22 some of the discussions and the advice or
23 recommendations that you got from this
24 Washington County case.
25   A   The -- what did it say?  When I was in

Page 139

1 school?
2   Q   Or at any time before this Washington
3 County case.
4   A   Not that I can recall.  I mean, if -- if
5 -- convicted, no, I ain't.
6   Q   Okay.
7   A   This is my first conviction.
8   Q   All right.  No.  That's what I wanted to
9 know.
10   A   Okay.
11   Q   I'm not trying to trick you or anything.
12 So if you don't know, just tell me you don't
13 know.
14   A   Okay.
15   Q   All right.  So in any of the discussions
16 that you had with Ms. Sanders, did she outline
17 or did she describe the potential punishment
18 that you were facing for this charge?
19   A   Yes, sir.  It always went like --
20   Q   And what did she tell you?
21   A   It always went like, "Kid, this is the
22 best deal we got."  We was even in the hallway
23 one time.  "This is the best deal we got.  Take
24 it, or they're going to send you to the
25 penitentiary for 15 years."

Page 140

1   Q   All right.  And I'm going to assume --
2 tell me if this is wrong -- that you didn't want
3 to go to prison for 15 years?
4   A   I told her to take it to trial and --
5   Q   Right.  I understand that you've told us
6 that, and I do.  I'm not talking about that.
7 I'm just asking.
8       You didn't want to go to jail for 15
9 years; right?
10   A   I wasn't guilty of -- no.  No.
11       MR. LACOVARA:  I don't know if this
12 would be helpful to you, but we're prepared to
13 stipulate that Ms. Carter is not challenging the
14 incarceration or the plea agreement insofar as
15 it relates to the fine of $1,000 or the sentence
16 as it was carried out.
17       We've never had a claim on that.
18       MR. WILLIFORD:  I'm not saying --
19       MR. LACOVARA:  So I'm not sure where
20 these questions are going in terms of any issue
21 that's in dispute.
22       MR. WILLIFORD:  I know.  I know and
23 understand.  We talked about this before.  I
24 think it all kind of plays into each other, so
25 -- but I understand that that's your position.

Page 141

1       MR. LACOVARA:  Right.  And just so you
2 know, obviously we're talking about events nine
3 years ago with a tired witness.  So we are where
4 we are.
5       MR. WILLIFORD:  I understand that too.
6 I understand too.  I mean, my memory from last
7 week is -- I mean, especially this year.  So I
8 understand.
9   Q   (By Mr. Williford) Ms. Carter, if you
10 don't remember something, please just tell me
11 you don't remember, and I completely understand.
12 I'm just going to be as fair with you as I can,
13 and if I'm not being fair, let me know, and I'll
14 try to be --
15   A   Okay.
16   Q   At any time during any of your
17 discussions with Ms. Sanders, did she ever
18 mention how she was being paid?
19   A   She just -- she always told me that she
20 wasn't getting paid.
21   Q   Okay.
22   A   She was just a public defender.  So I
23 don't know.
24   Q   Do you remember ever asking her about
25 how she was going to be paid?

Page 142

1   A   No, sir. I never did.
2   Q   Did Ms. Sanders ever tell you anything
3   that you believed to be some sort -- that she
4   was somehow rushing your case just to get done
5   with it?
6   A   Yes, sir. When I asked her to
7   fingerprint the gun, she said, "Your case is not
8   a big case like that. He has murder trials that
9   he -- he has murder trials going on. So we're
10  trying to go ahead and get through yours."
11      That's what I was told.
12  Q   When you say "he," you mean Judge
13  DeLapp?
14  A   DeLapp. Judge DeLapp.
15  Q   Jude DeLapp. Okay.
16  A   That he was very busy; that my case
17  wasn't like the murder cases. So they was
18  trying to hurry up and get me out of the way.
19  Q   Okay.
20  A   That's what she told me out of her own
21  mouth, Kristi Sanders.
22  Q   Okay. Now, did you take that to mean
23  that Ms. Sanders was rushing your case or Judge
24  DeLapp was rushing your case?
25  A   Both. Because the things that I asked

Page 143

1   her to inquire about never once was brought up,
2   not even in front of me.
3       Like when I asked her to do something,
4   it was like, "Okay. If he allows me to."
5       That's what it was always was, "If he
6   allows me to."
7   Q   Okay. And again, "he" is Judge DeLapp?
8   A   "He" was Judge DeLapp, yes.
9   Q   So she was trying -- "she" being
10  Attorney Sanders was -- it sounds like she felt
11  like she was a little bit kind of hamstrung and
12  a little bit tied by what Judge DeLapp was going
13  to do.
14      Is that fair?
15      MR. LACOVARA: I object to the form.
16      MS. NAIK: Objection. Form.
17      THE WITNESS: I was going to say I
18  didn't understand that anyway.
19  Q   (By Mr. Williford) I apologize. I
20  apologize. I'll try to reask it. It was
21  clearly a bad question.
22      Did it sound to you like Attorney
23  Sanders felt like she kind of had her hands tied
24  by what Judge DeLapp was going to do?
25  A   I don't know, honestly.

Page 144

1   Q   Okay. Now, on this case, this youthful
2   offender case, you entered what they call a
3   blind plea; is that right?
4   A   She entered. Kristi Sanders entered a
5   blind plea. I wanted to go to trial.
6   Q   No. I understand that. I understand
7   that's what you've told us.
8   A   But it was entered on my behalf?
9   Q   It was what they call a blind plea.
10      Do you know what that means?
11  A   No. At the time, I didn't understand
12  anything what was going on except, "You're 15.
13  You're going to spend 15 years, or you take the
14  deal."
15      That's the only thing I understood. I
16  didn't understand the terms, what was going on,
17  the sentencing, the fines, none of that. I
18  didn't understand none of it.
19  Q   All right. Ms. Carter, do you know if
20  your mother -- did she ever meet with Attorney
21  Sanders?
22  A   With me in the hallway, and that's when
23  she told me, "That's the best deal" -- my mom
24  even heard that too. "That's the best deal we
25  got, kid. Take the deal."

Page 145

1   Q   Anytime other than that that your mom
2   met with Attorney Sanders that you know of?
3   A   No.
4   Q   Now, we looked at the plea agreement and
5   Mr. Pederson pointed it out -- this was Exhibit
6   1 -- that there were two dates on it, August 11,
7   2011, and September 22, 2011.
8       Do you remember looking at those two
9   dates with him?
10  A   Yes, sir.
11  Q   Do you remember if, on the August 11th
12  hearing -- did you go before Judge DeLapp on
13  August 11th?
14  A   I can't recall, honestly.
15  Q   Sure. No. I understand.
16      Do you remember going in front of him
17  twice to enter your plea?
18  A   I can't recall.
19  Q   Do you recall how many times you went in
20  front of Judge DeLapp on this particular -- on
21  the criminal charges?
22  A   So many, I can't recall.
23  Q   At any time do you remember Judge DeLapp
24  going through the plea discussion and the plea
25  paperwork with you and asking you questions