CASE NO. 19-cv-234-JFH-CDL

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and SHARONICA CARTER,

Plaintiffs,

v.

JARED SIGLER, *et al.,*

Defendants.

## DEFENDANTS STATE JUDGES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

STEFANIE E. LAWSON, OBA #22422
DEVAN A. PEDERSON, OBA # 16576
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorneys for Judges Linda Thomas, Russell Vaclaw, and Jared Sigler*

February 22, 2021

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. iii

DEFENDANT STATE JUDGES' MOTION FOR SUMMARY JUDGMENT AND BRIEF
IN SUPPORT ....................................................................................................................... 1

BRIEF IN SUPPORT .......................................................................................................... 1

STATEMENT OF THE CASE ............................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ........................................................................ 3

    *Plaintiff Amanda (Ackerson) Feenstra* ............................................................... 3

    *Plaintiff Sharonica Carter* .................................................................................... 5

    *Washington County Procedures* ............................................................................ 7

STANDARD OF REVIEW ................................................................................................ 14

ARGUMENT AND AUTHORITIES ................................................................................ 15

PROPOSITION I:

    DEFENDANT STATE JUDGES IN THEIR OFFICIAL CAPACITIES ARE NOT
    PERSONS UNDER § 1983 ...................................................................................... 15

PROPOSITION II:

    PLAINTIFFS' CLAIMS PRIOR TO MARCH 2017 ARE TIME BARRED BY THE
    STATUTE OF LIMITATIONS ................................................................................ 16

PROPOSITION III:

    PLAINTIFFS' CLAIMS ARE MOOT AND THEREFORE PLAINTIFFS LACK
    STANDING ............................................................................................................... 18

    A. *Constitutional Mootness* ................................................................................... 20

    B. *Prudential Mootness* ......................................................................................... 22

PROPOSITION IV:

    PLAINTIFFS' DUE PROCESS RIGHTS HAVE NOT BEEN VIOLATED ............ 23

*A. Due Process is Satisfied* ........................................................................23

*B. Equal Protection is Satisfied* ................................................................26

**PROPOSITION V:**

**DECLARATORY RELIEF SHOULD BE DENIED** ........................................28

**PROPOSITION VI:**

**PLAINTIFFS CANNOT SUSTAIN THESE STATE LAW CLAIMS AGAINST DEFENDANT STATE JUDGES**........................................................................31

*A. As a threshold matter, a civil lawsuit against a judicial officer is not a proper mechanism for challenging judicial error under Oklahoma law* ..............................32

*B. Oklahoma Court of Criminal Appeals Rules do not provide a separate or private cause of action* ........................................................................................32

*C. Carter's claim for failure to conduct an ability-to-pay hearing at her judgment and sentencing (Count One) fails* ................................................................34

*D. Plaintiffs' state-law claims against Judge Sigler for incarceration without ability-to-pay inquiry fail*........................................................................................35

*E. Plaintiffs' state-law claims for equitable relief against Judge Sigler, declaring that he has violated Rule 8.5 or ordering him to vacate Plaintiff's obligations under Rule 8.5 or to provide some other relief under Rule 8.5 (Count VI) fail*............................37

**CONCLUSION**........................................................................................40

**CERTIFICATE OF SERVICE** ..................................................................41

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Franklin,*
731 F.2d 661 (10th Cir. 1984) ...........................................................................16

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
300 U.S. 227, 57 S. Ct. 461 (1937) ...............................................................28, 29

*Aldrich v. McCulloch Props., Inc.,*
627 F.2d 1036 (10th Cir. 1980) .........................................................................16

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505 (1986)................................................................15

*ANR Pipeline Co. v. Lafaver,*
150 F.3d 1178 (10th Cir. 1998) .........................................................................15

*Ariz. Christian Sch. Tuition Org. v. Winn,*
563 U.S. 125, 131 S. Ct. 1436 (2011).................................................................18

*Arizonans for Official English v. Arizona,*
520 U.S. 43, 117 S. Ct. 1055 (1997)...............................................................19-20

*Atkins v. Parker,*
472 U.S. 115, 105 S. Ct. 2520 (1985).................................................................17

*Awad v. Ziriax,*
670 F.3d 1111 (10th Cir. 2012) .........................................................................18

*Baker v. Board of Regents,*
991 F.2d 628 (10th Cir. 1993) ...........................................................................16

*Bearden v. Georgia,*
461 U.S. 660, 103 S. Ct. 2064 (1983)............................................................24, 38

*Beattie v. U.S.,*
949 F.2d 1092 (10th Cir. 1991) .........................................................................20

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.,*
7 F.3d 1492 (10th Cir. 1993) ............................................................................20

*Bronson v. Swensen,*
500 F.3d 1099 (10th Cir. 2007) .........................................................................28

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S. Ct. 2548 (1986)............................................................14-15

*Chamber of Commerce v. U.S. Dep't of Energy,*
627 F.2d 289 (D.C. Cir. 1980) ............................................................................. 19

*Chrysler Corp. v. Clark,*
1987 OK 32, P.2d 103 ........................................................................................... 39

*Citizen Ctr. v. Gessler,*
770 F.3d 990 (10th Cir. 2014) ............................................................................. 20

*City of Broken Arrow v. Bass Pro Outdoor World, L.L.C.,*
2011 OK 1, 250 P.3d 305 ..................................................................................... 40

*City of Los Angeles v. Lyons,*
461 U.S. 95, 103 S. Ct. 1660 (1983) ................................................................... 28

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532, 105 S. Ct. 1487 (1985) ................................................................. 24

*Colclazier v. State of Okla., ex rel., Okla. Indigent Def. Sys.,*
1997 OK 161, 951 P.2d 622 ................................................................................. 37

*Coleman v. Court of Appeals,*
550 F.Supp. 681 (W.D. Okla. 1980) .................................................................... 28

*Collins v. Daniels,*
916 F.3d 1302 (10th Cir. 2019) ........................................................................... 20

*Concrete Works of Colo., Inc. v. City and Cty. of Denver,*
321 F.3d 950 (10th Cir. 2003) ............................................................................. 26

*Cox v. Phelps Dodge Corp,*
43 F.3d 1345 (10th Cir. 1994) ....................................................................... 19, 28

*DeRonde v. State,*
1986 OK CR 29, 715 P.2d 84 ........................................................................ 27, 34

*Disability Law Ctr. v. Millcreek Health Ctr.,*
428 F.3d 992 (10th Cir. 2005) ............................................................................. 19

*Dowell v. Pletcher,*
2013 OK 50, 304 P.3d 457 ................................................................................... 39

*Dyer v. State,*
1991 OK CR 89, 815 P.2d 689 ............................................................................. 34

*Fletcher v. U.S.,*
116 F.3d 1315 (10th Cir. 1997) ........................................................................... 20

*Garcia v. Wilson,*
731 F.2d 640 (10th Cir. 1984) ................................................................................................ 16

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex,*
442 U.S. 1, 99 S. Ct. 2100 (1979) .......................................................................................... 24

*Habecker v. Town of Estes Park, Colo.,*
518 F.3d 1217 (10th Cir. 2008) ....................................................................................... 18, 19

*Hill v. Kemp,*
478 F.3d 1236 (10th Cir. 2007) .............................................................................................. 15

*Holbert v. Echeverria,*
1987 OK 99, 744 P.2d 960 ...................................................................................................... 32

*House of Realty, Inc. v. City of Midwest City,*
2004 OK 97, 109 P.3d 314 ...................................................................................................... 39

*Hubbard v. State,*
2002 OK CR 8, 45 P.3d 96 ...................................................................................................... 35

*Jones v. State,*
1984 OK CR 70, 682 P.2d 757 ................................................................................................ 34

*Jordan v. Sosa,*
654 F.3d 1012 (10th Cir. 2011) .....................................................................................20-21, 22

*Joseph A., ex rel., Corrine Wolfe v. Ingram,*
275 F.3d 1253 (10th Cir. 2002) .............................................................................................. 30

*Knox v. Bland,*
632 F.3d 1290 (10th Cir. 2011) .............................................................................................. 30

*Layman v. State,*
1988 OK CR 260, 764 P.2d 1358 ............................................................................................ 17

*LCR, Inc. v. Linwood Prop.,*
1996 OK 73, 918 P.2d 1388 .................................................................................................... 32

*Lewis v. Casey,*
518 U.S. 343, 116 S. Ct. 2174 (1996) .................................................................................... 26

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,*
312 U.S. 270, 61 S. Ct. 510 (1941) ........................................................................................ 29

*Mathews v. Eldridge,*
424 U.S. 319, 96 S. Ct. 893 (1976) ................................................................................... 23, 24

*Meade v. Grubbs,*
841 F.2d 1512 (10th Cir. 1988) ......................................................................................16

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118, 127 S. Ct. 764 (2007) .............................................................................29

*McCaskey v. State,*
1989 OK CR 63, 781 P.2d 836 ......................................................................................38

*McKesson Corp. v. Hembree,*
No. 17-CV-323-TCK-FHM, 2018 WL 4621833 (N.D. Okla. Sept. 26, 2018) ...............20, 21

*Mink v. Suthers,*
482 F.3d 1244 (10th Cir. 2007) ....................................................................................19

*Morgan v. Galilean Health Enter.,*
1998 OK 130, 977 P.2d 357 ..........................................................................................33

*Morrissey v. Brewer,*
408 U.S. 471, 92 S. Ct. 2593 (1972) ............................................................................24

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
339 U.S. 306, 70 S. Ct. 652 (1950) ..............................................................................24

*Nesbitt v. State,*
2011 OK CR 19, 255 P.3d 435 ......................................................................................34

*North Laramie Land Co. v. Hoffman,*
268 U.S. 276, 45 S. Ct. 491 (1925) ..............................................................................17

*Nova Health Systems v. Gandy,*
416 F.3d 1149 (10th Cir. 2005) ....................................................................................28

*Okla. Pub. Emp. Ass'n v. Okla. Dep't of Cent. Serv.,*
2002 OK 71, 55 P.3d 1072 ............................................................................................39

*Osage Nation v. Bd. of Cnty. Comm'rs of Osage Cnty.,*
2017 OK 34, 394 P.3d 1224 ..........................................................................................37

*O'Shea v. Littleton,*
414 U.S. 488, 94 S. Ct. 669 (1974) ..............................................................................21

*Petrella v. Brownback,*
787 F.3d 1242 (10th Cir. 2015) ....................................................................................26

*Powers v. Harris,*
379 F.3d 1208 (10th Cir. 2004) ....................................................................................26

*Price v. Philpot,*
420 F.3d 1158 (10th Cir. 2005) ................................................................................................16

*Prison Legal News v. Fed. Bureau of Prisons,*
944 F.3d 868 (10th Cir. 2019) .............................................................................................20-21

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
506 U.S. 139 (1993) ................................................................................................................15

*Quick v. State,*
No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished) ...........................................35

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
601 F.3d 1096 (10th Cir. 2010) ........................................................................................ 19, 20

*Ross v. Moffitt,*
417 U.S. 600, 94 S. Ct. 2437 (1974) .......................................................................................27

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
411 U.S. 1, 93 S. Ct. 1278 (1973) ......................................................................................26-27

*Save Palisade FruitLands v. Todd,*
279 F.3d 1204 (10th Cir. 2002) ...............................................................................................26

*Schaffer v. Clinton,*
240 F.3d 878 (10th Cir. 2001) ............................................................................................18-19

*Sharp v. 251st Street Landfill, Inc.,*
1996 OK 109, 925 P.2d 546 ....................................................................................................39

*Smith v. City of Enid ex rel. Enid City Comm'n,*
149 F.3d 1151 (10th Cir. 1998) ...........................................................................................16-17

*Smith v. State,*
2007 OK CR 6, 155 P.3d 793 ...............................................................................................3, 35

*S. Utah Wilderness Alliance v. Smith,*
110 F.3d 727 (10th Cir. 1997) .................................................................................................20

*State v. Blank,*
930 P.2d 1213 (Wash. 1997) .............................................................................................27, 35

*State, ex rel., Bonney v. Arthurs,*
1946 OK 177, 169 P.2d 561 .....................................................................................................32

*State Farm Fire & Casualty Co. v. Mhoon,*
31 F.3d 979 (10th Cir. 1994) ...................................................................................................29

*Surefoot LC v. Sure Foot Corp.*,
531 F.3d 1236 (10th Cir. 2008) ........................................................................29

*Swarthout v. Cooke*,
562 U.S. 216 (2011) .........................................................................................23

*Tandy v. City of Wichita*,
380 F.3d 1277 (10th Cir. 2004) ........................................................................28

*Templeman v. Gunter*,
16 F.3d 367 (10th Cir. 1994) ............................................................................23

*Tollet v. State*,
2016 OK CR 15, 387 P.3d 915 ........................................................................38

*Trujillo v. Williams*,
465 F.3d 1210 (10th Cir. 2006) ........................................................................26

*Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.*,
491 F.3d 1143 (10th Cir. 2007) ........................................................................19

*United States v. Salerno*,
481 U.S. 739, 107 S. Ct. 2095 (1987) ..............................................................23

*U.S. v. Seminole Nation of Okla.*,
321 F.3d 939 (10th Cir. 2002) ..........................................................................21

*United States v. Virginia*,
518 U.S. 515, 116 S. Ct. 2264 (1996) ..............................................................26

*Utah Ass'n of Ctys. v. Bush*,
455 F.3d 1094 (10th Cir. 2006) ........................................................................19

*Walker v. Chouteau Lime Co., Inc.*,
1993 OK 35, 849 P.2d 1085 ............................................................................32

*Walker v. United Parcel Serv., Inc.*,
240 F.3d 1268 (10th Cir. 2001) ........................................................................19

*Waste Connections, Inc. v. Okla. Dep't of Envtl. Quality*,
2002 OK 94, 61 P.3d 219 ................................................................................37

*Westinghouse Electric Corp. v. Grand River Dam Auth.*,
1986 OK 20, 720 P.2d 713 ..............................................................................37

*Will vs. Michigan Dept. of State Police*,
491 U.S. 58 (1989) ...........................................................................................15

*Williams v. Illinois,*
399 U.S. 235, 90 S. Ct. 2018 (1970) ..............................................................24

*Wilson v. Garcia,*
471 U.S. 261, 105 S. Ct. 1938 (1985) ............................................................16

*Wilton v. Seven Falls Co.,*
515 U.S. 277 (1995) ........................................................................................29

*Winbush v. State,*
2018 OK CR 38, 433 P.3d 1275 ...............................................................31, 38

*Winzler v. Toyota Motor Sales U.S.A., Inc.,*
681 F.3d 1208 (10th Cir. 2012) .....................................................................22

*Younger v. Harris,*
401 U.S. 37, 91 S. Ct. 746 (1971) ..................................................................30

## STATUTES

12 O.S. § 95(A)(3) ..........................................................................................16

12 O.S. § 1651 ................................................................................................39

12 O.S. § 1651-57 ...........................................................................................39

22 O.S. § 983 .......................................................................................3, 17, 37

22 O.S. § 983(D) .............................................................................................33

22 O.S. § 983a .......................................................................5, 18, 22, 33

22 O.S. § 983a(4) ............................................................................................33

28 U.S.C. § 2201 .............................................................................................28

28 U.S.C. § 2201(a) ........................................................................................28

42 U.S.C. § 1981(a) ........................................................................................19

42 U.S.C. § 1983 .............................................................................................16

## RULES

Fed. R. Civ. P. 56 .......................................................................................1, 40

Fed. R. Civ. P. 56(C) ................................................................................14-15

Okla. Ct. Crim. App. R. 8 ..................................................................................................17

Okla. Ct. Crim. App. R. 8.1 ............................................................................ 3, 33, 34, 35, 37

Okla. Ct. Crim. App. R. 8.3 ...............................................................................................37

Okla. Ct. Crim. App. R. 8.4 ....................................................................................35-36, 37

Okla. Ct. Crim. App. R. 8.5 ..................................................................................33, 37, 38

Okla. Ct. Crim. App. R. 8.6 ...............................................................................................37

Okla. Ct. Crim. App. R. 8.8 ...............................................................................................37

Okla. Ct. Crim. App. R. 10 ..................................................................................................3

Okla. Ct. Crim. App. R. 10.6 ............................................................................................32

## OTHER

U.S. Const. art. III ...............................................................................................18, 20, 29

U.S. Const. art. III, § 2, cl. 1 ..............................................................................................19

U.S. Const. amend. XIV ...............................................................................................23, 26

U.S. Const. amend. XIV, § 1 .............................................................................................26

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMANDA FEENSTRA and SHARONICA CARTER | |
| Plaintiffs, | Case No.: 19-cv-234-JFH-CDL |
| v. | **(Removed from Washington County Case No. CV-2019-12)** |
| JARED SIGLER, Special Judge of the District Court of Washington County, in his official capacity*, et al.,* | |
| Defendants. | |

## <u>DEFENDANT STATE JUDGES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>

Defendants Washington County District Judge Linda Thomas, Associate Judge Russell Vaclaw, and Special Judge Jared Sigler (collectively "State Judges"), by and through attorneys of record, Stefanie Lawson and Devan Pederson, Assistant Attorneys General, respectfully request that under Fed. R. Civ. P. 56, this Court grant summary judgment to Defendants. In support thereof, Defendants submit the following brief in support.

### BRIEF IN SUPPORT

### STATEMENT OF THE CASE

Plaintiffs, Amanda (Ackerson) Feenstra [1] and Sharonica Carter, are individuals seeking declaratory and injunctive relief against Washington County judges. They claim they owe (or owed) money for criminal court related fees, costs, and/or fines to Washington County and the State of Oklahoma pursuant to valid criminal convictions. They have sued the District Judge, Associate Judge, and Special Judge of Washington County as well as the Oklahoma Indigent Defense System, its board,

---

[1] Plaintiff Feenstra's husband was previously also a named plaintiff in this action. During the course of litigation, he filed a Rule 8 Motion in Washington County District Court, participated in a Rule 8 hearing, received a partial waiver of his outstanding costs, fines, and fees, and paid the remaining balance in full. He then voluntarily dismissed his claims. *See* Joint Stipulation of Dismissal [Doc. 82].

1

and its executive director. Plaintiffs seek an injunction[2] (under state law) to prevent defendants from engaging in unlawful and/or unconstitutional acts, an order declaring defendants' conduct illegal (under both federal and state law), and finally an order vacating their outstanding fees, fines and costs. Amended Complaint, Prayer for Relief [Doc 50-1, p. 32].

Plaintiffs bring a very broad indictment against the assessment and collection practices in Washington County. Plaintiffs' specific allegations as to Defendant State Judges and these specific Plaintiffs include that Judge Sigler issued a warrant for Ms. Feenstra [*Id.* at ¶68]; Judge Sigler and former Judge DeLapp "imprisoned" Ms. Feenstra and Ms. Carter on failure to pay warrants [*Id.* at ¶76, 90]; Judge Sigler ordered unaffordable payments [*Id.* at ¶ 93]; Judge Sigler incarcerated Ms. Feenstra for nonpayment [*Id.* at ¶98]; and former Judges Gerkin, DeLapp, and Judge Sigler do not conduct ability to pay inquiries [*Id.* ¶ 63]. Plaintiffs did not allege and there is no evidence to support that they have challenged any of the named State Judges' actions through Oklahoma's criminal appellate process (either an appeal or writ) based on the Judges' failure to follow federal or state law or the appropriate Court of Criminal Appeals Rules for any order up to and including any installment payment order.

Plaintiffs have brought seven claims, six of which are against one or more of the Defendant State Judges. Count I is "Failure to conduct ability to pay hearings at judgement and sentencing" under Rule 8.1 brought against Judges Thomas and Vaclaw. [Doc. 50-1, p. 24]. Count II is "Failure to provide notice and an opportunity to be heard prior to arrest and detention" under the due process clause of the Fourteenth Amendment to the United States Constitution brought pursuant to 42 U.S.C. § 1983 against Judge Sigler. [Doc. 50-1, p. 25]. Count III is "Punishment solely on the basis of poverty" under the due process and equal protection clause of the United States Constitution brought pursuant to 42 U.S.C. § 1983 against Judge Sigler. [Doc. 50-1, p. 26]. Count IV "Denial of right to counsel" is brought

---

[2] Injunctive relief is only available as to the state law claims. *See* Opinion and Order dismissing claims for injunctive relief against the Defendant State Judges. [Doc. 47, p. 22].

against the OIDS defendants. [Doc. 50.1, p. 28]. Count V is "Denial of due process" under Article 2, Section 7 of the Oklahoma Constitution brought against Judge Sigler. [Doc. 50.1 p. 30] Count VI is "Failure to provide relief due to poverty and disability" brought under Oklahoma Court of Criminal Appeals Rule 8.5 against Judge Sigler. *Id.* Finally, Plaintiffs bring Count VII "Failure to conduct ability to pay hearings prior to incarceration for non-payment" under Oklahoma Court of Criminal Appeals Rule 8.4 against Judge Sigler. [Doc. 50-1, p. 31]. Plaintiffs seek only prospective equitable relief [Opinion and Order - Doc. 47, p. 15], as well as attorney's fees and costs.

Oklahoma statutes and court rules authorize and dictate the process and procedures for collecting court costs, fees, and fines which are, or have been, imposed as a result of criminal proceedings. *See e.g.*, 22 O.S. § 983, Rule 8.1, *et seq.* Of particular relevance to Plaintiffs' claims against the State Judges, Oklahoma's statutory scheme and the rules promulgated by the Oklahoma Supreme Court and Court of Criminal Appeals contemplate and allow for appeal from the imposition of courts costs, fees, and fines, as well as review of a criminal defendant's status as indigent and his/her ability to pay those court costs fines and fees once they are imposed. Okla. Ct. Crim. App. R. 8.1, *et seq.;* Rule 10; *Smith v. State,* 2007 OK CR 6, 155 P.3d 793, 795. Plaintiff Feenstra received various forms of relief, including payment reductions, suspension of payments, and eventually full waiver of her outstanding obligations. Plaintiff Carter has yet to seek reduced payments, continually agreeing to an installment payment of $75 per month, and, in fact, failed to appear at her last court ordered appearance. What Plaintiffs apparently seek from this Court is an order mandating an outcome determinative process, which is not actually required by due process.

## STATEMENT OF UNDISPUTED FACTS

### *Plaintiff Amanda (Ackerson) Feenstra*

1.    Ms. Feenstra, represented by counsel, pled guilty to three criminal counts on April 29, 2015. The Judgment and Sentence was filed on May 22, 2015. Ms. Feenstra served a term of incarceration, per the agreed plea. Ms. Feenstra also agreed to pay costs, fines, and fees as part of the

plea agreement. The judgment and sentence, pursuant to the plea agreement, notified Ms. Feenstra of her rights under Rule 8. *See* Ackerson Docket sheet for CF-2014-528 (Ex. 1), plea agreement (Ex. 2), and judgement and sentence (Ex. 3).

2.      Ms. Feenstra was released from custody on or about January 20, 2017. She reported to Washington County District Court for a costs and fines review on February 2, 2017. She signed an installment plan agreement and agreed to pay $50 per month towards her financial obligations beginning on March 2, 2017. *See* DOC letter (Ex. 4), Washington County payment plan (Ex. 5).

3.      Ms. Feenstra appeared for a fines and costs review on May 12, 2017, and requested a lowered payment to $40 per month. The Court granted the request and ordered Ms. Feenstra back for another review on July 28, 2017. Ackerson Docket, cm May 12, 2017 (Ex. 1), Order (Ex. 6).

4.      Ms. Feenstra was late to a fines and cost review on September 15, 2017 and then failed to appear at her next fines and costs review on October 27, 2017. The Court requested a one-time courtesy letter regarding the missed date and advising that failure to respond would result in the issuance of a bench warrant. Ackerson Docket, cm Sept 15, 2017, cm Oct 27, 2017 (Ex. 1), Letter (Ex. 7).

5.      Ms. Feenstra called the court clerk in January and February 2018, and got new hearing dates for fines and costs review. She then failed to appear for the cost review set for May 4, 2018, and a failure to appear warrant was issued. Ackerson Docket, cm Jan 3, 2018, cm Feb 26, 2018 (Ex. 1), Court Minute (Ex. 8), Warrant (Ex. 9).

6.      Ms. Feenstra was arrested on the bench warrant on May 9, 2018, and appeared in court on the warrant the next day. Ms. Feenstra was remanded on a $330.00 bond. Ackerson Docket, cm May 10, 2018 (Ex. 1), Order (Ex. 10).

7.      Ms. Feenstra appeared at fines and cost review in July and August 2018. Rather than appear on the October fines and costs review, Ms. Feenstra called the court clerk and got a new hearing date for January 4, 2019. Rather than appear at any of the scheduled fines and costs review

throughout 2019, Ms Feenstra called in each time and received new court dates. Ackerson Docket, cm July 6, 2018, Aug 17, 2018 (Ex. 1), Court Minutes (Ex. 11, 12, 13, 14).

8.      Ms. Feenstra appeared before Judge Thomas in January 2020 seeking credit for overpayment. Judge Thomas granted the request. Ackerson Docket, cm Jan 10, 2020 (Ex. 1).

9.      Ms. Feenstra appeared before Judge Thomas on May 2020 seeking relief from payment obligations due to a change in employment status and an injury. Judge Thomas granted a six month suspension and ordered Ms. Feenstra back on November 20, 2020. Ackerson Docket, cm May 22, 2020 (Ex. 1)

10.     Ms. Feenstra appeared with counsel on December 11, 2020, again seeking relief from financial obligations. Judge Thomas recused and assigned the case to Judge Gibson in Nowata County. Ackerson Docket, cm Dec 11, 2020 (Ex. 1).

11.     Judge Gibson granted full waiver under 22 O.S. § 983(a) on December 16, 2020. Order (Ex. 15).

*Plaintiff Sharonica Carter*

12.     Sharonica Carter pled no contest and entered a blind plea to a youthful offender charge on August 11, 2011. Ms. Carter was ordered to continue in detention and granted permission to be moved to a treatment bed prior to sentencing if a bed became available. Carter Docket, YO-2011-01, cm Aug 22, 2011 (Ex. 16), Carter Depo (Ex. 17).

13.     The Court formally sentenced Ms. Carter on September 22, 2011. She was in custody of Oklahoma Juvenile Affairs and continued detention at COJAC through October 2013. Carter Docket cm Sept 22, 2011 (Ex. 16).

14.     Ms. Carter was released from OJA custody to DOC supervision on October 31, 2013. JEMO (Ex. 18), Order Release (Ex. 19).

15.     Ms. Carter signed an installment payment plan on November 20, 2013. Order (Ex. 20).

16.     Ms. Carter's suspended sentence was revoked and she was ordered to DOC custody on June 1, 2016. The Judgement and Sentence notified Ms. Carter of her rights under Rule 8. Stipulation CM (Ex. 21), CM (Ex. 22), Order (Ex. 23), Notice, Judgment and Sentence Amended Judgment and Sentence (Ex. 24).

17.     Ms. Carter stipulated to the costs, fines, and fees during the revocation proceedings. Stipulations (Ex. 21).

18.     Prior to release from DOC custody, DOC notified Ms. Carter of her responsibility to report to Washington County for a judicial hearing "to determine your ability to pay". DOC Letter (Ex. 25).

19.     Ms. Carter signed a new installment payment plan agreement on October 17, 2017, again agreeing to $75 per month, after her release from DOC custody. Payment Plan (Ex. 26).

20.     Rather than appear, Ms. Carter called the clerk and got a new court date. CM (Ex. 27).

21.     Ms. Carter failed to appear for fines and costs review on March 2, 2018. The court issued a bend warrant with a $250 bond. Carter Docket, cm Mar 2, 2018 (Ex. 16), Warrant (Ex. 28).

22.     The bench warrant was recalled on April 4, 2018 after Ms. Carter contacted the court and received a new fines and costs review date of June 8, 2018. CM (Ex. 29).

23.     Ms. Carter appeared for a fines and cost review on July 27 2018, and was given a new review date of September 28, 2018. Carter Docket, cm July 27, 2018 (Ex. 16).

24.     Ms. Carter appeared on September 28, 2018, made a $50 payment as ordered, and was given a new review date of November 16, 2018. Ms. Carter signed a new installment plan agreeing to pay $75 per month toward satisfaction of her criminal sentence. Carter Docket, cm Sept 28, 2018 (Ex. 16), Court Minute (Ex. 30), Payment Order (Ex. 31).

25.     Rather than appear in November 2018 or February 2019, Ms. Carter called the court clerk and received new hearing dates for her costs and fines review. Court Minutes (Ex. 32, 33).

26.     Ms. Carter failed to appear for costs and fines review on May 14, 2019, and was not current on her payment plan. The court ordered a courtesy letter to be sent advising Ms. Carter that she had missed her court date and that a bench warrant would be issued if she failed to contact the court. Letter (Ex. 34).

27.     The courtesy letter was returned to the court on May 20, 2019 as "unable to forward". Envelope (Ex. 35).

28.     Ms. Carter failed to appear for fines and costs review on June 7, 209. The court ordered the clerk to contact Ms. Carter by phone and took the bend warrant under advisement. Carter Docket, cm June 7, 2019 (Ex. 16).

29.     Ms. Carter failed to contact the court as ordered and failed to appear for the fines and costs review on June 21, 2019. The court issued a bench warrant with a $50 bond. Warrant (Ex. 36).

30.     Ms. Carter appeared on October 21, 2019, and paid the $50 bond on the outstanding warrant. The court recalled the warrant. Ms. Carter was ordered back on November 1, 2019. Carter Docket, cm Oct 21, 2019 (Ex. 16), Warrant Recall (Ex. 37).

31.     Ms. Carter failed to appear on November 1, 2019. The court issued another bench warrant with a $50 bond. Warrant (Ex. 38).

32.     Ms. Carter neither appeared nor contacted the court regarding her financial obligations since November 1, 2019 when she advised the court by phone that she would not be appearing. Carter Docket, cm Nov 1, 2019 (Ex. 16).

*Washington County Procedures*

33.     Former Washington County District Judge Curtis DeLapp left the bench in August 2018. DeLapp Depo, p. 236 Ln 16-17 (Ex. 39).

34.     When District Judge Curtis DeLapp resigned in August of 2018, the Washington County District Court began changing its fines, fees, and costs system. Sigler Depo. at 10:7-13; 12:18-23; 94:7 – 95:6 (Ex. 40).

7

35.     Linda Thomas was sworn into office as the new District Judge in January of 2019. Sigler depo. at 10:7-18; 88:20-22; 94:21-95:3 (Ex. 40); Thomas Depo, 10:20-23 (Ex. 41).

36.     Shortly after taking the bench, Judge Thomas began reviewing the fines and costs procedures. Emails (Ex. 42-43).

37.     The current Washington County District practices relating to fines, fees, and costs are as follows:

(a) No Defendant who is assessed fines, fees, and/or costs at the time of sentencing is required to immediately satisfy the payment thereof. Rather, in all cases, Defendants are permitted to enter into a payment agreement whereby he/she makes monthly installment payments towards full satisfaction of such fines, fees, and costs. The Defendant determines the amount of the monthly installment payment based upon his/her individual financial situation at the time of sentencing. There is no court-imposed minimum monthly payment required. Statement of Thomas at ¶1 (Ex. 44).

(b) In large part, fines, fees, and costs are assessed by the Court based upon an all-inclusive plea agreement between the Defendant and the State of Oklahoma. The imposition and payment of fines, fees, and costs is part of the plea agreement to which the Defendant agrees. Each defendants signs a Plea of Guilty of Summary of Facts after reviewing same with their attorney. The Plea Summary includes specific language notifying defendants of their obligations and Rule 8 requirements. Statement of Thomas at ¶1 (Ex. 44); Plea of Guilty Summary of Facts (Ex. 45-A, p. 11).

(c) In cases where a Defendant is sentenced to a period of incarceration without a plea agreement (blind plea or jury verdict), the Court questions the Defendant regarding his/her ability to pay, and his/her present and/or projected ability to pay, then imposes the appropriate fine, fees and costs. If a Defendant is incarcerated in the county jail, he/she is ordered to appear before the Cost administrator within 2

8

business days of his/her release to enter into a payment agreement at which time the monthly installment payment is set at an amount of the Defendant's choosing. If a Defendant is incarcerated in the Oklahoma Department of Corrections, he/she is ordered to appear before the Costs Administrator on the 181st day (or first business day thereafter) after his/her release from imprisonment to enter into a payment agreement at which time the monthly installment payment is set at an amount of the Defendant's choosing. The Judgment and Sentence, a copy of which the Defendant receives, also contains language which notifies defendants of their obligations and Rule 8 requirements. Statement of Thomas at ¶1 (Ex. 44); Judgment and Sentence form (Ex. 47, p. 3).

(d) At the time of every sentencing hearing and while the Defendant is still in court, he/she is verbally and in writing ordered to appear back in court for a fines and costs review hearing. In addition, the Defendant is given written notice of his/her right to a Rule 8 hearing. The Defendant receives a brightly colored leaflet titled RULE 8 NOTICE OF HEARING, advising him/her of the right to a Rule 8 hearing. The Defendant is also verbally advised by the Court that if his/her financial situation substantially or permanently changes for any reason in the future to the extent that payment of fines, fees, and costs imposes a financial hardship, he/she has the right to request a Rule 8 hearing. The form entitled, MOTION FOR RULE 8 HEARING ON INABILITY TO PAY FINES AND/OR COSTS, is provided to the Defendant upon request. Upon request, a Rule 8 hearing will be set on a date and time certain. Upon presentation of the appropriate information to the Judge, the Judge makes a determination of the Defendant's ability to pay and will modify the payment plan, as warranted, in accordance with all applicable Oklahoma law. Statement of Thomas at ¶2 (Ex. 44).

(e) When a Defendant meets with the Cost Administrator, he/she advises the Cost Administrator of the monthly payment amount he/she can pay, and enters into a written payment agreement, a copy of which is given to the Defendant. Further, the Defendant is ordered to appear back on a date and time certain for a fines and costs review hearing. Each time the Defendant appears for a fines and costs review hearing, he/she is given written notice of the next review hearing. However, there is a procedure in place whereby, if the Defendant makes regular monthly payments, it is not necessary for the Defendant to personally appear in court. A written copy of the Washington County District Court Procedures Re: Fines and Costs Review Hearing which explains the procedure is given to the Defendant. Statement of Thomas at ¶3 (with Washington County District Court Procedures Re: Fines and Costs Review Hearing attached thereto) (Ex. 44).

(f) If the Defendant does not make his monthly payment as agreed, he/she must appear before the Judge at the fines and costs review hearing previously set by the Court. At that hearing, the Defendant has the opportunity to explain to the Court the reason for non-payment. The Judge takes into consideration the Defendant's situation, then makes adjustments accordingly. AT NO TIME IS A DEFENDANT INCARCERATED FOR FAILURE TO PAY FINES, FEES, AND COSTS without a full hearing. Statement of Thomas at ¶4 (Ex. 44).

(g) If the Defendant fails to make his/her monthly payment AND fails to appear for the fines and costs review hearing as previously ordered, the Costs Administrator sends a one-time courtesy letter to the Defendant at his/her address listed with the Cost Administrator. This letter advises the Defendant that he/she failed to appear as ordered, and directs the Defendant to call the Cost Administrator to obtain a new court date, at which time the Defendant must appear before the Judge. If the

Defendant does not call as directed or if he/she fails to appear as ordered at the subsequent hearing, a FAILURE TO APPEAR warrant is issued. A bond in the amount of $50 is set on the FAILURE TO APPEAR warrant. If the Defendant is picked up and incarcerated on the FAILURE TO APPEAR warrant and if he pays the $50 bond, that payment goes toward satisfaction of the remaining balance of his/her fines, fees, and costs. If the Defendant does not pay the bond, he/she receives $25 credit per day served, is released after serving two days in jail, and also receives $50 credit towards satisfaction of the remaining balance of his/her fines, fees, and costs. Statement of Thomas at ¶5 (with a copy of Order Setting Bond for Failure to Appear is attached thereto) (Ex. 44).

38.     Shortly after Judge Thomas took office as the new Washington County District Judge in January of 2019, a due diligence search of the Washington County court records for improper failure to pay and/or appear warrants issued by or at the direction of the previous District Judge was conducted. All known warrants not in compliance with the procedure outlined above were recalled and replaced with a warrant that comports with current policy. Statement of Thomas at ¶6 (Ex. 44).

39.     Since Judge Thomas took office in January 2019, no person has been remanded to jail for failure to pay fines, fees, or costs. However, in compliance with Oklahoma law, if after a full and final hearing at which the Defendant has the right to be represented by counsel, the Court finds that the Defendant has the ability to pay but willfully refuses or neglects to pay as ordered, the Court has the discretion to impose jail time upon the Defendant. Statement of Thomas at ¶7 (Ex. 44).

40.     Washington County Special Judge Jared Sigler currently presides over the Washington County costs docket and the Washington County Rule 8 docket. Statement of Sigler at ¶¶2-3 (Ex. 45).

41.     The purpose of the costs docket is to hold costs review hearings. Defendants who have agreed to make installment payments are ordered to appear for costs review hearings. *See* Court of Criminal Appeals Rule 8.3 regarding installment payment appearances. Defendants may avoid costs

review hearings if they are making regular payments and if they call the court clerk's office prior to the hearing pursuant to the "Washington County District Court Procedure Re: Fines and Costs Review Hearings". Statement of Sigler at ¶2 (with attached Washington County District Court Procedure Re: Fines and Costs Review Hearings) (Ex. 45).

42.     The purpose of the Rule 8 docket is to provide defendants an opportunity to request changes to their installment plans, to request suspension of their payment obligations for a period of time, or to request permanent relief from their fines, fees, and costs obligation. Statement of Sigler at ¶3 (Ex. 45).

43.     Some individuals appear at the costs docket in order to advise that they have made their payments. At that time, they are provided an "order-back slip" advising them of the date and time of their next costs review hearing. Some individuals appear at the costs docket when they have not made a payment. When that occurs, Judge Sigler gives them a new order-back date for a future costs review hearing. Some individuals request a change to their installment payment plan. In those cases, Judge Sigler either alters their payment plan by lowering the amount of their installment payments, suspending their payments for a period of time, permanently eliminates their payment obligation, or asks that they appear on the Rule 8 docket in order to provide any testimony or other evidence they may wish to present in support of their request. Cost docket proceedings are not rote or mechanical. Rather, Judge Sigler usually engages in a conversation with the individual to determine their circumstances and their requests, if any. If an individual requests a change to their payment obligation, he either grants the request or sets a hearing for the matter to be heard at the Rule 8 docket. No request is denied without providing the individual an opportunity to be fully heard during the Rule 8 docket. There is more time at the Rule 8 docket to discuss the details of an individual's situation. In addition, many Defendants are uncomfortable explaining their medical and/or financial hardships in courtroom full of people. They often appear more comfortable discussing these matters during the much smaller Rule 8 docket. (Ex. 45, ¶4).

44.     During the Rule 8 docket, Judge Sigler asks each individual if they would like to have a court reporter or if they would like to waive their right to a court reporter. The hearing does not proceed unless a court reporter is present or unless the individual waives their right to a court reporter. During the Rule 8 docket, each individual is given an opportunity to discuss their current health and financial situation. Judge Sigler does not have a list of questions that he asks each individual. Rather, he engages in a conversation with each individual to determine their financial and/or health status. Many times, Judge Sigler is already aware of the individual's circumstances because he has seen them in Bartlesville outside of court or because he has seen them previously at costs dockets or elsewhere. Judge Sigler does not deny requests for relief without inquiring into each individual's health and financial situation. Judge Sigler does not always ask detailed questions about every aspect of an individual's health or financial situation if it becomes clear to him that he is going to grant their request for relief. Each individual has a full opportunity to provide Judge Sigler with any information they wish to present. Judge Sigler considers all information provided to him in reaching a decision. Anyone appearing before Judge Sigler has a full and fair opportunity to present their case. Judge Sigler cannot recall declining fines, costs, and fees relief to any individual appearing at the Rule 8 docket who has requested such relief since January of 2019. Anyone who requests fines, fees, and costs relief from Judge Sigler now or in the future will receive a full and fair opportunity to present their evidence and receive a fair decision. Statement of Sigler at ¶5 (Ex. 45).

45.     The forms listed below are now used by the Washington County District Court with respect to matters relating to or touching on fines, costs, and fees: (a) Plea of Guilty Summary of Facts (Ex. A to Stat. of Sigler); (b) Fines Assessed in Court ("Yellow Form") (Ex. B to Stat. of Sigler); (c) Rule 8 Notice to Defendant ("Green Form") (Ex. C to Stat. of Sigler); (d) Washington County District Court Procedure Re: Fines and Costs Review Hearings (Ex. D to Stat. of Sigler); (e) Notice of Date to Appear in Court ("Pink Form") (Ex. E to Stat. of Sigler); (f) Motion for Rule 8 Hearing on Inability to Pay Fines and/or Costs (form available to defendants from Judge or Court Clerk) (Ex. F to Stat.

of Sigler); (g) Courtesy Letter (form sent by Court Clerk if defendant fails to appear for costs review hearing) (Ex. G to Stat. of Sigler); (h) Bench Warrant Failure to Appear (form may be used if no response to courtesy letter) (Ex. H to Stat. of Sigler); (i) Order Setting Bond for Failure to Appear (used in conjunction with bench warrant form above) (Ex. I to Stat. of Sigler). Statement of Sigler at ¶6 (Ex. 45).

46.     As of February 19, 2021, Sharonica Carter owed $5,216.06 in fines, fees and costs pursuant to her balance statement, attached to Statement of Sigler as Exhibit J. Statement of Sigler at ¶7 (Ex. 45, 45-J).

47.     Amanda Feenstra has been permanently relieved of her Washington County fines, fees, and costs pursuant to an Order signed by Judge Carl Gibson and filed on December 16, 2020, attached to Statement of Sigler as Ex. K. Statement of Sigler at ¶8 (Ex. 45, 45-K); Ackerson Balance Statement (Ex. 46) (Ms. Feenstra was formerly known as Amanda Ackerson).

48.     As Ms. Feenstra has been permanently relieved of her fines, fees, and costs, she has no further obligation to appear before the Washington County District Court in relation to those fines, fees, or costs. Statement of Sigler at ¶8 (Ex. 45).

49.     The current procedures and practices of the Washington County District Court with respect to fines, fees, and costs, fully comply with the U.S. Constitution and with state law. There are no ongoing violations of law in Washington County with respect to fines, fees, and costs. *See generally*, Statement of Thomas with attachments (Ex. 44); Statement of Sigler with attachments (Ex. 45).

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). One of the fundamental functions of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54 (1986). Summary judgment may be granted when the moving party demonstrates there is no evidence to support the claims of

the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S. Ct. 2548, 2553-54. An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## ARGUMENT AND AUTHORITIES

### PROPOSITION I: DEFENDANT STATE JUDGES IN THEIR OFFICIAL CAPACITIES ARE NOT PERSONS UNDER § 1983

With respect to Plaintiffs' federal claims, each of the Defendant State Judges has been sued in his or her official capacity. But a state official in his or her official capacity is not a "person" capable of being sued under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). While there is an exception for prospective equitable relief, "the exception is narrow." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). "It applies only to prospective relief [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Id.* "[O]nly ongoing violations are covered." *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1189 (10th Cir. 1998), overruled on other grounds by *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). The exception is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past....". *Id.* (citation and quotation marks omitted). Thus, in light of the changes the Washington County District Court has made in their fines, fees, and costs procedures and practices, and because Plaintiffs are unable to show any evidence of "ongoing" violations of federal law in Washington County, Defendants are entitled to summary judgment on Plaintiffs' Federal claims.

## PROPOSITION II: PLAINTIFFS' CLAIMS PRIOR TO MARCH 2017 ARE TIME BARRED BY THE STATUTE OF LIMITATIONS

The statute of limitations period for an action brought under 42 U.S.C. §1983 is governed by the forum state's law pertaining to personal injury actions. *Wilson v Garcia,* 471 U.S. 261, 276-280, 105 S. Ct. 1938 (1985). The limitations period that applies in Oklahoma is therefore two years. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). That statute of limitations period begins to run when the cause of action accrues according to Federal law. *Smith v. City of Enid, ex rel., Enid City Comm'n,* 149 F.3d 1151, 1154 (10th Cir. 1998). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents,* 991 F.2d 628, 632 (10th Cir. 1993).

Pursuant to Fed. R. Civ. P. 8(c)(1), the lapse of "the statute of limitations is an affirmative defense." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). The Tenth Circuit has determined, as a matter of law, that every § 1983 claim is "in essence an action for injury to personal rights," *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984), and therefore applies the most analogous Oklahoma statute, which provides a two-year limitations period. *See* 12 O.S. § 95(A)(3) ("Civil actions . . . can only be brought within [two years] after the cause of action shall have accrued, and not afterwards . . . for injury to the rights of another."). *See also*, *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) ("Oklahoma's two-year statute of limitations applies.") (citing *Abbott v. Franklin*, 731 F.2d 661, 663 (10th Cir. 1984) (en banc)).

Even though the limitations period for § 1983 claims are borrowed from state law, the question of when a cause of action accrues under § 1983 remains one of federal law. *See Smith*, 149 F.3d at 1154 ("[F]ederal law . . . dictates when the statute of limitations begins to run for purposes of § 1983."). It is well settled that a "civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker*, 991 F.2d at 632. The injury in a § 1983 claim is the violation of a constitutional right, and such claims accrue "when the plaintiff knows or should know

that his or her constitutional rights have been violated." *Smith*, 149 F.3d at 1154 (citation omitted). The Court must first determine the alleged constitutional violation and identify when it occurred to find the date of accrual. *Id.* at 1155.

Plaintiffs have argued that the statute of limitations should be tolled because Defendant State Judges engaged in false, fraudulent, or misleading conduct calculated to lull Plaintiffs into sitting on their rights. These allegations include that the judges failed to advise them of their right to an ability to pay inquiry, denied their request to reduce their payments, and required same day payments. The statutes and court rules have been in effect since long before any Plaintiff was sentenced. *See e.g. Layman v. State*, 1988 OK CR 260, 764 P.2d 1358 (noting that appellant was due for determination of ability to pay in accordance with 22 O.S. § 983 and Rule 8). "All citizens are presumptively charged with knowledge of the law." *Atkins v. Parker*, 472 U.S. 115, 130–31, 105 S. Ct. 2520 (1985) (citing *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45 S. Ct. 491, 494 (1925)).

Plaintiffs filed this action on March 21, 2019, meaning any actions, which they believe entitle them to relief that occurred prior to March 21, 2017 are time barred by the statute of limitations. Plaintiffs allege the costs, fines, and fees at the time of assessment were outside their ability to pay. ¶42, 44. Each Plaintiff was sentenced and assessed costs and fees prior to March 21, 2017. Plaintiffs' criminal docket sheets show Ms. Feenstra pled guilty and was assessed costs, fines, and fees in April 2015. (*Amanda Ackerson Docket Sheet,* attached as Exhibit 1). She then agreed to a payment plan in February 2017. *Id.* Ms. Carter pled and was sentenced in September 2011. (*Sharonica Carter Docket Sheet*, attached as Exhibit 16). She was released from custody and entered a payment plan in October 2013. *Id.* Plaintiff Carter's suspended sentence was then revoked and she served a term in the custody of the Department of Corrections. She was released in October 2017. Nothing in the record establishes, and in fact there is no record, that any Plaintiff properly appealed the imposition of these costs, fines, and fees. Rule 8 has been in force and provided procedures since well before any Plaintiff was sentenced.

Both Plaintiffs Judgment and Sentences give notice of rights under Rule 8. (Ex. 3, p.2); (Ex. 24 p. 2). The letters given by DOC upon release also notified Plaintiffs that they were entitled to a hearing on "ability to pay" determination. Exs. 4, 25. 22 O.S. § 983 has been in effect in some form since 1971, most recently amended in 2018. 22 O.S. § 983a, which was implemented in 2016, further specifies means of relief to court debtors. Plaintiffs were given notice of statues conferring rights at the time of their pleas. There is no evidence that the court ever mislead either Plaintiff as to their rights. At all times, Plaintiffs were given notice of their rights to appeal, withdraw their pleas, and their rights under Rule 8. Relief should be denied for any claims which arose prior to March 21, 2017, including any claim related to either Plaintiff's sentencings.

## PROPOSITION III: PLAINTIFFS' CLAIMS ARE MOOT AND THEREFORE PLAINTIFFS LACK STANDING

The procedure under which collection of criminal fines, costs, and fees in Washington County is carried out is constitutionally and statutorily compliant. Washington County procedures began updating the process in August 2018 upon departure of former Judge DeLapp. *See* Statement of Facts 33-49. Plaintiff Feenstra participated in the process throughout, including orders for reduced payments, suspension of payments, and finally waiver of all outstanding financial obligations. Plaintiff Carter has chosen not to participate in the process, but that does not affect the availability and adequacy of the procedures in place for court debtors to seek relief.

To establish Article III standing, a plaintiff must demonstrate "(1) that he or she has 'suffered an injury in fact;' (2) that the injury is 'fairly traceable to the challenged action of the defendant;' and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.'" *Awad v. Ziriax,* 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 131 S. Ct. 1436, 1442 (2011)). These three (3) requirements are often referred to as "injury in fact, causation, and redressability." *Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217, 1224 (10th Cir. 2008). "In its starkest terms, the standing inquiry requires the Court to ask not only whether an injury has occurred,

but whether the injury that has occurred may serve as the basis for a legal remedy in the federal courts." *Schaffer v. Clinton*, 240 F.3d 878, 883 (10th Cir. 2001). "[S]tanding is determined as of the time of the filing of the Petition." *Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094, 1101 (10th Cir. 2006).

The existence of a live case or controversy is a constitutional prerequisite under Article III and therefore mootness is a threshold issue to Federal court jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "'Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'" *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)). Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit. *See Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007) ("Actions seeking a declaratory judgment must comport with the same mootness principles as any other suit." (internal quotation marks omitted)). As the Tenth Circuit noted in *Cox v. Phelps Dodge Corp.*, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." 43 F.3d 1345, 1348 (10th Cir. 1994) (brackets, en dash, and internal quotation marks omitted), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981(a)), as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

There are two forms of mootness, constitutional and prudential. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (citations omitted); *see also Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) (per curiam) ("The doctrine of mootness has two distinct branches."). Constitutional mootness considers whether a federal court has jurisdiction over actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

19

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055 (1997) (internal quotation marks omitted). A court may also consider the prudential-mootness doctrine. This doctrine generally applies only to requests for injunctive or declaratory relief. *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1492 (10th Cir. 1993) ("All the cases in which the prudential mootness concept has been applied have involved a request for prospective equitable relief by declaratory judgment or injunction."); *see Fletcher v. U.S.*, 116 F.3d 1315, 1321 (10th Cir. 1997); *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 727 (10th Cir. 1997). However, "[t]he court must decide whether a case is moot as to 'each form of relief sought.'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019)).

### A. Constitutional Mootness

Under Article III, federal courts only have jurisdiction over actual cases and controversies in which relief can be granted. "With respect to injunctive relief and the question of mootness, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *McKesson Corp. v. Hembree*, No. 17-CV-323-TCK-FHM, 2018 WL 4621833, *3 (N.D. Okla. Sept. 26, 2018) (quoting *Beattie v. U.S.*, 949 F.2d 1092, 1094 (10th Cir. 1991) (quotation marks and citation omitted)). The party requesting relief must "demonstrate a good chance of being likewise injured in the future." *Id.* (quoting *Beattie*, 949 F.2d at 1093). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *Id.* (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).

"'Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone.' *Citizen Ctr. v. Gessler*, 770 F.3d 990, 907 (10th Cir. 2014). A claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant,'

*Jordan [v. Sosa]*, 654 F.3d [1012,] 1025 [(10th Cir. 2011)]." *Prison Legal News*, 944 F.3d at 880.

"To constitute an exception to the mootness doctrine, it is not enough that an issue will escape review because of limited duration. It is also necessary that there be a reasonable expectation that the same complaining party [will] be subjected to the same action again."[3] *McKesson Corp.* 2018 WL 4621833, *2 (quoting *U.S. v. Seminole Nation of Okla.,* 321 F.3d 939, 944 (10th Cir. 2002) (internal quotations and citation omitted)). However, courts generally presume that people will operate within the law and not be subject to arrest. *See O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.").

Plaintiffs' claims for relief based on the procedure and treatment at the time of their sentencing and cost docket appearances are now moot. Plaintiffs cannot demonstrate they will be similarly injured in the future, as the procedures have changed to the benefit of criminal defendants and court debtors. Criminal defendants are now given multiple explicit notices of their rights under Rule 8. Thomas Statement (Ex. 44). Further, criminal defendants have multiple opportunities to assert those rights at cost docket appearances, and more formal Rule 8 hearings. Plaintiff Feenstra has received complete relief from payment obligations in addition to the previous relief she received through reductions and suspensions. *See generally*, Ackerson Docket (Ex. 1), Order (Ex. 15). Plaintiff Carter has not actually appeared at a review or otherwise sought relief. *See generally* Carter Docket (Ex. 16). When given court dates for review, Plaintiff Carter has chosen not to appear for review or seek the recall of outstanding warrants. *See Statement of Facts* 16-32. Therefore, Plaintiffs can no longer demonstrate a likelihood of

---

[3] The procedural changes began being implemented prior to Judge Thomas being sworn in and which culminated in modified collection procedures, which benefit all current and future criminal defendants and court debtors. *See generally* Statement of Facts 33-36. Further, the method by which the modifications were adopted counsels against a finding that there is risk of the previous practice resuming as former Judge DeLapp will not be returning to the bench.

the same injury in the future.

### B.  Prudential Mootness

The Tenth Circuit described the prudential mootness doctrine as follows:

> Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. Sometimes the plaintiff will seek an injunction against the enforcement of a regulation the relevant agency later offers to withdraw on its own. Sometimes the plaintiff will seek an order forcing a department to take an action that it eventually agrees to take voluntarily. However, it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap. While deciding the lawsuit might once have had practical importance, given the assurances of relief from some other department of government it doesn't any longer.… Though a remedial promise may not be enough to kill a case constitutionally, it can be enough to bring it to an end all the same as a matter of equity.

See *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210-1211 (10th Cir. 2012) (citations omitted); *Jordan v. Sosa*, 654 F.3d at 1024 ("a court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated and that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant" (citations internal quotations and internal emphasis omitted)).

The remedy Plaintiffs seek, a change in the sentencing and court debt collection procedures, has already been implemented in the Washington County District Court. See Statements of Judges. *See* Statement of Facts 33-49. Though the applicable rules for review of and relief from financial obligations imposed as part of valid criminal sentences are statutory and a matter of public record, the Court now provides multiple and specific notice, separate from the language on criminal defendant plea agreements and installment payment plans, of the remedies available through Rule 8. Statement of Facts 37(c)-(d); (Ex. 44-A). Court debtors are explicitly informed of their rights to seek relief from financial obligations. Further, the relief sought in the Amended Complaint is no longer necessary as to Plaintiff Feenstra because she no longer owes court debt to Washington County, having received full waiver under 22 O.S. § 983(a). Order (Ex. 15). Plaintiff Carter has not sought a hearing (which

22

would occur in front of a non-Washington County judge due to the current conflict). Because the Washington County District Court willingly updated the sentencing and collection procedures, a process which began prior to this suit even being filed, prudential mootness considerations make the relief Plaintiffs seek unnecessary remedies. Summary judgment should be granted in favor of Defendant State Judges.

## PROPOSITION IV: PLAINTIFFS' DUE PROCESS RIGHTS HAVE NOT BEEN VIOLATED

### A. *Due Process is Satisfied*

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law...." The Due Process Clause protects individuals against two types of governmental action: (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action is implemented in a fair manner. *See United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095 (1987) (internal quotations omitted) (discussing Fifth Amendment Due Process Clause). The United States Constitution requires due process when a person is to be deprived of life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Due process claims proceed in two stages. A court must first consider "whether there exists a liberty or property interest of which a person has been deprived," and if so, it must then consider "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

Procedural due process requires the balancing of three familiar factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893 (1976). "An essential principle of due process is

that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985) (*quoting Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652 (1950)). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, 96 S. Ct. 893 (*internal quotation marks omitted*) (*alteration in original*) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593(1972)). In other words, due process requirements are not rigid; rather, they "call[ ] for such procedural protections as the particular situation demands." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12, 99 S. Ct. 2100 (1979).

Specific to Plaintiffs' claim in this action, *Bearden v. Georgia* requires that a sentencing court must determine whether an indigent probationer willfully refused to pay before ordering imprisonment for failure to pay a fine.[4] If a criminal defendant's inability to pay was through no fault of his own, the court must consider alternative measures of punishment. 461 U.S. 660, 672, 103 S. Ct. 2064 (1983). *Bearden* elaborated on this doctrine by holding that "[d]ue process and equal protection principles converge in the Court's analysis in these cases." *Id.* at 665. *Bearden* claims are often analyzed through a hybrid due process and equal protection lens because these "issue[s] cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose ....'" *Id.* at 666–67 (*quoting Williams v. Illinois*, 399 U.S. 235, 260, 90 S. Ct. 2018 (1970) (Harlan, J., concurring)). *Bearden* itself, though, applied more of a due process approach. *Id.* at 666 n.8.

---

[4] It should be noted that no Plaintiff was sentenced to detention for failure to pay. Arrests pursuant to valid Failure to Appear warrants are not order of detention for failure to pay.

In Washington County, every criminal defendant has the opportunity to appear before a judge for consideration of payment terms according to Oklahoma statute and payment or installment plan. (Ex. 44, 45). Costs, fines, and fees are reviewed at sentencing, where appropriate, cost dockets, and Rule 8 hearings. *Id.* Washington County judges review criminal defendants' financial and health circumstances, and routinely grant relief in the form of agreed reduced payments, suspensions, and complete waivers. (Ex. 45). These procedures allow the court to consider both the interests of the criminal defendants and the interests of the state to ensure sentences are properly satisfied.

Criminal defendants are given notice of each hearing and the opportunity to seek relief at the cost docket and/or Rule 8 hearings. (Ex. 44, 45). There is a legitimate governmental interest in criminal defendants satisfying all portions of their sentences. Criminal defendants' installment plans are not mechanically imposed. No minimum payment is required. (Ex. 44, 45). Installment payments are agreed to by the criminal defendant and the court. (Ex. 44, 45). Various kinds of relief are available, including reduction of monthly payment, payment suspensions, or waiver of the outstanding balance. (Ex. 44, 45). That Plaintiffs did not immediately receive the relief they wanted or to which they believed they were entitled does not equate with violations of their due process.

No Plaintiff has been sentenced since Judge Thomas was sworn in. Plaintiffs' appearances on the cost dockets since former Judge DeLapp's departure have been constitutionally sound. No person in Washington County has or will be jailed for failure to pay their costs, fines, and fees. (Ex. 44-45). Failure to Appear warrants, with a standard bond amount, are only issued following attempts to contact a court debtor via courtesy letter that notifies the person of a missed court date. *Id.* These warrants are the court's compliance mechanism to bring people in to court to explain delinquencies, and are only issued after other less coercive methods are used. Criminal defendants are therefore provided all necessary due process during collections of costs, fines, and fees. Defendant State Judges should be granted summary judgment on Plaintiffs' federal due process claims.

25

### B. *Equal Protection is Satisfied*

The Fourteenth Amendment directs that "[n]o State shall make or enforce any law which shall

. . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV, § 1. "Equal protection is essentially a direction that all persons similarly situated should be treated

alike." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). That directive is aimed at the State:

"equal protection only applies when the state treats two groups, or individuals, differently." *Powers v.

Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004).

Strict scrutiny is only applied when a classification targets a suspect class or a fundamental

right. *See Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). To survive strict

scrutiny, the government must show that its classification is narrowly tailored to achieve a compelling

government interest. *See id.* Intermediate scrutiny applies to such things as gender-based classifications.

*See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 321 F.3d 950, 959 (10th Cir. 2003). These types

of classifications will survive an equal protection challenge if there is "an 'exceedingly persuasive

justification' for those measures." In other words, if the government can show that the challenged

classification serves an important governmental interest and is substantially related to achieving that

objective, it will survive under intermediate scrutiny. *Id. (quoting United States v. Virginia*, 518 U.S. 515,

524, 116 S. Ct. 2264 (1996)). Finally, if a classification does not target a suspect class, involve a

fundamental right, or implicate intermediate scrutiny, then "the statute need only be rationally related

to a legitimate government purpose." *Todd*, 279 F.3d at 1210. Wealth, or lack thereof, is not considered

a suspect class under equal protection. *See Lewis v. Casey*, 518 U.S. 343, 347, 116 S. Ct. 2174 (1996);

*Petrella v. Brownback*, 787 F.3d 1242, 1266 (10th Cir. 2015).

The Supreme Court analyzed differential treatment by wealth under equal protection in *San

Antonio Indep. Sch. Dist. v. Rodriguez*, which considered a wealth-based equal protection challenge to

Texas's system of apportioning school funds based principally on local tax bases. 411 U.S. 1, 93 S. Ct.

1278 (1973). The Court concluded that wealth-based distinctions were impermissible if "because of

26

their impecunity[, the indigent] were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." *Id.* at 20, 93 S. Ct. 1278, 1290. An equal protection claim will fail when a benefit is simply diminished rather than denied altogether. "[A]t least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages." *Id.* at 24, 93 S. Ct. 1278, 1291. *See also Ross v. Moffitt,* 417 U.S. 600, 616, 94 S. Ct. 2437 (1974) ("The duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . ., but only to assure the indigent defendant an adequate opportunity to present his claims fairly.").

It is neither fundamentally unfair nor unconstitutional to impose a repayment obligation without notice and an opportunity to be heard, provided that before enforced payment or sanctions for nonpayment may be imposed, there is an opportunity to be heard regarding ability to pay. *State v. Blank*, 930 P.2d 1213, 1221 (Wash. 1997). Ability to pay is considered at the time court debt becomes due (per Oklahoma law). *DeRonde v State*, 1986 OK CR 29, 715 P.2d 84. That information is generally presented to the court by the criminal defendant or court debtor and the court can and does make further inquiry when necessary. Stat. of Sigler (Ex. 45). The court considers the resources available to a criminal defendant, along with other factors, to determine appropriate conditions of repayment, if any. Stat. of Sigler (Ex. 45).

Each criminal defendant on an agreed installment plan, regardless of financial status, has the opportunity to appear on the cost docket prior to the installment due date and present information to the court for consideration of repayment. Stat. of Sigler (Ex. 45). Repayment modifications are available by request and are also considered at various stages of proceedings, including cost docket appearances and by filing a Motion for a Rule 8 hearing. *Id.* Criminal defendants and court debtors therefore have multiple opportunities for the court to consider repayment obligations up to and including waiver of all outstanding fines, fees and costs. These individualized assessments are sufficiently rationally related to the government's interest in ensuring that criminal defendants satisfy

their sentences. Plaintiff request for relief under the equal protection clause should be denied.

**PROPOSITION V: DECLARATORY RELIEF SHOULD BE DENIED**

In order for an action for declaratory relief to be justiciable, the requested relief must resolve an actual case or controversy, which affects the behavior of the defendant toward the plaintiff. *Cox v. Phelps Dodge Corp,* 43 F.3d 1345, 1348 (10th Cir. 1994). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461 (1937). A declaratory judgment must terminate the parties' controversy and the relief granted must redress the Plaintiff's injury either directly or indirectly. Redressability means the court must be able to grant relief through the exercise of its power. *Nova Health Sys. v. Gandy,* 416 F.3d 1149 (10th Cir. 2005). "Each plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). "To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). Past injuries are relevant to showing a risk of future harm, but "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660 (1983) (quotation and alterations omitted). "The proper remedy for litigants who feel wronged by an adverse judgment is through the appellate process." *Coleman v. Court of Appeals*, 550 F.Supp. 681, 684 (W.D. Okla. 1980) (citations omitted). Plaintiffs' request for declaratory relief should be denied.

Under the Declaratory Judgment Act, a district court "*may* declare the rights and other legal relations of [an] interested party seeking [declaratory relief]." 28 U.S.C. § 2201(a) (emphasis added).[5]

---

[5] The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2010), provides that:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The "actual controversy" referenced in the Federal Declaratory Judgment Act ("FDJA"), invokes the case-or-controversy requirements of Article III of the U.S. Constitution. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1241 (10th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764, 771 (2007); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth* 300 U.S. 227, 240, 57 S. Ct. 461 (1937)). For the purposes of the FDJA, an actual controversy occurs if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.,* 312 U.S. at 273, 61 S. Ct. 510. Article III's case-or-controversy requirement operates to ensure that declaratory relief is available only when a live controversy continues to exist. *Id.*

The five factors district courts consider in deciding whether to exercise their discretion to hear and decide claims for declaratory judgment are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (internal quotation marks omitted). The court's discretion is "unique and substantial" when deciding whether to declare a litigant's rights. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, (1995).

All factors weigh in favor of the Defendant State Judges. The first factor, whether a declaratory action would settle the controversy, weighs in the Defendant Judges' favor because declaratory relief

29

in this instance would not actually settle any controversy as to Plaintiff Feenstra, as she no longer owes court debt in Washington County. Order (Ex. 15). Plaintiff Carter owes, but has not appeared or sought relief. *See* Statement of Facts 17-32, *see also e.g.* Carter Docket, cm Jan 3, 2018, cm June 6, 2018, Nov 14, 2018 (Ex. 16). In fact, as with other Plaintiffs in this action, if and when Plaintiff Carter appears for review (and not just for a warrant recall), her case will likely be reassigned to a judge outside of Washington County. For the same reason, the second factor, whether a declaratory judgment will clarify the legal relations, also weights in favor of the judges.

The third factor likewise weighs in favor of the judges as Plaintiffs are seeking an order dictating the nature and result of Washington County procedures, rather than participating in those procedures directly. As for the fourth factor, granting declaratory relief in this instance "would certainly create friction between the federal and state courts and improperly encroach upon the state court's jurisdiction" as the federal court would be dictating the course of criminal sentencing and collection of criminal penalties in Washington County. In this instance, federalism and comity concerns outlined in *Younger v. Harris* counsel against declaratory relief. "*Younger* governs whenever the requested relief would interfere with a state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A., ex rel., Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002). A declaratory judgment would involve intrusive interference with, and monitoring of, the day-to-day conduct of state court proceedings.[6]

Most importantly, Plaintiffs have an alternate remedy, obviating the need for any declaratory relief. Plaintiffs, per the rules, have the opportunity to seek relief, and in fact, received relief of various magnitude prior to filing and throughout the litigation of this action. *See* Ackerson Docket, cm May

---

[6] In *Knox v. Bland*, the plaintiff was seeking an order requiring a state court judge to either rule a certain way or manage its docket in a particular manner. *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (holding that federal courts lack the "authority to issue . . . a writ to direct state courts or their judicial officers in the performance of their duties"). The Court characterized the action as one seeking a writ, but the principle is applicable here. Plaintiffs are seeking an order directing Defendant State Judges to conduct their dockets in a particular way.

12, 2017, Jan 10, 2020, May 22, 2020 (Ex. 1). Additionally, Plaintiffs may appeal any order that results in incarceration for failure to pay court debt or file a writ with the Court of Criminal Appeals, challenging decisions regarding installment payments. Plaintiffs, therefore, are not eligible for declaratory relief because there is a more suitable remedy. The state proceedings can, and do, afford criminal defendants relief when they participate in the process. In this case, Plaintiffs have had the opportunity to seek review of ability to pay on any cost docket, and according to the Oklahoma Court of Criminal Appeals, the burden is on the Plaintiffs to show they are unable to pay. *Winbush v. State*, 2018 OK CR 38, 433 P.3d 1275. A bench warrant for failing to appear will only issue if Plaintiffs fail to appear for a cost review and fail to make some payment, and only after a courtesy letter is sent to alert the criminal defendant of the missed court date. (Ex. 44, 45 ¶6(g), 45(g)). To the extent anyone is jailed on a failure to appear warrant, it is in satisfaction of the bond set pursuant to the warrant, just as with any other court issued warrant.

To the extent Plaintiffs seek the federal court to require outcome determinative payment reviews – that is an improper use of declaratory relief. As evidenced by Plaintiff Feenstra, adequate process exists for relief from court debt imposed pursuant to criminal conviction. Plaintiffs failed to exercise relief granted by the rule until after suit was filed. That Plaintiffs simply failed to exercise those rights does not now give them the opportunity to challenge the state court's mechanisms for orderly consideration of collecting criminal court debt. Declaratory relief is, therefore, inappropriate and should be denied.

## PROPOSITION VI: PLAINTIFFS CANNOT SUSTAIN THESE STATE LAW CLAIMS AGAINST DEFENDANT STATE JUDGES

Plaintiffs claim that Washington County Judges' decisions and judicial actions relating to their fines, fees, and costs violated the rules of the Oklahoma Court of Criminal Appeals relating to fines, fees, and costs and violated their due process rights under the Oklahoma Constitution. However, for the reasons outlined below, Plaintiffs cannot succeed on these state-law claims.

**A. As a threshold matter, a civil lawsuit against a judicial officer is not a proper mechanism for challenging judicial error under Oklahoma law.[7]**

It is improper under state law to challenge a judicial decision by bringing a civil lawsuit against the judge making the decision. Under Oklahoma law, the proper mechanisms for challenging judicial decisions are: (1) requesting that the judge reconsider his or her decision, *e.g.*, *LCR, Inc. v. Linwood Prop.*, 1996 OK 73, 918 P.2d 1388, 1393; (2) appealing the judge's allegedly erroneous decision; or (3) seeking a writ against the erring judge from a higher court. *See* Okla. Ct. Crim. App. R. 10.6 (providing for writs of prohibition, mandamus, and habeas corpus). Seeking relief from a coordinate judicial officer via a separate civil lawsuit is improper. *See State, ex rel., Bonney v. Arthurs,* 1946 OK 177, ¶6, 169 P.2d 561, 562. For this reason, among others, Plaintiffs cannot succeed on their state-law claims via this civil lawsuit.

**B. Oklahoma Court of Criminal Appeals Rules do not provide a separate or private cause of action.**

In *Holbert v. Echeverria*, 1987 OK 99, 744 P.2d 960, the Oklahoma Supreme Court adopted a three-prong test for determining whether a state regulatory statute implies a private right of action. This test, known as the "Holbert test," consists of the following three prongs: (1) the plaintiff must belong to that class for whose "especial" benefit the statute was enacted and the class must be narrower than the "public at large"; (2) the statute must either explicitly or implicitly give some indication the legislature intended to create a private remedy; and (3) the private remedy must not be inconsistent with the underlying purposes of the legislative scheme. *See Walker v. Chouteau Lime Co., Inc.*, 1993 OK 35, 849 P.2d 1085, 1086–87 (*citing Holbert*, 744 P.2d 960).

---

[7] This action was removed, but removal does not allow a plaintiff to proceed in federal court on a state-law claim that would not be entertained in state court. A state-law suit against a state judge to challenge a judicial decision is no more proper than a federal lawsuit against a federal judge to challenge a judicial decision.

The Court of Criminal Appeals Rules are general rules of procedure for Oklahoma District Courts and apply to everyone that participates in the criminal process. Criminal defendants with financial obligations pursuant to criminal convictions are not a special class of people for which the Rules were created. The rules do not discuss "violations" or provide a remedy beyond instructions for how to lodge an appeal. *See Morgan v. Galilean Health Enter.*, 1998 OK 130, ¶9, 977 P.2d 357 ("An intent to create a cause of action is shown where there are explicit references in the enactment's text to one's right to vindicate a breached duty"). Rule 8.1, *et seq.*, was implemented by and as a complement to state statute to give courts direction for the execution of the statute. *See* 22 O.S. § 983(D) ("The Court of Criminal Appeals shall implement procedures and rules for methods of establishing payment plans of fines, costs, fees, and assessments by indigents, which procedures and rules shall be distributed to all district courts and municipal courts by the Administrative Office of the Courts."). Rule 8.5 gives discretion to the judge to provide relief or report back to court for a reassessment. ("In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs." Creating a private remedy in this instance would be inconsistent with the purpose of the legislative scheme. The statute which enables the Court of Criminal Appeals to create its rules regarding consideration and payment of fines, costs and fees specifically provides for waiver of all outstanding court debt may be waived. *See* 22 O.S. § 983a. Section 983a provides for a four step process, including twenty-four timely installment payments before waiver of all costs may be granted. *Id.* at § 983a(4).

**C. Carter's claim for failure to conduct an ability-to-pay hearing at her judgment and sentencing (Count One) fails.**

Carter claims that former Judge DeLapp violated Rule 8.1 by sentencing her to pay fines, fees, and costs without an assessment of her ability to pay such fines, fees, and costs.[8] Am. Compl. at ¶58. But DeLapp did not order Carter to "immediately satisfy" the fines and costs that were part of her sentence. Rather, DeLapp determined that Carter could not "immediately satisfy" the fines and costs imposed and instead of ordering her to do so, he ordered to make installment payments of $75.00 per month. Am. Compl. at ¶54; Ord. Pay Fines and Costs (filed 11/20/2013) (Ex. 20).

Rule 8.1 states "When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the *defendant's ability to immediately satisfy the fine and costs*." (emphasis added). The Oklahoma Court of Criminal Appeals has said that when a defendant is sentenced to a term of imprisonment, the ability to pay is properly assessed at the time of release. In *DeRonde v State*, 1986 OK CR 29, 715 P.2d 84, 87, the Court of Criminal Appeals found that the issue of the assessment of court costs at sentencing without a hearing on his ability to pay at the time of the imposition of the judgment and sentence was brought prematurely because "ability to pay court costs, in a criminal action, is properly determined after his release from incarceration." (*citing Jones v. State*, 1984 OK CR 70, 682 P.2d 757). *See also*, *Dyer v. State*, 1991 OK CR 89, 815 P.2d 689, 691 (as long as the imposition of fines, fees, and costs are within statutory bounds, the ability to pay inquiry is proper when monies become due. "While the appellant may presently be an indigent, this Court has no way of knowing his financial status at the time the fines are due to be paid."); *Nesbitt v. State*, 2011 OK CR 19, 255 P.3d 435, 441, n.5 ("We have consistently ruled that challenging cost assessments based on inability to pay is premature pending some attempt to collect them.").

---

[8] The portion of the Motion to Amend to bring this claim for Plaintiff Feenstra was denied. *See* Order [Doc. 65].

Plaintiff Carter was in custody of COJAC at time of plea and remained in custody until October 2013.Amended Complaint 50-1, ¶ 28 (Exhibit 17). Therefore, no ability to pay hearing was required at the time of sentencing. *See Smith v. State*, 155 P.3d at 795 ("the status of a defendant's indigency is subject to change and therefore, continuously subject to review.") The ability to pay inquiry is premature at sentencing when a defendant is sentenced to a term of incarceration, so any claims based on failure to consider ability to pay at the time of sentencing under Rule 8 must fail. *Hubbard v. State*, 2002 OK CR 8, 45 P.3d 96, 102 (*Lumpkin concurring*) (Rule 8 "is in place for the failure to pay once time is served".) *See also*, *State v. Blank*, 930 P.2d at 1220 (the Constitution does not require inquiry into ability to pay at time of sentencing). Even if the court at sentencing does not explicitly advise a defendant of the exact dollar amount of their costs, this does not violate the Rules of the Court of Criminal Appeals. A plea can still be knowing and voluntary even if the fines and costs are not specific or explained. *Quick v. State*, No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished) (attached hereto as Ex. 48). It is neither fundamentally unfair nor unconstitutional to impose a repayment obligation without notice and an opportunity to be heard, provided that before enforced payment or sanctions for nonpayment may be imposed, there is an opportunity to be heard regarding ability to pay. *State v. Blank*, 930 P.2d at 1221. Here, the undisputed material facts show that individuals are not required to pay the entire amount of the fines, fees, or costs at sentencing, that they choose an installment amount that they wish to pay, and that procedures for allowing individuals to assert inability to pay are in place and are followed. *See* Stat. of Thomas (Ex. 44) and Stat. of Sigler at (Ex. 45). Finally, Mr. DeLapp is no longer a judge and there are no allegations that any of the remaining defendants have violated Rule. 8.1. For all of these reasons, Carter's claim under Rule 8.1 fails.

## D. Plaintiffs' state-law claims against Judge Sigler for incarceration without ability-to-pay inquiry fail.

Plaintiffs' state law claims against Judge Sigler for violation of the Due Process Clause of the Oklahoma Constitution (Count V) and violation of Rule 8.4 of the Rules of the Court of Criminal

Appeals (Count VII) arise from Judge Sigler's alleged incarceration of Ms. Feenstra without an ability-to-pay hearing. Feenstra alleges that in May of 2018, Judge Sigler issued an arrest warrant for her, which caused her to be arrested without a prior ability-to-pay hearing [Am. Compl. – Doc. 66 at ¶63], and that she was required to make a payment or else remain in jail. [Am. Compl. – Doc. 66 at ¶52].

On February 26, 2018, Ms. Feenstra was ordered to appear for her costs review hearing on May 4, 2018. Court Minute (filed Feb. 26, 2018) (Ex. 8). On May 4, 2018, Ms. Feenstra failed to appear for her costs review hearing and a bench warrant was issued for failure to appear. Court Minute (May 4, 2018) (Ex. 1). The failure-to-appear warrant was executed on May 9, 2018. (Ex. 9). On May 10, 2018, Ms. Feenstra paid the bond on the warrant and was released. Although the order Judge Sigler signed incorrectly stated that Ms. Feenstra had been remanded to jail for "failure to pay," the courts records otherwise make it clear that the reason Ms. Feenstra was arrested was because of the failure to appear warrant. Once Ms. Feenstra paid the bond on the warrant, she was released. Ms. Feenstra was never actually jailed for "failure to pay." Rather, as Judge Sigler explained in his deposition, the "failure to pay" form he signed was incorrect. Ms. Feenstra had actually been arrested based on the bench warrant for failure to appear:

> **Q. And so this is an order remanding Ms. Feenstra to jail for failure to pay; right?**
>
> A. That's what it's -- that's what it's entitled, yes.
> . . .
> **Q. Do you know how much she had failed to pay that precipitated the issuing of this order?**
>
> A. Well, this order actually is a document that was utilized that was utilized in error by the district court. Because back at this time, it would have been Ms. Ackerson failed to appear for fines and costs review and a warrant was issued for arrest. So this document is -- was utilized, and we -- we have discontinued the use of this document because it was not an appropriate or correct document regarding what was happening in court.

Sigler Depo. 73:2 – 19 (Ex. 40).

36

A court has inherent authority to compel compliance or appearance through the issuance and return of bench warrants. Each Plaintiff was given a due date and a hearing date for their installment payments. If a defendant does not appear for a court-ordered hearing, the issuance of a bench warrant for failure to appear does not violate the defendant's constitutional rights. If/when a court debtor is subject to an actual order of detention (which a bench warrant is not), the rules provide for an appeal of an order of detention for non-payment. *See* Rule 8.8. None of the Plaintiffs has alleged such an appeal. Because the warrant was issued based on Ms. Feenstra's failure to appear at her costs review hearing rather for any "failure to pay," her claims cannot succeed.

### E. Plaintiffs' state-law claims for equitable relief against Judge Sigler declaring that he has violated Rule 8.5 or ordering him to vacate Plaintiff's obligations under Rule 8.5 or to provide some other relief under Rule 8.5 (Count VI) fail.

Okla. Ct. Crim. App. R. 8.1, *et seq.,* provides process and remedy for ongoing review of a defendant's continued ability to pay her court debts. Specifically, Rules 8.3, 8.4, 8.5, and 8.6 provide for installment payments with a fixed due date of each payment, opportunity to be heard as to failure to make payments, and incarceration if defendant fails to appear on or before the due date of installment or for examination for ability to pay. *See* 22 O.S. § 983; *see also* Okla. Ct. Crim. App. R. 8.3-8.6. Each Plaintiff agreed to, and did make payments via an installment plan. *See e.g.* Ex. 5 & 26. "Clear and adequate statutory remedies may be sufficient to foreclose injunctive relief in circumstances where…judicial power is exercised." *Osage Nation v. Bd. of Cnty. C'rs of Osage Cnty.,* 2017 OK 34 ¶41, 394 P.3d 1224. The Supreme Court of Oklahoma has observed that, as applied to an injunction (as well as an application for writ) "if an action sought to be enjoined has been performed and no particular relief could be afforded, the issues in this Court had become abstract and hypothetical; therefore the case was moot." *Colclazier v State of Okla., ex rel., Okla. Indigent Def. Sys.*, 1997 OK 161, ¶7, 951 P.2d 622 (citing *Westinghouse Electric Corp. v. Grand River Dam Auth.*, 1986 OK 20 ¶17, 720 P.2d 713). *Waste Connections, Inc. v. Okla. Dep't of Envtl. Quality*, 2002 OK 94, ¶ 9, 61 P.3d 219 (adequacy of

an alternative remedy will depend on whether that remedy provides an opportunity to afford complete relief on party's asserted legally cognizable right).

Plaintiffs assert in the Amended Complaint that the law requires consideration of ability to pay and they have not received that consideration. However, a reduction in payment or an adjustment of terms necessarily implies that the court considered the ability of court debtor to pay. Plaintiffs may believe that only total vacatur of their outstanding fees, costs, and fines is the proper relief required, but the rule on which Plaintiffs rely does not require total vacatur. Rule 8.5 does not stand for mandatory permanent relief from ALL costs and fees. Rather, Rule 8.5 provides as follows:

> In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs.

The Court of Criminal Appeals, interpreting *Bearden v. Georgia*, 461 U.S. 660 (1983), and relying on *Tollet v. State*, 2016 OK CR 15, 387 P.3d 915 and *McCaskey v State*, 1989 OK CR 63, 781 P.2d 836, determined that the inquiry into the ability to pay comes only after the debtor demonstrates that failure to pay was not willful. The State has the burden to show that the debtor has not paid, but the debtor then has the burden to show that the failure to pay was not willful because the court is not in possession of the information needed to determine the ability to pay without the debtor. *Winbush v. State,* 2018 OK CR 38 at ¶¶7, 11 ("it is not 'inequitable, oppressive, or substantially prejudicial' to place the burden of proof on the defendant when the State cannot viably bear the burden because, if such facts exist, they are "'peculiarly within [the defendant's] knowledge, and could be easily susceptible of proof by him."") *Id.* (*quoting Tollet,* 387 P.3d 917).

The dockets and court orders indicate that Plaintiffs received relief through reductions in payment obligations. *See generally* Ackerson Docket, (Ex. 1); Carter Docket, (Ex. 16). Review of Plaintiffs' state court dockets reveal that Feenstra no longer owes Washington County court debt. *See*

Stat. of Sigler at ¶8 (Ex. 45). Each Plaintiff periodically had a date set for review before the court in which they have the opportunity seek reduction or waiver and present evidence of disability or poverty. The court complies with the rule by considering the debtor's circumstances, reducing payments and setting a date for reexamination in accordance of the rule. Feenstra requested Rule 8 hearings according to the rules apart from a cost docket appearance and received relief. Despite being represented by multiple attorneys in this matter, Carter has not done so.

The award of a permanent injunction is a matter of equitable concern and an extraordinary remedy that should not be granted lightly. *Dowell v. Pletcher*, 2013 OK 50, ¶¶ 5, 6, 304 P.3d 457, 460. To be entitled to an injunction in Oklahoma, plaintiff's injury must not be nominal, theoretical or speculative. *Id.* at ¶ 7, 304 P.3d 457, 460; *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, 925 P.2d 546, 549. Further, this injury or threat of injury shown by a party must be based upon a "reasonable probability" of its occurrence. "There must be a reasonable probability that the injury sought to be prevented will be done if no injunction is issued—a mere fear or apprehension of injury will not be sufficient." *House of Realty, Inc. v. City of Midwest City*, 2004 OK 97, ¶ 11, 109 P.3d 314, 318 (citation omitted). An "injunction is used to prevent future misconduct ...". . *Chrysler Corp. v. Clark,* 1987 OK 32, ¶ 2, 737 P.2d 109, 110; 12 O.S. § 1651; *Okla. Pub. Emp. Ass'n v. Okla. Dep't of Cent. Serv.*, 2002 OK 71, ¶ 20, 55 P.3d 1072, 1081. Under Washington County's current procedures, neither Carter nor Feenstra are in danger of "future misconduct" by any of the defendants. *See* Stat. of Sigler (Ex. 45) and Stat. of Thomas (Ex. 44).

Similarly, a declaratory judgment is only appropriate when there is an "actual controversy." 12 O.S. §§ 1651-1657. There is no "actual controversy" between Plaintiffs and Defendants in this matter that can be redressed by an order of this Court. But for a conflict of interest, Defendants would be ready, willing, and able to hear and adjudicate under their current procedures any motion Ms. Carter may wish to file seeking relief from her payment obligation. *See* Stat. of Sigler (Ex. 45) and Stat. of Thomas (Ex. 44). "The requirements of an actual controversy are an actual, existing justiciable

controversy between parties having opposing interests that are direct and substantial." *City of Broken Arrow v. Bass Pro Outdoor World, L.L.C.*, 2011 OK 1, ¶ 13, 250 P.3d 305, 312, as corrected (Jan. 19, 2011). Here, there is no such redressable controversy between the parties with respect to hearing a motion for relief from payment obligations. This District Judge cannot order the Defendant District Judges hear the case if they deem there is a conflict and, but for a conflict, the Defendants District Judges would not be opposed in any way to lawfully ruling on any such motion under their current policies and practices brought in accordance with state law.

## CONCLUSION

Defendant State Judges respectfully request that pursuant to Fed. R. Civ. P. 56, this Court grant summary judgment in their favor and for any and all such relief as the Court may deem appropriate.

Respectfully submitted,

 s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA #22422**
**DEVAN A. PEDERSON, OBA #16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:      (405) 521-3921
Facsimile:      (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
        devan.pederson@oag.ok.gov
*Attorneys for Defendant State Judges*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of February, 2021, a true and correct copy of the foregoing instrument was sent via e-mail to the following:

J. Spencer Bryan
Steven J. Terrill
Bryan & Terrill Law, PLLC
3015 E. Skelly Dr., Ste. 400
Tulsa, OK 74105
sjterrill@bryanterrill.com
(918) 935-2777
*Attorneys for Plaintiffs*

Michael Lacovara
Lilia Vazova
Latham & Watkins, LLP
885 Third Avenue
New York, NY 10022
Michael.Lacovara@lw.com
Lilia.Vazova@lw.com
(212) 906-1200
*Attorneys for Plaintiffs*

Arthur Ago
John Fowler
Lawyers Committee for
Civil Rights Under Law
1500 K Street NW, Ste 900
Washington D.C., 20005
lwatson@lawyerscommittee.org
mbraden@lawyerscommittee.org
(202) 662-8340
*Attorneys for Plaintiffs*

Jon Williford
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
John.williford@oag.ok.gov
(405) 521-3921
*Attorney for Defendants OIDS and Sutter*

 s/ Stefanie E. Lawson
**Stefanie E. Lawson**

41