# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and
SHARONICA CARTER,

                                    Plaintiffs,

v.

JARED SIGLER, *et al.*,

                                    Defendants.

No. 19-cv-00234- JFH-CDL

**PLAINTIFFS' CORRECTED\*\* MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM AND STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT**

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago*
John Fowler*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara*
Lilia Vazova*
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1377
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*

*\* = admitted pro hac vice*

\*\*This corrected Motion for Partial Summary Judgment includes certain non-substantive formatting changes and a schedule of the exhibits cited in the Statement of Uncontroverted Material Facts.  That schedule was omitted in error and is now included for the convenience of the Court and the parties.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND TO THE MOTION ...........................................................................1

    I.      PROCEDURAL HISTORY...............................................................1

    II.     CONSTITUTIONAL AND STATUTORY REQUIREMENTS FOR THE ASSESSMENT OF FINES, FEES, AND COSTS AGAINST DEFENDANTS IN OKLAHOMA.........................................................3

STATEMENT OF UNCONTROVERTED MATERIAL FACTS ..................................5

    I.      DISTRICT COURT PRACTICES UNDER FORMER JUDGE CURTIS DELAPP. ......................................................................................5

    II.     DISTRICT COURT PRACTICES UNDER SPECIAL JUDGE JARED SIGLER.......................................................................................9

    III.    PLAINTIFFS' INTERACTIONS WITH THE DISTRICT COURT. ..................10

           A.    Sharonica Carter.....................................................................10

           B.    Amanda Feenstra. ..................................................................16

    IV.    MODIFICATIONS TO DISTRICT COURT PRACTICES AFTER JUDGE DELAPP'S RESIGNATION. ..................................................24

STANDARD OF REVIEW ........................................................................................26

ARGUMENT ..............................................................................................................27

    I.      DEFENDANTS VIOLATED PLAINTIFFS' DUE PROCESS RIGHTS UNDER THE U.S. AND OKLAHOMA CONSTITUTIONS. ............................27

           A.    Judge Sigler Is Liable under Section 1983 Because Judges Sigler and DeLapp Denied Plaintiffs Notice and Opportunity To Be Heard Prior to Arrest and Detention (Count 2) and Punished Plaintiffs on the Basis of Their Poverty (Count 3). ..................................27

           B.    Judge Sigler Is Liable under the Oklahoma Constitution Because Judges Sigler and DeLapp Denied Plaintiffs Notice and Opportunity To Be Heard Prior to Arrest and Detention (Count 5). ......................................................................................................34

i

II.     PLAINTIFF CARTER WAS DENIED A HEARING INTO HER
        ABILITY TO PAY AT JUDGMENT AND SENTENCING IN
        VIOLATION OF OKLAHOMA COURT OF CRIMINAL APPEALS
        RULE 8.1 (COUNT 1)..........................................................................................35

III.    BOTH PLAINTIFFS WERE DENIED RELIEF DUE TO POVERTY OR
        DISABILITY, IN VIOLATION OF OKLAHOMA COURT OF
        CRIMINAL APPEALS RULE 8.5 (COUNT 6).....................................................36

IV.     BOTH PLAINTIFFS WERE DENIED AN ABILITY-TO-PAY
        HEARING PRIOR TO INCARCERATION, IN VIOLATION OF
        OKLAHOMA COURT OF CRIMINAL APPEALS RULE 8.4 (COUNT
        7). .......................................................................................................................39

CONCLUSION.....................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*103 Invs. I, L.P. v. Square D Co.*,
  470 F.3d 985 (10th Cir. 2006) ...........................................................................31

*Aacen v. San Juan Cnty. Sheriff's Dep't*,
  944 F.2d 691 (10th Cir. 1991) ...........................................................................30

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970).............................................................................................32

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................26

*Barnthouse v. City of Edmond*,
  73 P.3d 840 (Okla. 2003).....................................................................................35

*Bearden v. Georgia*,
  461 U.S. 660 (1983)....................................................................................... passim

*Branson v. Price River Coal Co.*,
  853 F.2d 768 (10th Cir. 1988) ...........................................................................27

*Celotex v. Catrett*,
  477 U.S. 317 (1986).............................................................................................26

*Elam v. Mun. Ct.*,
  757 P.2d 1338 (Okla. Crim. App. 1988)............................................................29

*Foucha v. Louisiana*,
  504 U.S. 71 (1992)...............................................................................................29

*Guy v. City of Oklahoma City*,
  760 P.2d 1312 (Okla. Crim. App. 1988)............................................................29

*Hafer v. Melo*,
  502 U.S. 21 (1991)...............................................................................................32

*Halley v. Okla. ex rel. Okla. State Dep't of Human Servs.*,
  176 F. Supp. 3d 1268 (E.D. Okla. 2016) ...........................................................34

*Harper v. Young*,
  64 F.3d 563 (10th Cir. 1995) .............................................................................29

*Hennigh v. City of Shawnee*,
  155 F.3d 1249 (10th Cir. 1998) ....................................................................29, 35

*Kentucky v. Graham,*
    473 U.S. 159 (1985)................................................................................27, 32

*Langford v. Grady Cnty. Det. Ctr.,*
    670 F. Supp. 2d 1213 (W.D. Okla. 2009) ........................................................33

*Layton v. Bd. of Cnty. Comm'rs,*
    512 F. App'x 861 (10th Cir. 2013) ..................................................................32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986).......................................................................................27

*McGee v. City of Oklahoma City,*
    761 P.2d 863 (Okla. Crim. App. 1988).............................................................36

*Miller v. City of Konawa,*
    No. 17-CIV-115-JHP, 2017 WL 6328943 (E.D. Okla. Dec. 11, 2017)................35

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)...................................................................................27, 32

*Morrissey v. Brewer,*
    408 U.S. 471 (1972)........................................................................................29

*Okla. Corr. Prof'l Ass'n, Inc. v. Jackson,*
    280 P.3d 959 (Okla. 2012) ................................................................................4

*Rutledge v. Turner,*
    495 P.2d 119 (Okla. Crim. App. 1972)....................................................4, 29, 31

*State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas,*
    297 P.3d 378 (Okla. 2013) ...........................................................................4, 34

*Tate v. Short,*
    401 U.S. 395 (1971)..........................................................................3, 29, 31, 32

*Thomas v. IBM,*
    48 F.3d 478 (10th Cir. 1995) ..........................................................................27

*Turner v. Rogers,*
    564 U.S. 431 (2011)......................................................................3, 29, 30, 32

*United States v. Hernandez,*
    655 F.3d 1193 (10th Cir. 2011) ......................................................................35

*West v. Atkins,*
    487 U.S. 42 (1988)..........................................................................................28

*Williams v. Illinois,*
   399 U.S. 235 (1970)..................................................................................29, 31, 32

## STATUTES

42 U.S.C. § 1983.................................................................................................3, 27

OKLA. STAT. ANN. tit. 20, § 106.4 (West 2021) ..............................................5, 31

OKLA. STAT. ANN. tit. 22, § 983 (West 2021) ................................................37, 39

OKLA. STAT. ANN. tit. 22, § 983a (West 2021)......................................................24

## RULES

Fed. R. Civ. P. 56...................................................................................................26

N.D. Okla. Civ. R. 79.1.............................................................................................5

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.1 (West 2021) .............4, 35

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.4 (West 2021) .............4, 39

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.5 (West 2021) .............4, 37

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.7 (West 2021) .............4, 31

## CONSTITUTIONAL PROVISIONS

OKLA. CONST. art. II, § 7 .................................................................................3, 34, 35

U.S. CONST. amend. XIV ...................................................................................3, 28, 29

## SCHEDULE OF EXHIBITS CITED IN STATEMENT OF UNDISPUTED MATERIAL FACTS

| Ex. | Date | Document |
|-----|------|----------|
| 1 | 11/06/2020 | Transcript of the Deposition of Judge Curtis DeLapp (Ret.) |
| 2 | 10/26/2020 | Transcript of the Deposition of Judge Jared Sigler |
| 3 | 11/02/2020 | Transcript of the Deposition of Ms. Sharonica Carter |
| 4 | 01/28/2021 | Transcript of the Deposition of Judge Linda Thomas |
| 5 | 11/12/2020 | Transcript of the Deposition of Mrs. Amanda Feenstra |
| 6 | 10/13/2020 | Transcript of the Deposition of Ms. Glenda Powell |
| 7 | 01/12/2021 | Transcript of the Deposition of Ms. Halee Lawrence |
| 8 | 08/11/2011 | Plea of Guilty and Summary of Facts Form, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 9 | 09/22/2011 | Plea Hearing Court Minute, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 10 | 09/22/2011 | Transcript of Proceedings Before Judge DeLapp, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 11 | 09/26/2011 | Judgment and Sentence Form, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 12 | 10/31/2013 | Order Granting Time to Pay Fines and Costs and Requiring Appearance for Nonpayment, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 13 | 01/09/2014 | Order Remanding Defendant to Jail for Failure to Pay Fines and Costs, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 14 | 06/10/2014 | State of Oklahoma's Motion to Revoke Suspended Sentence, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 15 | 06/01/2014 | Judgment and Sentence after Revocation Proceedings Form, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |

| Ex. | Date | Document |
|-----|------|----------|
| 16 | 06/22/2016 | Amended Judgment and Sentence Form, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 17 | 06/23/2016 | Order Imposing Incarceration Costs, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 18 | 10/17/2017 | Order Granting Time to Pay Fines and Costs and Requiring Appearance for Nonpayment, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 19 | N/A | Intentionally Omitted |
| 20 | 09/28/2018 | Court Minute, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 21 | 09/28/2018 | Order Granting Time to Pay Fines and Costs and Requiring Appearance for Nonpayment, *State of Oklahoma v. Carter*, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 22 | 02/08/2021 (last updated) | ODCR Docket Sheet, *State of Oklahoma v. Carter*, Case No: YO-2011-0001, Case No: YO-2011-0001 (Wash. Cnty. Dist. Ct.) |
| 23 | 04/29/2015 | Plea of Guilty and Summary of Facts Form, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) and *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) (*Note*: Docket references to "Ackerson" are to Plaintiff Amanda Feenstra.) |
| 24 | 04/29/2015 | Plea Hearing Court Minute, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 25 | 04/29/2015 | Plea Hearing Court Minute, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) |
| 26 | 05/22/2015 | Judgment and Sentence Form, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) |
| 27 | 05/22/2015 | Judgment and Sentence Form, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 28 | 01/22/2016 | Order Imposing Incarceration Costs, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) |

| Ex. | Date | Document |
|-----|------|----------|
| 29 | 02/02/2017 | Order Granting Time to Pay Fines and Costs and Requiring Appearance for Nonpayment, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) and *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 30 | N/A | Intentionally Omitted |
| 31 | 05/07/2018 | Bench Warrant for Failure to Pay, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) and *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 32 | 05/09/2018 | Warrant – Return of Service, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) |
| 33 | 05/10/2018 | Arraignment Court Minute, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) and *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 34 | 05/10/2018 | Order Remanding Defendant to Jail for Failure to Pay Fines and Costs, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) and *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 35 | 02/08/2021 (last updated) | ODCR Docket Sheet, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00465 (Wash. Cnty. Dist. Ct.) |
| 36 | 02/01/2021 (last updated) | ODCR Docket Sheet, *State of Oklahoma v. Ackerson*, Case No: CF-2014-00528 (Wash. Cnty. Dist. Ct.) |
| 37 | 05/22/2019 | Plea Hearing Court Minute, *State of Oklahoma v. Flowers*, Case No: CF-2019-00077 (Wash. Cnty. Dist. Ct.) |
| 38 | 09/18/2019 | Plea Hearing Court Minute, *State of Oklahoma v. Martin*, Case No: CF-2019-00062 (Wash. Cnty. Dist. Ct.) |
| 39 | N/A | Form of Rule 8 Notice to Defendant |
| 40 | N/A | Plea of Guilty and Summary of Facts form, District Court of Washington County |
| 41 | 07/03/2019 | Plea Hearing Court Minute, *State of Oklahoma v. Graham*, Case No: CF-2019-00001 (Wash. Cnty. Dist. Ct.) |

Plaintiffs Amanda Feenstra and Sharonica Carter, by and through their undersigned counsel, respectfully submit this Motion for Partial Summary Judgment with respect to Counts 1-3 and 5-7 of the Amended Complaint, Dkt. No. 66.

## PRELIMINARY STATEMENT

Plaintiffs are two women who were ordered to pay fines, fees, and costs in connection with criminal proceedings conducted in Washington County.  The Judicial Defendants (as defined below) have conceded in testimony and subsequent conduct that the initial levies on Plaintiffs violated the United States Constitution, the Oklahoma Constitution, and Oklahoma law.  Those initial violations were compounded by subsequent refusals to follow constitutional and statutory dictates, failures to conduct required inquiries and make required findings concerning Plaintiffs' ability to pay, and summary and improper incarceration—acts that visited on Plaintiffs the vices of a longstanding policy and practice to burden individuals with court costs they could never pay.

Plaintiffs now seek summary judgment on their claims against the Judicial Defendants. Plaintiffs do not submit affidavit evidence—all that the Court needs are the documents produced by Defendants and their agents, the deposition testimony of the judges and clerks in Washington County who effected the violations of Plaintiffs' rights, and the uncontroverted testimony of Plaintiffs, as elicited by counsel for Defendants.  On that record, there is no genuine dispute that the Judicial Defendants violated Plaintiffs' constitutional and statutory rights.  Therefore, Plaintiffs are entitled to summary judgment.

## BACKGROUND TO THE MOTION

### I.   PROCEDURAL HISTORY.

On March 21, 2019, Amanda Feenstra, Lonnie Feenstra, and Sharonica Carter filed a petition in Washington County District Court (the "District Court") against (1) Judges Jared Sigler, Curtis DeLapp (Ret.), and John Gerkin (Ret.) (the "Original Judicial Defendants"), and (2) the

1

Oklahoma Indigent Defense Services and its then-Executive Director, Craig Sutter, and its Board of Directors (collectively, "OIDS"), *Amanda Feenstra, et al., v. Jared Sigler, et al.,* Case No. CV-2019-12 (Wash. Cnty. Dist. Ct. Mar. 21, 2019).  Plaintiffs brought federal constitutional claims for failure to provide notice and an opportunity to be heard prior to arrest and detention and for punishment solely on the basis of indigence, seeking declaratory and injunctive relief, including vacatur of all outstanding fines, fees, and costs assessed against each Plaintiff, and reasonable attorneys' fees and costs of the action.  *See* Dkt. No. 3-1.  On May 3, 2019, Defendants removed Plaintiffs' petition to this Court.  Dkt. No. 3.

In May 2019, the Original Judicial Defendants and OIDS each moved to dismiss Plaintiffs' petition.  Dkt. Nos. 10, 11.  After briefing and oral argument, this Court (per Judge Frizzell) issued an order on the Original Judicial Defendants' motion on November 13, 2019, and an order on the OIDS motion the following day.  Dkts. Nos. 47, 48.  The Court upheld nearly all of Plaintiffs' claims.  *Id.*  The Court also allowed Plaintiffs the opportunity to amend their allegations against both sets of Defendants.  *See* Dkt. No. 47 at 26; Dkt. No. 48 at 16; Dkt. No. 65 at 4.

Following Plaintiffs' request for leave to amend, Dkt. No. 50, on January 23, 2020, the Court granted Plaintiffs' request, *inter alia*, to remove former Judge DeLapp as a defendant, to name Judge Sigler in claims formerly asserted against Judge DeLapp, and to add as defendants the current District Judge and Associate District Judge of the District Court, in their official capacities, for the sole purpose of effecting any relief ordered by the Court regarding the initial imposition of fines, fees, and costs on Plaintiffs.  Those judges, Judges Linda Thomas and Russell Vaclaw, along with Judge Sigler, are the "Judicial Defendants," each of whom is sued in her or his official capacity.  *See* Dkt. No. 65.  The parties later stipulated to former plaintiff Lonnie Feenstra's dismissal.  *See* Dkt. No. 82.

The operative pleading states seven claims.  Plaintiffs bring federal constitutional claims pursuant to 42 U.S.C. § 1983 for failure to provide notice and opportunity to be heard prior to arrest and detention (Count 2, against Judge Sigler), punishment solely on the basis of indigence (Count 3, against Judge Sigler), and denial of right to counsel (Count 4, against OIDS).  Also alleged are (1) a claim for denial of procedural due process in violation of the Oklahoma Constitution (Count 5, against Judge Sigler), and (2) statutory claims for violation of (i) Rule 8.1 of the Oklahoma Court of Criminal Appeals, for failure to conduct ability-to-pay hearings at judgment and sentencing (Count 1, against Judges Thomas and Vaclaw), (ii) Rule 8.5 of the Oklahoma Court of Criminal Appeals, for failure to provide relief due to poverty and disability (Count 6, against Judge Sigler), and (iii) Rule 8.4 of the Oklahoma Court of Criminal Appeals, for failure to conduct ability-to-pay hearings prior to incarceration for nonpayment (Count 7, against Judge Sigler).

## II.   **CONSTITUTIONAL AND STATUTORY REQUIREMENTS FOR THE ASSESSMENT OF FINES, FEES, AND COSTS AGAINST DEFENDANTS IN OKLAHOMA.**

The Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution prohibit imprisoning individuals for nonpayment of judicially-imposed fines, fees, and costs merely because those individuals are unable to pay those amounts.  *Bearden v. Georgia*, 461 U.S. 660, 671 (1983); *see also Tate v. Short*, 401 U.S. 395, 397-400 (1971).  The Due Process Clause also prohibits incarceration without both notice that ability to pay is a critical issue and an opportunity to be heard and to respond to statements and questions about financial status.  *See Turner v. Rogers*, 564 U.S. 431, 447-448 (2011).  The protections afforded by the Due Process Clause of the Oklahoma Constitution (Article 2, Section 7) are at least comparable, as the state provision is "coextensive with its federal counterpart, although there may be situations in which the Oklahoma provision affords greater due process protections."  *State ex rel. Bd. of Regents of*

3

*Univ. of Okla. v. Lucas*, 297 P.3d 378, 391 n.25 (Okla. 2013) (citing *Okla. Corr. Prof'l Ass'n, Inc. v. Jackson*, 280 P.3d 959, 963 n.13 (Okla. 2012)).

None of these protections is novel, and the Oklahoma Court of Criminal Appeals, under the authority of title 22, section 983(D) of the Oklahoma Statutes, adopted rules to protect the constitutional rights of those against whom the state assesses and collects fines, fees, and court costs. The statute and rules follow *Rutledge v. Turner*, 495 P.2d 119 (Okla. Crim. App. 1972), which identified eight "inescapable" conclusions that became "guidelines for all District Courts of this State," because they were "essential to preservation of the intendments of the Fourteenth Amendment of our Federal Constitution." *Id.* at 122-24. The *Rutledge* conclusions were codified, often *in haec verba*, as Rules 8.1-8.8 of the Court of Criminal Appeals (collectively, "Rule 8"). OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII (West 2021).

Rule 8's operative provisions are mandatory—they are not suggestions. Rule 8.1 requires that "[w]hen the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, *a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs*." *Id.* at Rule 8.1 (emphasis added). Rule 8.4 similarly provides that "[i]f the defendant fails to make an installment payment when due, *he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due*." *Id.* at Rule 8.4 (emphasis added). Finally, Rule 8.5 provides that "[i]n the event the defendant, *because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs*[.]" *Id.* at Rule 8.5 (emphasis added).

Rule 8.7 further requires that a "court reporter shall be present and report all such judicial hearings required by this Section," *id.* at Rule 8.7, unless "the proceedings [are] preserved in

accordance with Section 106.4 of Title 20," *id.* (which contemplates preservation through electronic recordings).  The Rule also requires that "[a]ny order of the court . . . *shall set forth the findings of the court regarding the defendant's ability or inability to pay* the fine and/or costs, the refusal or neglect to do so, if that be the case, *the amount of the installments and due dates, if so ordered, and all other findings of facts and conclusions of law necessary to support the order of the court.*"  *Id.* (emphases added).

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### I.   DISTRICT COURT PRACTICES UNDER FORMER JUDGE CURTIS DELAPP.

1.      Former Judge Curtis DeLapp served as District Judge from 2007 until his resignation in August 2018.  Ex. 1, DeLapp Dep. 21:17-19, 236:16-17.

2.      Between 2007 and 2017, Judge DeLapp was in charge of assessing and enforcing fines, fees, and costs against criminal defendants in the District Court.  Ex. 1, 21:9-11, 21:17-19, 24:7-25:5; Ex. 2, Sigler Dep. 9:14-20.

3.      Judge DeLapp presided over thousands of sentencing proceedings, including the sentencing of both Plaintiffs.  *See* Ex. 1, 21:24-22:14; Ex. 9, 9/22/11 Court Minute; Ex. 24, 4/29/15 Court Minute; Ex. 25, 4/29/15 Court Minute.[1]  The judgments entered after sentencing included fines, fees, and costs.  *See* Ex. 11, 9/26/11 Carter Judgment and Sentence, Attachment A; Ex. 26, 5/22/15 Feenstra Judgment and Sentence, Attachment A (CF-2014-465); Ex. 27, 5/22/15 Feenstra Judgment and Sentence, Attachment A (CF-2014-528).

---

[1] All non-testimonial materials on which Plaintiffs rely for purposes of this Motion are included as produced by Defendants or third parties or as provided to Defendants by Plaintiffs.  Redactions of certain personal-identifying information (*e.g.*, Social Security Numbers) have been made to permit filing on the public record.  *See* N.D. Okla. Civ. R. 79.1.

4.      Before imposing a sentence, Judge DeLapp did not know the total fines, fees, and costs that would be assessed against a defendant.  Ex. 1, 47:16-22.  He did not tell defendants the total of their fines, fees, and costs when he imposed a sentence.  *Id.*, 47:23-48:1.

5.      Instead, a clerk's office employee, often the person known as the "cost administrator," calculated the total amount of court debt sometime *after* sentencing.  Ex. 1, 52:4-12, 60:5-10.

6.      At sentencing, defendants typically were told only the prospective amounts of fines and certain fees, such as the Victims Compensation Assessment ("VCA") fee.  *See* Ex. 22, Carter Docket Sheet (9/22/11 minute entry); Ex. 35, Feenstra Docket Sheet, CF-2014-00465 (4/29/15 minute entry); Ex. 36, Feenstra Docket Sheet, CF-2014-00528 (04/29/15 minute entry).

7.      Numerous other fees and costs were not disclosed while a defendant was before the judge and represented by counsel.  Thus, the total fines, fees, and costs imposed were substantially higher than those disclosed at sentencing.  *Compare* Ex. 9 (showing a total of $1,250) *with* Ex. 11, Attachment A (showing a total of $2,726); *compare* Ex. 35 and Ex. 36 (4/29/15 minute entries showing total of $3500 in fines, fees, and costs) *with* Ex. 29, 2/2/17 Order (showing $12,852.06 in fines, fees, and costs); *see also* Ex. 9 (stating only "court costs" owed with no amount specified); Ex. 24 (stating "f[ines] & c[osts]" recommended with no amount of costs specified); Ex. 25 (same); Ex. 4, Thomas Dep. 65:10-24.

8.      Judge DeLapp's "general practice at sentencing" was "to not inquire" whether a criminal defendant could pay prospective fines, fees, and costs, in a lump sum or in installments.  Ex. 1, 76:25-77:3; *see also id.*, 58:25-59:9, 59:16-60:2.  Likewise, his "general practice was not to inquire about depend[ents] or disability or fines, fees, and costs from other jurisdictions at sentencing."  Ex. 1, 76:20-24; *see also id.*, 54:12-21, 55:11-19.

9.      Judge DeLapp knew that "Rule 8.1 require[d] a judicial hearing on a defendant's ability to immediately pay" any fines, fees, or costs assessed by the court, but "did not conduct judicial hearings" as to this issue and "instead sent the [defendant] to the cost administrator" (an employee in the court clerk's office).  Ex. 1, 205:17-25; *see also id.*, 53:10-21, 59:16-23.

10.     Judge DeLapp did not instruct the cost administrator or other clerical staff to review an individual's affidavit of indigency or inquire about employment, financial status, fines, fees, or costs imposed in other jurisdictions, dependents, or physical or mental disability.  Ex. 1, 60:11-14, 61:25-62:21, 70:19-71:21.  Nor were court clerks told to consider other circumstances that might entitle the individual to a waiver of fines, fees, and costs.  *Id.*, 71:2-11.

11.     Judge DeLapp signed every proposed order calculating the total fines, fees, and costs prepared by courthouse personnel.  Ex. 1, 65:20-23.  He did not verify or lower the amount written in by those personnel.  *Id.*, 49:9-16, 66:2-5, 122:23-123:1.

12.     Judge DeLapp did not hold a hearing after the cost administrator determined the total amounts of fines, fees, and costs to be imposed.  Ex. 1, 207:16-20.

13.     When individuals were subject to a custodial sentence, they were ordered upon release to return to the courthouse and "went to the fines and costs clerk" without appearing before a judge for an assessment of ability to pay.  Ex. 1, 67:18-23, 68:4-8.

14.     With respect to those individuals released from custody who owed fines, fees, and costs, Judge DeLapp did not instruct the cost administrator to consider or review affidavits of indigency or to account for dependents or disabilities in calculating an installment plan for repayment of court debt.  Ex. 1, 70:19-71:1, 122:9-11.  Nor did he instruct his cost administrator that she could waive fines, fees, and costs altogether.  *Id.*, 71:8-11; 123:10-13.  Instead, payment

plans were subject to his "unwritten rule" that "the minimum [monthly] amount" was $75.  Ex. 2, 53:18-54:9.

16. Calculation of an individual's total court debt and creation of any installment payment was sent from the clerk's office to Judge DeLapp.  His practice was not to ask whether the relevant individual had fines, fees, and costs assessed in other jurisdictions.  Ex. 1, 73:19-74:10.  He also did not go back and review the individual's affidavit of indigency, nor did he review any notes that he took about a defendant's criminal history or other financial obligations.  *Id.*, 74:3-6, 74:7-10.  He regarded his judicial obligation as limited to "checking to make sure typographical errors" or "math errors" had not been made.  *Id.*, 75:4-19.

16. Meetings between the cost administrator and individuals to set up payment plans were not recorded.  Ex. 1, 70:5-14; 161:6-8.

17. Following the clerk's calculation of fines, fees, and costs, those placed on a payment plan were instructed to appear at regular "fines and costs reviews" or "cost docket proceedings."  *See* Ex. 36 (5/12/17 minute entry).

18. During Judge DeLapp's tenure, those proceedings were held once or twice per month, and typically involved 100 to 150 individuals.  Ex. 1, 77:20-78:3, 78:17-21.

19. When presiding over cost docket proceedings, Judge DeLapp's practice was not to ask whether individuals appearing before him had any fines, fees, and costs assessed in other jurisdictions, or whether they had dependents or physical or mental disabilities.  Ex. 1, 85:4-12, 85:21-86:2, 86:23-87:1.

20. Judge DeLapp's "general practice" was to avoid lowering the amount assessed against any individual.  Ex. 1, 183:23-184:13.  Indeed, he would often impose or approve increases

for jail incarceration costs or other post-sentencing and post-judgment charges.  *Id.*, 184:10-13, 245:9-246:13.

21.     When individuals were behind on their payments, Judge DeLapp's "standard practice" was to set a bond for the total overdue amount.  Ex. 1, 141:22-142:5.  The bond could run to thousands of dollars.  *Id.*

22.     After setting a bond for the total overdue amount, Judge DeLapp "always asked" if the individual could "pay it upfront or make a payment"; "if they [could not] give . . . a payment, then they would be remanded" to jail.  Ex. 1, 142:6-12.

23.     Judge DeLapp detained individuals in his courtroom to induce them to make a minimum payment, and would tell them:  "If you can pay this, then you can be released."  Ex. 1, 201:22-202:13.

24.     Judge DeLapp "never relieved" any individual in his "15 years on the bench of his or her fines, fees, and costs in their entirety."  Ex. 1, 209:10-13.  He is not aware of any other judge in the District Court doing so either.  *Id.*, 209:14-17.

25.     Under Judge DeLapp, no record was made of cost docket proceedings.  Ex. 1, 140:1-16.

## II.   **DISTRICT COURT PRACTICES UNDER SPECIAL JUDGE JARED SIGLER.**

26.     Special Judge Jared Sigler joined the District Court in January 2017.  Ex. 2, 9:14-20.  Soon thereafter, he assumed sole responsibility for the cost docket.  *Id.*, 7:14-17, 8:5-7.

27.     Judge Sigler does not know the total amount of fines, fees, and costs imposed on an individual when they make their first appearance at the cost docket.  Ex. 2, 15:3-9.

28.     During cost docket proceedings, Judge Sigler does not have a consistent list of questions to examine ability to pay fines, fees, and costs.  He might "sometimes" ask an individual questions related to employment status and changes in financial conditions.  Ex. 2, 15:24-16:11,

19:17-20:7. He "sometimes, [but] not all the time" asks if a person has any dependents, and "sometimes" asks about disabilities. *Id.*, 16:16-17:4, 20:8-13. Similarly, he only "sometimes" asks if an individual has outstanding debts in other jurisdictions in Oklahoma, but does not think he has "ever asked" if an individual owes fines, fees, or costs in other states. *Id.*, 17:5-18:7, 18:20-19:16. Cost docket proceedings before Judge Sigler, like those previously before Judge DeLapp, are not recorded. *Id.*, 69:21-70:12; 78:7-10.

29.     Judge Sigler continued Judge DeLapp's practice of remanding to jail any individual who was behind in monthly payments and unable to pay an arrearage on the spot. Ex. 2, 29:11-30:11, 79:23-80:5; *see also* Ex. 1, 78:4-10, 78:22-79:5, 201:22-202:23.

30.     The orders setting bonds for nonpayment contained no language providing notice of the individual's rights under Rule 8. Ex. 2, 89:18-21; *see also* Ex. 13, 1/9/14 Order; Ex. 34, 5/10/18 Order.

31.     At the time Judge Sigler joined the bench, the District Court "didn't have Rule 8 hearings." Ex. 2, 35:4-9. The District Court did not begin "coming up with a system that implemented the Rule 8 [hearings]" until after August 2018. *Id.*, 35:10-16.

32.     The practice of incarcerating individuals for nonpayment of court debts continued until at least January 2019. Ex. 2, 88:9-22.

## III.     PLAINTIFFS' INTERACTIONS WITH THE DISTRICT COURT.

### A. Sharonica Carter.

33.     Sharonica Carter is a 25-year-old woman of limited education who presently lives with her mother in Louisiana. Ex. 3, Carter Dep. 11:1-18, 12:13-18, 23:22-24:6, 118:15-18; Ex. 10, 9/22/2011 Carter Sentencing Tr., 4:18-20.

34.     On September 22, 2011, when Ms. Carter was 16 years old, she pleaded no contest to a youthful offender charge of attempted robbery with a weapon. *See* Ex. 8, 8/11/11 Carter Plea.

35.     Before Ms. Carter's plea, she was advised by her OIDS-provided attorney that she would pay a $1,000 fine and a VCA fee, resulting in a total obligation of around $1,300.  Ex. 3, 103:21-104:1.

36.     At sentencing, Judge DeLapp also told Ms. Carter that she would pay a $1,000 fine and a $250 VCA fee.  Ex. 10 at 6.  This statement was incomplete, as the total of Ms. Carter's fines, fees, and costs had not been calculated at that time.  Ex. 1, 127:13-19, 128:3-6.  Neither Judge DeLapp nor Ms. Carter's attorney disclosed other amounts Ms. Carter would be required to pay.  *See* Ex. 10 at 6-9; Ex. 16, Carter Amended Judgment and Sentence; Ex. 1, 127:13-19, 128:3-6; Ex. 3, 98:14-99:9, 103:18-104:1, 104:17-105:9.

37.     At sentencing, Judge DeLapp conducted no inquiry into Ms. Carter's ability to pay the $1,250 in fines and VCA fees that had been disclosed, and did not otherwise ask her any questions related to her income, employment, education, or basic expenses.  *See generally* Ex. 10; Ex. 1, 207:25-208:9.

38.     On September 26, 2011, deputy clerk Carla Fairlie calculated on Attachment A to Ms. Carter's judgment and sentencing form that Ms. Carter owed a total of *$2,726* in fines, fees, and costs, rather than just the previously disclosed $1,000 fine and $250 VCA fee.  *See* Ex. 11 at Attachment A; *see also* Ex. 1, 128:20-129:7.

39.     Judge DeLapp did not conduct a hearing regarding whether Ms. Carter could pay the assessed amounts (either immediately or in installments).  Ex. 1, 130:1-10.  Nor did he provide Ms. Fairlie any guidance regarding her calculation of Ms. Carter's fines, fees, and costs.  Ex. 1, 129:8-25.

40.     Before Judge DeLapp signed the form prepared by Ms. Fairlie, he did not inquire into whether Ms. Carter owed any fines, fees, and costs from other jurisdictions.  Ex. 1, 130:17-

25.  Nor did he consider waiving or reducing Ms. Carter's prospective fines, fees, and costs.  *Id.*, 131:6-9.

41.     On October 31, 2013, Ms. Carter appeared before Judge DeLapp, who ordered her released from juvenile custody.  Judge DeLapp also ordered her to set up a payment plan for repayment of her court debt, which totaled $2,801 at the time.  *See* Ex. 12, 10/31/13 Order.  He did not ask Ms. Carter any questions related to her employment, whether she had any disability, whether she owed court debts in other jurisdictions, or about her basic living expenses.  *See* Ex. 22 (10/31/13 minute entry); Ex. 1, 134:4-17.

42.     After her appearance before Judge DeLapp, Ms. Carter met with a member of the clerk's staff.  Ex. 1, 132:6-22, 134:18-23; Ex. 12.  Consistent with Judge DeLapp's "unwritten rule" to impose a minimum monthly payment of $75, Ex. 2, 53:9-15, 53:18-54:9, Ms. Carter was placed under a plan that required her to pay that amount each month.  *See* Ex. 1, 132:6-22, 134:18-23; Ex. 12.

43.     Judge DeLapp signed the order imposing Ms. Carter's payment plan without conducting any hearing regarding Ms. Carter's ability to pay and without speaking to the cost administrator about any circumstances particular to Ms. Carter.  Ex. 1, 136:5-24.

44.     Ms. Carter could not find a job after being released from custody, due to her juvenile criminal history.  Ex. 3, 21:7-22.  She was often told by potential employers (at least those who called her back) that her prior conviction was the reason they could not offer her a job.  *Id.*, 22:5-23:9.

45.     Still, Ms. Carter "kept trying to get a job."  Ex. 3, 23:10-15.  She found temporary employment at UPS in Oklahoma City for approximately two months in 2017, but could not find another job after that because of her record.  *Id.*, 26:18-21, 46:21-25.  Ms. Carter tried to get hired

by Family Dollar in Tulsa, but after a background check, she was told that she had an outstanding arrest warrant in the District Court. *Id.*, 26:22-27:6. Likewise, she could not get a job at Pepsi or at a hospital doing janitorial services because of her District Court warrants (as described below). *Id.*, 58:17-59:1.

46.     Given Ms. Carter's inability to find work, when she appeared before Judge DeLapp at a cost docket proceeding on January 9, 2014, Ms. Carter had not made monthly minimum payments. *See* Ex. 13 (stating that Ms. Carter was "ordered to pay $75/month beginning 11/29/13" and "has paid 0").

47.     At her appearance, Judge DeLapp asked Ms. Carter, "[D]o you have your money?" She responded, "No, sir." Judge DeLapp then immediately said, "Bailiff, take her." Ex. 3, 33:3-24, 35:8-18.

48.     When Ms. Carter told Judge DeLapp that she could not find a job, he responded, "Well that's tough." Ex. 3, 35:8-36:6. At no point did Judge DeLapp ask Ms. Carter about her financial obligations or whether her criminal conviction was inhibiting her job search. *See* Ex. 1, 139:6-11.

49.     Ms. Carter was handcuffed and taken to jail. *See* Ex. 3, 33:3-34:5, 34:15-21.

50.     Judge DeLapp set a bond for her release in the amount of $150, based on two months of missed payments at $75 per month, without taking into consideration whether Ms. Carter was able to find employment, whether she had funds to pay the bond, or whether she had any mental or physical disabilities. *See* Ex. 1, 138:10-15, 141:13-21; Ex. 13.

51.     Later that day, Ms. Carter's mother "scrape[d] up" the required $150 and paid the District Court, after which Ms. Carter was released. *See* Ex. 3, 34:9-14; Ex. 22 at 11 (showing receipt received for $150 payment on 1/9/14). Ms. Carter's payments remained at $75 per month.

Ex. 22 (minute entries indicating that monthly minimum payments were not lowered beneath $75 after January 2014).

52.     In May 2014, Ms. Carter was arrested for forgery in Tulsa County, Oklahoma. *See* Ex. 14, 6/10/14 Motion to Revoke.   On June 1, 2016, Ms. Carter's suspended sentence in Washington County was revoked due to her probation violation, and she was incarcerated. *See* Ex. 15, 6/1/16 Carter Judgment and Sentence; Ex. 16; Ex. 17, 6/23/16 Order.

53.     Shortly after Ms. Carter's release from custody, in October 2017, Judge DeLapp ordered her to make payments toward her fines and fees, which had ballooned to *$6,331.44*. *See* Ex. 18, 10/17/17 Order.

54.     On October 17, 2017, Ms. Carter met with cost administrator Dana Forbes to set up a plan for the repayment of Ms. Carter's $6,331.44 court debt. Ex. 3, 109:16-110:24.  Again following Judge DeLapp's "unwritten rule," Ex. 2, 53:9-15, 53:18-54:9, Ms. Forbes set Ms. Carter's payment plan at $75 per month. *See* Ex. 18.  When Ms. Carter explained that she "couldn't pay $75" because she was "just getting out" and did not have a job, and that she could only pay $25 per month, Ms. Forbes responded, "No.  You've got to pay $75." Ex. 3, 109:16-111:2.

55.     Judge DeLapp signed a new installment payment order without conducting any hearing into Ms. Carter's ability to pay and without speaking to Ms. Forbes about Ms. Carter's ability to pay.  Ex. 1, 159:7-14, 160:11-15, 160:22-161:8.

56.     At no other point when Ms. Carter appeared before Judge DeLapp did he conduct a hearing into her ability to pay.  Ex. 3, 115:10-17.  Instead, "every time" Ms. Carter "and DeLapp came face-to-face," he would ask her "Do you have the money?  If not, you're going to jail.  Pack your toothbrush.  Good luck." *Id.*

57.     On September 28, 2018, after Judge Sigler assumed Judge DeLapp's cost docket responsibilities, Ms. Carter appeared before Judge Sigler for a cost docket proceeding.  Ex. 21, 9/28/18 Order.  At that appearance, Ms. Carter told Judge Sigler that she was unable to make her $75 payment because she had no money.  Ex. 3, 36:15-24.  Judge Sigler told Ms. Carter that she had to pay $50 by 3:00 p.m. that afternoon or go to jail.  *Id.*, 38:6-10, 61:16-19, 77:15-18, 78:16-79:4, 114:8-115:17.

58.     Ms. Carter's grandmother and aunt paid the $50.  Ex. 3, 36:15-38:12, 77:6-18, 114:8-115:5.  Her payments remained at $75 per month.  Ex. 21; Ex. 20, 9/28/18 Court Minute.

59.     Ms. Carter currently owes over $5,200 to the District Court.  *See* Ex. 22 (reflecting $5,216.06 in outstanding debt).  At a payment rate of $75 per month, it will take nearly 6 years to satisfy this debt.

60.     Ms. Carter "can't pay anything" toward her fines, fees, and costs "because [she] do[es]n't have anything left over after [her] food, after [her] bare necessities."  Ex. 3, 127:10-19.  She is "flat broke."  *Id.*, 128:13-129:9.  No record evidence exists to dispute these facts.

61.     The last grade that Ms. Carter completed was tenth grade, which she finished in jail.  Ex. 3, 11:1-4, 11:8-10.  She does not have a GED and never took college courses.  *Id.*, 23:22-24:6.  Her only other training or education is a "career tech" program in jail, in which she learned forklifting, warehouse manufacturing, building, and wood shop.  *Id.*, 11:5-7, 11:11-18, 12:13-18.

62.     Ms. Carter has worked a series of jobs in Oklahoma in the last three years, including at a plastics company, a steel company, a butcher shop, Taco Bell, and UPS.  Ex. 3, 25:7-26:17.  Nearly all of these jobs were temporary or part-time, except her job for AZZ Steel Galvanizing, which entailed hanging and twisting wires for 12-hour shifts in temperatures sometimes exceeding

100 degrees, and which she left after suffering heatstroke on the job. *Id.*, 48:8-15, 48:22-49:13, 49:23-51:17, 54:6-55:2, 55:15-56:5, 56:10-17, 56:18-57:23.

63.     As described above, Ms. Carter tried to get a job at Pepsi and a janitorial position at a hospital, but could not because of her District Court arrest warrants issued after she was unable to stay current with the monthly payment plan.  Ex. 3, 58:8-59:18; *see also id.*, 117:12-118:12 (noting payments of approximately $300 for warrants identified by a prospective employer).  Ms. Carter believes she had warrants when she worked for Taco Bell, but the hiring manager was her friend's sister, and gave her a job "because everybody deserves a second chance." *Id.*, 59:2-8.

64.     Since January 2020, Ms. Carter has been working at a McDonald's in Louisiana, where she makes $7.25 working fewer than 30 hours a week.  Ex. 3, 61:20-62:8, 74:10-15, 74:16-18.   She makes only $230 per biweekly paycheck. *Id.*, 120:17-121:2.

65.     Ms. Carter spends a little under $150 per month on food.  Ex. 3, 120:17-23.  She spends $65 for her phone, and then spends the balance on necessities, including toothpaste, pads, tampons, and transportation to work. *Id.*, 120:11-12, 120:17-23, 122:13-16.  She gives her mother anything left for food and shelter. *Id.*, 119:15-21, 128:13-21.

66.     Ms. Carter cannot currently pay anything on her outstanding fines, fees, and costs because she does not have any money left over after paying for food and basic necessities.  Ex. 3, 127:14-19, 128:13-129:9.

**B. Amanda Feenstra.**

67.     Amanda Feenstra is 35-year-old woman, who has worked full-time (when physically able) since her release from incarceration. *See* Ex. 5, Feenstra Dep. 57:5-7, 81:8-14. She supports five children and her husband, Lonnie Feenstra, who is disabled. *Id.*, 74:22, 82:17-19, 114:11-23, 115:11-16, 116:2-6.

68.     On April 29, 2015, Mrs. Feenstra (then known by her maiden name, Ackerson) pleaded guilty in the District Court before Judge DeLapp to false impersonation, forgery, identity theft, and conspiracy.  Ex. 23, 4/29/2015 Feenstra Plea.

69.     Prior to her plea, Mrs. Feenstra's OIDS-provided counsel had not told her the total amount of fines, fees, or costs that would be assessed in connection with her conviction.  Ex. 5, 157:8-17.  Nor did Mrs. Feenstra's attorney inform her of her total monthly payment responsibility going forward.  *Id.*, 157:18-20.

70.     Mrs. Feenstra's plea form reflects that she understood her plea to include specified fines, VCA fees, and OIDS fees, as well as additional amounts in restitution.  *See* Ex. 23 at 5.

71.     The plea form also includes a notation referring to "JIF"—or jail incarceration fees—but does not include an amount for this item.  Ex. 23 at 5.  At the time of her sentencing, Mrs. Feenstra was unaware that she would be required to pay jail incarceration fees for days that she spent in jail.  Ex. 5, 32:13-19.

72.     At sentencing, the District Court ordered Mrs. Feenstra to pay $3,500 in fines and fees.  *See* Ex. 35 at 2 (4/29/15 minute entry); Ex. 36 at 3 (4/29/15 minute entry).

73.     Mrs. Feenstra's total financial obligations had not been calculated when she left Judge DeLapp's presence.  Ex. 1, 165:18-166:1.  She did not learn the total amount she owed until after the commencement of this litigation.  Ex. 5, 157:18-25, 158:4-7.

74.     At sentencing, Judge DeLapp did not inquire into Mrs. Feenstra's ability to pay the $3,500 in disclosed fines and fees.  Ex. 1, 160:16-161:2.  He also did not ask about her employment status, income, dependents, or disability.  *Id.*, 166:2-7.

75.     Mrs. Feenstra did, however, tell Judge DeLapp that she "couldn't pay these fines and costs."  Ex. 5, 16:6-11.  In response, Judge DeLapp told her that when she got out of prison,

she "could work for him at the courthouse 1 or 2 days a month, and that would pay for [her] fines for that month." *Id.*, 16:11-14, 38:17-39:14.  This was not true:  Mrs. Feenstra "never s[aw] [Judge] DeLapp again after [she] got out of prison" and was unable to pay off her fines by working at the courthouse.  *Id.*, 110:10-23; *see also id.*, 16:6-17.

76.     Weeks after Mrs. Feenstra's sentencing, court clerk Ms. Fairlie completed Attachment A to Mrs. Feenstra's judgment and sentencing forms.  Ms. Fairlie calculated that Mrs. Feenstra owed $1,501 in fines, fees, and costs in connection with her false personation charge.  *See* Ex. 26 at Attachment A; *see also* Ex. 1, 170:17-171:14.  Ms. Fairlie further calculated that Mrs. Feenstra owed an additional $3,363 in fines, fees, and costs in connection with her other charges, including for "Court costs," a "County Sheriff" fee, a  "DA Fee," and various other fees with cryptic titles like "CLEET/PAX" fee, "AFIS/AFIX" fee, "Forensic fee," and "MLRF" fee.  Ex. 27 at Attachment A.  In total, Ms. Fairlie determined that Mrs. Feenstra owed $4,864 in fines, fees, and costs.

77.     Judge DeLapp did not conduct a hearing regarding Mrs. Feenstra's ability to pay those assessed amounts (either immediately or in installments). Ex. 1, 207:25-208:9.  He just told Ms. Fairlie to "plug[] in the numbers" on the form.  *Id.*, 170:17-171:5.

78.     Judge DeLapp did not inquire whether Mrs. Feenstra owed fines, fees, and costs in other jurisdictions, or whether she has a disability.  Ex. 1, 171:18-172:1.  Nor did he consider relieving or reducing Mrs. Feenstra's obligations.  *Id.*, 172:6-8.

79.     Mrs. Feenstra was not present when Judge DeLapp imposed her total payment obligation of $4,864 in fines, fees, and costs.  Ex. 1, 171:15-17.

80.     On January 22, 2016, while Mrs. Feenstra was still incarcerated, Judge DeLapp ordered her to pay additional incarceration fees of *$6,916*.  *See* Ex. 28, 1/22/16 Order.  Judge

DeLapp conceded in deposition testimony that those incarceration fees "should have" been lower. Ex. 1, 174:5-8.

81.     Mrs. Feenstra was not present when Judge DeLapp imposed those amounts and was not even aware that she would owe those incarceration fees.  *See* Ex. 28; Ex. 1, 172:12-20, 175:17-21; Ex. 5, 32:13-19, 33:13-18, 131:24-132:9.

82.     On February 2, 2017, after her release from incarceration, Mrs. Feenstra reported to cost administrator Dana Forbes.  At this meeting, Mrs. Feenstra learned that the District Court had imposed fines, fees, and costs totaling *$12,852*.  *See* Ex. 29.

83.     Ms. Forbes established a payment plan requiring Mrs. Feenstra to pay $50 per month.  *See* Ex. 29.  Mrs. Feenstra informed Ms. Forbes that the monthly payment was "too high because [she] had other counties that [she] had to pay," but Ms. Forbes told her that she "had no choice but to pay that $50" until she saw a judge.  Ex. 5, 47:5-17.

84.     Mrs. Feenstra did not appear before Judge DeLapp or any other judge before the imposition of this payment plan.  *See* Ex. 1, 180:6-181:8; Ex. 5, 42:16-43:11, 52:6-10.  Nor did Judge DeLapp speak with Ms. Forbes or learn what Mrs. Feenstra had stated about her inability to pay.  Ex. 1, 182:7-25.

85.     Judge DeLapp signed the order imposing Mrs. Feenstra's payment plan of $50 per month without conducting a hearing—or any inquiry at all—into Mrs. Feenstra's ability to pay. Ex. 1, 182:7-25, 183:14-22.

86.     A few months after the payment plan was imposed, on May 12, 2017, Mrs. Feenstra appeared before Judge Sigler at a cost docket proceeding.  *See* Ex. 35 at 3 (5/12/17 minute entry); Ex. 36 at 3 (5/12/17 minute entry). This was Mrs. Feenstra's first appearance before a judge in the

District Court since her sentencing in 2015.  *See* Ex. 35 at 3 (reflecting no appearances before the District Court between April 2015 and May 2017); Ex. 36 at 3 (same).

87.     At the cost docket proceeding, Mrs. Feenstra informed Judge Sigler that she "could not afford to pay the fines and costs" due to having to pay "other fines and costs and other financial responsibilities." Ex. 5, 52:17-22, 54:13-55:8.  Judge Sigler then reduced her monthly payments to $40.  *See* Ex. 35 at 3 (5/12/17 minute entry); Ex. 36 at 3 (5/12/17 minute entry).  Mrs. Feenstra told Judge Sigler "that was still going to be too high" and that she "wasn't going to be able to pay that." Ex. 5, 52:12-53:2.  Mrs. Feenstra attempted to detail her expenses and other obligations to Judge Sigler, but he "never asked [her] how much any of that added up to." *Id.*, 56:20-57:4.

88.     Instead, Judge Sigler told Mrs. Feenstra that "he didn't care; that's what he ordered it at and that's what it would be at," adding that if she "couldn't pay it, then [she] would go to jail." Ex. 5, 52:12-53:2, 54:13-55:8; *see also* Ex. 35 at 3 (5/12/17 minute entry); Ex. 36 at 3 (5/12/17 minute entry).

89.     At that time, Mrs. Feenstra's sole income came from her work as a server at a diner, where she made $6.60 per hour, plus tips.  Mrs. Feenstra's monthly expenses for herself and her multiple dependents included $600 in rent, between $75 and $125 for electricity, between $50 and $75 per month for food (after food stamps), approximately $500 per month for her vehicle and insurance, and about $15 for her phone.  Ex. 5, 57:5-58:3, 58:19-59:9, 59:18-60:23.  She also had court debt in other counties in Oklahoma.  *Id.*, 55:25-56:19.  Mrs. Feenstra paid for these expenses on her own, without assistance from others.  *Id.*, 61:12-19.

90.     No judge or other person working in the District Court courthouse ever told Mrs. Feenstra that she "had the option of filing a Rule 8 motion to knock out" her "fines, fees, or costs." Ex. 5, 158:12-21; *see also id.*, 105:11-13.

91.     On May 4, 2018, Mrs. Feenstra did not appear at a cost docket proceeding due to her misunderstanding of the date when she was due to appear in court. *See* Ex. 5, 66:2-8; Ex. 36 at 4 (5/4/18 minute entry).  Three days later, on May 7, Judge Sigler issued a bench warrant for "failure to pay" for Mrs. Feenstra's arrest, and set her bond at "$330 cash only."  Ex. 31, 5/7/18 Bench Warrant.

92.     On or around May 9, 2018, Mrs. Feenstra—unaware of the missed hearing or the pending warrant, and believing that she was current on her payments—called the court clerk to attempt to reschedule what she believed to be a still-upcoming hearing date.  Ex. 5, 66:19-67:3, 67:10-18.  She was informed that her court date had been the previous Friday, May 4.  *Id.*

93.     The clerk told Mrs. Feenstra she could either pay a certain amount or she could talk to Judge Sigler.  Ex. 5, 69:1-11.  Mrs. Feenstra told the court clerk that she "didn't have the money to pay that fine and asked if [she] could talk to the judge."  She was then transferred by phone to speak to Judge Sigler's clerk.  *Id.*, 69:1-16.

94.     Mrs. Feenstra explained to Judge Sigler's clerk that she believed she was current on her payments, and that, prior to her attempt to reschedule her next appearance, she had been unaware she had missed a hearing.  The clerk told Mrs. Feenstra "that the only thing she could really tell [her] to do was to come in and see the judge."  Ex. 5, 69:20-70:4.  Mrs. Feenstra then asked, "[I]f I come and see the judge, am I going to jail?"  *Id.*, 70:4-6.  The clerk responded that "she didn't believe [Mrs. Feenstra] would if [she] came in and spoke" with Judge Sigler.  *Id.*, 70:6-7.

95.     Mrs. Feenstra and her husband immediately went to the District Court courthouse and attempted to speak to Judge Sigler.  They were told that Judge Sigler was busy, and asked to take a seat.  After receiving that instruction, Mrs. Feenstra sat in the hallway outside Judge Sigler's

chambers.  Ex. 5, 70:8-72:5.  "[T]he next thing [she] kn[ew]," a police officer came and told Mrs. Feenstra to "stand up and turn around" because she "was being arrested."  *Id.*, 72:8-13.  When Mrs. Feenstra responded that she thought she was going to talk to the judge, the officer responded, "He doesn't have time to talk to you.  I'm just following orders."  *Id.*, 72:14-17; *see also* Ex. 32, 5/9/18 Warrant Return of Service.

96.     Now in jail, Mrs. Feenstra was informed she "could either pay" or "wait until the next day and see the judge in court."  Ex. 5, 73:10-17.  She "didn't have any money," so she "sat in jail overnight," believing she "would be released because [she] believed that [she] was current on [her] fines and costs and [that] it was a complete misunderstanding."  *Id.*, 73:10-21.

97.     The next day, Mrs. Feenstra spoke to Judge Sigler by video from jail.  Ex. 5, 73:24-74:5.  Judge Sigler told her that she was not current on her payments, and that she "could either sit it out or [she] could bond out."  Mrs. Feenstra replied that she "had a job," and "had to get back to work" but that she "had no money."  Judge Sigler responded that "it wasn't his problem."  *Id.*, 74:11-19; Ex. 33, 5/10/18 Court Minute (noting that Feenstra was remanded to the custody of the sheriff until $330 was paid); Ex. 34.

98.     Mrs. Feenstra called her husband Lonnie Feenstra, who "borrowed the money to bond [her] out."  Ex. 5, 74:20-24.  Mr. Feenstra paid her bond and she was released.  Ex. 36 at 7 (showing $330 payment from Lonnie Feenstra on 5/10/18).  Mrs. Feenstra did not receive credit for the time she spent in jail.  Ex. 5, 74:25-75:14.

99.     Mrs. Feenstra has a GED, 10 to 20 hours of education at an online college, and vocational training for transportation, distribution, and logistics that she completed while incarcerated.  Ex. 5, 101:10-20, 102:7-21.

100.    She currently works as a server at a restaurant making no more than $2.30 per hour, plus tips.  She does not work more than 15 hours a week, due to a knee injury she sustained in December 2019.  Ex. 5, 76:21-77:1, 81:8-82:1.

101.    Mrs. Feenstra's current expenses include $295 per month for gas and electricity, $400 per month in food, $444 every two weeks in vehicle payments, a $160 monthly phone bill, as well as loan payments and child support obligations.  Ex. 5, 111:16-112:4, 112:9-15; 113:1-18. She owes fines and costs in other counties, as well as $35,000 to $40,000 in back payments for child support.  *Id.*, 112:2-4, 113:1-12.

102.    Mrs. Feenstra provides financial support to four biological children, aged 10 to 17, as well as to an adopted son who lives with her and her husband.  Ex. 5, 82:17-19, 114:11-23, 115:11-16; 116:2-6.

103.    At the time Plaintiffs filed their initial petition in the District Court on March 21, 2019, Mrs. Feenstra still owed almost $11,800 in court debt.  *See* Exs. 35 and 36 (summing up to more than $11,800 owed as of March 21, 2019).  At a payment rate of $40 per month, that level of court debt would take over 24 years to pay in full.

104.    In May 2020, Mrs. Feenstra was unable to work while awaiting surgery on her knee, and the court suspended her payments for six months.  *See* Ex. 35 at 6 (5/22/20 minute entry); Ex. 36 at 5 (5/22/20 minute entry); Ex. 5, 76:21-77:16.

105.    Mrs. Feenstra cannot pay even "a portion" of the fines, fees, and costs that have been assessed against her because she is "indigent" and "broke."  Ex. 5, 105:14-19, 106:3-17.

106.    In December 2020, after the commencement of this litigation and substantial discovery (including the depositions of Judges DeLapp and Sigler), Mrs. Feenstra was invited to appear before Judge Carl Gibson and discuss her ability to pay.  Judge Gibson vacated her

outstanding amounts of fines, fees, and costs owed due to poverty on December 16, 2020.  *See* Exs. 35 and 36 (12/11/20 and 12/16/20 minute entries).

## IV.   MODIFICATIONS TO DISTRICT COURT PRACTICES AFTER JUDGE DELAPP'S RESIGNATION.

107.    Judge DeLapp resigned in August 2018, following complaints and investigations involving judicial impropriety.  Ex. 1, 235:1-13, 236:16-237:6.

108.    In January 2019, Judge Thomas assumed the seat vacated by Judge DeLapp.   Ex. 4, 10:20-23.  She then assumed responsibility for procedures regarding fines, fees, and costs.  *Id.*, 21:1-9.  This action commenced two months later.

109.    Following Judge DeLapp's resignation, the Judicial Defendants "identified [that] the system wasn't that great," recognized "the need for the system to be different [and sought to], try[] to make it better."  Ex. 2, 91:5-10, 94:21-95:3.

110.    Sometime thereafter, the District Court for the first time "started coming up with a system that implemented the Rule 8 [hearings]" and created a specialized "Rule 8" docket.  Ex. 2, 35:4-16, 35:18-24, 36:8-12.  The standard plea form now provides defendants notice of their right to a hearing as to their ability to pay fines, fees, and costs, and, since 2019, provides the defendants a document at sentencing informing them of the same.  Ex. 4, 50:10-17; Ex. 40, Updated Plea. The District Court also now provides individuals with pre-printed notice forms advising them of their ability to request a Rule 8 hearing.  Ex. 39, Rule 8 Notice; *see also* Ex. 7, Lawrence Dep. 32:3-9, 32:12-18.

111.    However, salient features of the prior regime remain unchanged.  For example, Judge Thomas does not inform criminal defendants that they might be eligible to get complete waiver of fines, fees, and costs under Title 22, Section 983a of the Oklahoma Statutes.  Ex. 4, 48:2-5.

112.    Even now, District Court judges do not present or discuss the prospect that a defendant could be excused from payment obligations with a proper showing.  Rather, the approach for ability-to-pay determinations is to ask the defendant to self-select a suitable amount. Ex. 2, 52:11-20, 54:11-19; Ex. 4, 52:20-53:1.

113.    At the time that question is asked, it remains the case that neither the judge nor the defendant knows the total fines, fees, and costs that will be imposed.  Ex. 2, 52:21-53:4; Ex. 4, 63:24-64:1, 64:19-65:2, 65:17-24; *see, e.g.*, Ex. 37, 5/22/19 Court Minute (providing no details about total costs); Ex. 38, 9/18/19 Court Minute (same); Ex. 41, 7/3/19 Court Minute (same).

114.    There is no consistent practice and no requirement to inquire at sentencing about child support obligations, education, income, court debts from other counties, food stamp eligibility or other indicia of poverty, the existence of disabilities, or the number of dependents. Ex. 4, 69:1-13, 71:8-24, 72:13-73:1.

115.    Prior to imposing fines, fees, and costs, Judge Thomas does not regularly review defendants' affidavits of indigence, and there is no practice to lower the total amount of fines, fees, and costs a defendant owes at sentencing due to indigence or disability.  Ex. 4, 72:17-73:1, 73:7-17.

116.    It remains the case that neither the defendants nor their counsel are present when Judge Thomas signs the order imposing fines, fees, and costs.  Ex. 4, 68:11-15.

117.    The cost administrator does not examine an individual's ability to pay.  Ex. 4, 32:25-33:2, 34:5-8.

118.    Meetings between the current cost administrator, Glenda Powell, and individuals to set up payment plans are still not recorded, nor are phone calls between individuals and Ms. Powell regarding the status of their payment plans.  Ex. 6, Powell Dep. 67:24-68:5, 72:18-73:5.

119.     When individuals appear at the cost docket before Judge Sigler, he still does not know the total amount of fines, fees, and costs imposed on an individual when they first appear before him. Ex. 2, 15:3-9.  At those proceedings, Judge Sigler still does not examine individuals' ability to pay. *Id.*, 15:24-16:11, 16:16-18:7, 18:20-20:13.

120.     Instead, Judge Sigler now presides over a specific "Rule 8" hearing docket. Ex. 2, 35:18-24, 36:8-12.  Individuals have to make a specific request for a Rule 8 hearing in order to obtain one. *Id.*, 37:9-17.

121.     When presiding over Rule 8 hearings, Judge Sigler does not inquire into whether the individual was previously represented by court-appointed counsel. Ex. 2, 37:18-38:1.  He does not always know whether the individual is employed, has a disability, has dependents, or has court debts in other jurisdictions in Oklahoma. *Id.*, 38:2-40:1.

122.     Certain Judicial Defendants testified to a current practice by which the District Court's judicial officers no longer incarcerate individuals for failure to pay, but there is no written policy, procedure, or administrative order to that effect.   Ex. 2, 30:5-11; Ex. 4, 91:13-24. Individuals are still subject to incarceration for failure to appear at cost docket proceedings.  Ex. 2, 74:8-19.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the Court to grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[,] and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial."

26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995) (quoting *Matsushita*, 475 U.S. at 587).

For the reasons that follow, Plaintiffs are entitled to summary judgment on Counts 1, 2, 3, 5, 6, and 7.

## ARGUMENT

### I.   DEFENDANTS VIOLATED PLAINTIFFS' DUE PROCESS RIGHTS UNDER THE U.S. AND OKLAHOMA CONSTITUTIONS.

#### A. Judge Sigler Is Liable under Section 1983 Because Judges Sigler and DeLapp Denied Plaintiffs Notice and Opportunity To Be Heard Prior to Arrest and Detention (Count 2) and Punished Plaintiffs on the Basis of Their Poverty (Count 3).[2]

Public officials sued in their official capacity under 42 U.S.C. § 1983 ("Section 1983") are liable for constitutional violations if: (1) they acted under color of state law; (2) to deprive plaintiff of a constitutional right; and (3) a government entity's policy or custom played a part in the violation of that right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). Here, while acting under color of state law, and consistent with the custom and practice of the District Court, Judges Sigler and DeLapp denied Ms. Carter

---

[2] At the instruction of Judge Frizzell (see Dkt. No. 47 at 26), Judge DeLapp is not named as a defendant due to his resignation from the District Court (see Dkt. No. 50 at 2, 4-5). Violations wrought by Judge DeLapp at sentencing are subject to remedy by Judges Thomas and Vaclaw, who are the named defendants for Count 1 (*see* Am. Compl. ¶¶ 55-59; Dkt. No. 50 at 4), and violations wrought by Judge DeLapp at cost docket proceedings are now subject to remedy by Judge Sigler, who is the sole defendant for the counts related to post-sentencing conduct (Counts 2, 3, 5, 6, and 7) (*see* Am. Compl. ¶¶ 60-71, 83-94; Dkt. No. 50 at 4-5).

and Mrs. Feenstra notice and opportunity to be heard prior to arrest and detention (Count 2) and incarcerated them because they were unable to pay judicially-imposed fines, fees, and costs (Count 3). Therefore, Plaintiffs are entitled to summary judgment on Counts 2 and 3.

### 1.  Defendants Acted under Color of State Law.

"[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 50 (1988). Here, there is no dispute that Judge DeLapp acted in his official capacity as a then-District Judge when he ordered Ms. Carter incarcerated in February 2014, without a hearing or inquiry into her ability to pay $150 of missed payments (and despite her express statement that she was unable to pay that amount). Statement of Uncontroverted Material Facts ("SUMF") ¶¶ 1-2, 46-50. Nor is there any dispute that Judge Sigler acted in his official capacity as Special Judge of the District Court when, on September 28, 2018, he threatened Ms. Carter with incarceration because she was unable to make a $75 payment she could not afford, without any hearing into her ability to pay and despite Ms. Carter's express statement that she was unable to pay that amount. SUMF ¶¶ 26, 57. Likewise, Judge Sigler acted in his official capacity when, in May 2018, he remanded Mrs. Feenstra to jail and ordered her to remain incarcerated until she could pay the $330 bond he set, without any hearing or inquiry into her ability to pay that amount. SUMF ¶¶ 26, 91, 97.

### 2.  Judges Sigler and DeLapp Deprived Plaintiffs of Their Constitutional Rights under the Due Process and Equal Protection Clauses.

The Due Process and Equal Protection Clauses prohibit incarceration for nonpayment of court debts absent a finding that nonpayment was willful and not due to poverty. *Bearden*, 461 U.S. at 672-73. The Due Process Clause further requires that, if an individual possesses an interest to which a due process protection applies (such as deprivation of liberty or property), the individual

must be "afforded an appropriate level of process." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). The Equal Protection Clause also forbids state actors from forcing an indigent person to "sit out" unpaid court debt in jail, at a daily rate, due to their inability to make minimum payments, when the end result is that the person is incarcerated beyond the maximum statutory period, *Williams v. Illinois*, 399 U.S. 235, 243-44 (1970), or for a putatively fine-only offense, *Tate*, 401 U.S. at 397-400.

Oklahoma courts thus prohibit practices that (1) incarcerate individuals without a meaningful opportunity to be heard on their ability to pay judicially-imposed fines, fees, and costs prior to incarceration, or (2) punish individuals for their poverty by imposing or extending incarceration for nonpayment of a fine or fee. *See, e.g.*, *Harper v. Young*, 64 F.3d 563, 567 (10th Cir. 1995) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); *Rutledge*, 495 P.2d at 121-22 (citing *Tate* and *Williams*); *Elam v. Mun. Ct.*, 757 P.2d 1338, 1340 (Okla. Crim. App. 1988) (citing *Bearden*); *Guy v. City of Oklahoma City*, 760 P.2d 1312, 1314-15 (Okla. Crim. App. 1988).

Here, neither Plaintiff was afforded appropriate process prior to incarceration, and both Plaintiffs were incarcerated without any regard to (indeed, in deliberate disregard of) their inability to pay unpaid fines, fees, and costs.

First, the Due Process Clause of the Fourteenth Amendment entitled both Ms. Carter and Mrs. Feenstra to "an appropriate level of process" process prior to incarceration. *See Hennigh*, 155 F.3d at 1253. Due process rights attach when an individual is subject to incarceration: the "threatened loss through legal proceedings" of "personal liberty through imprisonment" is "at the core of the liberty protected by the Due Process Clause." *Turner*, 564 U.S. at 445 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)) (internal quotation marks omitted); *see also Morrissey*, 408 U.S. at 482. In a proceeding in which a person faces the possibility of incarceration for failure to

make court-ordered payments, the "appropriate level of process" includes, at minimum:  (1) notice "that [her] 'ability to pay' is a critical issue" in the proceeding; and (2) "an opportunity at the hearing" for the person "to respond to statements and questions about [her] financial status." *Turner*, 564 U.S. at 447-48; *Harper*, 64 F.3d at 567 (inmate subject to revocation of participation in a conditional supervision program was entitled to prior written notice of the prospective revocation and the evidence against him, the opportunity to be heard in person, and the right to offer evidence); *Aacen v. San Juan Cnty. Sheriff's Dep't*, 944 F.2d 691, 699 (10th Cir. 1991) (debtor plaintiff's procedural due process rights were violated because he was not given notice of exemption rights).

Neither Mrs. Feenstra nor Ms. Carter was afforded the required procedural protections before being incarcerated on May 9-10, 2018 and January 9, 2014, respectively.  When Mrs. Feenstra appeared before Judge Sigler (from jail) on May 10, 2018, he failed to provide notice that her ability to pay the outstanding $330 bond amount was a "critical issue" regarding her continued incarceration.  Instead, he gave her two options:  she could either "sit it out" (meaning sit in jail, earning a daily credit against the bond) or "bond out."  SUMF ¶ 97.  When she told him that she "had no money" and could not pay the $330 bond, Judge Sigler told Mrs. Feenstra that her indigence "wasn't his problem."  SUMF ¶ 97.  Likewise, when Ms. Carter appeared before Judge DeLapp on the day he remanded her to jail, he did not provide notice that her ability to pay the outstanding $150 she owed was critical to determining whether she could be lawfully incarcerated.  Instead, when she told him that she couldn't afford to pay, he merely responded, "Well, that's tough," and ordered, "Bailiff, take her." [3]  SUMF ¶¶ 46-50.

---

[3] On this Motion and, if needed, at trial, Plaintiffs are entitled to an evidentiary presumption in their favor (or other sanction) on the practices of the District Court at cost docket proceedings. This is because the District Court has systematically failed to record such proceedings, including

Second, Judges Sigler and DeLapp violated Plaintiffs' due process and equal protection rights when they remanded (or kept) Plaintiffs in jail without regard for their ability to pay their fines, fees, and costs. *See Rutledge*, 495 P.2d at 123-24 (reasoning that the Fourteenth Amendment requires that if an individual "fails to make an installment payment when due," she must, prior to incarceration, "be given an opportunity to be heard as to h[er] refusal . . . to pay the installment"). As discussed above, when informed by Mrs. Feenstra on May 10, 2018 that she was unable to pay a $330 bond he had set, Judge Sigler gave her two options: she "could either sit it out or [she] could bond out." SUMF ¶ 97. That statement (unchallenged in the record) is tantamount to an admission that Judge Sigler was incarcerating Mrs. Feenstra without regard to her ability to pay. Additionally, and in derogation of federal and state precedent, Judge Sigler made no finding that the inability to pay the outstanding bond was willful. Rather, he said only that the fact that Mrs. Feenstra "had no money" to pay "wasn't his problem." SUMF ¶ 97.

The facts and conclusion are broadly similar in respect of Judge DeLapp's cavalier treatment of Ms. Carter on January 9, 2014. Judge DeLapp made no meaningful inquiry as to whether Ms. Carter could afford to pay the $150 in outstanding payments; he just sent her to jail. SUMF ¶¶ 46-49. That decision was exactly what *Williams*, *Tate*, and *Bearden* proscribe: Judge DeLapp sent an indigent person to jail solely because of her indigence and without inquiry—much

---

those of Plaintiffs, flouting a statutory requirement to do so. *See 103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006). Rule 8.7 requires a court reporter to be present at all hearings related to the imposition of fines, fees, and costs on a criminal defendant. OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.7 (West 2021) ("A court reporter shall be present and report all such judicial hearings required by this Section, provided however, a court reporter is not required to be present if the proceedings were preserved in accordance with Section 106.4(a) of Title 20."); *see also* OKLA. STAT. ANN. tit. 20, § 106.4 (West 2021) ("The court reporter shall make a full reporting . . . in . . . judicial proceedings to which the court reporter is assigned by the appointing judge unless excused by the judge who is trying the case *with the consent of the parties to the action*.") (emphasis added).

less the record finding that due process requires—that the nonpayment was willful.  Indeed, Judge

DeLapp *ignored* information suggesting the nonpayment was due to inability, and not willful

disobedience:  according to Ms. Carter's unchallenged testimony, she told Judge DeLapp that she

had not paid because she was unemployed and could not find a job; his response was, "[T]hat's

tough."  SUMF ¶¶ 48.

Not only did the judges of the District Court deny Mrs. Feenstra and Ms. Carter "an

opportunity at the hearing . . . to respond to statements and questions about [their] financial status,"

*see Turner*, 564 U.S. at 447-48, they also affirmatively curtailed and willfully ignored Plaintiffs'

attempts to raise their inability to pay before remanding them to jail.  That is the opposite of what

*Bearden*, *Williams*, *Tate*, and their progeny require.  There is, therefore, no reasoned dispute that

Judges Sigler and DeLapp violated, respectively, Mrs. Feenstra's and Ms. Carter's due process

and equal protection rights.

### 3. The Violations of Plaintiffs' Rights Reflected the Custom and Practice of the Judicial Defendants and the District Court.

Section 1983 liability attaches to state officials sued in their official capacity when a

government entity's "policy or custom . . . play[s] a part in the violation of federal law."  *Hafer v.*

*Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166) (internal quotation marks omitted).

A "policy" or "custom" does not have to be set out in a manual, handbook, regulation, or the like;

rather, Section 1983 liability routinely is imposed "for constitutional deprivations visited pursuant

to governmental 'custom' even though such a custom has not received formal approval through

the body's official decisionmaking channels" so long as such practice is "so permanent and well

settled as to constitute a 'custom or usage' with the force of law."  *Monell*, 436 U.S. at 690-91

(quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970) (internal quotation marks

omitted); *Layton v. Bd. of Cnty. Comm'rs*, 512 F. App'x 861, 869-70 (10th Cir. 2013) (reversing

grant of summary judgment to sheriff and county on official-capacity Section 1983 claim when estate of deceased pretrial detainee "submitted evidence that tends to demonstrate longstanding, systemic deficiencies in the medical care that the jail provided to detainees"); *Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1242 (W.D. Okla. 2009) (denying defendant sheriff's motion for summary judgment on official-capacity Section 1983 claim after plaintiff alleged that "two customs or practices resulted in unconstitutional conditions of confinement").

The District Judge (initially Judge DeLapp and now Judge Thomas) is the ultimate policymaker for the District Court, and therefore his or her actions constitute official policy. *See* SUMF ¶¶ 2, 108 (stating that the District Judge, currently Judge Thomas, exercises ultimate review and approval of the District Court procedures regarding fines, fees, and costs). The relevant witnesses have also conceded that the acts described above were the norm—readily embodying the then-prevailing custom in the District Court. When Mrs. Feenstra appeared before Judge Sigler from jail on May 10, 2018, and Ms. Carter appeared before Judge DeLapp on January 9, 2014, both judges acted in all respects according to the prevailing District Court custom and practice: it was "standard practice" to incarcerate people for failure to pay, regardless of financial status or the willfulness of nonpayment. SUMF ¶¶ 21-23, 29.

Judge DeLapp testified that he had a practice of "always ask[ing]" if an individual who was late on minimum installment payments could make a payment "upfront," and "if they [could not] give . . . a payment, then they would be remanded" to jail. SUMF ¶ 22. Judge DeLapp would routinely set a bond for the total missed amount that was due, and remand individuals to jail, or detain them in his courtroom, until they (or someone else paying on their behalf) paid the bond. SUMF ¶¶ 21-23. He imposed that punishment even when individuals said they had no money for payment. *See* SUMF ¶ 23.

Similarly, when Judge Sigler became the Special Judge in charge of the cost docket, he maintained (through at least the filing of this litigation) the court's practice of incarcerating individuals who could not afford to pay their minimum installments of fines, fees, and costs. SUMF ¶¶ 29, 32.   Judge Sigler's treatment of Mrs. Feenstra following her May 10, 2018 appearance reflected his (and thus the District Court's) standard practice of remanding to jail individuals who were behind on their monthly payments and could not pay back the difference on the spot.  SUMF ¶ 29.  Both Judges DeLapp and Sigler also routinely remanded individuals to jail without making any finding (or asking any questions at a cost docket proceeding aimed at establishing such a finding) that the person could afford to make payment and/or that any nonpayment was willful.[4]  SUMF ¶¶ 19, 21-22, 28-29, 31.

Judges Sigler and Delapp's treatment of Plaintiffs was consistent with the District Court's practice to order incarceration for nonpayment regardless of financial circumstances.  SUMF ¶¶ 21-22, 29.  There is thus no genuine dispute that Judge DeLapp's incarceration of Ms. Carter in January 2014 and Judge Sigler's incarceration of Mrs. Feenstra in May 2018 were acts undertaken in accordance with the custom or policy of the District Court.

**B.  Judge Sigler Is Liable under the Oklahoma Constitution Because Judges Sigler and DeLapp Denied Plaintiffs Notice and Opportunity To Be Heard Prior to Arrest and Detention (Count 5).**

The scope of the Oklahoma Constitution's Due Process Clause (Article 2, Section 7) is at least "coextensive with its federal counterpart," *Lucas*, 297 P.3d at 391 n.25, and affords Plaintiffs corresponding rights to relief.  *See, e.g.*, *Halley v. Okla. ex rel. Okla. State Dep't of Human Servs*., 176 F. Supp. 3d 1268, 1275-76 (E.D. Okla. 2016) (holding that plaintiff stated a plausible claim

---

[4] The Judicial Defendants acknowledge the inadequacy of the practices employed during this time period, as they now admit that material changes have been made regarding the notice provided to criminal defendants concerning their Rule 8 rights.  *See* SUMF ¶ 110.

under Article 2, Section 7); *Miller v. City of Konawa*, No. 17-CIV-115-JHP, 2017 WL 6328943, at *4 (E.D. Okla. Dec. 11, 2017) (recognizing a cause of action to sue for wrongful discharge under Article 2, Section 7).  Not surprisingly, therefore, courts apply the inquiry applied to alleged federal due process violations, *see supra* Part I.A.2 and *Hennigh*, 155 F.3d at 1253, to comparable violations alleged under Article 2, Section 7 of the Oklahoma Constitution.  *See Barnthouse v. City of Edmond*, 73 P.3d 840, 844, 846-49 (Okla. 2003) (concluding that plaintiffs were denied due process under both the federal and state constitutions) (citing *Hennigh*, 155 F.3d at 1253).  Thus, to the extent the record supports the conclusion that Plaintiffs suffered violations of their federal due process rights, Plaintiffs have also established an actionable violation of their due process rights under Article 2, Section 7 of the Oklahoma Constitution.

## II.    **PLAINTIFF CARTER WAS DENIED A HEARING INTO HER ABILITY TO PAY AT JUDGMENT AND SENTENCING IN VIOLATION OF OKLAHOMA COURT OF CRIMINAL APPEALS RULE 8.1 (COUNT 1).**

Defendants' obligations under Rule 8.1 are not disputed.  The plain language of the Rule needs no parsing, and standard rules of statutory interpretation apply to Plaintiffs' claims for violations of Rule 8.  *See United States v. Hernandez*, 655 F.3d 1193, 1197 (10th Cir. 2011) (Gorsuch, J.) ("Where the statutory language is plain . . . that language controls as written.").

Rule 8.1 provides:

> When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs.

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.1 (West 2021); *see also Elam*, 757 P.2d at 1339-40 (noting that a city's order for the payment of probation fees "ma[de] no provisions for a judicial hearing to determine if a defendant has the ability to immediately satisfy the fine and costs" and violates the "statutory requirement" of Rule 8); *cf. McGee v. City of Oklahoma City*, 761 P.2d

35

863, 864 (Okla. Crim. App. 1988) (Rule 8 requires that "a specific hearing was conducted regarding appellant's ability to immediately satisfy the fine and costs").

Applying the straightforward language of the Rule, there is no dispute that the District Court, through the actions of then-Judge DeLapp, violated Ms. Carter's rights under Rule 8.1. <u>First</u>, Judge DeLapp entered a judgment and sentence against Ms. Carter on September 22, 2011 on a youthful offender charge that ultimately included $2,726 in fines, fees, and court costs.  SUMF ¶¶ 34, 38.  In doing so, he did not conduct any assessment of Ms. Carter's ability to pay fines, fees, or court costs at sentencing.  SUMF ¶¶ 37-40.

Judge DeLapp compounded his initial violation on October 31, 2013, when he ordered Ms. Carter (who had just been released from juvenile custody) to set up a payment plan for the repayment of her court debt.  He again failed to conduct *any* ability-to-pay assessment:  he asked no questions related to Ms. Carter's (1) employment status or prospects, (2) outstanding fines, fees, and costs in other jurisdictions, or (3) cost of living or expenses for basic necessities.  SUMF ¶ 41. And, after Ms. Carter met with the cost administrator, who imposed a $75 monthly payment per Judge DeLapp's "unwritten rule," Judge DeLapp again failed to conduct *any* hearing regarding Ms. Carter's ability to pay that amount.  He simply signed an order requiring Ms. Carter to pay amounts she could not afford.  SUMF ¶¶ 42-43.

## III.   <u>BOTH PLAINTIFFS WERE DENIED RELIEF DUE TO POVERTY OR DISABILITY, IN VIOLATION OF OKLAHOMA COURT OF CRIMINAL APPEALS RULE 8.5 (COUNT 6).</u>

The analysis and conclusion are similar in respect of the violations of Plaintiffs' rights under Rule 8.5.

Rule 8.5 provides:

> In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or

36

> costs; or, in the alternative, be required to report back to the court at
> a time fixed by the court to determine if a change of condition has
> made it possible for the defendant to commence making installment
> payments toward the satisfaction of fine and/or costs.

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.5 (West 2021).  The plain terms of Rule 8.5

are reinforced by Title 22, Section 983(B) of the *Oklahoma Statutes Annotated*, which directs that

a court can "order the fine, cost, fee, or assessment to be paid in installments" only "[a]fter a

judicial determination that the defendant is *able to pay* the fine, cost, fee, or assessment in

installments."  OKLA. STAT. ANN. tit. 22, § 983(B) (West 2021) (emphasis added).  There is no

dispute that Judges Sigler and DeLapp violated Plaintiffs' Rule 8.5 rights.

On multiple occasions, Mrs. Feenstra came before the District Court and made plain that

she could not afford her minimum installment payments due to her indigence.  For example, at a

cost docket proceeding before Judge Sigler on May 12, 2017, Mrs. Feenstra stated that she "could

not afford to pay the fines and costs" and that she had "other fines and costs and other financial

responsibilities."  SUMF ¶¶ 86-87.  At this time, Mrs. Feenstra was working as a server at a

restaurant, making less than $7/hour.  SUMF ¶ 89.  She had no other sources of income, and her

monthly expenses for food, housing, and utilities exceeded $800, with added expenses for car

payments and obligations to other courts.  SUMF ¶ 89.  As a result, she could not afford to pay the

$40 per month that Judge Sigler required, and told him that the proposed adjusted payment "was

still going to be too high."  SUMF ¶ 87.  However, Judge Sigler refused to relieve or suspend Mrs.

Feenstra's installment payments.  Displaying an attitude that was as cavalier as it was unlawful,

he ignored the plain terms of Rule 8.5 and told Mrs. Feenstra that if she "couldn't pay it, then [she]

would go to jail."  SUMF ¶ 88.  This initial Rule 8.5 violation was compounded on multiple

subsequent occasions.  Mrs. Feenstra's financial situation did not improve, despite working

multiple jobs, over the next few years.  SUMF ¶¶ 100-103.  Nonetheless, Judge Sigler did not

lower or suspend her $40 monthly minimum payments, nor did any judge further address Mrs. Feenstra's ability to pay until at least May 2020 (after the commencement of this litigation). SUMF ¶¶ 103, 106.

The record is similar with respect to Ms. Carter. Judges Sigler and DeLapp violated Rule 8.5 multiple times in their dealings with Ms. Carter. On January 9, 2014, she appeared before Judge DeLapp, stating truthfully that she was unemployed and could not afford to pay the two monthly payments she had just missed because her criminal record had prevented her from finding work. SUMF ¶¶ 44-48. Rather than lower or suspend her monthly payments, Judge DeLapp ordered Ms. Carter arrested. SUMF ¶¶ 48-49. When she told him that she had sought employment and could not find a job, Judge DeLapp ignored Rule 8.5, responded, "Well that's tough," and ordered her arrest. Ms. Carter's mother had to "scrape up" $150 to pay the bond set by Judge DeLapp and secure Ms. Carter's release. SUMF ¶¶ 48-51.

On September 28, 2018, Ms. Carter appeared at a cost docket proceeding before Judge Sigler, and stated that she had no money and could not pay $75 that month. SUMF ¶ 57. At this time, she was continuing to have difficulty obtaining full-time employment due to her limited education and her criminal record, and had been able to secure only low-wage, temporary jobs. SUMF ¶¶ 62-63. Judge Sigler made no inquiry into her financial circumstances, rejecting her (truthful) statement of inability to pay. Instead, and in derogation of Rule 8.5, he told Ms. Carter that there were only two choices: pay $50 that afternoon or be incarcerated. SUMF ¶ 57. Subsequently, Ms. Carter's grandmother and aunt paid the $50 she needed to avoid jail, and Ms. Carter's payments have remained at $75 per month since then, in continuing violation of Rule 8.5. SUMF ¶ 58.

Further proof that the conduct just described violated Rule 8.5 as to both Plaintiffs lies in the words of Judge Sigler and the actions of Judge Thomas.  The former testified to the changes imposed by the District Court (through Judge Thomas) to avoid the violative treatment routinely imposed on individuals owing fines, fees, and costs, including that afforded to Plaintiffs.  SUMF ¶¶ 27-28, 112, 119 (noting Judge Sigler's current practices at cost docket proceedings); *see also* SUMF ¶ 117 (referring to current cost administrator practices).

## IV.   BOTH PLAINTIFFS WERE DENIED AN ABILITY-TO-PAY HEARING PRIOR TO INCARCERATION, IN VIOLATION OF OKLAHOMA COURT OF CRIMINAL APPEALS RULE 8.4 (COUNT 7).

Rule 8.4 requires a meaningful hearing prior to potential incarceration when an individual does not make required installment payments.

Rule 8.4 provides:

> If the defendant fails to make an installment payment when due, he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due.  If no satisfactory explanation is given at the hearing on failure to pay, the defendant may then be incarcerated.  If a defendant has the ability to pay but due to exigent circumstances or misfortune fails to make payment of a particular installment when due, he/she may be given further opportunity to satisfy the fine and/or costs, at the discretion of the court, to be governed by the facts and circumstances of each particular case.

OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.4 (West 2021).  Just like Rule 8.5, Rule 8.4 is reinforced by another Oklahoma statute, Section 983(A) of Title 22, which states that "[a] sentence to pay a fine, cost, fee, or assessment may be converted into a jail sentence only after a hearing and a judicial determination, memorialized of record, that the defendant is able to satisfy the fine, cost, fee, or assessment by payment, but refuses or neglects so to do."  OKLA. STAT. ANN. tit. 22, § 983(B) (West 2021).

The undisputed facts demonstrate that Judge Sigler's actions in May 2018 violated Rule 8.4 as to Mrs. Feenstra.  Two days after Judge Sigler had issued a bond and a bench warrant for Mrs. Feenstra's arrest on May 7, 2018 for "failure to pay," she was arrested outside of Judge Sigler's office at the courthouse while trying to address a scheduling misunderstanding.  SUMF ¶¶ 92-96.  Mrs. Feenstra was jailed without any hearing, much less one at which she could provide a "satisfactory explanation" for not being able to pay the $330 bond amount set by Judge Sigler.  Even at her subsequent appearance before Judge Sigler (from jail on May 10), he dismissed her statement that she "had no money," saying that "it wasn't his problem" and that her only options were to "sit it out" in jail or "bond out" by paying the full amount.  SUMF ¶ 97.  Rule 8.4 provides otherwise, and Judge Sigler's treatment of Mrs. Feenstra violated that Rule.

The record is equally undisputed when it comes to Judge DeLapp's actions against Ms. Carter on January 9, 2014.  Ms. Carter told Judge DeLapp that she had been unable to make two months' worth of $75 installment payments because she had been unable to find sufficient employment.  SUMF ¶¶ 46-48.  Again in derogation of his obligations (here under Rule 8.4), Judge DeLapp conducted no hearing, gathered no facts, and made no finding that any nonpayment was attributable to "neglect" or simple "refusal."  He just told her, "that's tough," instructed the bailiff to "take her," and had her handcuffed and taken to the Washington County Jail.  SUMF ¶¶ 48-50.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter summary judgment in their favor on Counts 1, 2, 3, 5, 6, and 7.

Dated:  February 23, 2021

By: */s Michael Lacovara*
_____
Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago (admitted *pro hac vice*)
John Fowler (admitted *pro hac vice*)
Lawyers' Committee for
Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara (admitted *pro hac vice*)
Lilia Vazova (admitted *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1200
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and*
*Sharonica Carter*