## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and
SHARONICA CARTER,

      Plaintiffs,

v.

JARED SIGLER, *et al.*,

      Defendants.

No. 19-cv-00234- JFH-CDL

**PLAINTIFFS' OPPOSITION TO JUDICIAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago*
John Fowler*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara*
Lilia Vazova*
LATHAM & WATKINS
LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1200
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*

*\* = admitted pro hac vice*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

RESPONSE TO THE JUDICIAL DEFENDANTS' PROPOSED STATEMENT OF
    UNDISPUTED FACTS ......................................................................................1

    I.     PLAINTIFF AMANDA (ACKERSON) FEENSTRA. ...........................1

    II.    PLAINTIFF SHARONICA CARTER. .................................................5

    III.   WASHINGTON COUNTY PROCEDURES. .......................................8

STANDARD OF REVIEW .......................................................................................14

ARGUMENT ...........................................................................................................14

    I.     THE JUDICIAL DEFENDANTS HAVE NOT SHOWN THAT THEIR
           CONDUCT WAS LAWFUL. ..........................................................14

    II.    THE JUDICIAL DEFENDANTS HAVE NOT SHOWN THAT THEY
           ARE ENTITLED TO SUMMARY JUDGMENT ON THE GROUND
           THAT PLAINTIFFS ARE NOT ENTITLED TO FURTHER RELIEF. ..............16

         A.    The Record Does Not Support a Finding of Constitutional
                Mootness. .................................................................16

         B.    The Record Does Not Support Invocation of the Prudential
                Mootness Doctrine. ....................................................24

         C.    Plaintiffs Are Entitled to Relief under the Declaratory Judgment
                Act. ........................................................................25

         D.    The Judicial Defendants Are "Persons" under 42 U.S.C. § 1983. ..............28

         E.    Plaintiffs Properly Assert Claims for Injunctive and Declaratory
                Relief for Violation of Rule 8.5. ..................................29

    III.   PLAINTIFFS' CLAIMS PRIOR TO MARCH 2017 ARE NOT TIME-
           BARRED. .................................................................................30

    IV.   PLAINTIFFS ARE PERMITTED TO BRING CIVIL ACTIONS FOR
           THEIR STATE-LAW CLAIMS. ....................................................34

         A.    This Suit Is Properly Framed. ......................................34

         B.    A Private Right of Action Exists for Violation of the Oklahoma
                Court of Criminal Appeals' Rules. ................................36

i

V.    SUMMARY JUDGMENT CANNOT BE GRANTED ON MS.
CARTER'S RULE 8.1 CLAIM BECAUSE THE RECORD DOES NOT
PROVE THAT SHE EVER RECEIVED AN ABILITY-TO-PAY
HEARING ON HER IMPOSED FINES, FEES, AND COSTS—EVEN
AFTER HER RELEASE FROM CONFINEMENT. ...........................................37

VI.   THERE IS AT LEAST A TRIABLE ISSUE AS TO WHETHER JUDGE
SIGLER ORDERED MRS. FEENSTRA  INCARCERATED FOR
FAILURE TO PAY. ..........................................................................................38

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Alexander v. Oklahoma*,
   382 F.3d 1206 (10th Cir. 2004) ............................................................30, 31, 32

*Am. Interstate Ins. Co. v. Wilson Paving & Excavating, Inc.*,
   No. 09-CV-342-JHP-TLW, 2009 WL 3427992 (N.D. Okla. Oct. 20, 2009) .........................27

*Bearden v. Georgia*,
   461 U.S. 660 (1983)..................................................................................15

*State ex rel. Bonney v. Arthurs*,
   169 P.2d 561 (Okla. 1946) ............................................................................35

*Chihuahuan Grasslands All. v. Kempthorne*,
   545 F.3d 884 (10th Cir. 2008) .......................................................................20

*Church of Scientology v. United States*,
   506 U.S. 9 (1992)....................................................................................17

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982)..................................................................................20

*City of Tulsa v. Crain*,
   573 P.2d 707 (Okla. 1978)............................................................................29

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)..................................................................................16

*DeRonde v. State*,
   715 P.2d 84 (Okla. Crim. App. 1986).................................................................37

*Fletcher v. United States*,
   116 F.3d 1315 (10th Cir. 1997) .....................................................................24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000).........................................................................16, 20, 23

*Gant v. Grand Lodge of Tex.*,
   12 F.3d 998 (10th Cir. 1993) .......................................................................29

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
   No. CV-20-511-R, 2020 WL 6561315 (W.D. Okla. Nov. 9, 2020) .......................................28

*Harper v. Young,*
    64 F.3d 563 (10th. Cir. 1995), *aff'd*, 520 U.S. 143 (1997) ......................................15

*Henry v. Gehl Corp.,*
    867 F. Supp. 960 (D. Kan. 1994) ...........................................................................40

*Hershey v. Turner,*
    No. CIV-19-344-SPS, 2020 WL 1932911 (E.D. Okla. Apr. 21, 2020) ..................29

*Holbert v. Echeverria,*
    744 P.2d 960 (Okla. 1987) ......................................................................................36

*Howard v. Zimmer,*
    299 P.3d 463 (Okla. 2013) ......................................................................................36

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ................................................................................................28

*Knox v. Serv. Emps. Int'l Union, Loc. 1000,*
    567 U.S. 298 (2012) ..........................................................................................17, 23

*Larson v. Valente,*
    456 U.S. 228 (1982) ................................................................................................21

*MacIntyre v. JP Morgan Chase Bank, Nat'l Ass'n,*
    No. 13-cv-1647-WJM-MEH, 2014 WL 3809496 (D. Colo. Aug. 1, 2014) ...........21

*Maughan v. SW Servicing, Inc.,*
    758 F.2d 1381 (10th Cir. 1985) .........................................................................30, 31

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ................................................................................................25

*Patel v. Hall,*
    849 F.3d 970 (10th Cir. 2017) ................................................................................14

*Pueblo of Santa Ana v. Nash,*
    854 F. Supp. 2d 1128 (D.N.M. 2012) .....................................................................28

*Rabin v. Bartlesville Redevelopment Tr. Auth.,*
    308 P.3d 191 (Okla. Civ. App. 2013) .....................................................................36

*Rutledge v. Turner,*
    495 P.2d 119 (Okla. Crim. App. 1972) ..............................................................36, 37

*State Farm Fire & Cas. Co. v. Mhoon,*
    31 F.3d 979 (10th Cir. 1994) ..................................................................................26

iv

*Surefoot LC v. Sure Foot Corp.*,
  531 F.3d 1236 (10th Cir. 2008) ..................................................25

*Tandy v. City of Wichita*,
  380 F.3d 1277 (10th Cir. 2004) ..................................................21

*The Cherokee Nation W. v. U.S. Army Corps of Eng'rs*,
  No. 14-CV-612-JED-TLW, 2016 WL 4548441 (N.D. Okla. Aug. 31, 2016) ................ *passim*

*Tice v. Pennington*,
  30 P.3d 1164 (Okla. Civ. App. 2001) ..................................................32

*Turner v. Rogers*,
  564 U.S. 431 (2011) ..................................................15

*United States v. Concentrated Phosphate Exp. Ass'n*,
  393 U.S. 199 (1968) ..................................................20

*Utah Env't Cong. v. Russell*,
  518 F.3d 817 (10th Cir. 2008) ..................................................17, 23

*Watkins v. Cent. State Griffin Mem'l Hosp.*,
  377 P.3d 124 (Okla. 2016) ..................................................32

*White v. Gen. Motors Corp.*,
  908 F.2d 669 (10th Cir. 1990) ..................................................14

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) ..................................................28

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ..................................................24, 25

*Woolen v. Coffman*,
  676 P.2d 1375 (Okla. Crim. App. 1984) ..................................................19

## STATUTES

42 U.S.C. § 1983 ..................................................*passim*

OKLA. STAT. ANN. tit. 22
  § 983 (West 2021) ..................................................5, 18, 19, 36

## RULES

Fed. R. Civ. P. 25(d) ..................................................38

Fed. R. Civ. P. 56(a) ..................................................14

v

OKLA. STAT. ANN. tit. 22, ch. 18 app.

§ VIII, Rule 8.1 (West 2021) ............................................................................... *passim*

§ VIII, Rule 8.4 (West 2021) ......................................................................................36

§ VIII, Rule 8.7 (West 2021) ......................................................................................28

§ VIII, Rule 8.3 (West 2021) ......................................................................................19

§ VIII, Rule 8.5 (West 2021) ...............................................................18, 19, 29, 36

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. XIV ...............................................................................................37

U.S. CONST. art. III .......................................................................................................25

Plaintiffs Amanda Feenstra and Sharonica Carter ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this Opposition to Defendants Linda Thomas, Russell Vaclaw, and Jared Sigler's (together, the "Judicial Defendants") Motion for Summary Judgment and Brief in Support (Dkt. No. 102) (the "Motion").

## PRELIMINARY STATEMENT

The Judicial Defendants' request for summary judgment suffers from multiple infirmities. The Judicial Defendants present a crabbed, misleading set of "facts" that are frequently unsupported or nothing more than naked legal conclusions masquerading as "facts." More fundamentally, the limited set of "facts" proposed seek to cloud the official and systemic violations of both Oklahoma statutes and the Oklahoma and U.S. Constitutions visited on Ms. Carter and Mrs. Feenstra, and to advance the unfounded claim that certain *ad hoc* changes recently made by Judge Thomas make her predecessor's prior violations both irrelevant and incapable of repetition or resumption. The Judicial Defendants also ignore that—even if they have sought to cure *some* of the *remaining* financial burden wrongly imposed on Plaintiffs—they have not provided Plaintiffs complete relief or remediated the lingering effects of their wrongful conduct, both when fines, fees, and costs were initially imposed and when Plaintiffs suffered deprivations thereafter.

The Court should deny the Judicial Defendants' Motion.

## RESPONSE[1] TO THE JUDICIAL DEFENDANTS' PROPOSED STATEMENT OF UNDISPUTED FACTS

### I.   PLAINTIFF AMANDA (ACKERSON) FEENSTRA.

1.      Plaintiffs admit the dates on which Mrs. Feenstra entered into her plea agreement and on which the Judgment and Sentence were filed.  Plaintiffs dispute that Mrs. Feenstra "agreed"

---

[1] Plaintiffs' response adopts the structure and numbering convention used in the Judicial Defendants' proposed statement of undisputed facts. *See* Dkt. No. 102 at 3-14.

to pay fines, fees, and costs as part of the plea agreement. Prior to entering the plea, Mrs. Feenstra was not advised of the total amount of fines, fees or costs that would be assessed in connection with her conviction; nor was she told what her total monthly payment responsibility would be. Dkt. No. 104 ¶ 69.[2]  The plea form does not enumerate all of the fines, fees, and costs that could be imposed; it makes no mention at all of material fines, fees, and costs ultimately assessed, including for "Court costs," a "County Sheriff" fee, a "DA Fee," a "CLEET/PAX" fee, an "AFIS/AFIX" fee, a "Forensic fee," and an "MLRF" fee. Dkt. No. 104 ¶¶ 70-71, 76. Further evidence that Mrs. Feenstra did not meaningfully "agree" to pay an undisclosed/unknown quantum of fines, fees, and costs comes from the fact that she advised the presiding judge, Judge DeLapp, that she "couldn't pay the[] fines and costs" of which she was aware. *Id.* ¶ 75; Dkt. No. 103-5 at 16:6-11.[3]  Plaintiffs further dispute that either the Judgment and Sentence form or Mrs. Feenstra's plea agreement advised her of her rights under applicable provisions of Rule 8. Mrs. Feenstra's plea agreement does not reference Rule 8 at all. *See* Dkt. No. 102-2. Her Judgment and Sentence form states only that "[t]he defendant shall report to the District Court of Washington County within 48 hours of release for a hearing on the defendant's ability to pay fines and costs pursuant to Section VIII of the Rules of the Court of Criminal Appeals." *See* Dkt. No. 102-3 at 2, 3. Neither form states that Mrs. Feenstra had a right to a judicial inquiry and opportunity to be heard on her inability to pay, or that the District Court was required to find that she was willfully not making payments before imposing any incarceration for failure to pay. Nor do they advise of her right to have installment payments set in reasonable amounts no higher than what she could afford.

---

[2] All citations to the Statement of Uncontroverted Facts in Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 104 at 5-26) incorporate the record citations contained therein.

[3] All evidentiary materials cited in this opposition are already of record, having been cited in, and filed with, either the Judicial Defendants' Motion for Summary Judgment (Dkt. No. 102) or Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 104).

2.      Plaintiffs admit that Mrs. Feenstra was released from custody in January 2017.  To the extent that the Judicial Defendants seek to suggest their compliance with Rule 8, Plaintiffs dispute that Mrs. Feenstra reported to the District Court for a meaningful "costs and fines review" on February 2, 2017.  Rather, Mrs. Feenstra's appearance at the courthouse that day was not before a judge, but with the District Court's cost administrator, Dana Forbes.  Dkt. No. 104 ¶ 82.  Plaintiffs admit that Mrs. Feenstra signed an "Order Granting Time to Pay Fines and Costs and Requiring Appearance for Non Payment" that required Mrs. Feenstra to make $50 monthly payments or risk incarceration.  *See* Dkt. No. 102-5.  At the time she signed this document (which the Judicial Defendant misleadingly call an "agreement"), Mrs. Feenstra had no counsel present.  She informed Ms. Forbes that the monthly payment was "too high," but Ms. Forbes told her that she "had no choice but to pay that $50" until she saw a judge.  Dkt. No. 104 ¶ 83; Dkt. No. 103-5 at 47:5-17.

3.      Plaintiffs admit that Mrs. Feenstra appeared for a fines and costs review in May 2017, but dispute that Mrs. Feenstra "requested a lowered payment to $40 per month" at that time. The record is that Mrs. Feenstra informed the presiding judge, Judge Sigler, that she "could not afford to pay the fines and costs" due to her "other fines and costs and other financial responsibilities."  Dkt. No. 103-5 at 52:17-22, 54:13-55:8.  She also informed the District Court[4] that its proposed $40 monthly payment "was still going to be too high" and that she "wasn't going to be able to pay that."  *Id*. at 52:12-53:2.  Judge Sigler's response was that "he didn't care; that's what he ordered it at and that's what it would be at," adding that if Mrs. Feenstra "couldn't pay it, then [she] would go to jail."  *Id.* at 52:12-53:2, 54:13-55:8.

4.      Admitted.

---

[4] All capitalized terms not defined herein are used as defined in Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 104).

5.      Plaintiffs dispute that a "failure to appear" warrant was issued following Mrs. Feenstra's inadvertent absence from the May 4, 2018 cost review.  Dkt. No. 104 ¶ 91.  Judge Sigler issued a bench warrant for "Failure to Pay" and set her bond at "$330 cash only" without speaking to her and without conducting any inquiry into her ability to pay.  *Id.*; *see* Dkt. No. 102-9.  When Mrs. Feenstra belatedly learned that she had missed her court date, she informed the court clerk that she "didn't have the money to pay that fine."  Dkt. No. 104 ¶¶ 92-93.

6.      The Judicial Defendants' assertions concerning Mrs. Feenstra's arrest and incarceration for failure to pay fines, fees, and costs in May 2018 are incomplete and therefore disputed.  Mrs. Feenstra was summarily arrested in a courthouse hallway on a failure to pay warrant after she voluntarily appeared at the courthouse to explain her non-appearance at a scheduled cost review.  Dkt. No. 104 ¶¶ 94-95.  The next day (after spending the night in jail), Mrs. Feenstra appeared before Judge Sigler by video; as she had told the corrections personnel the day before, she explained to Judge Sigler that she "had no money" with which to pay either her missed installment payment or a bond, and that she "had to get back to work."  *Id.* ¶¶ 96-97.  Judge Sigler's response was that "it wasn't his problem."  *Id.* ¶ 97.  In his order remanding Mrs. Feenstra to jail and imposing the $330 bond, Judge Sigler concluded that she had "willfully refused or neglected to pay" her fines, fees, and costs.  Dkt. No. 102-10.  There was no valid basis for that conclusion (which was contrary to fact), and Judge Sigler's order did not state any, writing only "7.6.18 @ 1:30 pm f+c."  *Id.*

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

4

11.     Admitted.  Judge Gibson's waiver did not involve a finding that Mrs. Feenstra was unable to pay the fines, fees, and costs that had been assessed against her.  Dkt. No. 102-15; OKLA. STAT. ANN. tit. 22, § 983(A) (West 2021).

## II.     PLAINTIFF SHARONICA CARTER.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Plaintiffs admit that Ms. Carter signed an "Order Granting Time to Pay Fines and Costs and Requiring Appearance for Non Payment" in October 2013.  Dkt. No. 102-20.  The order imposed a $75 monthly payment obligation on Ms. Carter.  *Id.*  Judge DeLapp (who signed the order) did not conduct any inquiry into Ms. Carter's ability to pay this amount before approving the order.  Dkt. No. 104 ¶¶ 41-43.  The District Court disregarded Ms. Carter's frequent exhortations at subsequent cost docket proceedings that she was unable to pay the $75 amount, instead threatening her with immediate incarceration.  *Id.* ¶¶ 46-51.

16.     Plaintiffs admit that Ms. Carter's suspended sentence was revoked in June 2016.  However, they dispute that Ms. Carter's amended Judgment and Sentence notified her of her Rule 8 rights; it speaks only of obligations.  Dkt. No. 102-24 at 5-6.  Thus, the only reference on the Amended Judgment and Sentence form with respect to Rule 8 is that "[t]he defendant shall report to the District Court of Washington County within 48 hours of release for a hearing on the defendant's ability to pay fines and costs pursuant to Section VIII of the Rules of the Court of Criminal Appeals."  *Id.*  The form does not advise Ms. Carter of her right to be heard on her (in)ability to pay or to have payments lowered to a reasonable, affordable amount (or waived entirely).  Nor does it advise of her right to a judicial finding regarding her ability to pay before any incarceration for non-payment.

5

17.     Admitted that Ms. Carter stipulated to a violation of probation and that the District Court's order revoking Ms. Carter's sentence noted that "previous orders as fines, costs, or restitution are still in effect to the extent they remain unpaid." *See* Dkt. No. 102-21 at 3.  However, the form does not reflect that Ms. Carter stipulated that she had any ability to pay any previously imposed or new amounts in fines, fees, and costs.

18.     Plaintiffs dispute that Ms. Carter was notified of a "judicial" hearing.  The letter on its face says that Ms. Carter would meet with either a judge or a cost administrator; and, in fact, she met only with the latter, Ms. Forbes.  Dkt. No. 104 ¶ 54.  At that meeting, Ms. Carter told Ms. Forbes that she "couldn't pay $75" because she had been recently released from incarceration and was unemployed, and that she could afford a monthly payment of only $25; Ms. Forbes nonetheless set Ms. Carter's monthly obligation at $75, and told her "No.  You've got to pay $75." Dkt. No. 103-3 at 109:16-111:12.

19.     Plaintiffs admit that the District Court imposed a new payment plan on Ms. Carter on October 17, 2017, pursuant to an Order Granting Time to Pay Fines and Costs and Requiring Appearance for Non Payment.  That Order is not an "agreement."  Dkt. No. 102-26.  Plaintiffs dispute that Ms. Carter "agree[d]" to make $75 monthly payments toward her fines, fees, and costs: she told Ms. Forbes that she was unable to afford the $75 monthly payment; Judge DeLapp, in signing off on the order, did not conduct any inquiry into Ms. Carter's ability to pay the imposed amount, and did not speak to Ms. Forbes about Ms. Carter's ability to pay.  Dkt. No. 104 ¶¶ 54-55. Judge DeLapp also did not conduct any subsequent inquiry into Ms. Carter's ability to pay the imposed amount, instead telling her at subsequent court appearances (at which Ms. Carter was never represented by counsel): "Do you have the money?  If not, you're going to jail.  Pack your toothbrush.  Good luck."  Dkt. No. 103-3 at 115:10-17.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Plaintiffs admit that Ms. Carter was ordered to make a $50 payment by Judge Sigler

at a fines and cost review on September 28, 2018.  At that appearance, Ms. Carter informed Judge

Sigler that she could not afford the $75 monthly payment. Dkt. No. 104 ¶ 57.  Judge Sigler ordered

her to make a $50 payment that same day or risk going to jail.  *Id.*  Ms. Carter's family members

made the payment, and the District Court ordered her monthly payments to remain at $75.  *Id.* ¶¶

57-58.  Plaintiffs dispute that Ms. Carter "agree[d]" to this arrangement.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Plaintiffs dispute that Ms. Carter has not "contacted" the District Court "regarding

her financial obligations" since November 2019.  During this litigation (filed in March 2019), the

Judicial Defendants have requested (and obtained) discovery on Ms. Carter's financial condition

and deposed her on the same.  Nowhere in their Motion do the Judicial Defendants claim that Ms.

Carter has *ever* had the ability to pay her court debt.  And the record is uncontroverted that Ms.

Carter cannot currently pay anything toward her outstanding fines, fees, and costs.  Dkt. No. 104 ¶¶ 65-66.

III.    **WASHINGTON COUNTY PROCEDURES.**

33.    Admitted.

34.    Admitted.  All of the procedures related to fines, fees, and costs discussed in the Judicial Defendants' brief were implemented after Judge DeLapp's resignation following multiple allegations of impropriety.  During Judge DeLapp's tenure, the Judicial Defendants admit that the District Court did not have a system that properly implemented Rule 8 hearings and thus afforded the constitutional protections the Rule was implemented to protect.  Dkt. No. 104 ¶ 31.

35.    Admitted.

36.    Plaintiffs have no basis to dispute the Judicial Defendants' assertion that Judge Thomas began reviewing the fines and costs procedures "[s]hortly after taking the bench," although Plaintiffs note that this action was filed in March 2019, which is also "shortly after" Judge Thomas was sworn into office in January 2019.  *See* Dkt. No. 3-1.

37.    Plaintiffs admit that the Judicial Defendants have implemented certain practices related to fines, fees, and costs in the District Court, and add that all of these practices were introduced following Judge DeLapp's resignation in August 2018 and Judge Thomas's elevation to the bench in January 2019.  Material and improper features of the District Court's fines, fees, and costs regime remain unchanged, and even the changes made remain subject to modification or withdrawal.  Plaintiffs respond as follows to the specific practices described by the Judicial Defendants:

a)    Plaintiffs dispute the contention that individuals determine the amount of their monthly installment payments.  At sentencing, neither the defendant nor the sentencing judge knows the total fines, fees, and costs that will be imposed, nor does the judge discuss the prospect

that a defendant could be excused from payment obligations with a proper showing.  Dkt. No. 104 ¶¶ 111-115.  In this context, the notion that individuals "determine" the amount of their payments is false (and fancifully implies that the individual and the judge are somehow equal negotiating partners who come to an "agreement").  Nor is there any evidence in the record suggesting that individuals before the District Court understood that they could "determine" to pay zero towards their fines, fees, and costs if they were unable to afford any payments.  The record is wholly to the contrary:  no individual has *ever* said:  "I can't pay anything."  Dkt. No. 103-2 at 54:11-19.  Just as was the case before the purported changes instituted by Judge Thomas, individuals still meet with the cost administrator, who still sets their monthly payments without conducting any ability into their ability to pay the amounts imposed (and so by a court order, not by "agreement").  Dkt. No. 104 ¶ 117.  Plaintiffs further dispute the proposed fact that "[t]here is no court-imposed minimum monthly payment required," as individuals are always ordered to pay something.  Dkt. No. 103-4 at 48:2-5, 80:10-17.

b)  Plaintiffs admit that certain (but not all) of the fines, fees, and costs assessed in connection with a sentence are reflected in plea agreements.  The final total of fines, fees, and costs is not reflected on the plea forms or known by the judge at sentencing, and is disclosed to individuals only in post-sentencing meetings with the cost administrator.  Dkt. No. 104 ¶¶ 7, 113, 116-117.  Plaintiffs admit that the current version of the plea form advises individuals that they are "entitled to schedule a hearing to have a judge determine your ability to pay fines, fees, costs or assessments."  This language was absent from either of Plaintiff's plea forms.  *Compare* Dkt. Nos. 103-8, 103-32, *with* Dkt. No. 103-40 at 11.

c)  Plaintiffs admit that the Judicial Defendants claim that they sometimes ask limited questions of individuals regarding their ability to pay fines, fees, and costs at sentencing (a

fact that highlights the constitutional deficiencies of the imposition as to fines, fees, and costs as to Plaintiffs, neither of whom was asked any of these questions).  However, there is no extrinsic evidence supporting that claim, and the Judicial Defendants have conceded that there is no consistent practice of asking about child support obligations, education, income, court debts from other jurisdictions, food stamp eligibility or other indicia of poverty, the existence of disabilities, or the number of dependents.  Dkt. No. 104 ¶¶ 114-115.  For the reasons stated in ¶ 37(a), *supra*, Plaintiff's dispute the Judicial Defendants' contention that payments are set by "agreement" or at an amount of the defendant's "choosing."

       d)       Plaintiffs admit that individuals appearing in the District Court are now given leaflets entitled "RULE 8 NOTICE OF HEARING" at sentencing, but dispute that the "hearings" purportedly described in the leaflet satisfy the requirements of Rule 8.  Neither Plaintiff received such a form at her sentencing proceedings (or at any time thereafter).  Plaintiffs likewise admit that the District Court now makes available template motions for individuals to request Rule 8 hearings.  Dkt. No. 102-44 at 6.  Plaintiffs dispute as legal conclusions the Judicial Defendants' proposed "facts" to the effect that their current conduct and practices are "in accordance with all applicable Oklahoma law."  Should the Court elect to construe these legal conclusion as "facts," Plaintiffs aver that they are controverted by at least Judge Sigler's testimony that he does not consistently inquire into an individual's financial status and obligations during Rule 8 hearings. Dkt. No. 104 ¶¶ 120-121.

       e)       Plaintiffs dispute that individuals appearing before the District Court cost administrator "agree[]" to particular payment amounts or are "advise[d]" of particular amounts they can pay.  Plaintiffs state that printed forms outlining the District Court's current practices make no mention of the availability of any inquiry into an individual's ability to pay fines, fees,

and costs, and instead emphasize various circumstances under which an individual "MUST APPEAR" at a cost docket proceeding.  Dkt. No. 102-44 at 7.  Neither Plaintiff received such a form during her sentencing or in her subsequent dealings with the cost administrator.

      f)    Plaintiffs dispute the characterization of "agreed" monthly payments, for the reasons set forth in ¶ 37(a), *supra*.  Plaintiffs admit that, as of January 2019, the District Court appears to have ceased, for now, its former practice of incarcerating individuals for failure to pay fines, fees, and costs without conducting an inquiry into the individual's ability to pay the amounts assessed.  Under the District Court's prior practice, Mrs. Feenstra was incarcerated for failure to pay fines, fees, and costs and summarily denied a hearing into her ability to pay in May 2018.  Dkt. No. 104 ¶¶ 91-98.  Ms. Carter was similarly incarcerated in January 2014 and threatened with incarceration at later dates, including September 2018, for failure to satisfy her monthly payment obligations, notwithstanding her statements to the District Court that she was then unemployed and unable to pay the fines, fees, and costs assessed.  *Id.* ¶¶ 46-51, 54, 56-57.

      g)    Admitted.

38.    Plaintiffs admit that the Judicial Defendants have stated that, sometime after this lawsuit was filed, the District Court recalled bench warrants that had been improperly issued for failure to pay fines, fees, and costs.  Plaintiffs dispute that the replacement warrants were issued to comport with the District Court's "current policy" on bench warrants.  The District Court currently has no written policy, procedure, or administrative order prohibiting the issuance of bench warrants for failure to pay fines, fees, and costs.  Dkt. No. 104 ¶ 122.

39.    Plaintiffs have no basis to dispute the Judicial Defendants' assertion that the District Court has not remanded any individual to jail for failure to pay fines, fees, and costs since January 2019.  Plaintiffs dispute the Judicial Defendants' remaining proposed "facts" reflecting the Judicial

Defendants' legal conclusions regarding the discretion of the District Court and its compliance with Oklahoma law on this issue.

40.     Admitted.

41.     Plaintiffs dispute that individuals who "agree" to make installment payments are ordered to appear for cost docket proceedings; rather, individuals, like Plaintiffs, who are ordered to make installment payments, are then required to appear at cost docket proceedings (unless they satisfy certain conditions).  *See* Dkt. No. 102-45 at 21.

42.     Admitted.

43.     Admitted, with the proviso that the continuing failure, conceded by Defendant Judge Sigler, to inquire into individuals' employment status, financial condition and obligations, or disability during cost docket proceedings means that the Judicial Defendants still fail to adhere to constitutional and statutory mandates.  Dkt. No. 104 ¶ 121.

44.     Plaintiffs admit that Judge Sigler nominally inquires as to whether an individual would like a court reporter for cost docket proceedings, and note that court reporting fees are then added to an individual's fines, fees, and costs.  Dkt. No. 103-2 at 40:14-16, 41:1-14.  Plaintiffs note that the Judicial Defendants' generic reference to "Rule 8 hearings" is misleading and clouds the fact that Rule 8 speaks of different sorts of proceedings which occur at different times.  As to any proceeding purportedly conducted under any provision of Rule 8 by the District Court, Plaintiffs dispute the Judicial Defendants' legal conclusion that individuals are afforded a "full and fair" opportunity to present evidence on their ability to pay fines, fees, and costs at any proceedings currently conducted by the District Court:  Judge Sigler does not inquire into an individual's ability to pay in a systematic, organized, or methodical way.  As a result, he is not always aware of whether the individual is employed, has a disability, has dependents, or owes court debts in other

jurisdictions.  Dkt. No. 104 ¶ 121.  Plaintiffs dispute the contention that any individual seeking relief from their fines, fees, and costs in the future "will" receive a "full and fair opportunity" to present their case and receive a "fair" decision.  None of the policies or procedures currently governing the imposition of fines, fees, and costs in the District Court are permanent.  Judge Thomas has not distributed any written policies or guidance or promulgated any administrative orders on fines, fees, and costs to her judicial colleagues.  Dkt. No. 103-4 at 91:13-24.  She does not supervise the dockets of her fellow Judicial Defendants, or provide them with any structured training on fines, fees, and costs issues.  *Id.*, 36:7-36:11, 36:19-37:19, 104:14-17.  The cost administrators and court clerks likewise receive no training or guidance on the imposition of fines, fees, and costs on former defendants.  *Id.*, 32:16-34:8.  Every change Judge Thomas has implemented since the resignation of former Judge DeLapp (and since the commencement of this litigation) can instantly be undone by another District Judge—or by Judge Thomas herself.  *See* Dkt. No. 102-44 ¶ 8 (stating that Judge Thomas "intend[s]" that current procedures stay in place).

45.     Admitted.  Neither Plaintiff received the current version of the Plea of Guilty Summary of Facts form, nor did they receive the "Yellow Form," "Green Form," the form regarding the current District Court procedures regarding cost docket proceedings, the "Pink Form," or a Motion for Rule 8 hearing form.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     Plaintiffs dispute as improper, and contrary to the record, the legal conclusion that the District Court's current procedures and practices with respect to fines, fees, and costs "fully

comply with the U.S. Constitution and with state law." *See supra* ¶¶ 37(a)-(d), (f), 44; Dkt. No. 104 ¶¶ 111-122.

## STANDARD OF REVIEW

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (citation omitted); *see* Fed. R. Civ. P. 56(a). "All disputed facts must be resolved in favor of the party resisting summary judgment," *White v. Gen. Motors Corp.*, 908 F.2d 669, 670 (10th Cir. 1990), and "all reasonable inferences from the record" must similarly be drawn in favor of that party. *Patel*, 849 F.3d at 978.

## ARGUMENT

### I.   THE JUDICIAL DEFENDANTS HAVE NOT SHOWN THAT THEIR CONDUCT WAS LAWFUL.

In support of their argument that Plaintiffs' due process and equal protection rights have been "satisfied" (*see* Dkt. No. 102 at 23-28), the Judicial Defendants make a number of assertions that boil down to two propositions: Plaintiffs' rights would not have been violated had they begun the process now, and the Judicial Defendants have (as to Mrs. Feenstra at least) taken some steps to remove the financial burden initially imposed. As to the former, the current District Court procedures remain constitutionally and statutorily deficient (a point addressed in Part II.A.1, *infra*). As to the latter, the Judicial Defendants' argument amounts to a concession of prior (and not wholly remediated) due process, equal protection, and statutory violations.

The Judicial Defendants do not dispute the principle that when a person faces the possibility of incarceration for failure to make court-ordered payments, due process requires that they be afforded, at minimum: (1) notice "that [her] 'ability to pay' is a critical issue" in the

proceeding; and (2) "an opportunity at the hearing" for the person "to respond to statements and questions about [her] financial status." *Turner v. Rogers*, 564 U.S. 431, 447-48 (2011); *see Harper v. Young*, 64 F.3d 563, 567 (10th. Cir. 1995) (inmate subject to revocation of participation in a conditional supervision program was entitled to prior written notice of the prospective revocation and the evidence against him, the opportunity to be heard in person, and the right to offer evidence), *aff'd*, 520 U.S. 143 (1997).

Nor do the Judicial Defendants dispute that Judge DeLapp violated Ms. Carter's procedural due process rights in January 2014 when he did not provide notice that her ability to pay the outstanding $150 in minimum payments was critical to whether she could be lawfully incarcerated, and summarily dismissed her insistence that she could not afford to pay by responding, "Well, that's tough" and then ordering the bailiff to "take her" to the county jail. Dkt. No. 103-3 at 33:3-24, 35:8-36:6. The Judicial Defendants similarly do not dispute that Judge Sigler violated Mrs. Feenstra's procedural due process rights in May 2018 when he similarly failed to provide notice that her ability to pay her outstanding $330 bond was critical to whether she could be incarcerated for non-payment, and told her that it "wasn't his problem" if she could not afford to pay. Dkt. No. 103-5 at 73:24-74:5, 74:11-19, Dkt. No. 103-33, Dkt. No. 103-34.

Similarly, the Judicial Defendants concede that under *Bearden v. Georgia*, 461 U.S. 660 (1983), the due process and equal protection clauses require a court to determine that an individual willfully refused to pay before ordering imprisonment for failure to pay a fine. *See* Dkt. No. 102 at 24. They also admit that in order to comport with the equal protection clause, there must be "an opportunity to be heard regarding ability to pay" "before . . . sanctions for nonpayment may be imposed." *See id*. at 27. And they do not dispute in their Motion that Judge DeLapp incarcerated Ms. Carter in January 2014 without inquiry or a finding as to whether her nonpayment was willful

(*see* Dkt. No. 103-1 at 138:10-15, 139:6-11, 141:13-21; Dkt. No. 103-3 at 33:3-34:5, 34:15-21, 35:8-36:6; Dkt. No. 103-13) or that Judge Sigler similarly incarcerated Mrs. Feenstra in February 2018 without such inquiry or finding (*see* Dkt. No. 103-5 at 73:24-74:5, 74:11-19, Dkt. No. 103-33, Dkt. No. 103-34).

The record admits of no serious dispute with regard to the fact that Plaintiffs' rights were violated when their fines, fees, and costs were initially imposed, and in subsequent incarcerations, threatened incarcerations, and failures to reduce those amounts. The Judicial Defendants' careful assertion that those rights have since been "satisfied" is thus only a dressed-up version of their various mootness-related arguments, to which Plaintiffs now turn.

## II.   THE JUDICIAL DEFENDANTS HAVE NOT SHOWN THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT ON THE GROUND THAT PLAINTIFFS ARE NOT ENTITLED TO FURTHER RELIEF.

The Judicial Defendants claim that that they are entitled to summary judgment because there is no live controversy and no further relief that this Court can provide to Plaintiffs. They offer a number of overlapping doctrines to support that proposition, all of which rest fundamentally on voluntary, easily-undone changes the Judicial Defendants made to their prior practices after Plaintiffs initiated this proceeding. None of the arguments is legally persuasive or grounded in undisputed facts. As a result, the Court should deny the motion.

### A. The Record Does Not Support a Finding of Constitutional Mootness.

The Judicial Defendants do not appear to dispute that Plaintiffs had standing to bring this lawsuit at the outset of the litigation, as the Court found in denying the Judicial Defendants' motion to dismiss. Dkt. No. 47 at 14-19; *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (whether a party has standing depends on whether "the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*" (emphasis added) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 180 (2000))). Instead, the Judicial

Defendants assert that now "Plaintiffs' claims are moot and therefore Plaintiffs lack standing." Dkt. No. 102 at 18.  The argument is incorrect on the law and not adequately supported in the record.

A case is not moot "as long as the parties have a concrete interest, however small, in the outcome of the litigation."  *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012).  "[E]ven where it is 'too late to . . . provide a fully satisfactory remedy,' the availability of 'a partial remedy' will prevent the case from being moot."  *Utah Env't Cong. v. Russell*, 518 F.3d 817, 824 (10th Cir. 2008) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).  Thus, the Judicial Defendants can succeed on their request for summary judgment only if "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" *and* "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *The Cherokee Nation W. v. U.S. Army Corps of Eng'rs*, No. 14-CV-612-JED-TLW, 2016 WL 4548441, at *2-3 (N.D. Okla. Aug. 31, 2016) (citations omitted).   The Judicial Defendants bear the evidentiary burden as to both showings.  *Id.* at 3.

### 1.     The Incomplete, Voluntary Measures, Which Remain Subject to Modification and Withdrawal at Any Time, Do Not Render the Case Moot.

As detailed in Plaintiffs' Motion for Partial Summary Judgment, the limited, recent changes imposed by the Judicial Defendants are insufficient to remedy longstanding deficiencies in the District Court's practices in respect of the imposition and collection of fines, fees, and costs; those measures are also voluntary and subject to modification or withdrawal.  Dkt. No. 104 ¶¶ 111-122.

The record reflects that the current practices of the District Court neither inform nor consistently ensure the enforcement of individuals' statutory and constitutional rights.  Judge Thomas, who has the final authority to implement and change any procedures relating to the

17

collection of fines, fees, and costs (*see* Dkt. No. 102-44 ¶ 8; Dkt. No. 103-4 at 21:1-9), does not inform individuals that they may be eligible for a complete waiver of their outstanding fines, fees, and costs under title 22, section 983a of the Oklahoma Statutes.  Dkt. No. 103-4 at 48:2-5.  Nor does she regularly review individuals' affidavits of indigence, discuss the prospect of excusing them from payment obligations, or lower their fines, fees, and costs due to their indigence.  Dkt. No. 104 ¶¶ 112, 115.  She also does not consistently inquire at sentencing about key financial metrics such as child support obligations, income, court debts from other counties, food stamp eligibility, the existence of disabilities, or the number of dependents.  Dkt. No. 103-4 at 69:1-13, 71:8-24, 72:13-73:1.  Furthermore, at cost docket proceedings, Judge Sigler does not know the total amount of fines, fees, and costs imposed on an individual.  Nor does he ask detailed questions about an individual's  regular expenses and income that would shed light on her ability to pay.  Dkt. No. 103-2 at 15:3-9, 15:24-16:11, 16:16-18:7, 18:20-20:13.  Because the District Court does not ask sufficient questions to fully and accurately ascertain a person's financial circumstances, indigent people remain at risk of being required to pay amounts beyond their means.

There is only one potential vehicle by which an individual *might* receive a hearing during which the District Court makes an appropriate inquiry into her financial circumstances, and gives the individual an opportunity to present a detailed explanation and evidence related to the same.  That vehicle is the "Rule 8 docket" over which Judge Sigler now presides, and which did not exist until after Judge DeLapp's resignation.  Dkt. No. 103-2 at 35:4-16, 35:18-24, 36:8-12.  However, an individual must request a Rule 8 hearing in order to obtain one.  *Id.*, 37:9-17.  The District Court's practice of placing the burden on the individual to demand a constitutionally and statutorily required ability-to-pay determination violates the explicit requirements of Rule 8.5 that if a defendant "is unable to pay [the] fine and/or costs either immediately or in installment payments,

he/she *must* be relieved of the fine and/or costs" or have the costs suspended until a later date at which the court may examine if a "change of condition has made it possible for the defendant to commence" making payments. OKLA. STAT. ANN. tit. 22, ch. 18 app. § VIII, Rule 8.5 (West 2021) (emphasis added). Nor does the practice comply with the requirement of Rule 8.1 that "a judicial hearing *shall* be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs" imposed at sentencing, or the requirement of Rule 8.3 that "a determination *shall* be made as to the defendant's ability to make installment payments after completion of the term of imprisonment." *Id.*, Rules 8.1, 8.3 (emphasis added); *see also* OKLA. STAT. ANN. tit. 22, § 983(B) (West 2021) (the court "shall set the amount and date for each installment"); *Woolen v. Coffman*, 676 P.2d 1375, 1377 (Okla. Crim. App. 1984) (reasoning that "[t]he Legislature's choice of the word 'shall' is highly significant" because "[i]t is usually given the meaning of 'must', and is interpreted as implying a command or mandate" (citation omitted)).

And even if the "new" Rule 8 hearings *could* in theory be part of a remedy for prior wrongs, they are not in fact such a remedy. At Rule 8 hearings, Judge Sigler does not always know whether the individual is employed, has a disability, has dependents, or has court debts in other jurisdictions in Oklahoma. Dkt. No. 103-2 at 38:2-40:1. Without knowing the answers to these questions, the District Court does not have a full picture of the defendant's earning potential, regular income, or expenses, and cannot determine whether an individual actually has the ability to pay the fines, fees, and costs imposed on them. Therefore, the Judicial Defendants have not shown that a genuine assessment of an individual's ability to pay ever occurs, even at present. The contention that the limited changes to date moot Plaintiffs' claims thus is not supported by an undisputed record—the weight of evidence, indeed, is to the contrary.

But there is another essential flaw in the Judicial Defendants' casual claim of "mootness." Not only are the District Court's present practices inadequate, but those limited changes the Judicial Defendants invoke can be altered or withdrawn at any time. Judge Thomas asserts that the District Court's judicial officers no longer incarcerate individuals for failure to pay, but also admits that there is no written policy, procedure, or administrative order to that effect. Dkt. No. 103-2 at 30:5-11; Dkt. No. 103-4 at 91:13-24. Even in her affidavit (which, of course, Plaintiffs have had no opportunity to test), she offers only that she "do[es] not *intend* to return to any prior fines, fees, or costs practices . . . that are inconsistent with "the present practices"—thus necessarily conceding that she can also reinstate the old practices at any time. Dkt. No. 102-44.

Judge Thomas' statements, and the facts described above, counsel against a finding of mootness on the present state of the record. As a general rule, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Laidlaw*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Courts adopt this rule to counteract "the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Cherokee Nation*, 2016 WL 4548441, at \*4 (quoting *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008); *see also Laidlaw*, 528 U.S. at 189 (without this rule, "courts would be compelled to leave '[t]he defendant . . . free to return to his old ways'" (alteration in original) (quoting *City of Mesquite*, 455 U.S. at 289 n.10)). Thus, in "claiming that [their] voluntary compliance moots [this] case," the Judicial Defendants "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190 (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "Such a burden will typically be met only by changes that

20

are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct." *Cherokee Nation*, 2016 WL 4548441, at *3 (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004).

Here, the Judicial Defendants' "only conceivable basis" for mootness is that certain, but not all, of the practices either alleged or admitted to violate a swath of statutory and constitutional provisions are not currently being followed. Those changes are not sufficient or sufficiently guaranteed or permanent, even in their limited scope, to moot this case. *See Cherokee Nation*, 2016 WL 4548441, at *3-4; *MacIntyre v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 13-cv-1647-WJM-MEH, 2014 WL 3809496, at *2-3 (D. Colo. Aug. 1, 2014).

## 2. Mrs. Feenstra's Claims Are Not Moot.

The Judicial Defendants correctly assert (and Plaintiffs acknowledge) that Mrs. Feenstra is no longer required to pay her outstanding fines, fees, or costs. Dkt. No. 102 at 21; Dkt. No. 102-15. Unsupported and incorrect is what the Judicial Defendants do with that assertion. They leap to the conclusion that Mrs. Feenstra lacks any redressable injury for the essentially-conceded violations of her statutory and constitutional rights prior to the District Court's post-litigation waiver of her outstanding payments. As discussed, in order for the Court now to find that, as a constitutional matter, Mrs. Feenstra's claims are moot, it would have to conclude that, on the present record, waiving fines, fees, and costs "completely and irrevocably eradicated the effects of the alleged violation." *Cherokee Nation*, 2016 WL 4548441, at *2 (citation omitted); *see also Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff . . . need not show that a favorable decision will relieve his *every* injury." (emphasis added)). The record does not support that conclusion.

To the contrary, Mrs. Feenstra continues to suffer injury due to the presence of public records that document past arrests and warrants for inability to pay. Those warrants and arrests

followed the wrongful initial imposition of fines, fees, and costs, and were themselves likewise wrongful.  Dkt. No. 102 at 21.

Mrs. Feenstra remains entitled to a ruling that the imposition and enforcement of those fines, fees, and costs was a violation of her constitutional and statutory rights.  The effects of those violations are not erased by the limited post-litigation corrective actions on which the Judicial Defendants now rely:  future employers, lenders, insurers, and any other individuals or entities that choose or need to review Mrs. Feenstra's background will see the records which are indistinguishable from those of an individual who had the ability to make payments and was arrested after willfully refusing to pay.  That is why the Amended Complaint seeks vacatur as one of its remedies—a fact the Judicial Defendants ignore.  There is tangible, meaningful relief to which Mrs. Feenstra is entitled but which she has not received.  Or, at the very least, Mrs. Feenstra remains entitled to make those showings at trial.  Either way, her claims are not moot.

### 3.  Ms. Carter's Claims Are Not Moot.

Everything just noted about Mrs. Feenstra applies to Ms. Carter, who would bear a lifetime of similarly-improper handicap if Judge DeLapp's initial and ongoing violations are not redressed.  But the argument for constitutional mootness is even weaker in respect of Ms. Carter, who still owes over $5,200 to the District Court, and has outstanding warrants associated with those debts.  *See* Dkt. No. 103-22; Dkt. No. 103-31.  It is undisputed that Ms. Carter does not have any savings and lives paycheck to paycheck.  Dkt. No. 103-3 at 127:10-19, 128:13-129:9.  After paying for food and basic necessities, she does not have any money left, much less the ability to pay the $75 in monthly minimum payments.  *Id*., 127:14-19, 128:13-129:9.  Had the District Court's procedures complied with the dictates of the U.S. and Oklahoma Constitutions, as well as Rule 8, that amount of court debt, and that monthly minimum payment, would not have been imposed after sentencing, or, at the very least, would have been reduced when she came before the District

Court and stated that she was unable to pay due to poverty.  Dkt. No. 104 at 28-32, 35-39; Dkt No. 103-1 at 138:10-15, 141:13-21; Dkt. No. 103-13.  The Judicial Defendants point to no facts in the record that suggest (much less prove without dispute) that the total amount of court debt, or the payment plan, should not be declared void *ab initio*, and that the District Court's present position that Ms. Carter is legally required to repay this total amount, at a minimum of $75 per month, does not present an ongoing injury.

All the Judicial Defendants muster in response to the evidence that confronts them on this point is the suggestion that Ms. Carter could possibly secure a reduction in her payment plan or her total outstanding amounts owed if she appears before the District Court.  *See* Dkt. No. 102 at 21.  That assertion is both irrelevant to the question of constitutional mootness and reveals the Judicial Defendant's fundamental misapprehension of the injury caused by Judge DeLapp's (essentially undisputed) errors and wrongful conduct.  For purposes of constitutional standing, the only questions are whether Ms. Carter alleged an injury at the time the complaint was filed (and the law of this case is that she has, Dkt. No. 47 at 14-19), and whether that injury has since been completely remediated and the underlying wrongful behavior cannot "reasonably be expected to recur."  *See Knox*, 567 U.S. at 307-08;  *Laidlaw*, 528 U.S. at 189; *Russell*, 518 F.3d at 824-825; *Cherokee Nation*, 2016 WL 4548441, at *2.  Her injury has not been remediated and there is insufficient assurance that prior wrongs will not be repeated.

Like Mrs. Feenstra, Ms. Carter continues to suffer injury from the presence of public records that document the improper issuance of warrants and consequent arrests (equally improper) for inability to pay.  Dkt. No. 103-3 at 21:7-22, 22:5-23:9, 58:8-59:18, 117:12-118:12.  Compounding her injury is the District Court's continued refusal to waive Ms. Carter's outstanding court debts, despite undisputed evidence that these sums were imposed in violation of Ms. Carter's

rights. Because the District Court's voluntary measures remain lacking, and are subject to reversal at any time, Ms. Carter faces the continuing risk of being subject to the same constitutional violations—including failure to reduce or suspend installment payments, and imprisonment for failure to pay—that she had suffered in the past. The Judicial Defendants have therefore not shown any "actual evidence of a permanent policy change" sufficient to moot this case. *See Cherokee Nation*, 2016 WL 4548441, at *3.

### B. The Record Does Not Support Invocation of the Prudential Mootness Doctrine.

The foregoing discussion should also dispose of the Judicial Defendants' prudential mootness proposition. Again contending (incorrectly) that the limited measures undertaken as to Mrs. Feenstra render further relief "unnecessary," they argue that the Court should "withhold relief it has the power to grant." *See* Dkt. No. 102 at 22-23. The Judicial Defendants have not remedied all of the statutory and constitutional infirmities of the District Court system, nor are the limited measures recently adopted binding or permanent. Dkt. No. 104 ¶¶ 111-122. And certainly those measures, which are concededly prospective, do not address at all the fact that prior conduct was improper and must be declared so and remedied to afford Plaintiffs proper relief.[5] *See supra* Part II.A.2-3.

Equity and prudence militate against invoking the prudential mootness doctrine here. The Judicial Defendants' reliance on *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) demonstrates why. In *Winzler*, the Court invoked the doctrine in respect of a class action against Toyota that was rendered prudentially moot because, due to an intervening act of

---

[5] In addition, the Judicial Defendants have not met the burden to show that any partial measures they chose to adopt "render[] it highly unlikely that the actions in question will be repeated," further counseling against exercising discretion to deem this case moot. *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997).

Congress setting forth a national recall process for defective vehicles, Toyota was "well on its way to completing the recall—and . . . the phase of the recall covering [plaintiff's] car [was] already complete." 681 F.3d at 1212. Here, the very point is that nothing binding—nothing remotely comparable to a statutory mandate—exists to ensure that the complained-of practices will be permanently remedied. Instead, the measures undertaken are limited and inadequate, and can be altered or withdrawn at any time. Judge Thomas concedes as much, noting she retains the ability to "return to . . . prior fines, fees, or costs practices" if she so later "intend[s]." *See* Dkt. No. 102-44 ¶ 8.

**C. Plaintiffs Are Entitled to Relief under the Declaratory Judgment Act.**

The theory of the Judicial Defendants' arguments related to the Declaratory Judgment Act mirrors the mootness arguments just discussed. Here again, the Judicial Defendants overstate the record in respect of their post-litigation actions and misunderstand the nature and lingering effect of Plaintiffs' injuries.

**1.    There Is an Actual Controversy Between Plaintiffs and the Judicial Defendants.**

In order to prevail on summary judgment, the Judicial Defendants must show that there are no disputed facts demonstrating the continued existence of an "actual controversy"; that is a high bar, as the showing required to demonstrate an "actual controversy" is "no greater showing than is required" for the "case or controversy" requirement under Article III of the U.S. Constitution. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240-41 (10th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)).

Plaintiffs have addressed Article III standing requirements, both on their own and in respect of the proffered mootness arguments (*see supra* Parts II.A-B). It should be apparent, therefore, that an "actual controversy" remains between the Plaintiffs and the Judicial Defendants. Dkt. No.

47 at 19 (citing *Surefoot LC*)).  Both Plaintiffs suffer from continued, unredressed injury traceable

to conduct that the Judicial Defendants essentially concede to have been wrongful.  Fines, fees,

and costs were imposed in plain derogation of Rule 8, and the Oklahoma and U.S. Constitutions.

Warrants were issued; arrests were made; incarcerations were effected; and debt reductions were

denied—all similarly in violation of statutory and constitutional provisions.  Ms. Carter continues

to labor under the direct financial effect of those wrongs, and both she and Mrs. Feenstra still must

deal with the residue:  extant public records that portray them falsely as willful violators of valid

court orders.

At the very least, there is a triable issue as to remedy, including whether declaratory relief

and vacatur are appropriate to redress conduct that the Judicial Defendants do not seriously defend,

even as they strenuously tell the Court (in paraphrase) that "they will never do it again."  That

position does not vitiate the "actual controversy" requirement; it tells the Court that the matter is

ripe to consider a remedy that will establish the unlawfulness of those past actions and provide a

basis for further relief correcting or removing those records.

### 2.    <u>The Judicial Defendants Have Not Shown that the Court Should Decline to Issue Declaratory Relief as a Matter of Discretion.</u>

The Judicial Defendants next argue that this Court should, in its discretion, decline to issue

a declaratory judgment (Dkt. No. 102 at 28-31), citing the five-factor test from *State Farm Fire &*

*Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).[6]  Application of the *Mhoon* factors typically

occurs in the context of a motion to dismiss, as the case speaks about the threshold exercise of

---

[6] The *Mhoon* factors are: (1) "whether a declaratory action would settle the controversy"; (2) "whether it would serve a useful purpose in clarifying the legal relations at issue"; (3) "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or to provide an arena for a race to *res judicata*"; (4) "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction"; and (5) "whether there is an alternative remedy which is better or more effective" (citation omitted).

federal jurisdiction (a matter already decided in Plaintiffs' favor here).  Assuming that the Court wishes nonetheless to take up the Judicial Defendants' belated invitation to apply the test on this Motion, each *Mhoon* factor counsels against the discretionary denial of relief the Judicial Defendants seek.

The first and second *Mhoon* factors "are similar in purpose and as such, can be addressed together." *Am. Interstate Ins. Co. v. Wilson Paving & Excavating, Inc*., No. 09-CV-342-JHP-TLW, 2009 WL 3427992, at *2 (N.D. Okla. Oct. 20, 2009).  It is not seriously disputed that a declaratory judgment would resolve the question of whether Plaintiffs' constitutional and statutory rights were violated and thus whether as to either Plaintiff, the Judicial Defendants can or could require payment of outstanding amounts of fines, fees, and costs.  It also would at least guide the decision whether the District Court can retain public records of financial obligations imposed, warrants issued, arrests made, and incarcerations effected in violation of Plaintiffs' constitutional and statutory rights.

The third factor likewise favors Plaintiffs because there is no evidence that Plaintiffs brought this suit for the purpose of "procedural fencing" or to "provide an arena for a race to *res judicata*."  *See id*. at *3.  There were no pending civil actions between Plaintiffs and the Judicial Defendants at the time Plaintiffs filed their state-court Petition, and there are no other such actions pending now.

The fourth factor likewise works against the Judicial Defendants, who removed this action from the District Court to a federal forum.  *See* Dkt. No. 3.  Having chosen to litigate in federal court, it would be anomalous and manifestly inequitable to allow them to avoid a reckoning out of some sort of "forum remorse."

Finally, there is no "better or more effective alternative" to this proceeding.  *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, No. CV-20-511-R, 2020 WL 6561315, at *3-4 (W.D. Okla. Nov. 9, 2020).  There is no viable alternative at all.  The Judicial Defendants argue that Plaintiffs have an alternative remedy, namely, seeking review of ability to pay at a cost docket proceeding or Rule 8 proceeding, but that argument begs the question of the adequacy of those proceedings (a central issue here) and well illustrates the essential fallacy of the Judicial Defendants' entire Motion:  the fact that Plaintiffs can seek a reduction of expenses wrongfully imposed does not adequately remedy the violations alleged.[7]

### D.  The Judicial Defendants Are "Persons" under 42 U.S.C. § 1983.

The Judicial Defendants argue that Plaintiffs' Section 1983 claims are not cognizable because the Judicial Defendants are not "persons" under Section 1983.  Dkt. No. 102 at 15.  That is just wrong:  "[A] state official in his or her official capacity, when sued for [prospective] relief, would be a person under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  This is because "official capacity actions for prospective relief are not treated as actions against the State."  *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  Holdings from courts in this Circuit reinforce the principle, including with respect to state judicial officers.  *See Pueblo of Santa Ana v. Nash*, 854 F. Supp. 2d 1128, 1139 (D.N.M. 2012) (holding that

---

[7] Thus, the  Judicial Defendants' assertion that "Plaintiffs may appeal any order that results in incarceration for failure to pay court debt or file a writ with the Court of Criminal Appeals" misses the point, as incarceration is not the only, or even the principal, injury of which Plaintiffs complain.  In denying the Judicial Defendants' previous motion to dismiss, the Court noted that the appellate process is "limited to an appeal from an order of detention, and does not include a district court's decision as to whether to reduce or stay monthly payments."  Dkt. No. 47 at 21.  Indeed, this argument is especially cynical, given the Judicial Defendants' past and continuing failure—in violation of Rule 8—to maintain recordings of required proceedings.  *See* Dkt. No. 104 at 4-5 (describing requirements of Rule 8.7), ¶¶ 16, 25, 28, 118.

plaintiffs could sue a state district court judge because plaintiffs "seek prospective injunctive relief against [the judge] in her capacity as a state district court judge" and "do not seek retroactive monetary damages"); *Hershey v. Turner*, No. CIV-19-344-SPS, 2020 WL 1932911, at *2 (E.D. Okla. Apr. 21, 2020) (allowing claims against state university officials requesting declaratory judgment and injunctive relief to go forward). Not surprisingly, the Judicial Defendants do not cite any contrary authority in a case seeking relief akin to that here.

### E. Plaintiffs Properly Assert Claims for Injunctive and Declaratory Relief for Violation of Rule 8.5.

The Judicial Defendants assert that injunctive or declaratory relief is not available for violations of Rule 8.5, principally because Plaintiffs already received relief through reductions in monthly minimum payments, and because the District Court's voluntary measures (as well as the waiver of Mrs. Feenstra's outstanding fines, fees, and costs) render the likelihood of any further injury speculative. Dkt. No. 102 at 38-39. They similarly argue that Plaintiffs have no basis for declaratory relief because the District Court's new procedures mean that the Judicial Defendants (who cannot hear Plaintiffs' claims during the pendency of this case due to conflict) would be willing to grant the relief requested. *Id*. at 39-40.

First, it should by now be apparent that this is little more than old coffee in new cups: it is just another manifestation of the wrongheaded assertion that the Judicial Defendants' limited, insufficient, and revocable adoption of new practices has mooted Plaintiffs' claims. *See supra* Part II.A.1-2. Second, the argument ignores that federal courts have "broad equity jurisdiction." *See Gant v. Grand Lodge of Tex.*, 12 F.3d 998, 1003 (10th Cir. 1993). A plaintiff is not limited to seeking a declaratory judgment that a defendant should follow the law in issue in the future, and is entitled to seek relief that rectifies continued consequences of past wrongful conduct. Indeed, Oklahoma courts have issued equitable relief far more burdensome than that sought here. *See City*

*of Tulsa v. Crain*, 573 P.2d 707, 709 (Okla. 1978) (upholding issuance of injunction requiring removal of a building constructed in violation of city ordinance).

### III. PLAINTIFFS' CLAIMS PRIOR TO MARCH 2017 ARE NOT TIME-BARRED.

The Judicial Defendants assert that due to the two-year limitations period under "the most analogous Oklahoma statute," some of Plaintiffs' Section 1983 claims—those related to conduct prior to March 21, 2017, two years before the date of Plaintiffs' Petition—are time barred. This Court rejected these arguments in denying the Judicial Defendants' motion to dismiss because Plaintiffs had plausibly alleged that their claims should be equitably tolled. Dkt. No. 47 at 9–14. Now, on summary judgment, the Judicial Defendants have not shown either that Plaintiffs' claims actually had accrued as of March 2017 or that application of equitable tolling would be inappropriate. The undisputed facts on the record are to the contrary.

As to the former, the Judicial Defendants ignore the fact that *accrual* is a question of federal law. Federal law applies the discovery rule, which instructs that "federal causes of action accrue[, and] . . . the statute of limitations" for a civil rights action under Section 1983 "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citations omitted). "It is settled law in the majority of circuits that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury." *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). The record demonstrates that neither Plaintiff knew nor reasonably had reason to know of her claims against the Judicial Defendants until well after March 21, 2017. Certainly, the record does not present an undisputed set of material facts supporting the contrary proposition that the Judicial Defendants advance.

Ms. Carter was not only unaware of her right to an ability-to-pay inquiry, but was also led to believe, due to Judge DeLapp's conduct, that no such right existed. When she told Judge

30

DeLapp on multiple occasions that she could not afford to make her minimum payments, he merely responded, "that's tough," and ordered the bailiff to "take her" to jail, or told her to "pack your toothbrush" and implied that she would be incarcerated again if she did not make payment immediately.  Dkt. No. 103-3 at 33:3-24, 35:8-36:6, 115:10-17.   Similarly, Mrs. Feenstra was never informed of her Rule 8 rights, and the record shows that if anything, the Judicial Defendants led her to believe that she did not have such rights.  When she told Judge Sigler in May 2017 that she could not afford to pay her imposed fines, fees, or costs, Judge Sigler responded that he "didn't care," and threatened that she "would go to jail" if she couldn't pay those amounts.  Dkt. No. 104 ¶¶ 87-88.  And in May 2018, Judge Sigler incarcerated Mrs. Feenstra to sit out payment of a bond she could not afford to pay, telling her that "it wasn't his problem" that she "had no money" to make payment.  Dkt. No. 103-5 at 73:24-74:5, 74:11-19; Dkt. No. 103-33, Dkt. No. 103-34. Consequently, neither Ms. Carter nor Mrs. Feenstra "knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm," *see Alexander*, 382 F.3d at 1216, and the record does not support a finding of summary judgment for the Judicial Defendants.  *See Maughan*, 758 F.2d at 1389 (reversing grant of summary judgment "[b]ecause of the conflicting inferences to be drawn from the record" as to when "plaintiffs should have been aware of the existence of their cause of action").

Even were the record otherwise (and the facts suggested that Plaintiffs' claims had accrued earlier), the Court should apply the equitable tolling doctrine and deem all claims timely asserted. As recognized by the Tenth Circuit (and this Court), under Oklahoma law,[8] "if defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights,

---

[8] Oklahoma tolling principles apply.  *Alexander*, 382 F.3d at 1217 ("Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983 . . . .  As such, state law governs the application of tolling in a civil rights action.").

the limitations period may not be triggered."  Dkt. No. 47 at 12 (quoting *Alexander*, 382 F.3d at 1217) (internal quotation marks omitted); *see also Watkins v. Cent. State Griffin Mem'l Hosp.*, 377 P.3d 124, 127, 131-32 (Okla. 2016) (defendant hospital's false communication to plaintiff that its nurse had committed no wrongdoing warranted reversal of summary judgment on statute of limitations grounds because "[t]he record contain[ed] sufficient evidence to raise a question as to whether . . . [d]efendants' conduct was misleading and whether such conduct induced [plaintiff] to refrain from bringing a timely action"); *Tice v. Pennington*, 30 P.3d 1164, 1166-67, 1172-73 (Okla. Civ. App. 2001) (vacating grant of summary judgment to defendants on statute of limitations' grounds due to defendants' "pattern of misrepresentation" that caused plaintiffs to not learn of wrongdoing until seven years after plaintiffs' injury).

This Court already held that the allegations in the original Complaint "plausibly assert[ed] a potential basis for tolling the statute of limitations for Ms. Carter's Section 1983 claim, subject to later proof," because "the Complaint include[d] sufficient facts that defendants engaged in false, fraudulent, or misleading conduct calculated to lull plaintiffs into sitting on their rights . . . ." Dkt. No. 47 at 12-13.  The Court identified several allegations in the Complaint as potentially constituting "sufficient facts" to toll the statute, including the allegations that Plaintiffs' "[r]equests to lower monthly payments [were] often denied"; that Judge Sigler "routinely instruct[ed] criminal defendants in his court to make a same day payment or be sent to jail"; that Plaintiffs were "not advised at 'cost docket' appearances of their right to an ability to pay inquiry"; and that "defendants' conduct led plaintiffs to effectively believe that they had no right to such an inquiry." Dkt. No. 47 at 12-13 (internal quotation marks omitted) (citing Dkt. No. 3-1).

Since this Court's prior ruling, discovery has shown that not only were those allegations (which remain in the Amended Complaint) well-pleaded, but they are accurate.

At her cost docket appearance before Judge DeLapp in January 2014, Ms. Carter was not advised of her right to an ability-to-pay inquiry and was led to believe, due to Judge DeLapp's conduct, that no such right existed. When she told him that she was unemployed and could not pay the $150 in missed payments, he responded, "that's tough," and asked the bailiff to "take her." Dkt. No. 103-3 at 33:3-24, 35:8-36:6. Later on, Judge DeLapp continued to refuse Ms. Carter's requests to lower monthly payments when she later said she could not afford to pay them. Dkt. No. 103-3 at 115:10-17. Instead, he simply said "good luck" or "pack your toothbrush." *Id.* Judge Sigler, after taking over the cost docket responsibilities in 2018, continued to threaten to incarcerate Ms. Carter if she could not pay the amounts ordered. Dkt. No. 104 ¶¶ 57-58.

Similarly, at no point did any District Court judge, or District Court employee, ever inform Mrs. Feenstra that she had the option to make a request under Rule 8 to lower her fines, fees, and costs. *See* Dkt. No. 103-5 at 158:12-21. The record shows, if anything on the point, that the Judicial Defendants' statements and conduct led her to believe that she *did not* have such rights. For example, at Mrs. Feenstra's cost docket appearance before Judge Sigler in May 2017, she informed Judge Sigler that she "could not afford to pay the fines and costs" due to having to pay "other fines and costs and other financial responsibilities." *Id.*, 52:12-53:2, 54:13-55:8. Even though Mrs. Feenstra attempted to detail her expenses and other obligations to Judge Sigler, he "never asked [her] how much any of that added up to." *Id.*, 56:20-57:4. Instead, Judge Sigler told Mrs. Feenstra that "he didn't care; that's what he ordered it at and that's what it would be at," adding that if she "couldn't pay it, then [she] would go to jail." *Id.*, 52:12-53:2, 54:13-55:8. And ultimately Judge Sigler made good on his threat, ordering Mrs. Feenstra to remain incarcerated in May 2018 to "sit out" the payment of an amount she could not afford to pay immediately. Dkt. No. 103-5 at 73:24-74:5, 74:11-19, Dkt. No. 103-33, Dkt. No. 103-34.

Consequently, sufficient evidence exists to show that Judge DeLapp and Judge Sigler's repeated and flagrant disregard of Rule 8's protections led Ms. Carter and Mrs. Feenstra to believe, until well into the statutory period, that they had no right to an ability-to-pay hearing, to not be incarcerated absent a District Court finding that failure to pay was willful, or to relief from the imposed monthly installment payments due to inability to pay.[9]

## IV.   PLAINTIFFS ARE PERMITTED TO BRING CIVIL ACTIONS FOR THEIR STATE-LAW CLAIMS.

The Judicial Defendants appear to make two arguments to the effect that Plaintiffs are prohibited from bringing private civil actions against the Judicial Defendants for their state-law claims (Counts 1, 5-7).  First, they argue that "a civil lawsuit against a judicial officer is not a proper mechanism for challenging judicial error under Oklahoma law."  Dkt. No. 102 at 32. Second, they argue that the "Oklahoma Court of Criminal Appeals Rules do not provide a separate or private cause of action."  *Id*.  Neither argument has merit.

### A.  This Suit Is Properly Framed.

The Judicial Defendants assert that the "proper mechanisms" through which Plaintiffs should have litigated are "requesting that the judge reconsider his or her decision," "appealing the judge's erroneous decision," or "seeking a writ against the erring judge from a higher court."  Dkt.

---

[9] The Judicial Defendants' claim that Ms. Carter and Mrs. Feenstra received timely notice of their Rule 8 rights on their judgment and sentencing forms (*see* Dkt. No. 102-3 at 2; Dkt. No. 102-24 at 5), or on the "Notice of Court Hearing for Payment of Fines and Costs" form (*see* Dkt. No. 102-4; Dkt. No. 102-25), is unavailing.  The language on these forms merely orders an individual to report to the District Court for an ability-to-pay hearing upon release from incarceration.  The forms do not inform the individual of her statutory and constitutional rights, such as the right to not be incarcerated for failure to make payment due to poverty.  In Ms. Carter's case, the purportedly operative provisions are either un-checked (*see* Dkt. No. 102-24 at 5) or dated within the limitations period (*see* Dkt. No. 102-25), years after the District Court began imposing and enforcing her fines, fees, and costs.  In any event, the Judicial Defendants have provided no reason to believe that these few lines, on two of the many forms Plaintiffs received from the District Court, would change Plaintiffs' understanding of their rights.

No. 102 at 32.  In denying the Judicial Defendants' motion to dismiss, the Court properly noted that "whether an alternative remedy exists" does not relate to "whether or not the controversy is justiciable."  Dkt. No. 47 at 21-22.  That conclusion was and remains correct, and none of the authority cited by the Judicial Defendants holds that a private civil action is not a permissible means to address Plaintiffs' claims.

Indeed, this action is superior to each of the mechanisms suggested by the Judicial Defendants.  Requesting that the Judicial Defendants "reconsider" their decisions is demonstrably futile.  *See* Dkt. No. 103-3 at 33:3-24, 35:8-36:6; Dkt. No. 103-5 at 52:12-53:2.  The  record is replete with undisputed evidence that, for example, Judges DeLapp and Sigler repeatedly refused to entertain Plaintiffs' requests for relief from their outstanding fines, fees, and costs, and repeatedly declined to meaningfully evaluate whether Plaintiffs had the ability to pay previously-imposed payments.

The only case on which the Judicial Defendants rely in suggesting that seeking relief through "a separate civil lawsuit is improper" stands for the unremarkable proposition that when a court has ongoing jurisdiction over a dispute and is able to provide a plaintiff "all of the relief they are entitled to," a plaintiff cannot go to another court to seek relief over the very same issues. *See State ex rel. Bonney v. Arthurs*, 169 P.2d 561 (Okla. 1946).  By contrast, this action is the proper vehicle for the relief that Plaintiffs now seek and to which they are entitled, including a declaratory judgment as to the unlawfulness of the District Court's actions and vacatur to correct the ongoing effects of such actions.  As this Court has recognized, Plaintiffs are not re-litigating the District Court's judgment and sentence of their fines, fees, and costs—Plaintiffs are instead challenging the lawfulness of the procedures used to impose and enforce the payment of those amounts.  *See* Dkt. No. 48 at 13-14.

35

**B.  A Private Right of Action Exists for Violation of the Oklahoma Court of Criminal Appeals' Rules.**

The Judicial Defendants concede that courts are permitted to imply a private right of action for violations of Oklahoma law, but argue, without merit, that such a right cannot be implied in respect of violations of Rule 8.  In determining whether to imply a private right of action, courts consider whether: "1) the plaintiff is one of the class for whose especial [sic] benefit the statute was enacted; 2) there is some explicit or implicit legislative intent suggesting the desire to create a private remedy and not to deny one; and 3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme."  *Howard v. Zimmer*, 299 P.3d 463, 472-73 n.38 (Okla. 2013) (citing *Holbert v. Echeverria*, 744 P.2d 960, 962-63 (Okla. 1987)); *Rabin v. Bartlesville Redevelopment Tr. Auth.*, 308 P.3d 191, 193-94 (Okla. Civ. App. 2013) (quoting *Holbert*, 744 P.2d at 963).

Here, each factor supports implying a private right of action for the Judicial Defendants' violations of Rules 8.1, 8.4, and 8.5.  First, Plaintiffs belong to the class of indigent individuals for whose benefit Rules 8.1, *et. seq*. were created.  The Judicial Defendants provide no authority for their assertion that "[c]riminal defendants with financial obligations pursuant to criminal convictions are not a special class of people for which the Rules were created," an assertion that cannot survive even minimal scrutiny.  For example, title 22, section 983 of the Oklahoma Statutes, under which the Court of Criminal Appeals enacted the Rule 8 procedures (*see Rutledge v. Turner*, 495 P.2d 119, 122-24 (Okla. Crim. App. 1972)), explicitly states that the court "shall implement procedures and rules for *methods of establishing payment plans of fines, costs, fees, and assessments by indigents* . . . ."  OKLA. STAT. ANN. tit. 22, § 983(D) (West 2021) (emphasis added).

Second, beyond merely pointing out that Rule 8 and title 22, section 983a of the Oklahoma Statutes give courts the power, in certain instances, to modify the enforcement or imposition of

outstanding fines, fees, and costs on an individual, the Judicial Defendants point to no record evidence of legislative intent to *deny* a private right of action in the event a court *fails* to comply with the plain requirements of Rule 8.   To the contrary, Rule 8 is part of a statutory scheme designed to codify the constitutional requirements related to the imposition and collection of fines, fees, and costs because they were "essential to preservation of the intendments of the Fourteenth Amendment of our Federal Constitution."  *Rutledge*, 495 P.2d at 122-24.   There is, of course, a private right of action for violations of these constitutional requirements—a Section 1983 claim— strongly suggesting the legislature's intent to create (and not deny) a corresponding private right of action for violations of those same constitutional requirements codified under Rule 8.   Finally, and as the foregoing implies, permitting Plaintiffs to sue for equitable relief is consistent with (and strengthens) the underlying purpose of the Rules:   to mandate that courts adhere to the "inescapable" conclusions "essential to preservation of the intendments of the Fourteenth Amendment."  *Id.*  Thus, the Judicial Defendants have failed to show, as needed to obtain summary judgment, that it is beyond genuine dispute of material fact that Rule 8 does not imply a private right of action.

## V.     SUMMARY JUDGMENT CANNOT BE GRANTED ON MS. CARTER'S RULE 8.1 CLAIM BECAUSE THE RECORD DOES NOT PROVE THAT SHE EVER RECEIVED AN ABILITY-TO-PAY HEARING ON HER IMPOSED FINES, FEES, AND COSTS—EVEN AFTER HER RELEASE FROM CONFINEMENT.

The Judicial Defendants argue, relying on *DeRonde v. State*, 715 P.2d 84, 87 (Okla. Crim. App. 1986), that because Ms. Carter was taken into custody following her release, "no ability to pay hearing was required at the time of sentencing."  Dkt. No. 102 at 34-35.  They further claim that because after Ms. Carter's release Judge DeLapp "determined that Carter could not 'immediately satisfy' the fines and costs imposed" and "ordered [her] to make installment payments for $75.00 per month," he did not violate her Rule 8.1 rights.  *Id.* at 34.  The Judicial

Defendants do not claim—and the record does not reflect—that Judge DeLapp conducted an ability-to-pay hearing following Ms. Carter's release before he ordered her to pay $75 per month—or at any time thereafter. *See* Dkt. No. 103-1, 134:4-17; Dkt. No. 103-22 (10/31/13 minute entry). Thus, the Judicial Defendants' argument amounts to the proposition that a District Court judge—so long as he orders repayment in installments (even when the monthly installment amount is set according to an "unwritten rule" rather than the individual's ability to pay, *see* Dkt. No. 104 ¶¶ 42-43)—can avoid the requirements of Rule 8.1 by remanding an individual to jail following sentencing and then neglecting to conduct an ability to pay inquiry at any time following their release. The Judicial Defendants cite no legal authority nor record evidence in support of that proposition, which would flout Rule 8.1 and render it effectively meaningless.

The Judicial Defendants also argue that Judge DeLapp "is no longer a judge and there are no allegations that any of the remaining defendants have violated Rule 8.1" and therefore, "Carter's claim under Rule 8.1 fails." Dkt. No. 102 at 35. This argument is baseless for multiple reasons. Fed. R. Civ. P. 25(d) makes clear that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office", as the "officer's successor is automatically substituted as a party." And as Plaintiffs have made clear repeatedly, this Court invited, and permitted, Plaintiffs to substitute the current District Judge and Associate District Judge, in their official capacities, in place of Judge DeLapp on the claim for violation of Rule 8.1. *See* Dkt. No. 47 at 26; Dkt. No. 50 at 3-4; Dkt. No. 65 at 4-5.

## VI.    THERE IS AT LEAST A TRIABLE ISSUE AS TO WHETHER JUDGE SIGLER ORDERED MRS. FEENSTRA INCARCERATED FOR FAILURE TO PAY.

The Judicial Defendants argue that they are entitled to summary judgment on Mrs. Feenstra's claims related to her incarceration due to failure to pay because "M[r]s. Feenstra was never actually jailed for 'failure to pay.'" Dkt. No. 102 at 35-36. But the Judicial Defendants

confuse two separate judicial acts:  they focus solely on Judge Sigler's authorization of a warrant purportedly due to Mrs. Feenstra's failure to appear for a May 4, 2018 cost docket proceeding (*see id*. at 36), but then ignore Judge Sigler's issuance of an order remanding Mrs. Feenstra to jail "for failure to pay fines and costs" on May 10, 2018, after she appeared before him and stated that she could not afford to pay the $330 bond he imposed (*see* Dkt. No. 103-33; Dkt. No. 103-34).  Judge Sigler imposed the latter order after Mrs. Feenstra told him at the May 10, 2018 proceeding that she could not afford to pay.  Judge Sigler responded that it "wasn't his problem" if she could not afford to pay, and he remanded her to jail to "sit out" the $330 bond at an amount of $25 per day, or "until the amount of $330.00 [was] paid into the case."  Dkt. No. 103-5 at 73:24-74:5, 74:11-19, Dkt. No. 103-33, Dkt. No. 103-34.  Mrs. Feenstra remained incarcerated until her husband borrowed $330 to pay to the District Court, which went towards the repayment of her outstanding fines, fees, and costs.  Dkt. No. 103-5 at 74:20-24, Dkt. No. 103-36 at 7.

There is record evidence that Judge Sigler incarcerated Mrs. Feenstra due to her purported failure to make her minimum required payments towards fines, fees, and costs, certainly evidence sufficient to create a triable issue on the claim.  The bench warrant itself states that it was issued for "failure to pay" rather than "failure to appear."  Dkt. No. 103-31.  Mrs. Feenstra has testified that when she told Judge Sigler that she "thought [she] was current" on her payments, at her May 10, 2018 cost docket proceeding, Judge Sigler "told [her] that [she] was not current and that [she] could either sit it out or [she] could bond out."  Dkt. No. 103-5 at 74:11-16.  Judge Sigler admits that he maintained the practice of incarcerating individuals and "setting bonds for failure to pay" until "sometime after Judge Thomas came to be on the bench" in "January of 2019"—including during the time he incarcerated Mrs. Feenstra.  Dkt. No. 103-2 at 88:9-22.  The record therefore reflects that Judge Sigler was, at best, careless in his decisions to jail individuals for failure to

39

appear or failure to pay, or, worse, did not even attempt to ascertain whether they were current on their payments before jailing them for purported "failure to pay."  The fastidious distinction he attempts to draw between "failure to appear" and "failure to pay" now—years after Mrs. Feenstra appeared before him and in a litigation affidavit Plaintiffs have had no opportunity to test—is neither undisputed nor supported by the record, and is certainly not sufficient to carry the Judicial Defendants' summary judgment burden.[10]

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the Judicial Defendants' motion for summary judgment.

---

[10] Judge Sigler now disputes the veracity of his *own* prior oral representations to Mrs. Feenstra, and his issuance of a signed bench warrant for "failure to pay."  However, the Court cannot, for purposes of summary judgment, make a determination that his current statements are more credible than his prior ones, and award summary judgment to the Judicial Defendants on this basis.  *See Henry v. Gehl Corp.*, 867 F. Supp. 960, 962 (D. Kan. 1994) (denying summary judgment and reasoning that "[a] summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences" (citation omitted)).

Dated:  March 29, 2021

By: */s Michael Lacovara*

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago (admitted *pro hac vice*)
John Fowler (admitted *pro hac vice*)
Lawyers' Committee for
Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara (admitted *pro hac vice*)
Lilia Vazova (admitted *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1200
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and
Sharonica Carter*