# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and
SHARONICA CARTER,

                Plaintiffs,

v.

JARED SIGLER, *et al.*,

                Defendants.

No.  19-cv-00234-JFH-CDL

**PLAINTIFFS' OPPOSITION TO THE OIDS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F:  (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago*
John Fowler*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
T:  (202) 662-8600
F:  (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara*
Lilia Vazova*
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T:  (212) 906-1200
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*

\* = admitted pro hac vice

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................1

    I.      PROCEDURAL HISTORY.................................................................................1

    II.     CONSTITUTIONAL AND STATUTORY PROVISIONS...................................2

PLAINTIFFS' RESPONSE TO THE OIDS DEFENDANTS' STATEMENT OF
UNCONTROVERTED FACTS .................................................................................4

SUMMARY JUDGMENT STANDARD....................................................................................18

ARGUMENT ..............................................................................................................................19

    I.      THE OIDS DEFENDANTS HAVE NOT ESTABLISHED THAT
           PLAINTIFFS' OIDS CONTRACTORS PROVIDED EFFECTIVE
           ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT. .............19

    II.     THE OIDS DEFENDANTS HAVE NOT ESTABLISHED THAT THE
           CONFLICT CREATED BY OIDS HAD NO EFFECT ON
           REPRESENTATION............................................................................................22

           A.      The OIDS Defendants Confuse the Appellate Standard for
                    Reversal of a Criminal Conviction with the Standard for Civil
                    Declaratory and Injunctive Relief..............................................................23

           B.      The OIDS Defendants Cite Irrelevant and Immaterial Facts,
                    Ignoring Facts that Preclude Summary Judgment. ....................................24

    III.    THE OIDS DEFENDANTS HAVE NOT ESTABLISHED THE
           ABSENCE OF REDRESSABILITY......................................................................29

    IV.    THE OIDS DEFENDANTS HAVE NOT PROVEN THAT PLAINTIFFS'
           CLAIMS ARE TIME-BARRED. ..........................................................................31

           A.      Many of the OIDS Defendants' Acts and Omissions Occurred after
                    March 21, 2017. ........................................................................................32

           B.      The Federal "Discovery Rule" Applies, and Plaintiffs' Claims Did
                    Not Accrue Prior to March 2017. ..............................................................33

           C.      Equitable Tolling Principles Preclude Summary Judgment. .....................34

CONCLUSION............................................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) ...............................................................................25

*Alexander v. Oklahoma*,
382 F.3d 1206 (10th Cir. 2004) .......................................................................32, 34

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................................18

*Bearden v. Georgia*,
461 U.S. 660 (1983)...............................................................................................3

*Beattie v. United States*,
949 F.2d 1092 (10th Cir. 1991) ...........................................................................29

*Chasten v. Okla. ex rel. Okla. Dep't of Corr.*,
No. CIV-09-0509-HE, 2011 WL 4104524 (W.D. Okla. Sept. 14, 2011)...............34

*Duncan v. Michigan*,
774 N.W.2d 89 (Mich. Ct. App. 2009), *aff'd*, 780 N.W.2d 843 (Mich. 2010),
*vacated*, 784 N.W.2d 51 (Mich. 2010), *reinstated*, 866 N.W.2d 407 (Mich.
2010) ....................................................................................................................23

*Feenstra v. Sigler*,
No. CV-2019-12 (Okla. Dist. Ct. Wash. Cty. Mar. 21, 2019)..................................1

*Gagnon v. Scarpelli*,
411 U.S. 778 (1973)...............................................................................................3

*Gardner v. Florida*,
430 U.S. 349 (1977)...............................................................................................3

*Gideon v. Wainwright*,
372 U.S. 335 (1963)...............................................................................................3

*Heckman v. Williamson Cty.*,
369 S.W.3d 137 (Tex. 2012)................................................................................23

*Hurrell-Harring v. New York*,
930 N.E.2d 217 (N.Y. 2010).................................................................................23

*Kuren v. Luzerne Cty.*,
146 A.3d 715 (Pa. 2016).......................................................................................23

*Larson v. Valente,*
    456 U.S. 228 (1982) ................................................................................................... 29

*Luckey v. Harris,*
    860 F.2d 1012 (11th Cir. 1988) .................................................................................. 23

*Morris v. Wise,*
    293 P.2d 547 (Okla. 1955) .......................................................................................... 34

*Nova Health Systems v. Gandy,*
    416 F.3d 1149 (10th Cir. 2005) .................................................................................. 29

*Patel v. Hall,*
    849 F.3d 970 (10th Cir. 2017) .................................................................................... 18

*Phillips v. California,*
    No. 15CECG02201, 2016 WL 1573199 (Cal. Super. Ct. Apr. 11, 2016) ................... 23

*Rutledge v. Turner,*
    495 P.2d 119 (Okla. Crim. App. 1972) ......................................................................... 3

*Strickland v. Washington,*
    466 U.S. 668 (1984) .............................................................................................. 22, 23

*Thomas v. Wichita Coca-Cola Bottling Co.,*
    968 F.2d 1022 (10th Cir. 1992) .................................................................................. 22

*Trainor v. Apollo Metal Specialties, Inc.,*
    318 F.3d 976 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003) ..................... 18

*Tucker v. State,*
    394 P.3d 54 (Idaho 2017) ........................................................................................... 23

*Turner v. Rodgers,*
    564 U.S. 431 (2011) ...................................................................................................... 3

*United States v. Henry,*
    468 F.2d 892 (10th Cir. 1972) .................................................................................... 28

*In re Warren,*
    512 F.3d 1241 (10th Cir. 2008) .................................................................................. 28

*White v. Gen. Motors Corp.,*
    908 F.2d 669 (10th Cir. 1990) .................................................................................... 18

*Wilbur v. City of Mt. Vernon,*
    989 F. Supp. 2d 1122 (W.D. Wash. 2013) ................................................................. 23

*Wood v. Georgia*,
    450 U.S. 261 (1981)...........................................................................................19, 26

## STATUTES

42 U.S.C. § 1983.........................................................................................................2, 32

OKLA. STAT. ANN. tit. 22
    § 1355.6(A).......................................................................................................2
    § 1355.6(B).......................................................................................................2
    § 1355.6(D).......................................................................................................2
    § 1355.8(G)(1)..................................................................................................2
    § 1355.14(E)......................................................................................................4

OKLA. STAT. ANN. tit. 22, ch. 18, app. § VIII .................................................3, 5

## RULES

Fed. R. Civ. P. 56(a) .................................................................................................18

**SCHEDULE OF EXHIBITS CITED IN**
**PLAINTIFFS' OPPOSITION TO THE OIDS DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

| Ex. | Date | Document |
|---|---|---|
| 1 | 06/27/2017 | Professional Legal Services Contract between Oklahoma Indigent Defense System and Mark Kane d/b/a Kane, Kane, Kane, & Roark for Non-Capital Trial Services, Fiscal Year 2018 |
| 2 | 06/28/2016 | Professional Legal Services Contract between Oklahoma Indigent Defense System and Mark Kane d/b/a Kane, Kane, Kane, & Roark for Non-Capital Trial Services, Fiscal Year 2017 |
| 3 | 07/01/2011 | Professional Legal Services Contract between Oklahoma Indigent Defense System and Mark Kane d/b/a Kane, Kane, Kane, & Roark for Non-Capital Trial Services, Fiscal Year 2012 |
| 4 | 07/21/2010 | Professional Legal Services Contract between Oklahoma Indigent Defense System and Mark Kane d/b/a Kane, Kane, Kane, & Roark for Non-Capital Trial Services, Fiscal Year 2011 |
| 5 | 11/11/2020 | Transcript of the Deposition of Mr. Craig Sutter |
| 6 | 11/12/2014 | Application for Appointed Counsel and Affidavit of Financial Inability to Employ Counsel, *State of Oklahoma v. Ackerson*, No. CF-2014-00465 (Okla. Dist. Ct. Wash. Cty.) (Note:  Docket references to "Ackerson" are to Plaintiff Amanda Feenstra.) |
| 7 | 05/12/2017 | Court Minute, *State of Oklahoma v. Ackerson*, No. CF-2014-00465 (Okla. Dist. Ct. Wash. Cty.) |
| 8 | 05/02/2011 | Order Appointing Counsel for Criminal Defendant, *State of Oklahoma v. Carter*, No. YO-2011-0001 (Okla. Dist. Ct. Wash. Cty.) |
| 9 | 04/20/2016 | Order Appointing Counsel for Criminal Defendant, *State of Oklahoma v. Carter*, No. YO-2011-0001 (Okla. Dist. Ct. Wash. Cty.) |
| 10 | 03/28/2021 (last updated) | ODCR Docket, *State of Oklahoma v. Ackerson*, No. CF-2013-00207 (Okla. Dist. Ct. Garvin Cty.) |
| 11 | 03/28/2021 (last updated) | ODCR Docket, *State of Oklahoma v. Ackerson*, No. CF-2014-00269 (Okla. Dist. Ct. Osage Cty.) |
| 12 | 03/28/2021 (last updated) | ODCR Docket, *State of Oklahoma v. Ackerson*, No. CF-2010-00015 (Okla. Dist. Ct. Woodward Cty.) |

Plaintiffs Amanda Feenstra and Sharonica Carter respectfully submit this Opposition to the OIDS Defendants' Motion for Summary Judgment.  Dkt. No. 101.  The OIDS Defendants have not shown that they are entitled to summary judgment; therefore, their Motion should be denied.[1]

## PRELIMINARY STATEMENT

The OIDS Defendants' Motion relies on an overly restrictive reading of the factual record and seeks to ignore the deficient performance of the OIDS contractors who represented Mrs. Feenstra and Ms. Carter in respect of issues central to this dispute.  The then-current Executive Director of OIDS testified that competent and effective representation of indigent defendants should include advice with regard to the client's rights to reduction or waiver of fines, fees, and costs.  The undisputed record is that the OIDS contractors' representation did not include that, and Plaintiffs have made a showing sufficient to permit them to prove that the constitutionally deficient representation they received was traceable to the structure of their attorneys' payments by OIDS.

## FACTUAL BACKGROUND

## I.    PROCEDURAL HISTORY.

On March 21, 2019, Amanda Feenstra, Lonnie Feenstra, and Sharonica Carter filed a petition in District Court against (1) Judges Jared Sigler, Curtis DeLapp (Ret.), and John Gerkin (Ret.), and (2) the Oklahoma Indigent Defense Services, its then-Executive Director, Craig Sutter, and its Board of Directors, *Feenstra v. Sigler*, No. CV-2019-12 (Okla. Dist. Ct. Wash. Cty. Mar. 21, 2019).  Against the Judicial Defendants, Plaintiffs brought federal constitutional claims for failure to provide notice and an opportunity to be heard prior to arrest and detention and for punishment based only on indigence, seeking declaratory and injunctive relief.  Dkt. No. 3-1.

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in Plaintiffs' Corrected Motion for Partial Summary Judgment and Memorandum and Statement of Undisputed Material Facts in Support.  Dkt. No. 104 ("Plaintiffs' Motion").

Plaintiffs brought a claim against the OIDS Defendants for denial of the right to counsel in violation of the assistance of counsel clause of the Sixth Amendment to the United States Constitution, the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983.  *Id*.  On May 3, 2019, Defendants removed Plaintiffs' petition to this Court.  Dkt. No. 3.

In May 2019, the Original Judicial Defendants and the OIDS Defendants separately moved to dismiss Plaintiffs' petition.  Dkt. Nos. 10, 11.  After briefing and oral argument, this Court (per Judge Frizzell) issued an order on the Original Judicial Defendants' motion on November 13, 2019, and an order on the OIDS Defendants' motion the next day.  Dkts. Nos. 47, 48.  The Court upheld nearly all of Plaintiffs' claims, including Plaintiffs' claim against the OIDS Defendants.  *Id*.  The Court also allowed Plaintiffs the opportunity to amend their allegations against both sets of Defendants.  Dkt. No. 47 at 26; Dkt. No. 48 at 16; Dkt. No. 65 at 4.

The Amended Complaint asserts the same claim against the OIDS Defendants as Plaintiffs' original complaint (the "Complaint").  Dkt. No. 66.

## II.   CONSTITUTIONAL AND STATUTORY PROVISIONS.

The Oklahoma Indigent Defense Act ("OIDA") governs the responsibilities of the Oklahoma Indigent Defense System ("OIDS").  OIDA requires OIDS to provide representation for "all indigents . . . in all capital and felony cases and in all misdemeanor and traffic cases punishable by incarceration."  OKLA. STAT. ANN. tit. 22, § 1355.6(A).  The statute further permits OIDS to provide counsel in "other state proceedings" beyond those specifically delineated, *id.* § 1355.6(B), as well as when constitutionally required, *id.* § 1355.6(D).  Finally, OIDA provides that contract attorneys will be paid the final ten percent of their contract "upon completion of all . . . matters covered by the contract."  *Id.* § 1355.8(G)(1).  A matter is considered "completed" when "no additional services are required under the contract."  *Id.*

The Sixth Amendment provides the right to counsel for indigent criminal defendants up through and including sentencing.  *Gardner v. Florida*, 430 U.S. 349, 358 (1977); *Gideon v. Wainwright*, 372 U.S. 335 (1963).  The Fourteenth Amendment right to counsel picks up when the Sixth Amendment right ends.  *See, e.g.*, *Turner v. Rodgers*, 564 U.S. 431, 446-48 (2011) (Fourteenth Amendment's due process clause may require appointment of counsel at debt collection proceedings); *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) (Fourteenth Amendment's due process clause can provide a right to counsel at probation or parole revocation hearing).  *See also, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 668-69 (1983) (Fourteenth Amendment's due process *and* equal protection clauses prohibit incarceration for failure to pay without consideration of ability to pay, relying on *Gagnon*'s reasoning concerning "substantial reaso[n] which justifie[s] or mitigate[s] the violation" (alterations in *Bearden*) (citation omitted)).

Rules 8.1 to 8.8 of the Oklahoma Court of Criminal Appeals (collectively, "Rule 8") are part of a comprehensive scheme designed to codify the constitutional requirements related to the imposition and collection of fines, fees, and costs.  *See Rutledge v. Turner*, 495 P.2d 119, 122-24 (Okla. Crim. App. 1972) (identifying eight "inescapable" conclusions that became "guidelines for all District Courts of this State," because they were "essential to preservation of the intendments of the Fourteenth Amendment of our Federal Constitution").  The *Rutledge* conclusions were codified, often *in haec verba*, as Rule 8.  OKLA. STAT. ANN. tit. 22, ch. 18, app. § VIII.

Rule 8 provides multiple avenues for reduction or waiver of court debt.  Rule 8.1 requires that "[w]hen the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs."  *Id.* at Rule 8.1.  Rule 8.4 similarly provides that "[i]f the defendant fails to make an installment payment when due, he/she

must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due."  *Id.* at Rule 8.4.  Finally, Rule 8.5 provides that "[i]n the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs."  *Id.* at Rule 8.5.

Finally, OIDA provides an avenue for reduction or waiver of a fee that otherwise must be imposed in connection with an OIDS-funded representation.  The statute sets a fee for indigent defendants for the cost of representation, but then provides for reduction or waiver of the fee "upon good cause shown by the indigent person, or unless another amount is specifically *requested by counsel for the indigent person* and is approved by the court."  OKLA. STAT. ANN. tit. 22, § 1355.14(E) (emphasis added).

## PLAINTIFFS' RESPONSE TO THE OIDS DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

The OIDS Defendants' Motion proposes as "undisputed material facts" isolated snippets of the Amended Complaint, statutes, and rules, and carefully-parsed excerpts of the record.  In "admitting" certain facts, Plaintiffs do not dispute the accuracy of the text quoted by the OIDS Defendants, but regard (as explained in the enumerated responses below and in the argument that follows) much of the OIDS Defendants' handiwork as misleading, improperly incomplete, and inconsistent with proper proceedings under Rule 56.

1.     Admitted.

2.     Plaintiffs admit that the OIDS Defendants accurately cite portions of the Amended Complaint; however, the OIDS Defendants' citations are incomplete if intended as a fair summary of what actually has been pleaded.  Plaintiffs describe their claim against the OIDS Defendants in parts of the Amended Complaint the OIDS Defendants ignore, including in paragraphs 72, 73, 74, 75, 78, 79, 80, 81, and 82.  Dkt. No. 66.

3.      Plaintiffs admit that Defendants accurately cite a portion of the Amended Complaint; however, the OIDS Defendants' citation is again incomplete.  Plaintiffs also allege that the OIDS Defendants' failures to provide defendants counsel during Rule 8 or cost docket proceedings violated the Sixth Amendment in paragraphs 72, 73, 74, 75, 78, 79, 80, and 82 of the Amended Complaint.  Dkt. No. 66.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Plaintiffs submit that issues of statutory interpretation are not facts amenable to the treatment proffered by the OIDS Defendants.  In this particular context, the statute should not, as the OIDS Defendants request, be interpreted in a manner that violates the Sixth and Fourteenth Amendments.

7A.     OIDS' contracts with attorneys, including those for representation in proceedings before the District Court, permit OIDS to hold back ten percent of the contract total until all covered felony, misdemeanor, and traffic cases are completed.  *See* Ex. 1, FY 2018 OIDS Contract at 4; Ex. 2, FY 2017 OIDS Contract at 4; Ex. 3, FY 2012 OIDS Contract at 4; Ex. 4, FY 2011 OIDS Contract at 5.

7B.     The OIDS Defendants have made the decision to interpret a "complete[] case" that "require[s] no additional services under the contract" as one in which a judgment and sentencing order has been issued.  Ex. 5, Sutter Dep. 21:19-22:13.

7C.     The OIDS Defendants do not require OIDS contractors to be present when a judge makes a determination whether a criminal defendant is able to pay the fines, fees, and costs assessed in relation to her criminal conviction, as required by OKLA. STAT. ANN. tit. 22, ch. 18,

app. § VIII, Rule 8.1.  Ex. 5, 27:4-14.  OIDS' former Executive Director Craig Sutter[2] does not recall any instance in which an OIDS contractor in the District Court provided representation at a cost docket proceeding.  *Id*. at 41:1-7.

    8.      Admitted.[3]

    9.      Admitted.

    10.     Admitted.

    11.     Plaintiffs admit that the form plea agreements used in the District Court contain language that purports to have defendants attest to having discussed the charge(s) with their lawyers, advised their lawyers about any defenses they may have to the charges, and received their lawyers' advice.  Dkt. Nos. 101-3, 103-8.  The record described in the sub-paragraphs that follow demonstrates that Plaintiffs' OIDS contractors did not meaningfully, much less adequately, consult with Plaintiffs before entering their plea agreements, including as to Plaintiffs' right to an inquiry into their respective ability to pay prospective fines, fees, and costs.  Plaintiffs therefore dispute the contrary assertion by the OIDS Defendants (which ignores the weight of the record, including testimony elicited by counsel for the Defendants, but now ignored in their respective summary judgment motions).

***Amanda Feenstra***

    11A.   On November 10, 2014, Mrs. Feenstra applied for appointed counsel and signed an affidavit of financial inability to employ counsel.  Ex. 6, Feenstra Application for Appointed Counsel and Affidavit of Financial Inability to Employ Counsel (personal identifying information of non-parties has been redacted).

---

[2] Mr. Sutter was OIDS' Executive Director at the time this litigation was commenced and at the time he was deposed by Plaintiffs.

[3] Ms. Carter's plea agreement is filed in redacted form at Dkt. No. 103-8.

11B.    Mrs. Feenstra's first OIDS contractor spoke to her once, when Mrs. Feenstra was being transported from county jail to the courthouse, and only for five to ten minutes.   Dkt. No. 103-5 at 11:12-21.   He proposed that Mrs. Feenstra should proceed through the drug court because her then-use of drugs had led to Mrs. Feenstra's incarceration.   *Id*. at 11:22-12:18.   Mrs. Feenstra never spoke to this attorney again, and he retired soon thereafter.   *Id*. at 11:3-8.

11C.    Linda Branstetter replaced Mrs. Feenstra's first attorney.   Dkt. No. 103-5 at 12:16-18.   She met with Mrs. Feenstra for the first time the morning of Mrs. Feenstra's sentencing.   *Id*. at 14:2-11.   That was not for Mrs. Feenstra's lack of trying to get in touch with Ms. Branstetter. Mrs. Feenstra got Ms. Branstetter's address from a fellow inmate in the Washington County jail, wrote Ms. Branstetter at least four letters, and tried to get Ms. Branstetter to come and talk to her. *Id*. at 14:12-16:17, 26:5-6, 127:10-18.   Mrs. Feenstra also tried to call Ms. Branstetter every day during the week before Mrs. Feenstra was due in court for her sentencing, but Ms. Branstetter never accepted a call.   *Id*. at 26:15-21.   Ms. Branstetter never answered any of Mrs. Feenstra's letters, never visited Mrs. Feenstra, and never told Mrs. Feenstra what was going on in her case. *Id*. at 25:20-26:4.

11D.    During Mrs. Feenstra's first interaction with Ms. Branstetter (on the day of her sentencing), Ms. Branstetter told Mrs. Feenstra that she needed to take the plea agreement that was put in front of her "no matter what," even though it called for jail time and was inconsistent with the advice provided by Mrs. Feenstra's prior lawyer.   Dkt. No. 103-5 at 14:12-16:17.   Ms. Branstetter advised that the courts would not offer Mrs. Feenstra drug court, but would instead sentence her to life in prison if she did not take the plea agreement.   *Id*. at 14:12-16:17, 25:3-6.

11E.    Mrs. Feenstra asked for a different attorney because Mrs. Feenstra did not want Ms. Branstetter to represent her.  Dkt. No. 103-5 at 23:25-24:10.  Ms. Branstetter said that if Mrs. Feenstra wanted a new attorney, it would just keep Mrs. Feenstra in jail longer.  *Id*. at 24:8-16.

11F.    Mrs. Feenstra did not fill out the plea agreement or answer the questions on the form; Ms. Branstetter did.  Dkt. No. 103-5 at 28:18-29:1, 29:7-15.  Mrs. Feenstra cannot say for sure that she even saw the answers that were handwritten on the blank lines of the plea agreement before she was sentenced.  *Id*. at 32:20-33:4.  Mrs. Feenstra did not read the plea agreement before it was submitted to the court.  *Id*. at 37:6-8.

### *Sharonica Carter*

11G.    Ms. Carter and her OIDS contractor, Kristi Sanders, met for the first time on the day of her plea in the hallway outside the courtroom in the Washington County courthouse. Dkt. No. 103-3 at 131:23-132:6.  Ms. Carter, at the time sixteen years old, does not recall going over her plea agreement with Ms. Sanders prior to the plea hearing.  *Id*. at 80:12-81:14.  Ms. Carter recalls Ms. Sanders telling her that she should take the deal or otherwise spend a long time in the penitentiary.  *Id*. at 80:12-81:14, 83:14-84:10, 139:15-25.

11H.    Ms. Carter did not fill out her plea agreement; Ms. Sanders did.  Dkt. No. 103-3 at 88:12-89:12, 83:14-84:10.  Ms. Carter does not recall going over some parts of the form with Ms. Sanders.  *Id*. at 101:12-24.  On other parts of the form, Ms. Sanders' answers were incorrect.  *Id*. at 87:5-16.  Ms. Sanders would mark the answer "yes" for some questions even though Ms. Carter told Ms. Sanders that the answer to those questions should be "no."  *Id*. at 80:12-81:14, 82:4-8, 83:14-84:10.  For example, when the plea agreement asked "Can you read and understand this form?" Ms. Carter could read it, but told Ms. Sanders multiple times that she did not understand

it.[4] *Id.* at 83:7-84:18. When the plea agreement asked whether Ms. Carter pleaded "guilty or no contest" of her own free will and with no coercion or compulsion of any kind, Ms. Carter told Ms. Sanders "no," but Ms. Sanders marked the answer "yes." *Id.* at 100:13-20. On some parts of the plea agreement, answers to questions were first marked "no" and then crossed out and marked "yes." Dkt. No. 103-8; Dkt. No. 103-3 at 88:12-89:12. Ms. Carter does not know how the crossed-out markings got there. *Id.*

12. Based on the record just summarized and the counter-statement of facts in the following subparagraphs, Plaintiffs dispute that Plaintiffs' OIDS contractors effectively assisted Plaintiffs with the cases underlying their plea agreements or that Plaintiffs were satisfied with their OIDS attorneys' advice.

12A. Testimony from the OIDS then-Executive Director Mr. Sutter acknowledges that competent and effective legal representation by OIDS contractors includes meaningful discussions between lawyer and client regarding: (1) the relevant facts and conduct at issue; (2) potential custodial sentences or probation; (3) the risk of going to trial versus accepting a plea; (4) the fact that a plea agreement could forfeit rights to an appeal; (5) the potential fines that could be imposed on a defendant by entering the plea; (6) court fees and costs that could be imposed on a defendant by entering the plea; and (7) the defendant's ability to pay fines, fees, and costs. Ex. 5, 25:17-27:3. OIDS also expects that counsel be present at a defendant's sentencing, and when judgment is entered. *Id.* The record reflects that Plaintiffs did not receive competent and effective representation from their OIDS contractors.

---

[4]As detailed in paragraphs 33, 34, and 61 of Plaintiffs' Motion, Ms. Carter was a 16-year-old with limited education at the time she entered her plea agreement. Dkt. No. 104.

*Amanda Feenstra*

12B.   Ms. Branstetter never told Mrs. Feenstra how much her fines, fees, costs, or total monthly responsibility would be.  Dkt. No. 103-5 at 157:8-20.

12C.   At sentencing, the District Court ordered Mrs. Feenstra to pay $3,500 in fines and fees.  *See* Dkt. No. 103-35 at 2 (4/29/15 minute entry); Dkt. No. 103-36 at 3 (4/29/15 minute entry). But Mrs. Feenstra's total financial obligations had not been calculated when she left the courtroom—and when her OIDS contractor left her.  Dkt. No. 103-1 at 165:18-166:1.

12D.   On the day she was sentenced, Mrs. Feenstra told Ms. Branstetter that she could not pay the imposed fines, fees, and costs.  Dkt. No. 103-5 at 14:12-16:17.  Ms. Branstetter never asked for Mrs. Feenstra's fines, fees, and costs to be waived or reduced.  Dkt. No. 103-1 at 196:18-25.  She never made arguments to Judge DeLapp about Mrs. Feenstra's education, job status, physical status, or mental status.  *Id*. at 197:1-11.  She never asked for a hearing during which Mrs. Feenstra's ability to pay would be determined by Judge DeLapp.  *Id*. at 197:12-16.

12E.   Weeks after Mrs. Feenstra's sentencing, cost administrator Ms. Fairlie completed Attachment A to Mrs. Feenstra's judgment and sentencing form.  Ms. Fairlie calculated that Mrs. Feenstra owed $1,501 in fines, fees, and costs in connection with her false personation charge.  *See* Dkt. No. 103-26 at Attachment A; *see also* Dkt. No. 103-1 at 170:17-171:14.  Ms. Fairlie also calculated that Mrs. Feenstra owed another $3,363 in fines, fees, and costs in connection with her other charges, including for "Court costs," a "County Sheriff" fee, a "DA Fee," and various other fees with cryptic titles like "CLEET/PAX" fee, "AFIS/AFIX" fee, "Forensic fee," and "MLRF" fee.  Dkt. No. 103-27 at Attachment A.  In total, Ms. Fairlie determined that Mrs. Feenstra owed $4,864 in fines, fees, and costs.  Those fees were never mentioned by Mrs. Feenstra's OIDS contractor.  Dkt. No. 103-5 at 157:8-17.

12F.    Judge DeLapp subsequently endorsed and so-ordered the $4,864 total that Ms. Fairlie calculated.  *See* Dkt. No. 103-26 at Attachment A; Dkt. No. 103-27 at Attachment A. Neither Mrs. Feenstra nor Ms. Branstetter was present when Judge DeLapp imposed Mrs. Feenstra's total payment obligation of $4,864 in fines, fees, and costs.  *See* Dkt. No. 103-1 at 171:15-17.

12G.    While Mrs. Feenstra was still incarcerated, Judge DeLapp ordered her to pay new incarceration fees of $6,916. Dkt. No. 103-28.  Mrs. Feenstra and Ms. Branstetter were not present when Judge DeLapp imposed these additional amounts.  *See id.*; Dkt. No. 103-1 at 172:12-20, 175:17-21; Dkt. No. 103-5 at 32:13-19, 33:13-18, 131:24-132:9.

12H.    Mrs. Feenstra did not learn the total amount she owed (more than $12,000) until sometime within the last year, during this litigation.  Dkt. No. 103-5 at 157:21-158:7; Dkt. No. 103-29.  Judge DeLapp testified that this amount was inappropriately high.  Dkt. No. 103-1 at 99:10-21.  Mrs. Feenstra did not know prior to this litigation that she could ask the District Court to reduce or eradicate her fines, fees, and costs.  Dkt. No. 103-5 at 105:20-106:2.  Nor did she know until November 2020 that she could file a motion for a hearing under the operative provision of Rule 8.  *Id.* at 142:24-143:19.

### *Sharonica Carter*

12I.    All of Ms. Carter's and Ms. Sanders' conversations occurred just outside the courtroom and lasted for around five minutes.  Dkt. No. 103-3 at 133:20-134:15.

12J.    Ms. Sanders told Ms. Carter that she would do eighteen months in a penitentiary and then get out.  Dkt. No. 103-3 at 90:1-6, 97:8-20, 151:3-24.  Ms. Carter begged Ms. Sanders to take her case to trial and said that she did not understand the nature of her plea.  *Id.*, 95:24-96:13. When she asked Ms. Sanders to explain, Ms. Sanders told her to take it or spend most of her life

growing up in the penitentiary. *Id*. at 90:13-91:6, 95:24-96:19, 96:23-97:7, 100:21-25, 102:12-15, 144:19-25, 155:16-156:12. Ms. Carter did not understand that her fine alone could range from $0 to $10,000, a fact she communicated to Ms. Sanders. *Id*. at 89:13-25.

12K.    When Ms. Sanders asked Ms. Carter whether Ms. Carter felt as though Ms. Sanders worked on her behalf, Ms. Carter said "no," but that is not what her plea agreement reflects. Dkt. No. 103-3 at 83:14-84:10, 101:1-11; Dkt. No. 103-8. And that is not what Ms. Sanders wrote on Ms. Carter's plea agreement. Dkt. No. 103-8.

12L.    Ms. Sanders told Ms. Carter to say "yes" whenever Judge DeLapp asked Ms. Carter whether she understood her plea agreement. Dkt. No. 103-3 at 145:23-147-5.

12M.    At sentencing, Judge DeLapp told Ms. Carter that she would pay a $1,000 fine and a $250 VCA fee, along with court costs and penalty assessments. Dkt. No. 103-10 at 6-7. This statement was incomplete, as the total of Ms. Carter's fines, fees, and costs had not yet been calculated. Dkt. No. 103-1 at 127:13-19, 128:3-6.

12N.    Neither Judge DeLapp nor Ms. Sanders disclosed the total amount, or all the constituent fees and costs, Ms. Carter would have to pay. *See* Dkt. No. 103-10 at 6-9; Dkt. No. 103-16; Dkt. No. 103-1 at 127:13-19, 128:3-6; Dkt. No. 103-3 at 98:14-99:9, 103:18-104:1, 104:17-105:9.

12O.    Ms. Sanders never asked Judge DeLapp to waive or reduce Ms. Carter's fines, fees, and costs. Dkt. No. 103-1 at 195:8-18. Ms. Sanders never made any arguments to Judge DeLapp about Ms. Carter's age, education, or job status in relation to Ms. Carter's fines, fees, and costs. *Id*. at 195:19-22. At Ms. Carter's sentencing, Ms. Sanders did not ask about the hearing required under Rule 8.1. *See* Dkt. No. 103-10. Ms. Sanders never asked Judge DeLapp to schedule a

hearing to determine the appropriate total amount of Ms. Carter's fines, fees, and costs.  Dkt. No. 103-1 at 196:6-11.

12P.    Ms. Carter's total fines, fees, and costs were substantially higher than those disclosed at sentencing.  *Compare* Dkt. No. 103-9 (showing $1,250), *with* Dkt. No. 103-11 at Attachment A (showing $2,726); *see also* Dkt. No. 103-9 (stating only "court costs" owed with no amount specified); Dkt. No. 103-4 at 65:10-24.  Judge DeLapp testified that these amounts were inappropriately high.  Dkt. No. 103-1 at 152:21-153:6, 153:23-154:4.

12Q.    As a general practice, OIDS contractors did not ask Judge DeLapp for a complete waiver or reduction of total fines, fees, and costs.  Dkt. No. 103-1 at 232:11-16, 233:7-16.

***Imposition and Collection of OIDS Fees***

12R.    OIDS' contracts with attorneys providing services in the District Court require that counsel ask judges to impose the $250 OIDS fee on their clients "[f]or any felony case in which a plea of guilty or stipulation to revocation or imposition of sentence has been entered," regardless of the clients' ability to pay.  Ex. 1 at 3; Ex. 2 at 3; Ex. 3 at 4; Ex. 4 at 4.

12S.    Judge DeLapp testified that the OIDS fee is assessed as a matter of course when there is an OIDS contractor involved in a case.  Dkt. No. 103-1 at 227:21-228:22.

12T.    As a general practice, OIDS contractors did not ask Judge DeLapp for a waiver or reduction of the OIDS fee.  Dkt. No. 103-1 at 229:13-16, 230:7-10.

12U.    Ms. Branstetter did not try to lower or eliminate the $250 OIDS fee imposed on Mrs. Feenstra.  Dkt. No. 103-1 at 229:10-12; Dkt. No. 103-23 at 5.

12V.    Currently, Judge Thomas (Judge DeLapp's successor) similarly imposes the OIDS fee as a matter of course.  Dkt. No. 103-4 at 63:1-23.

13.     Plaintiffs dispute that they were aware of their charges, range of punishments, or total fines, fees, and costs when they signed their plea agreements.  The record is to the contrary, as substantial amounts of those fees and costs were:  (1) not disclosed in Plaintiffs' respective plea agreements;  (2) not calculated while Plaintiffs' OIDS contractors were present;  (3) imposed outside the presence of the sentencing judge; and (4) unknown to Plaintiffs until weeks or months after they were sentenced.  *See* Dkt. No. 104 ¶¶ 3-7, 9-15, 35-36, 38-43, 53-56, 69-73, 76, 79-82, 113, 116 and the documents cited therein.  In addition:

13A.    Judge DeLapp testified that, while he was the Chief Judge of the District Court, he never knew the total of a defendant's fines, fees, and costs when he imposed a sentence.  Dkt. No. 103-1 at 47:16-22.  The cost administrator calculated the total amount of court debt sometime after sentencing.  *Id*. at 52:4-12, 60:5-10.  After the cost administrator's calculation of the total amount of fines, fees, and costs, the judgment and sentence would go back to Judge DeLapp for his signature.  *Id.* at 52:4-53:9.

13B.    When Judge DeLapp signed off on the total fines, fees, and costs, neither the defendants nor their attorneys were present.  Dkt. No. 103-1 at 66:6-17.  He routinely signed the orders, even though he testified that the amounts imposed were inappropriately high.  *Id*. at 99:10-21, 152:21-153:6, 153:23-154:4.

13C.    That process remains the same today.  Judge Thomas always imposes court costs. Dkt. No. 103-4 at 80:10-17.  Neither the judge nor the defendant knows the total fines, fees, and costs to be imposed.  Dkt. No. 103-2 at 52:21-53:4; Dkt. No. 103-4 at 63:24-64:1, 64:19-65:2, 65:17-24; *see, e.g.*, Dkt. No. 103-37 (providing no details about total costs); Dkt. No. 103-38 (same); Dkt. No. 103-41 (same).

13D.    The minute clerk—who sits in the courtroom with the judge during sentencing—does not know the total amount of court costs at the time of a defendant's sentencing.  Dkt. No. 103-7 at 20:11-16.  Those costs are calculated afterwards, outside the presence of the judge or counsel, by the cost administrator, whose job includes itemizing new court costs associated with a defendant's charges and adding them to the fines, fees, and costs already itemized in court by the minute clerk at sentencing.  Dkt. No. 103-6 at 23:22-24:15, 27:14-29:10, 37:14-38:3.   This calculation takes place after sentencing.  *Id*. at 48:6-11, 52:22-53:5.

13E.    The current cost administrator, Glenda Powell, testified, with specific reference to Mrs. Feenstra's plea agreement, that specific court cost amounts and specific fine amounts are not listed on plea agreements, Dkt. No. 103-6 at 51:18-52:1, and as far as she knows, no one provides the total amount of fines, fees, and costs to defendants before the plea is entered.  *Id*. at 53:1-9. Ms. Powell is the only person at the Washington County courthouse who calculates a criminal defendant's court costs.  *Id*. at 34:8-14.

13F.    To this day, neither criminal defendants nor their counsel are present when Judge Thomas signs their orders imposing fines, fees, and costs.  Dkt. No. 103-4 at 68:11-15.

13G.    Judge Thomas does not inform defendants at sentencing that they may be eligible for a complete waiver of fines, fees, and costs.  Dkt. No. 103-4 at 48:2-5.

13H.    OIDS contractors do not regularly ask Judge Thomas for fines, fees, or costs to be waived or reduced at sentencing.  Dkt. No. 103-4 at 96:1-4.  Nor do they regularly provide Judge Thomas with an itemization of their clients' assets and debts.  *Id.* at 94:17-22.  They do not regularly ask Judge Thomas to go back and review their clients' affidavits of indigence at sentencing or point Judge Thomas to a particular page on such affidavits reflecting clients' debts or assets.  *Id.* at 95:18-25.

13I.    Ms. Powell has never seen an OIDS contractor come to her office in connection with a client's total fines, fees, and costs calculations.  Dkt. No. 103-6 at 64:25-65:4.

14.    Plaintiffs dispute this assertion.  As discussed above, Plaintiffs were not represented by OIDS contractors when their total fines, fees, and costs were calculated.  *See supra* ¶¶ 12A-12V.  Plaintiffs were also not represented at any cost docket proceedings, as described in the following subparagraphs.

14A.    For example, counsel was not present when Judge DeLapp ordered Ms. Carter incarcerated in January 2014, without a hearing or inquiry into her ability to pay $150 of missed payments, and despite her express statement that she was unable to pay that amount.  *See* Dkt. No. 103-1 at 21:9-11, 21:17-19, 24:7-25:5, 138:10-15, 139:6-11, 141:13-21, 236:16-17; Dkt. No. 103-2 at 9:14-20; Dkt. No. 103-3 at 33:3-34:5, 34:15-35:1, 35:8-36:14; Dkt. No. 103-13 (stating that Ms. Carter was "ordered to pay $75/month beginning 11/29/13" and "has paid 0").

14B.    Judge Sigler testified that he never incarcerated Mrs. Feenstra for failure to pay and that the order from May 2018 remanding her for failure to pay was a clerical error.  Dkt. No. 103-2 at 73:9-74:19.  The order, however, is labeled "Order Remanding Defendant Amanda Marie Ackerson to Jail for Failure to Pay Fines and Costs."  *See* Dkt. No. 103-34.  There are no transcripts of cost docket proceedings.  Dkt. No. 103-2 at 78:7-10.

14C.    Judge Sigler's statement is incorrect, or at least disputed in the record, which suggests that Mrs. Feenstra was incarcerated pursuant to an order signed by Judge Sigler on May 10, 2018.  Dkt. No. 103-5 at 70:8-72:5, 72:8-24, 73:10-21, 73:24-74:5; Dkt. No. 103-32; Dkt. No. 103-33; Dkt. No. 103-36 at 4 (5/10/2018 minute entry).

16

14D.    Mrs. Feenstra did not have OIDS representation at her cost docket proceeding before Judge Sigler on May 12, 2017.  *See* Dkt. No. 103-35 at 3 (5/12/2017 minute entry); Dkt. No. 103-36 at 3 (5/12/2017 minute entry); Ex. 7 (5/12/2017 court minute).

14E.    Ms. Carter did not have OIDS representation at her cost docket proceeding before Judge DeLapp on January 9, 2014 or before Judge Sigler on September 28, 2018.  *See* Dkt. No. 103-22 at 6 (1/9/2014 minute entry); *id.* at 8 (9/28/2018 minute entry); Dkt. No. 103-13; Dkt. No. 103-20.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Plaintiffs dispute that OIDS is relieved of the obligation to provide counsel after the judgment and sentence is entered and that appearances at Rule 8.1 hearings are not covered under OIDS' responsibilities.  Plaintiffs regard both as matters of statutory interpretation, not evidentiary fact.  The OIDS Defendants' factual assertion is also contradicted by the following subparagraphs.

22A.    As discussed above, Mr. Sutter testified that competent and effective legal representation by OIDS contractors would include a discussion between client and counsel regarding the fines, court fees, and costs that could be imposed on a defendant by entering the plea agreement, and the client's ability to pay those fines, fees, and costs.  Ex. 5, 25:17-27:3.

22B.    Because a defendant's total fines, fees, and costs are not calculated at sentencing, OIDS contractors cannot conclude the discussions Mr. Sutter deems required in any meaningful or complete sense under the District Court's process at the time judgment and sentence are entered. *See* Dkt. No. 103-1 at 52:4-12, 60:5-10, 127:13-19, 128:3-6, 165:18-166:1; *supra* ¶¶ 12B-12H, 12M-12P.

23.    Plaintiffs submit that issues of statutory interpretation are not facts amenable to the treatment proffered by the OIDS Defendants.

24.    Admitted.

25.    Admitted.

### SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (citation omitted); *see* Fed. R. Civ. P. 56(a).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "All disputed facts must be resolved in favor of the party resisting summary judgment." *White v. Gen. Motors Corp.*, 908 F.2d 669, 670 (10th Cir. 1990); *Patel*, 849 F.3d at 970.  "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003).

## ARGUMENT

I.   **THE OIDS DEFENDANTS HAVE NOT ESTABLISHED THAT PLAINTIFFS' OIDS CONTRACTORS PROVIDED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT.**

Plaintiffs have alleged a violation of the right to conflict-free counsel.  Concerning the OIDS Defendants' Sixth Amendment arguments, not only is there a dispute as to whether Plaintiffs received conflict-free counsel, but the facts outlined in Plaintiffs' Response to the OIDS Defendants' Statement of Uncontroverted Facts lean heavily in favor of Plaintiffs.  The OIDS Defendants are also wrong on the law on the Sixth Amendment.  Accordingly, the OIDS Defendants are not entitled to summary judgment.[5]

The OIDS Defendants argue that the "Sixth Amendment right to counsel ends when the time for direct appeal runs," citing to cases about the scope of the Sixth Amendment right.  Dkt. No. 101 at 11.  However, there is a factual dispute about whether the advice and representation provided to Plaintiffs leading up to and at sentencing were constitutionally defective.

Constitutionally effective representation under the Sixth Amendment includes more than just standing next to a client at sentencing; it requires that a criminal defense attorney advocate for leniency, which can include relief with respect to monetary burdens to be imposed on their clients, and at the very least, provide advice about the right to a hearing on ability to pay and the right to

---

[5] The OIDS Defendants make no challenge to the alleged violations of Plaintiffs' Fourteenth Amendment rights, which occurred after Ms. Carter and Mrs. Feenstra were sentenced.  It is undisputed that OIDS provided no representation for Ms. Carter and Mrs. Feenstra at their "cost docket" appearances, despite both Plaintiffs being unable to pay (and therefore having a "substantial reason" for not making payments) and subject to potential incarceration.  Ms. Carter and Mrs. Feenstra are not the exception to OIDS' rule either.  As Mr. Sutter testified, OIDS does not expect OIDS contractors to appear at hearings related to fines, fees, and costs.  Ex. 5, 27:4-14 (indicating that OIDS contractors do not "appear at those hearings") even when the failures of OIDS contractors to advocate appropriately at sentencing in respect of fines, fees, and costs contributed to the lingering inability to pay.

reduce or waive those amounts. *See Wood v. Georgia*, 450 U.S. 261, 271-72 (1981) ("Here, petitioners were represented by [a] lawyer, who may not have pursued their interests single-mindedly.  It was his duty . . . to seek to convince the court to be lenient.").

Mr. Sutter testified that competent and effective legal representation by OIDS contractors should include a discussion between client and counsel regarding the potential fines, court fees, and costs that could be imposed on a defendant by entering the plea agreement, and the client's ability to pay those fines, fees, and costs.  Ex. 5, 25:17-27:3.  The record evidence is that the OIDS contractors for Ms. Carter and Mrs. Feenstra never had those discussions with their clients.  *See, e.g.*, Dkt. No. 103-3 at 98:23-99:9; Dkt. No. 103-5 at 32:12-19, 33:13-18, 157:8-20.  First, they did not advise Plaintiffs of the total fines, fees, and costs that could be imposed on them as a result of their plea agreements.  *See* Dkt. No. 103-3 at 103:18-104:1; Dkt. No. 103-5 at 157:8-17.  These totals were not known at the time of sentencing.  *See* Dkt. No. 103-1 at 52:4-12, 60:5-10; *compare* Dkt. No. 103-9 (showing a total of $1,250), *with* Dkt. No. 103-11, Attachment A (showing a total of $2,726); *compare* Dkt. Nos. 103-35, 36 (4/29/15 minute entries showing total of $3,500 in fines, fees, and costs), *with* Dkt. No. 29 (showing $12,856.06 in fines, fees, and costs).  Plaintiffs' attorneys also did not tell them about their right to a judicial ability-to-pay inquiry.  *See* Dkt. No. 103-5 at 142:24-143:19.  Finally, Plaintiffs' attorneys did not advocate for a waiver or reduction of Plaintiffs' imposed fines, fees, and costs.  *See* Dkt. No. 103-4 at 96:1-4; Dkt. No. 103-1 at 195:8-18; Dkt. No. 103-5 at 105:20-106:2.

Plaintiffs' plea agreements did not state the specific amount of fees and costs that would be imposed on them.  *See* Dkt. No. 103-8; Dkt. No. 103-9 (stating only "court costs" owed with no amount specified); *compare* Dkt. Nos. 103-35 and 103-36 (4/29/15 minute entries showing a total of $3,500 in fines, fees, and costs), *with* Dkt. No. 103-29 (2/2/17 Order showing a total of

$12,852.06 in fines, fees, and costs); *see also* Dkt. No. 103-24 (stating "f[ines] & c[osts]" recommended with no amount of costs specified); Dkt. No. 103-25 (same); Dkt. No. 103-4 at 65:10-24.

The amounts ultimately imposed on criminal defendants in the District Court were substantially higher than those disclosed on plea agreements. The record is clear that OIDS contractors were not present when Plaintiffs' total fines, fees, and costs were calculated. That is because this debt was imposed well after sentencing and outside the presence of either a judge or the OIDS contractor. Dkt. No. 103-1 at 52:4-12, 60:5-10. These factual disputes about whether the advice and representation provided to Plaintiffs before sentencing were constitutionally defective preclude summary judgment.

Similarly, the record shows that Plaintiffs' OIDS contractors never discussed with Plaintiffs their ability to pay the fines, fees, or costs imposed on them, or their right to demand a judicial hearing on their ability to pay. Dkt. No. 103-1 at 195:8-22; Dkt. No. 103-3 at 133:20-134:15; Dkt. No. 103-5 at 105:20-106:2, 142:24-143:19. Ms. Carter's sentencing transcript does not reveal any inquiry on these points. *See* Dkt. No. 103-10. These additional factual disputes about the adequacy of the advice and representation provided to Plaintiffs before sentencing preclude summary judgment.

Finally, the record shows that Plaintiffs' attorneys never advocated for a reduction or waiver of the fines, fees, and costs that would be imposed on Plaintiffs, including never requesting a hearing that would allow them to ask for appropriate reductions or waivers. *See generally* Dkt. No. 103-10.[6] Judge DeLapp and Judge Thomas both testified that OIDS contractors appearing in

---

[6] The record shows that both Plaintiffs completed affidavits of indigency to qualify for court-appointed counsel long before they appeared at sentencing. Ex. 6; *see* Ex. 8, 5/2/2011 Order Appointing Counsel for Carter; Ex. 9, 4/20/2016 Order Appointing Counsel for Carter. These

the District Court rarely, if ever, ask for a reduction or waiver of fines, fees, and costs at sentencing. Dkt. No. 103-1 at 233:6-16; Dkt. No. 103-4 at 96:1-4.   That testimony reinforces the factual disputes that preclude summary judgment.

The OIDS Defendants do not point to any record evidence to suggest that appropriate advocacy in respect of fines, fees, and costs took place.  *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992); Dkt No. 101.  This is because there is no evidence that Plaintiffs were provided effective representation or complete and accurate legal advice prior to and at sentencing.  This failure on the OIDS Defendants' part, combined with the laundry list of other facts described in Plaintiffs' Response to the OIDS Defendants' Statement of Uncontroverted Facts, preclude summary judgment.

## II.  THE OIDS DEFENDANTS HAVE NOT ESTABLISHED THAT THE CONFLICT CREATED BY OIDS HAD NO EFFECT ON REPRESENTATION.

Plaintiffs have alleged that the written agreement between OIDS and its contractors created a financial conflict of interest that deprived Plaintiffs of their right to conflict-free counsel.  In response, the OIDS Defendants argue that (1) the appropriate standard for assessing whether a conflict exists is the criminal appellate standard for reversal of a conviction; and (2) because Ms. Carter and Mrs. Feenstra were not aware of the conflict in the contract, the conflict could not have affected them.  *See* Dkt. No. 101 at 11-17.  In so doing, the OIDS Defendants confuse the appellate standard for reversal of a criminal conviction with the civil standard for declaratory and

---

affidavits contained answers to a detailed set of questions about their financial circumstances.  *See* Ex. 6.  Mrs. Feenstra's case file still has her affidavit in it, and presumably her lawyer saw it.  The court orders appointing counsel based on indigency were also contained in the case files produced by the OIDS Defendants.  Even if her attorney did not review the affidavit, the attorney was aware that Mrs. Feenstra was indigent because the attorney had been appointed to represent Mrs. Feenstra.

injunctive relief, and they invoke irrelevant and immaterial facts that have no bearing on whether a conflict affected the attorney-client representation.

A.     **The OIDS Defendants Confuse the Appellate Standard for Reversal of a Criminal Conviction with the Standard for Civil Declaratory and Injunctive Relief.**

The OIDS Defendants misstate the governing standard for conflicted representation: they rely on the standard for reversal of a criminal conviction, which requires a showing of an actual conflict and prejudice sufficient to undermine confidence in the conviction. Dkt. No. 101 at 14-15 (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)); *see also Strickland v. Washington*, 466 U.S. 668 (1984). That standard has no application here. Plaintiffs do not seek reversal of a conviction; they seek declaratory and injunctive relief. Dkt. No. 66 ¶¶ 28-29. Thus, Plaintiffs need to meet only the requirements for declaratory and injunctive relief.[7]

The *Strickland* "standard is inappropriate for a civil suit seeking prospective relief," *Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988), because the constitutional right to counsel encompasses "rights that do not affect the outcome of a trial." *Id.* Said differently, although some mistakes might not "meet the 'ineffectiveness' standard[, they] may nonetheless violate a defendant's rights." *Id.* As *Luckey* observed, suits for injunctive relief "can protect constitutional rights, even if the violation of these rights would not affect the outcome of a trial." *Id.* (citing *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928)). Courts across the country have reached the same conclusion.[8]

---

[7] The OIDS Defendants' effort to graft the appellate standard for reversal of *Strickland* suffers from a further deficiency: *Strickland* and its progeny are concerned only with the Sixth Amendment right to counsel leading up to trial or sentencing, not the Fourteenth Amendment right to counsel (which the OIDS Defendants do not challenge in their Motion).

[8] *Tucker v. State*, 394 P.3d 54, 68-69 (Idaho 2017) (holding that violations of the right to counsel can be remedied through prospective relief); *Kuren v. Luzerne Cty.*, 146 A.3d 715, 718 (Pa. 2016) (same); *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 158-59 (Tex. 2012) (same); *Duncan v.*

With the *Strickland* standard correctly cast to the side, Plaintiffs need meet only the requirements for declaratory or injunctive relief.  *See, e.g.*, *id*.  Outside of a cursory claim that the Plaintiffs' concerns are not redressable by this suit, *see infra* Part III, the OIDS Defendants point to no undisputed record evidence in their favor on this score.  Without such facts, the OIDS Defendants have only the legal argument that this Court has already rejected.  Dkt. No. 48 at 11-12 (rejecting the OIDS Defendants' claim that Plaintiffs had failed to meet the standards for injunctive relief).

**B.    The OIDS Defendants Cite Irrelevant and Immaterial Facts, Ignoring Facts that Preclude Summary Judgment.**

In the absence of any favorable, relevant record evidence regarding the impact of the OIDS contract provisions at issue on Ms. Carter's and Mrs. Feenstra's representation, the OIDS Defendants point to facts that have no bearing on whether OIDS has structured its contractual agreements in a way that subjects its contractors to pervasive and disabling conflicts of interest. The OIDS Defendants also misstate or ignore other material facts that preclude summary judgment.

The OIDS Defendants devote a substantial portion of their brief to an irrelevant and cynical issue:  Ms. Carter's and Mrs. Feenstra's understanding of OIDS' contracts with their OIDS contractors.  *See, e.g.*, Dkt. No. 101 ¶¶ 16-20.  Whether Ms. Carter and Mrs. Feenstra know the details about their attorneys' contracts with Oklahoma's provider of legal services to the indigent,

---

*Michigan*, 774 N.W.2d 89, 123-24 (Mich. Ct. App. 2009), *aff'd*, 780 N.W.2d 843 (Mich. 2010), *vacated*, 784 N.W.2d 51 (Mich. 2010), *reinstated*, 866 N.W.2d 407 (Mich. 2010) (same); *Hurrell-Harring v. New York*, 930 N.E.2d 217, 306-07 (N.Y. 2010) (same); *see also Phillips v. California*, No. 15CECG02201, 2016 WL 1573199, at *4 (Cal. Super. Ct. Apr. 11, 2016) (holding that "plaintiffs need not plead and prove the elements of ineffective assistance as to specific individuals in order to state a cause of action"); *Wilbur v. City of Mt. Vernon*, 989 F. Supp. 2d 1122, 1133 (W.D. Wash. 2013) ("A system that makes it impossible for appointed counsel to provide the sort of assistance required by the Sixth Amendment works irreparable harm: the lack of an actual representational relationship and/or adversarial testing injures . . . the indigent defendant . . . .").

or whether they were subjectively aware of the conflict that affected their attorneys' handling of their cases, is irrelevant. The question before the Court is whether OIDS' contractual fee structure created a conflict that deprived Ms. Carter and Mrs. Feenstra of their right to conflict-free counsel—not whether Ms. Carter and Mrs. Feenstra knew of or understood the dynamics between OIDS and its contractors (facts that are necessarily outside of their knowledge).

As described above in paragraph 7A, *supra*, OIDS' contracts with attorneys permit OIDS to hold back ten percent of payment eventually due to the attorneys pending closure of cases. The problem inherent in the OIDS contracts is OIDS' interpretation of the ten percent holdback clause. *See* Dkt. No. 24 at 26-27. As Mr. Sutter testified, OIDS implements and oversees this holdback clause by determining that cases are "closed" with the entry of a judgment and sentence order. Ex. 5, 21:19-22:13.[9] OIDS' interpretation of its contracts and governing statute therefore creates an incentive for attorneys to rush cases leading up to sentencing (resulting in the now-documented, systemic failure to provide advice about fines, fees, and costs, and advice about ability-to-pay and related hearings) and removes any financial incentive to continue representation through "cost docket" proceedings (as attorneys will not be compensated for such representation). These incentives carry through even to those instances in which the OIDS contractor is aware that a manifest violation of Rule 8, and the constitutional protections it embodies, have occurred.

Perhaps predictably in light of the complete record, the OIDS Defendants ask the Court to *ignore* the performance of OIDS' contractors. Instead, they argue that the OIDS contractors who represented Plaintiffs would have received the ten percent holdback regardless of how they litigated Ms. Carter's and Mrs. Feenstra's cases. Dkt. No. 101 at 15. That argument is not

---

[9] As described in Constitutional and Statutory Provisions, *supra*, the statute governing OIDS permits the agency to provide counsel when constitutionally required and in "other state proceedings" beyond those specifically delineated.

supported by undisputed material facts. The record, indeed, includes at least circumstantial evidence showing that by holding back remuneration prior to issuance of the judgment and sentencing order, OIDS created an incentive for OIDS contractors to rush toward that end date, skipping over discussion about Plaintiffs' ability to pay or their right to a mandatory hearing under Rule 8.1 to assess their ability to pay. Contrary to the OIDS Defendants' assertions, *id.* at 16, the OIDS contracts are materially different from contingent-fee agreements—under those contracts, attorneys' financial and process interests align with those of their clients. *See, e.g.*, *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010) (explaining that in contingency-fee agreements, "The lawyer gains only to the extent his client gains" (citation omitted)). Here, the OIDS contracts create an incentive driven not by outcome, but by speed, even if expeditiousness comes at the expense of the client.

As described in paragraphs 11-14, *supra*, there is ample record evidence that Plaintiffs' OIDS contractors spent virtually no time with their clients, ignored requests to meet with their clients, pressured them to accept plea agreements, failed to advise them of the total amounts they would owe in fines, fees, and costs (or even made any effort to ascertain what that amount would be), and failed to advise them of their right to an inquiry into their ability to pay fines, fees, and costs. *See, e.g.*, Dkt. No. 103-3 at 133:20-134:15; Dkt. No. 103-5 at 157:8-20. Had OIDS' contractors undertaken any of these steps—all within Mr. Sutter's description of what he expected of competent, effective counsel—payment would have been delayed.[10] Had OIDS interpreted its contracts to define "completion" of the case later in the process, OIDS would have aligned the incentives of lawyer and client, giving OIDS contractors the ability and incentive to seek reduction

---

[10] Similarly, there was no incentive to provide representation at "cost docket" proceedings, because OIDS' interpretation of "completed matter" precluded compensation at such proceedings.

or waiver of their clients' fines, fees, and costs to *eliminate* future "cost docket" appearances. *Cf. Wood*, 450 U.S. at 271-72 ("It was [the attorney's] duty . . . to seek to convince the court to be lenient."). Because there is a factual dispute about whether OIDS' fee structure contributed to the quality of Plaintiffs' representation, there is a triable issue here, and the OIDS Defendants have not met their summary judgment burden.

The OIDS Defendants' attempts to run away from the facts is also illustrated by another conflict-creating clause in their contracts that the OIDS Defendants choose to ignore. The contracts promulgated by OIDS include a provision that purports to require that OIDS contractors ask a judge to impose the "OIDS fee" on their clients, without any consideration of their clients' ability to pay. Ex. 3 at 3-4 (contract in effect at time of Ms. Carter's plea in the District Court). The contracts between OIDS and the attorneys for Ms. Carter and Mrs. Feenstra therefore not only provided a financial incentive to rush through the cases and skip over constitutionally effective advice, those contracts also required these attorneys to advocate in a manner directly contrary to their indigent clients' interests. The OIDS Defendants cannot claim their hands are tied by statute here. To the contrary and as described in Constitutional and Statutory Provisions, *supra*, the applicable statutes explicitly permit reduction or waiver, including of OIDS fees. Despite these statutory provisions, OIDS' contracts do not permit its attorneys to request such a reduction or waiver, at least as it relates to the "OIDS fee." It should come as no surprise, then, that OIDS contractors have rarely, if ever, asked for a reduction in fines, fees, and costs, let alone reduction or waiver of the OIDS fee, even when Rule 8 would entitle a client to waiver of that fee. Dkt. No. 103-1 at 233:6-16; Dkt. No. 103-4 at 96:1-4.

Additional evidence ignored by the OIDS Defendants weighs in favor of Plaintiffs.[11] Testimony about the practices of *other* OIDS contractors reflects that Plaintiffs' experiences with their OIDS contractors were not unique, and that the failures of Ms. Carter's and Mrs. Feenstra's attorneys were endemic to OIDS contractors appearing in the District Court.   Former Judge DeLapp and Chief Judge Thomas both confirmed that not seeking reduction or waiver of fines, fees, and costs was business as usual for the OIDS contractors who appeared in front of them.  Dkt. No. 103-1 at 233:6-16; Dkt. No. 103-4 at 96:1-4.  This failure to advocate for their clients led to an unfortunate, but entirely foreseeable, result for criminal defendants:  amounts of court debt imposed on many criminal defendants that could never be paid and that even former Judge DeLapp conceded under oath were inappropriately high.  Dkt. No. 103-1 at 99:10-21.

At bottom, the OIDS Defendants seem to advance the mistaken argument that the only way that Plaintiffs can establish at trial a causal link between the contractual conflict and the inadequate representation provided to Plaintiffs is through *direct* evidence of that causal link.  This is of course not an accurate statement of Plaintiffs' burden or modes of proof at trial, nor does it have anything to do with what the OIDS Defendants must show to meet their burden at the summary-judgment stage.[12]

---

[11] There is a factual dispute about whether and how Plaintiffs were prejudiced in relation to their "cost docket" proceedings.  For example, Judge Sigler testified that he never incarcerated Mrs. Feenstra for failure to pay and that the order from May 2018 remanding her for just this reason was a clerical error.  Dkt. No. 103-2 at 73:9-74:19.  The order itself, meanwhile, is labeled "Order Remanding Defendant Amanda Marie Ackerson to Jail for Failure to Pay Fines and Costs," and Mrs. Feenstra was jailed pursuant to a May 10, 2018 order signed by Judge Sigler.  *See* Dkt. No. 103-34.  Because there are no transcripts of "cost docket" proceedings, Dkt. No. 103-2 at 78:7-10, there are factual disputes about the prejudice to Plaintiffs arising from the absence of counsel at these hearings.

[12] Circumstantial evidence is entitled to no less weight than direct evidence, *United States v. Henry*, 468 F.2d 892, 894 (10th Cir. 1972); *see also In re Warren*, 512 F.3d 1241, 1249 (10th Cir. 2008) (holding that in context of statute requiring fraudulent intent, intent "may be established by

There is a factual dispute regarding the causal link between the ten percent holdback and the performance of counsel. The OIDS Defendants have the burden on summary judgment and have not met it; the weight of the evidence favors Plaintiffs and denial of the OIDS Defendants' Motion.

## III.   THE OIDS DEFENDANTS HAVE NOT ESTABLISHED THE ABSENCE OF REDRESSABILITY.

The OIDS Defendants argue, echoing an argument they advanced and lost on their motion to dismiss, that the declaratory and injunctive relief sought by Plaintiffs cannot redress their injuries. Dkt. No. 101 at 17-20. The record developed after that decision has not changed things; the OIDS Defendants' argument remains wrong as a matter of law. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).[13]

First, a declaratory judgment in favor of Plaintiffs remedies "discrete injur[ies]" inflicted on them. *Id.* Such a judgment would provide a ready, tangible, and effective response to prospective employers, credit providers, and the like, who might review Ms. Carter's or

---

circumstantial evidence, or by inferences drawn from a course of conduct" (quoting *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982))).

[13] The OIDS Defendants rely on decisions that have little bearing on whether a declaratory judgment and injunctive relief would benefit individuals who were deprived of their constitutional right to counsel in relation to fines, fees, and costs. For example, in *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), cited by the OIDS Defendants (Dkt. No. 101 at 18), an abortion provider sued a number of state officials for declaratory and injunctive relief after Oklahoma passed a statute rendering abortion providers liable for any subsequent medical costs required after a minor secured an abortion without parental consent. The provider sought declaratory and injunctive relief. *Id.* at 1159. The court found an absence of redressability because a judgment in Nova's favor would neither stop nor deter potential lawsuits by other litigants. *Id.* Here, by contrast, the relief sought by Plaintiffs seeks relief for the specific injuries inflicted on them by the OIDS Defendants' actions, and the specific relief they seek does remedy at least some of the injuries wrought on them by the OIDS Defendants. *See Larson*, 456 U.S. at 243 n.15.

Mrs. Feenstra's public records and find warrants for failure to appear or to pay inappropriately imposed or maintained fines, fees, and costs.   Ms. Carter's criminal history, which includes warrants from the District Court, has precluded her from maintaining steady and secure employment.   Dkt. No. 103-3 at 58:17-59:16, 74:19-75:8 (identifying specific opportunities that she has lost because of warrants from the District Court); *cf. Beattie v. United States*, 949 F.2d 1092, 1095 (10th Cir. 1991) (finding that the "*unsubstantiated* allegations regarding the *unspecified* impairment of *unidentified* employment prospects" were "too speculative" to support redressability (emphases added)).   Beyond employment opportunities, meanwhile, Plaintiffs' reputations have also been damaged, which a declaratory judgment can at least partially remedy. Put another way, the record demonstrates the real-world harm suffered by Ms. Carter and Mrs. Feenstra.   A declaratory judgment thus, at least in part, remedies that portion of the harm attributable to OIDS' wrongful conduct.

Moreover, declaratory judgment will inform the behavior of the OIDS Defendants moving forward, another indicator of redressability.   Contrary to the OIDS Defendants' suggestion otherwise, the rights and obligations of the OIDS Defendants vis-à-vis Plaintiffs are very much at issue on a prospective basis.   *See* Dkt. No. 101 at 18 (citing requirement that declaratory relief "affect[] the behavior of the defendant toward the plaintiff," *Nova Health*, 416 F.3d at 1159).   Both Ms. Carter and Mrs. Feenstra have open cases that continue to include ability-to-pay and collection issues in respect of fines, fees, and costs.   An OIDS contractor was the defense counsel in each such case.   Dkt. No. 103-5 at 22:17-23.[14]   OIDS has an obligation to provide Ms. Carter and Mrs.

---

[14] *See also, e.g.*, Ex. 10, Feenstra Docket Sheet, No. CF-2013-00207 (Okla. Dist. Ct. Garvin Cty.) (reflecting $1,161.78 due as of March 18, 2021); Ex. 11, Feenstra Docket Sheet, No. CF-2014-00269 (Okla. Dist. Ct. Osage Cty.) (reflecting $4,823.51 due); Ex. 12, Feenstra Docket Sheet, No. CF-2010-00015 (Okla. Dist. Ct. Woodward Cty.) (reflecting $2,095.50 due).

Feenstra with representation at these hearings, but its interpretation of its contracts currently precludes appointment of counsel at these hearings.  (OIDS uses substantively the same contract throughout the state, *see* Ex. 5, 24:6-13.)  A declaratory judgment relevant to the ten percent holdback therefore affects not only the OIDS' Defendants obligations, but also the continuing rights of Ms. Carter and Mrs. Feenstra.

Similarly, an injunction would remedy at least some of the harm inflicted on Plaintiffs.  An injunction that remedies the conflict in the OIDS contract governing representation works to remedy the harm inflicted on them and to which they continue to be exposed in their open and active cases.  Requiring OIDS to interpret its contract and governing statute in a manner consistent with the Constitution would require advice about fines, fees, and costs; advice about the right to an ability-to-pay hearing; advocacy to reduce or waive fees and not to impose them; representation to undo the harm that OIDS' deficient conduct wrought on Plaintiffs in the past; and representation beyond sentencing.

Plaintiffs do not seek a freestanding declaration or injunction that has no bearing on their lives.  Instead, they seek declaratory relief that remedies ongoing and readily foreseeable harm and injunctive relief that at least partially remedies the harm caused by the conflict that OIDS created.  As this Court observed, Plaintiffs request that the OIDS Defendants stop "implementing the Oklahoma Indigent Defense Act in a manner that infringes on the constitutional right to conflict-free counsel."  Dkt. No. 48 at 12.  Should Plaintiffs prevail at trial, the relief summarized above would do just that.

## IV. THE OIDS DEFENDANTS HAVE NOT PROVEN THAT PLAINTIFFS' CLAIMS ARE TIME-BARRED.

The OIDS Defendants argue that Plaintiffs' claims are time-barred, pointing primarily to the dates on which Ms. Carter and Mrs. Feenstra were sentenced.  Dkt. No. 101 at 20.  The OIDS

Defendants largely recycle an argument by the Judicial Defendants that this Court rejected at the motion-to-dismiss stage. Dkt. No. 47 at 9-14. The argument continues to lack merit and does not warrant summary judgment.

Plaintiffs agree that the governing statute of limitations is two years, and that this suit was filed in state court on March 21, 2019. Dkt. No. 101 at 21. Much of the challenged conduct relates to acts and omissions after that date. To the extent any aspect of Plaintiffs' OIDS-related claim arose from conduct that occurred before March 2017, summary judgment is precluded by the federal "discovery rule" governing accrual and governing principles of equitable tolling.

### A. Many of the OIDS Defendants' Acts and Omissions Occurred after March 21, 2017.

Many of the actions and omissions that give rise to a right to relief occurred after March 21, 2017. Ms. Carter and Mrs. Feenstra were subjected to "cost docket" proceedings and incarceration resulting from their court debt after March 21, 2017. *See* Dkt. No. 103-35 at 3 (5/12/2017 minute entry); Dkt. No. 103-36 at 3 (5/12/2017 minute entry); Dkt. No. 103-21 (9/28/18 Order); Ex. 7 (5/12/2017 court minute); Dkt. No. 103-22 at 6 (1/9/2014 minute entry); *id.* at 8 (9/28/2018 minute entry); Dkt. No. 103-13; Dkt. No. 103-20. OIDS did not provide any attorneys at any of these hearings, nor did OIDS contractors provide Ms. Carter or Mrs. Feenstra advice about court debt any time after March 21, 2017. *See* Dkt. No. 103-35 at 3 (5/12/2017 minute entry); Dkt. No. 103-36 at 3 (5/12/2017 minute entry); Dkt. No. 103-21 (9/28/18 Order); Ex. 7 (5/12/2017 court minute); Dkt. No. 103-22 at 6 (1/9/2014 minute entry); *id.* at 8 (9/28/2018 minute entry); Dkt. No. 103-13; Dkt. No. 103-20; Dkt. No. 103-5 at 105:20-106:2. The OIDS Defendants are not entitled to summary judgment on limitations grounds in respect of their actions (or failures to cause actions) after March 21, 2017.

32

**B.      The Federal "Discovery Rule" Applies, and Plaintiffs' Claims Did Not Accrue Prior to March 2017.**

"[F]ederal law controls . . . when federal causes of action accrue[, and] . . . the statute of limitations" for a civil rights action under Section 1983 "begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (second alteration in original) (citation omitted).  This is called the "discovery rule."  *Id.*

The record demonstrates that neither Plaintiff knew nor reasonably had reason to know of her claims against the OIDS Defendants until well after March 21, 2017.  Certainly, the record does not present an undisputed set of material facts supporting the contrary proposition that the OIDS Defendants advance.  Facts precluding summary judgment on limitations issues include:

- The attorneys engaged by the OIDS Defendants to represent Ms. Carter and Mrs. Feenstra never informed their clients of their right to an ability-to-pay determination leading up to sentencing.  *See* Dkt. No. 103-1 at 195:8-22; Dkt. No. 103-3 at 133:20-134:15; Dkt. No. 103-5 at 105:20-106:2, 142:24-143:19.

- The judges who sentenced Plaintiffs did not do so either.  *See generally* Dkt. No. 103-10 (no mention of ability-to-pay hearing by defense counsel, judge, or prosecutor).

- The attorneys engaged by the OIDS Defendants never informed their clients of their own obligation to ascertain their clients' ability to pay, or to advocate for lower amounts of court debt, or to provide representation at a hearing on ability to pay, or to provide representation at a "cost docket" proceeding.  Dkt. No. 103-1 at 233:6-16; Dkt. No. 103-4 at 96:1-4.

- At cost docket proceedings, Plaintiffs appeared without counsel and were not told they had the right to an-ability-to-pay inquiry. *See* Dkt. No. 103-35 at 3 (5/12/2017 minute entry); Dkt. No. 103-36 at 3 (5/12/2017 minute entry); Dkt. No. 103-22 at 6 (1/9/2014 minute entry); *id.* at 8 (9/28/2018 minute entry); Dkt. No. 103-13; Dkt. No. 103-20.

- Plaintiffs indeed found themselves incarcerated precisely because the District Court judges failed to conduct an ability-to-pay inquiry prior to incarceration. Dkt. No. 103-3 at 33:3-24, 35:8-18, 139:6-11.

- No attorney contracting with OIDS was present with Plaintiffs to advise them of these rights or to ask for waiver. *See* Dkt. No. 103-35 at 3 (5/12/2017 minute entry); Dkt. No. 103-36 at 3 (5/12/2017 minute entry); Dkt. No. 103-22 at 6 (1/9/2014 minute entry); *id.* at 8 (9/28/2018 minute entry); Dkt. No. 103-13; Dkt. No. 103-20.

- These attorneys' practices align with the common practice of OIDS contractors in the District Court. Dkt. No. 103-1 at 233:6-16; Dkt. No. 103-4 at 96:1-4.

Plaintiffs neither knew nor should have known with the exercise of due diligence that they had been denied the right to conflict-free counsel. *See Alexander*, 382 F.3d at 1217-19. Indeed, it is the *absence* of advice from OIDS contractors that prevented Plaintiffs from knowing that their statutory and constitutional rights had been violated as a result of incentives created by the OIDS contract. *See id.* at 1216 ("[W]e focus on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm.").

**C.    Equitable Tolling Principles Preclude Summary Judgment.**

Because "state law governs the application of tolling in a [federal] civil rights action," Oklahoma's tolling principles apply. *Id.* at 1217. Oklahoma law tolls "the statute of limitations

'until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action.'" *Id.* (quoting *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992)). Similarly, under Oklahoma law, a party is estopped from raising a statute-of-limitations defense if that party concealed facts relevant to the cause of action. *Morris v. Wise*, 293 P.2d 547, 549 (Okla. 1955). Equity therefore demands that the limitations period be tolled if "defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights," or when "extraordinary circumstances" justify tolling. *Alexander*, 382 F.3d at 1217-19; *see also Chasten v. Okla. ex rel. Okla. Dep't of Corr.*, No. CIV-09-0509-HE, 2011 WL 4104524, at *4 (W.D. Okla. Sept. 14, 2011) (declining to dismiss plaintiff's claim due to statute of limitations when "some evidence suggest[ed] the original defendants misled the plaintiff" about the identity of a potential defendant and that defendant "should be prevented from asserting a limitations defense on equitable grounds").

For the same reasons that Plaintiffs' claims did not accrue under federal law until after March 21, 2017, those claims are also subject to equitable tolling. Just as this Court noted when assessing the Complaint against the Judicial Defendants' limitations-related arguments from their dismissal motion, there is now record evidence that the OIDS Defendants "engaged in false, fraudulent, or misleading conduct calculated to lull plaintiffs into sitting on their rights and therefore a . . . basis for tolling the statute of limitations period." *See* Dkt. No. 47 at 12-13 (citing Plaintiffs being told to set up a payment plan after being sentenced, not being informed of their right to an ability-to-pay determination at cost docket proceedings, not being represented by counsel at these hearings, and being denied payment reductions at these hearings). Here, the conduct described above and undisputed in the record directly contributed to the OIDS contractors'

failures to provide Plaintiffs constitutionally sufficient advice leading up to sentencing and representation thereafter.  Those failures toll the limitations period.

## CONCLUSION

Plaintiffs respectfully request that the Court deny the OIDS Defendants' Motion for Summary Judgment.


Dated:  March 29, 2021

By: */s Michael Lacovara*

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F:  (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago (admitted pro hac vice)
John Fowler (admitted pro hac vice)
Lawyers' Committee for
Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
T:  (202) 662-8600
F:  (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara (admitted pro hac vice)
Lilia Vazova (admitted pro hac vice)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T:  (212) 906-1200
F:  (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*

36