CASE NO. 19-cv-234-JFH-CDL

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and SHARONICA CARTER,

Plaintiffs,

v.

JARED SIGLER, *et al.,*

Defendants.

DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

STEFANIE E. LAWSON, OBA #22422
DEVAN A. PEDERSON, OBA # 16576
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorneys for Judges Linda Thomas, Russell Vaclaw, and Jared Sigler*

March 29, 2021

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT .......................................................................... 1

BRIEF IN SUPPORT ................................................................................................... 1

    *Overview of Statutory Scheme* ............................................................................... 2

RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS .......................................... 4

    *A.* **District Court Practices Under Former Judge DeLapp** ................................. 4

    *B.* **District Court Practices Under Special Judge Sigler** ................................... 7

    *C.* **Plaintiffs' Interactions with the District Court** .......................................... 9

        **Sharonica Carter** ........................................................................................ 9

        **Amanda Feenstra** ...................................................................................... 13

    *D.* **Modification to District Court Practices After Former Judge DeLapp's Resignation** .. 19

STATEMENT OF UNDISPUTED FACTS ................................................................. 22

    *Plaintiff Amanda (Ackerson) Feenstra* ............................................................... 22

STANDARD OF REVIEW .......................................................................................... 24

ARGUMENT AND AUTHORITIES ........................................................................... 25

PROPOSITION I:

    PLAINTIFFS' DUE PROCESS RIGHTS UNDER EITHER § 1983 OR THE
    OKLAHOMA CONSTITUTION HAVE NOT BEEN VIOLATED ......................... 25

    *A.* **§ 1983 Claims** ............................................................................................ 25

    *B.* **State Constitutional Claims** ..................................................................... 29

**PROPOSITION II:**

**PLAINTIFFS CANNOT ESTABLISH A RIGHT TO RELIEF FOR ANY VIOLATIONS OF RULE 8** ........................................................................................31

*A. Plaintiff Carter's claims for relief under Rule 8.1 should be denied*........................32

*B. Plaintiffs' claims under Rule 8.5 should be denied* ....................................................34

*C. Plaintiffs' claims under Rule 8.4 should be denied* ....................................................35

**CONCLUSION** ........................................................................................................................36

**CERTIFICATE OF SERVICE** ..............................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505 (1986) ................................................................................24, 25

*Armstrong v. State,*
1987 OK CR 176, 742 P.2d 565 ...............................................................................................2

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986)........................................................................................24

*Collins v. Daniels,*
916 F.3d 1302 (10th Cir. 2019) ...............................................................................................29

*DeRonde v. State*,
1986 OK CR 29, 715 P.2d 84 ............................................................................................ 32-33

*Dyer v. State*,
1991 OK CR 89, 815 P.2d 689 .................................................................................................33

*Edwards v. Balisok*,
520 U.S. 641 (1997).................................................................................................................27

*Flandermeyer v. Bonner*,
2006 OK 87, 152 P.3d 195........................................................................................................30

*Francis E. Heydt Co. v. United States*,
948 F.2d 672 (10th Cir. 1991) ..................................................................................................26

*GJA v. Okla. Dep't of Human Serv.*,
2015 OK CIV APP 32, 347 P.3d 310 ......................................................................................30

*Graff v. Aberdeen*,
No. 17-cv-606-TCK-JFJ, 2021 WL 951017, slip copy (N.D. Okla. March 12, 2021)..3, 26, 27, 30

*Green v. Mansour*,
474 U.S. 64 (1985).................................................................................................................28

*Heck v. Humphrey*,
512 U.S. 477, 114 S. Ct. 2364 (1994).........................................................................................27

*Hill v. Am. Med. Response*,
2018 OK 57, 423 P.3d 1119.......................................................................................................30

*In re Adoption of K.P.M.A.*,
2014 OK 85, 341 P.3d 38......................................................................................30

*Jones v. State*,
1984 OK CR 70, 682 P.2d 757 ............................................................................33

*Lawrence v. Kuenhold*,
271 F. App'x 763 (10th Cir. 2008) ......................................................................28

*Mayor of City of Philadelphia v. Educ. Equal. League*,
415 U.S. 605 (1974)..............................................................................................29

*Monell v. Dep't of Soc. Serv. of City of New York.*,
436 U.S. 658 (1978)..............................................................................................29

*Nesbitt v. State*,
2011 OK CR 19, 255 P.3d 435 ..............................................................................2

*Powers v. Dist. Ct. of Tulsa Cnty.*,
2009 OK 91, 227 P.3d 1060..................................................................................30

*Quick v. State*,
No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished)............5, 10, 15, 16, 19

*Rogers v. Bailey*,
2011 OK 69, 261 P.3d 1150..................................................................................30

*Smith v. State*,
2007 OK CR 6, 155 P.3d 793 ................................................................................2

*State v. Claborn*,
1994 OK CR 8, 870 P.2d 169 ................................................................................2

*The Application of: Dist. Ct. Order, Civil Misc.*,
No. CV-2009-2 (Washington County Dist. Ct. Jan. 9, 2009).......................5, 10, 15, 16

*Thompson v. State, ex rel., Bd. of Trustees of Okla. Pub. Employees Ret. Sys.*,
2011 OK 89, 264 P.3d 1251..................................................................................30

*Tollet v. State*,
2016 OK CR 15, 387 P.3d 915 ..............................................................................4

*Utah Animal Rights Coalition v. Salt Lake City Corp.*,
371 F.3d 1248 (10th Cir. 2004) ...........................................................................26

*White v. State*,
1988 OK CR 117, 756 P.2d 1251 ..........................................................................2

*Winbush v. State*,
2018 OK CR 38, 433 P.3d 1275 ............................................................................... 3-4

## STATUTES

20 O.S. §§ 1313.2 – 1313.5 ...................................................................................30, 32

20 O.S. §§ 1313.2 – 1313.7................................................................5, 10, 15, 16, 19

22 O.S. §§ 454 – 463 .................................................................................................3

22 O.S. § 979a......................................................................................5, 10, 15, 16, 19

22 O.S. § 983 .............................................................................................................2

22 O.S. § 983(D) ................................................................................................30, 32

22 O.S. § 983a......................................................................................3, 19, 24, 27

28 O.S. §§ 151-53 ..............................................................................................30, 32

28 O.S. § 153 ........................................................................................5, 10, 15, 16, 19

28 O.S. § 162 ......................................................................................................30, 32

42 U.S.C. § 1983.............................................................................................26, 28

## RULES

Fed. R. Civ. P. 56........................................................................................................1, 36

Fed. R. Civ. P. 56(C)..................................................................................................24

Okla. Ct. Crim. App. R. 8 ..........................................................................................2

Okla. Ct. Crim. App. R. 8.1 ...........................................................................6, 32, 33

Okla. Ct. Crim. App. R. 8.3 ..................................................................................2-3

Okla. Ct. Crim. App. R. 8.4 .................................................................................35-36

Okla. Ct. Crim. App. R. 8.5 ...........................................................................3, 34-35

Okla. Ct. Crim. App. R. 8.6 ......................................................................................3

Okla. Ct. Crim. App. R. 8.8 ....................................................................................26

**OTHER**

Okla. Const. art. 2, § 7 ..................................................................................................................29

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

AMANDA FEENSTRA and
SHARONICA
CARTER

    Plaintiffs,

v.

JARED SIGLER, Special Judge of the
District Court of Washington County, in
his official capacity, *et al.,*

    Defendants.

**Case No.: 19-cv-234-JFH-CDL**

**(Removed from Washington County
Case No. CV-2019-12)**

## DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Washington County District Judge Linda Thomas, Associate Judge Russell Vaclaw, and Special Judge Jared Sigler (collectively "State Judges"), by and through attorneys of record, Stefanie Lawson and Devan Pederson, Assistant Attorneys General, submit this Response to Plaintiffs' Motion for Partial Summary Judgment [Doc. 103] and respectfully request that under Fed. R. Civ. P. 56, this Court deny summary judgment to Plaintiffs.

### BRIEF IN SUPPORT

Plaintiffs, Amanda (Ackerson) Feenstra and Sharonica Carter, have not shown that they are entitled to judgment as a matter of law. Plaintiffs have misconstrued Oklahoma's statutory scheme and court rules regarding the collection of costs, fines, and fees imposed as part of valid criminal sentences. Plaintiffs' Motion fails to establish that they are entitled to judgment as a matter of law. Plaintiffs have not shown that they are entitled to the requested relief.

*Overview of Statutory Scheme*

Certain costs, fines, and fees are assessed and imposed as part of every criminal sentence in the State of Oklahoma. *See Nesbitt v State*, 2011 OK CR 19, 255 P.3d 435, 440 ("[a]s long as the mandated statutory costs are authorized by statute and are reasonable, uniform, and related to the services provided, they are allowed. In numerous cases we have determined that these costs are reasonably related to the administration of the criminal justice system and the costs of prosecution and have sanctioned the costs as proper.") *See also*, *State v. Claborn*, 1994 OK CR 8, ¶¶ 6, 7 & 10, 870 P.2d 169, 171–174 (costs assessed which are directly and reasonably related to a particular prosecution are considered costs of administering the criminal justice system and consist only of those expenses directly related to a particular prosecution and costs reasonably related to a particular prosecution will be considered a cost of administering the criminal justice system, and "are not part of a defendant's possible "punishment" as that term is defined at 22 O.S. § 926" (which provides for a jury determination of punishment); *See also*, *White v. State*, 1988 OK CR 117, ¶ 7, 756 P.2d 1251, 1252; *Armstrong v. State*, 1987 OK CR 176, ¶ 5, 742 P.2d 565, 567. A criminal defendant remains subject to the jurisdiction of the district court until the entirety of a duly imposed criminal sentence is satisfied, including any imposed costs, fines, and fees. 22 O.S. § 983. Because ability to pay is fluid, the Court has the authority to review a defendant's progress toward satisfaction of her financial obligations. *Smith v. State*, 2007 OK CR 6, 155 P.3d 793, 795 ("the status of a defendant's indigency is subject to change and therefore, continuously subject to review.")   Under Rule 8, a court may require a defendant to appear regularly for review. *See* Rules 8.3 (the court may order the

defendant to appear before the court on each due date), 8.5 (the court may require the defendant to report back at a time fixed to determine if a change in condition has made it possible for the defendant to commence making installment payments), 8.6 ("at any time so fixed by the court for the defendant to appear on due date of installment or to appear for examination to determine change of condition…"). Several mechanisms are available to defendants for relief from costs, fines, and fees exist, including relief under 22 O.S. § 983a, waiver or suspension under Rule 8.5, appeal from conviction and/or sentence or an installment payment order, or a writ to the Oklahoma Court of Criminal Appeals.

Also relevant for this case, a court possesses the inherent power to compel compliance with its orders through the issuance of a bench warrant. 22 O.S. §§ 454-463. A defendant that fails to appear when ordered and/or fails to adhere to an installment payment order may be may be brought before the court through the issuance of a bench warrant. The court need not inquire as to why a defendant has failed to comply prior to issuing the bench warrant, and in fact, the defendant is in the unique position of having the information related to non-compliance that the court may not access without appearance. *Graff v. Aberdeen*, No. 17-cv-606-TCK-JFJ, 2021 WL 951017, slip copy (N.D. Okla. March 12, 2021) ("Nothing in the law requires a court to make a determination before issuing a bench warrant that a defendant has the financial means to comply with an order for the payment of costs, fines, and fees but that he has made a deliberate choice to evade his obligation. To the contrary, the law is clear that the burden is on a defendant to prove that his noncompliance with a court order to pay costs, fines, and fees was excusable…") *See also*, *Winbush v. State*, 2018 OK CR 38 at ¶¶7, 11, 433 P.3d 1275 ("it is not

'inequitable, oppressive, or substantially prejudicial' to place the burden of proof on the defendant when the State cannot viably bear the burden because, if such facts exist, they are "'peculiarly within [the defendant's] knowledge, and could be easily susceptible of proof by him.' ") (*quoting Tollet v. State*, 2016 OK CR 15, 387 P.3d 917).

## RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

### A. *District Court Practices Under Former Judge Delapp*

1.      Admitted.

2.      It is admitted that Judge DeLapp served as a judicial officer for Washington County and that he presided over "a lot" of fines and costs hearings. DeLapp Dep. at 24:16 - 25:1 [Doc. 103-1].

3.      Admitted.

4.      Admitted.

5.      Admitted in part, denied in part. It is admitted that the total amount of fines, fees, and costs was calculated by a minute clerk or a cost administrator or some other clerk in the courthouse for defendants after sentencing by Judge DeLapp. DeLapp Dep. at 60:5-10. [Doc. 103-1].

6.      It is admitted that Judge DeLapp did not explicitly perform the arithmetic adding up the total of the fines, fees, and costs for Ms. Carter and Ms. Feenstra (f/k/a Ackerson). However, both Ms. Carter and Ms. Feenstra (f/k/a Ackerson) were sentenced pursuant to plea agreements and were represented by counsel. Carter Plea of Guilty Summary of Facts, attached hereto as Ex. 1; Carter Tr., of Proceedings on Aug. 11, 2011, attached hereto as Ex. 2; Carter Tr. of Proceedings

4

on Sept. 22, 2011, attached hereto as Ex. 3; Ackerson Plea of Guilty Summary of Facts [doc. 102-2] (explicitly acknowledging in paragraph 23 that fines, costs, and fees—including Jail Incarceration Fees ("JIF")—are part of plea agreement). Fees and costs are based on statute and are calculable by attorneys. *See e.g.* 28 O.S. § 153 (itemization of costs in criminal cases); 20 O.S. §§ 1313.2 – 1313.7 (fees); 22 O.S. § 979a (jail incarceration fee); *Quick v. State*, No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished) (Kuehn, V.P.J. Specially Concurring) (observing that "defense counsel should give defendants notice of the exact costs they will be expected to pay when considering a plea deal") [Doc. 102-48]. In addition, the Washington County $38.00-per-day jail incarceration fee has been publicly available since 2009. *See* "Order Establishing Daily Inmate Costs for the Washington County Jail Pursuant to Title 22 O.S. § 979a," *The Application of: Dist. Ct. Order, Civil Misc.*, No. CV-2009-2 (Washington County Dist. Ct. Jan. 9, 2009) (attached hereto as Ex. 4).

7.     See response to #6 above.

8.     Admitted, in part, denied in part. Former Judge DeLapp's general practice at sentencing was to assume that the defendant could ***not*** pay fines, fees, and costs in a lump sum because he always sent defendants to the clerk's office to set up a payment plan, which would have been unnecessary if the defendant could pay the entire amount in a lump sum. Former Judge DeLapp testified that paying on an installment plan "was the – the system we had." He did not usually ask if defendants could pay in a lump sum. Rather, he assumed they could not and "sent

5

them to the clerk's office to set up a payment plan at sentencing." DeLapp Dep. at 59:10 – 60:10 [Doc. 103-1].

9.      Admitted. However, Rule 8.1 requires only that the court determine whether a defendant can "*immediately* satisfy the fine and costs." (Emphasis added). As indicated in the response to #8 above, Judge DeLapp sent the defendants to costs administrator to set up an installment plan because he usually assumed that the defendants could *not* "immediately satisfy the fine and costs."

10.      Admitted.

11.      Admitted.

12.      Admitted.

13.      Admitted.

14.      Admitted.

15.      Admitted.

16.      Admitted.

17.      Admitted.

18.      Admitted.

19.      Admitted.

20.      Admitted.

21.      Admitted.

22.      Admitted.

23.      Admitted.

24.     Admitted in part, denied in part. Judge DeLapp testified that he was not aware of other judges completely relieving a defendant of their fines and costs in their entirety *while he was on the bench.* DeLapp Dep. at 209:14-17 [Doc. 103-1]. This is done under the current administration, however. *See* Stat. of Sigler at ¶4 [Doc. 102-45].

25.     Admitted.

## B. *District Court Practices Under Special Judge Sigler*

26.     Admitted.

27.     Denied. Prior to the costs docket, Judge Sigler looks up each defendant on the computer, which shows the total fines and costs they owe. Sigler Dep. at 15:15-22 [Doc. 103-2].

28.     Admitted. However, at the costs docket, Judge Sigler engages in a conversation with the defendants to determine their circumstances and their requests, if any. If a defendant requests a change to their payment obligation, he either grants the request or sets a hearing for the matter to be heard at the Rule 8 docket. At the costs docket, no request is denied without providing the defendant an opportunity to be fully heard during the Rule 8 docket. 1st Stat. of Sigler at ¶4 [Doc. 102-45].

29.     Denied. Judge Sigler never had a "practice" of jailing defendants for not paying their fines and costs. Judge Sigler testified that the number of people he ever jailed for not paying fines and costs was "very few," and that he has not done this since 2017 or 2018. Sigler Dep.at 29:23 - 30:3; 30:8-10 [Doc. 103-2]. The

decision not to jail defendants for failure to pay their fines fees and costs was made at some point after the resignation of Judge DeLapp in August of 2018. Sigler Dep. at 80:6-12 [Doc. 103-2]. Judge Sigler believed the practice needed to change "because people were struggling to make these payments, and them going to jail doesn't do anything to help them." Sigler Dep. at 80:13-18 [Doc. 103-2]. Since Judge Thomas' arrival in January of 2019, no one has been jailed for failure to pay their fines, fees, or costs. Sigler Dep. at 29:17 – 30:3 [Doc. 103-2]; Stat. of Thomas at ¶7 [Doc. 102-44]; 2d Stat. of Sigler at ¶4 (Ex. 5) ("I have not incarcerated anyone for failure to pay their fines and costs since Judge Thomas took the bench in January of 2019."). Now, if a person appears at the costs docket who has not made a payment, Judge Sigler "give[s] them a new order-back date for a future costs review hearing." 1st Stat. of Sigler at ¶4 [Doc. 102-45]. At no time is a defendant incarcerated for failure to pay fines, fees, and costs without a full hearing. Stat. of Thomas at ¶¶ 4, 7 [Doc. 102-44]. District Judge Thomas has no intention of returning the Washington County District Court to the practices of former Judge DeLapp with respect to fines, fees, and costs. Stat. of Thomas at ¶8 [Doc. 102-44].

30.     It is admitted that the court previously used a form entitled "Order Remanding Defendant to Jail for Failure to Pay Fines and Costs," which did not contain Rule 8 notice language. However, this form was used in error. The correct form should have indicated a bond amount was being set for "failure to appear." Judge Sigler only used the form after a defendant was arrested on a bench warrant

for failure to appear on the costs docket. Despite its verbiage, he never used the form to incarcerate anyone for "failure to pay." It was always for a failure to appear. Sigler Dep. at 73:2 – 74:7 [Doc. 103-2]; 2d Stat. of Sigler at ¶4 (Ex. 5). Orders Setting Bond for Failure to Appear now contain a Rule 8 Notice to Defendant. Stat. of Thomas at ¶5 [Doc. 102-44]; Ex. D to Stat. of Thomas [Doc. 102-44, pp. 8-9]. No one is jailed for failure to pay. Stat. of Thomas at ¶7 [Doc. 102-44].

31.     Denied. When Judge Sigler stated in his deposition that Rule 8 hearings were first implemented after former Judge DeLapp's resignation, he was referring to the implementation of the Rule 8 docket. He did not intend to suggest that no Rule 8 motion would be heard prior to implementation of the Rule 8 docket. In fact, Judge Sigler heard a Rule 8 motion on December 8, 2017. 2d Stat. of Sigler at ¶3 (Ex. 5).

32.     Denied. See response to #29 and #30 above.

### C.  *Plaintifff's Interactions with the District Court*

**Sharoncia Carter**

33.     Admitted.

34.     Admitted.

35.     Denied. Ms. Carter stated that "[o]ne time" her OIDS attorney told her "it would be *like* $1,300," not that it would be $1,300 exactly. Carter Dep. at 103:25 [Doc. 103-3].

36.     It is denied that former Judge DeLapp's statement was "incomplete" in the sense that he improperly withheld something from Ms. Carter. It is admitted that Judge DeLapp did not explicitly perform the arithmetic of adding up the total of the fines, fees, and costs for Ms. Carter. However, Ms. Carter was represented by counsel. Carter Plea of Guilty Summary of Facts (attached hereto as Ex. 1); Carter Tr. of proceedings on Aug. 11, 2011 (attached hereto as Ex. 2); and Carter Tr. of proceedings Sept. 22, 2011 (attached hereto as Ex. 3). Fees and costs are based on statute and are calculable by attorneys. *See e.g.* 28 O.S. § 153 (itemization of costs in criminal cases); 20 O.S. §§ 1313.2 – 1313.7 (fees); 22 O.S. § 979a (jail incarceration fee); *Quick v. State*, No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished) (Kuehn, V.P.J. Specially Concurring) (observing that "defense counsel should give defendants notice of the exact costs they will be expected to pay when considering a plea deal") [Doc. 102-48]. In addition, the Washington County $38.00-per-day jail incarceration fee has been publicly available since 2009. *See* "Order Establishing Daily Inmate Costs for the Washington County Jail Pursuant to Title 22 O.S. § 979a," *The Application of: Dist. Ct. Order, Civil Misc.*, No. CV-2009-2 (Washington County Dist. Ct. Jan. 9, 2009) (attached hereto as Ex. 4).

37.     Admitted.

38.     It is denied that former Judge DeLapp improperly withheld information from Ms. Carter. See response to 36 above.

39.     Admitted.

10

40.     Admitted.

41.     Admitted.

42.     Admitted.

43.     Admitted.

44.     Objection as to hearsay. To the extent Ms. Carter is relaying what someone else told her about why they did not hire her, her statements are inadmissible hearsay and should not be considered. Without waiving any objection, admitted in part, denied in part. Although Ms. Carter had to apply to several jobs before securing one, she did find employment. Carter Dep. at 25:7 – 22; 48:5 – 15 [Doc. 103-3]. One of the reasons Ms. Carter says that she was told she was not hired was due to her age. Carter Dep. at 22:9-11 [Doc. 103-3].

45.     See objection and response to #44 above.

46.     Admitted in part, denied in part. It is admitted that Ms. Carter had not made monthly payments. The cited material does not contain any information that the failure to pay was due to inability to find work. Therefore, the unsupported statement of fact in this regard should be rejected

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted.

51.     It is admitted that Ms. Carter was released after 30 minutes to an hour. Carter Dep. at 34:6-8 [Doc. 103-3].

52.     Admitted.

53.     It is admitted that former Judge DeLapp ordered Ms. Carter to make installment payments toward her fines, fees, and costs beginning in November of 2017.

54.     It is admitted that former Judge DeLapp ordered Ms. Carter to make installment payments of $75 per month toward her fines, fees, and costs beginning in November of 2017. Order [Doc. 103-18].

55.     Admitted.

56.     It is admitted that former Judge DeLapp did not conduct an ability-to-pay hearing with Ms. Carter.

57.     Admitted in part. The cited material does not state that Judge Sigler told Ms. Carter she would "go to jail" unless she paid. Ms. Carter testified that Judge Sigler told her "'Well, you need to have it by 3:00,' and he went to the next person." Carter Dep. at 38:3-5 [Doc. 103-3]. She was not arrested or taken to jail. Carter Dep. at 38:6 - 20 [Doc. 103-3].

58.     Admitted.

59.     Ms. Carter owed $5,216.06 as of February 19, 2021. Stat. of Sigler at ¶7 [Doc. 102-45].

60.     Denied. Ms. Carter testified in her deposition that she could afford to pay $25 per month toward her total court debt and still be able to live a normal life. Carter Dep. at 125:7 – 126:6 [Doc. 103-3]. Ms. Carter has had a series of jobs and was employed at the time of her deposition. Carter Dep. at 25:7 – 26:17; 128:22-

24. [Doc. 103-3]. She has never claimed to be disabled. Although she changed her deposition response, after a break in the deposition, to state that she could not afford anything, this need not be taken as true for purposes of summary judgment due to the prior inconsistent statement. Compare Carter dep. at 125:7 – 126:6 with Carter dep. at 127:9-21 [Doc. 103-3].

61.    Admitted.

62.    Admitted in part, denied in part. Ms. Carter testified that at one of the jobs it "got too hot" and she "almost had a heatstroke." The employer tried to keep her and discussed different positions, but she left because "it was hot, and my checks wasn't right." She told them that "I can't keep getting switched around on all your training." Carter Dep. at 51:18 – 53:15 [Doc. 103-3].

63.    Objection as to hearsay. To the extent Ms. Carter is relaying what someone else told her about why they did not hire her, her statements are inadmissible hearsay and should not be considered.

64.    Admitted.

65.    Admitted.

66.    Denied. Ms. Carter has made varying statements about her ability to pay, which is in flux. See response to #60 above.

**Amanda Feenstra**

67.    Admitted.

68.    Admitted.

69.     Admitted in part. While Ms. Feenstra's OIDS attorney may not have told her the precise amount of every one of her fines, fees, and costs, she did discuss with her that various fines, fees, and costs were part of her sentence and she specifically advised her that Jail Incarceration Fees ("JIF") were part of her plea agreement. Ackerson Plea of Guilty and Summary of Facts at ¶23 [Doc. 102-2]. She further stated that she and her attorney had gone over the plea form and that she understood its contents and agreed with the answers. [Doc. 102-2 at ¶32, p.7].

70.     Admitted.

71.     Admitted in part, denied in part. Ms. Feenstra's Plea form shows that she understood her plea agreement to include jail incarceration fees ("JIF"). Ackerson Plea of Guilty and Summary of Facts at ¶23 [Doc. 102-2]. She further stated that she and her attorney had gone over the plea form and that she understood its contents and agreed with the answers. [Doc. 102-2 at ¶32, p.7].

72.     Denied. Attachment A to Ms. Feenstra's (f/k/a Ackerson) Judgment and Sentence in CF-2014-528 shows fines, fees, and costs in the amount of $3,363. [Doc. 102-3 at p. 4]. Attachment A to Ms. Feenstra's Judgment and Sentence in CF-2014-465 shows fines, fees, and costs in the amount of $1,501.00 (attached hereto as Ex. 6).

73.     Admitted in part, denied in part. Multiple documents existed prior to this litigation showing the amount Ms. Feenstra owed in each case. *E.g.* Order Granting Time to Pay Fines and Costs dated Feb. 2, 2017 [Doc. 102-5]; Ackerson

Judgment and Sentence in CF-2014-465 with attachments [Doc. 102-3]; Judgment

and Sentence in CF-2014-465 (attached hereto as Ex. 6).

74.     Admitted.

75.     Admitted.

76.     Admitted in part, denied in part. The characterization of the fees having

"cryptic" titles is denied. The fees are all set forth in statute. *See* 28 O.S. § 153

(itemization of costs in criminal cases); 20 O.S. §§ 1313.2 – 1313.7 (fees); 22 O.S.

§ 979a (jail incarceration fee); *Quick v. State*, No. C-2019-468 (Okla. Crim. App.

Oct. 8, 2020) (unpublished) (Kuehn, V.P.J. Specially Concurring) (observing that

"defense counsel should give defendants notice of the exact costs they will be

expected to pay when considering a plea deal") [Doc. 102-48]. In addition, the

Washington County $38.00-per-day jail incarceration fee has been publicly

available since 2009. *See* "Order Establishing Daily Inmate Costs for the

Washington County Jail Pursuant to Title 22 O.S. § 979a," *The Application of:

Dist. Ct. Order, Civil Misc*., No. CV-2009-2 (Washington County Dist. Ct. Jan. 9,

2009) (attached hereto as Ex. 4).

77.     Admitted.

78.     Admitted.

79.     The fines, fees, and costs were imposed at sentencing. It is admitted that

Judge DeLapp did not explicitly perform the arithmetic adding up the total of the

fines, fees, and costs for Ms. Feenstra (f/k/a Ackerson). However, Ms. Feenstra

(f/k/a Ackerson) was sentenced pursuant to plea agreements and was represented

15

by counsel. Ackerson Plea of Guilty Summary of Facts [Doc. 102-2] (explicitly acknowledging in paragraph 23 that fines, costs, and fees—including Jail Incarceration Fees ("JIF")—are part of plea agreement). Fees and costs are based on statute and are calculable. *See e.g.* 28 O.S. § 153 (itemization of costs in criminal cases); 20 O.S. §§ 1313.2 – 1313.7 (fees); 22 O.S. § 979a (jail incarceration fee); *Quick v. State*, No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished) (Kuehn, V.P.J. Specially Concurring) (observing that "defense counsel should give defendants notice of the exact costs they will be expected to pay when considering a plea deal") [Doc. 102-48]. In addition, the Washington County $38.00-per-day jail incarceration fee has been publicly available since 2009. *See* "Order Establishing Daily Inmate Costs for the Washington County Jail Pursuant to Title 22 O.S. § 979a," *The Application of: Dist. Ct. Order, Civil Misc.*, No. CV-2009-2 (Washington County Dist. Ct. Jan. 9, 2009) (attached hereto as Ex. 4).

80.      Denied. The Jail Incarceration Fees were imposed at the time of sentencing. The Sheriff's Return [Doc. 103-28] is merely the Sheriff's statement of the number of days that Ms. Feenstra was in jail times the $38 / day rate. The number of days spent in jail should be known by the defendant at the time of sentencing. The rate has been the same since 2009. The jail incarceration fee is thus an easily calculable and definite amount at the time of sentencing. Ms. Feenstra (f/k/a Ms. Ackerson) knew that jail incarceration fees were part of the plea agreement. Ackerson Plea of Guilty Summary of Facts [Doc. 102-2] (explicitly

acknowledging in paragraph 23 that fines, costs, and fees—including Jail

Incarceration Fees ("JIF")—are part of plea agreement.

81.     Denied. See response to #80 above.

82.     Admitted.

83.     Admitted in part, denied in part. Ms. Feenstra (f/k/a Ackerson) does not

remember who she talked to. Feenstra Dep. at 47:18-20 (doc. 103-5).

84.     Admitted.

85.     Admitted.

86.     Admitted.

87.     Denied. The Court Minute for 05/12/17 on the docket sheet indicates that

Ms. Feenstra (f/k/a Ackerson) requested that her payments be lowered to $40/mo.,

which was granted. [Docs. 103-35 and 103-36].

88.     Denied. The Court Minute for 05/12/17 on the docket sheet indicates that

Ms. Feenstra (f/k/a Ackerson) requested that her payments be lowered to $40/mo.,

which was granted. [Docs. 103-35 and 103-36].

89.     Admitted.

90.     Denied. Ms. Feenstra attended her husband's Rule 8 hearing on February

25, 2020. Tr. of Rule 8 Hearing (Ex. 7). Her husband, Lonnie Feenstra, filed a pro

se Rule 8 motion and Ms. Feenstra helped him fill it out. Feenstra Dep. at 100:6-8

[Doc. 103-5]. In February of 2020, Judge Thomas suspended Ms. Feenstra's fines

and costs due to Ms. Feenstra's knee injury. Feenstra Dep. at 76:21 – 77:16 [Doc.

103-5]. On December 16, 2020, Judge Gibson eliminated Ms. Feenstra's fines,

fees, and costs. Order Pursuant to Title 22 O.S. § 983(a). [Doc. 102-45 at pp. 43-45].

91.     Admitted in part. Although the bench warrant says that it was for "failure to pay," it was actually based on the failure to appear at the costs docket. Sigler Dep. at 71:15 – 75:21 [Doc. 103-2].

92.     Admitted.

93.     Admitted.

94.     Admitted.

95.     Admitted.

96.     Admitted.

97.     Admitted.

98.     On January 20, 2020, Judge Thomas gave Ms. Feenstra a $25 credit for the time served and a $25 credit for an overpayment. *See* Feenstra/Ackerson Dkt [Doc. 103-35]; Order Pursuant to Title 22 O.S. § 983(a) at ¶4. [Doc. 102-45 at pp. 43-45].

99.     Admitted.

100.    Admitted.

101.    Admitted.

102.    Admitted.

103.    Admitted.

104.    Admitted.

105.    Admitted.

106.    Admitted in part and denied in part. Judge Gibson eliminated Ms.

Feenstra's fines, fees, and costs based on her qualification under 22 O.S. § 983(a),

not because of poverty. [Doc. 102-45 at pp. 43-45]. In addition, there was nothing

preventing Ms. Feenstra from filing a Rule 8 motion at any time prior to this.

### D.  *Modification to District Court Practices After Former Judge Delapp's Resignation*

107.    Admitted.

108.    Admitted.

109.    Admitted.

110.    Admitted.

111.    It is admitted that Judge Thomas does not inform defendants at sentencing

that they may be eligible for relief under 22 O.S. § 983a, but this is completely

immaterial and outside the scope of the claims made in this case.

112.    Denied. Defendants are fully advised of their rights under Rule 8 at the time

of sentencing and beyond. Stat. of Thomas at ¶2 [Doc. 102-44].

113.    This is immaterial. In any event, fees and costs are based on statute and are

calculable. *See e.g.* 28 O.S. § 153 (itemization of costs in criminal cases); 20 O.S.

§§ 1313.2 – 1313.7 (fees); 22 O.S. § 979a (jail incarceration fee); *Quick v. State*,

No. C-2019-468 (Okla. Crim. App. Oct. 8, 2020) (unpublished) (Kuehn, V.P.J.

Specially Concurring) (observing that "defense counsel should give defendants

notice of the exact costs they will be expected to pay when considering a plea

deal"). [Doc. 102-48].

19

114.    This is immaterial. In any event, at the costs docket, Judge Sigler engages

in a conversation with the defendants to determine their circumstances and their

requests, if any. If a defendant requests a change to their payment obligation, he

either grants the request or sets a hearing for the matter to be heard at the Rule 8

docket. At the costs docket, no request is denied without providing the defendant

an opportunity to be fully heard during the Rule 8 docket. Stat. of Sigler at ¶4

[Doc. 102-45]. Many times, the judge is already aware of the defendant's

circumstances because he has seen them in Bartlesville outside of court or because

he has seen them previously at costs dockets or elsewhere. Judge Sigler does not

deny requests for relief without inquiring into each individual's health and

financial situation. He does not always ask detailed questions about every aspect

of an individual's health or financial situation if it becomes clear that he is going

to grant their request for relief. For example, if he has determined to grant their

request based primarily on health difficulties, he has no need to ask detailed

questions about every aspect of their financial situation. If he has determined to

grant their request based primarily on their financial hardships, he has no need to

ask detailed questions about their medical and/or health circumstances.

Nevertheless, each individual has a full opportunity to provide the judge with any

information they wish to present. Judge Sigler will consider all information

provided to him in reaching a decision. Anyone appearing before Judge Sigler has

a full and fair opportunity to present their case. Judge Sigler cannot recall

declining fines, costs, and fees relief to any individual appearing at the Rule 8

20

docket who has requested such relief since January of 2019. Anyone who requests fines, fees, and costs relief from Judge Sigler now or in the future will receive a full and fair opportunity to present their evidence and receive a fair decision. 1st Stat. of Sigler at ¶5 [Doc. 102-45].

115.    This is immaterial due the existence of the Rule 8 regime.

116.    This is immaterial and misleading. Fines, fees, and costs are imposed at sentencing. The fact that the fines, fees, and costs are added together and attached to the Judgment and Sentence after the in-court sentencing and attached as Attachment A to the Judgment and Sentence does not adversely affect anyone's rights. See response to #6 above.

117.    Admitted.

118.    Admitted.

119.    Denied. Prior to the costs docket, Judge Sigler looks up each defendant on the computer, which shows the total fines and costs they owe. Sigler Dep. at 15:15-22 [Doc. 103-2]. At the costs docket, Judge Sigler usually engages in a conversation with the defendants to determine their circumstances and their requests, if any. If an individual requests a change to their payment obligation, he either grants the request or sets a hearing for the matter to be heard at the Rule 8 docket. 1st Stat. of Sigler at ¶4 [Doc. 102-45].

120.    Denied. It is not uncommon for Judge Sigler to grant requests for relief at the costs docket as well as at the Rule 8 docket. 1st Stat. of Sigler [Doc. 102-45].

121.    This immaterial. See response to #114 above.

122.   This is immaterial. Defendants have filed detailed statements of the procedures and the forms they use relating to fines, fees, and costs practices. *See* Stat. of Thomas [Doc. 102-44]; Stat. of Sigler [Doc. 102-45].

## STATEMENT OF UNDISPUTED FACTS

### *Plaintiff Amanda (Ackerson) Feenstra*

1.   Ms. Feenstra, represented by counsel, pled guilty to three criminal counts on April 29, 2015. The Judgment and Sentence was filed on May 22, 2015. Ms. Feenstra served a term of incarceration, per the agreed plea. Ms. Feenstra also agreed to pay costs, fines, and fees as part of the plea agreement. The judgment and sentence, pursuant to the plea agreement, notified Ms. Feenstra of her rights under Rule 8. *See* Ackerson Docket sheet for CF-2014-528 [Doc. 102-1], plea agreement [Doc. 102-2], and judgement and sentence [Doc. 102-3].

2.   Ms. Feenstra was released from custody on or about January 20, 2017. She reported to Washington County District Court for a costs and fines review on February 2, 2017. She signed an installment plan agreement and agreed to pay $50 per month towards her financial obligations beginning on March 2, 2017. *See* DOC letter [Doc. 102-4]), Washington County payment plan [Doc. 102-5].

3.   Ms. Feenstra appeared for a fines and costs review on May 12, 2017, and requested a lowered payment to $40 per month. The Court granted the request and ordered Ms. Feenstra back for another review on July 28, 2017. Ackerson Docket, Court Minute May 12, 2017 [Doc. 102-1]; Order [Doc. 102-6].

4.      Ms. Feenstra was late to a fines and cost review on September 15, 2017, and then failed to appear at her next fines and costs review on October 27, 2017. The Court requested a one-time courtesy letter regarding the missed date and advising that failure to respond would result in the issuance of a bench warrant. Ackerson Docket, CM Sept 15, 2017, cm Oct 27, 2017 [Docs. 102-1; 102-7].

5.      Ms. Feenstra called the court clerk in January and February 2018, and got new hearing dates for fines and costs review. She then failed to appear for the cost review set for May 4, 2018, and a failure to appear warrant was issued. Ackerson Docket, cm Jan 3, 2018, cm Feb 26, 2018 [Doc. 102-1], court minute [Doc. 102-8]; warrant [Doc. 102-9].

6.      Ms. Feenstra was arrested on the bench warrant on May 9, 2018, and appeared in court on the warrant the next day. Ms. Feenstra was remanded on a $330.00 bond. Ackerson Docket, cm May 10, 2018 [Doc. 102-1]; order [Doc. 102-10].

7.      Ms. Feenstra appeared at fines and cost review in July and August 2018. Rather than appear on the October fines and costs review, Ms. Feenstra called the court clerk and got a new hearing date for January 4, 2019. Rather than appear at any of the scheduled fines and costs review throughout 2019, Ms Feenstra called in each time and received new court dates. Ackerson Docket, cm July 6, 2018, Aug 17, 2018 [Doc. 102-1]; court minutes [Docs. 102-11, 102-12, 102-13, 102-14].

8.      Ms. Feenstra appeared before Judge Thomas in January 2020 seeking credit for overpayment. Judge Thomas granted the request. Ackerson Docket, cm Jan 10, 2020 [Doc. 102-1].

23

9.      Ms. Feenstra appeared before Judge Thomas on May 2020 seeking relief from payment obligations due to a change in employment status and an injury. Judge Thomas granted a six month suspension and ordered Ms. Feenstra back on November 20, 2020. Ackerson Docket, cm May 22, 2020 [Doc. 102-1].

10.      Ms. Feenstra appeared with counsel on December 11, 2020, again seeking relief from financial obligations. Judge Thomas recused and assigned the case to Judge Gibson in Nowata County. Ackerson Docket, cm Dec 11, 2020 [Doc. 102-1].

11.      Judge Gibson granted full waiver under 22 O.S. § 983a on December 16, 2020. [Doc. 102-15].

12.      Defendants adopt by reference and incorporate herein the Statement of Material Facts outlined in their Motion for Summary Judgment [Doc. 102].

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). One of the fundamental functions of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54 (1986). Summary judgment may be granted when the moving party demonstrates there is no evidence to support the claims of the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S. Ct. 2548, 2553-54. An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

24

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Summary judgment in the movant's favor is appropriate only if the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). Therefore, the successful movant must show that the law entitles her to judgment. Plaintiffs' motion fails to establish that they are entitled to judgment as a matter of law.

## ARGUMENT AND AUTHORITIES

### PROPOSITION I: PLAINTIFFS' DUE PROCESS RIGHTS UNDER EITHER § 1983 OR THE OKLAHOMA CONSTITUTION HAVE NOT BEEN VIOLATED

#### A. *§1983 claims*

Plaintiffs have failed to establish any of the elements of a claim under the Fourteenth Amendment. Defendant State Judges were at all times acting under color of state law. However, contrary to Plaintiffs' assertions, neither Plaintiff was incarcerated for failure to pay without notice and opportunity to be heard. In fact, neither was ever incarcerated for failure to pay. Plaintiffs conflate the issuance of a bench warrant to compel compliance with a valid court order and subsequently being held on the bond on the warrant with an order of detention for willful failure to pay. Both Plaintiffs were subject to bench warrants because they had failed to comply with the court's orders to make the agreed upon

payments and appear at cost dockets. *See* Carter Bench Warrant noted in docket on Feb. 7, 2014 [Doc. 102-16]; and Feenstra Bench Warrant noted in docket on May 7, 2018 [Doc. 102-1]. Each was given a new date for appearance after paying the bond on the warrants. Courts maintain inherent authority to compel attendance at proceedings and compliance with its orders. A bench warrant does not require an inquiry as to why someone is non-compliant. "Prior to issuance of a bench warrant a court need only review its own records – of which it may take judicial notice – to determine whether there is probable cause to believe that the defendant has failed to comply with a court order." *Graff v. Aberdeen*, No. 17-cv-606-TCK-JFJ, 2021 WL 951017, slip copy (N.D. Okla. March 12, 2021). Plaintiffs have not brought claims challenging the bond setting process for bench warrants and therefore those claims are not before the court. Had any Plaintiff been subject to an actual order of detention, they could have appealed to the Oklahoma Court of Criminal Appeals and raised any Constitutional infirmities there. *See* Rule 8.8.

Further, Plaintiffs have not shown that they are entitled to prospective relief under § 1983. The Tenth Circuit has said that a declaratory judgment is not meant to proclaim liability for a past act, but to define the legal rights and obligations of the parties in anticipation of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) (McConnell, J., *concurring*) ("[A] declaratory judgment action involving past conduct that will not recur is not justiciable."); *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 676–77 (10th Cir. 1991). The actions which form the basis of Plaintiffs claims are past acts (and in Plaintiff Carter's case, by a judge that is no longer on the bench and is no longer a party to this suit). Plaintiff Feenstra has made no

26

showing that she will be subject to any future actions of the Washington County Court, as all of her outstanding costs, fines, and fees were waived after she met the requirements of 22 O.S. § 983a and sought relief from the court. *See* Doc. 102-45 at ¶8. Plaintiff Carter is currently subject to a bench warrant for failure to appear and has made no effort to resolve that issue through the proper mechanism (namely seeking a new hearing date and appearing at that hearing). *See e.g.* Doc. 102-16 at Nov. 1, 2019 - Court Minute entry indicating that "Carter has failed to appear no less than 5 times."

This Court recently considered similar issues in an action brought challenging the court costs, fines, and fees collection regime in Oklahoma. The plaintiffs in *Graff* sought a range of relief, including declaratory relief from state judges in their official capacities. Judge Kern determined that, *inter alia*, *Heck v. Humphrey* barred the plaintiffs' claims because success of Plaintiffs' § 1983 claims would necessarily imply the invalidity of their plea agreements and sentences. *Graff, supra*. The Supreme Court, in *Heck*, pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. 477, 486, 114 S. Ct. 2364 (1994). *See also*, *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (concluding that the claim for declaratory relief "based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"). In the instant action, the relief that Plaintiffs' seek, namely vacatur of outstanding court costs, fines, and fees, outside the statutory scheme that Oklahoma provides, would call into question the validity of their plea agreements and sentences. Therefore, they cannot establish that they are entitled to judgment as a matter of

law on their § 1983 claims.

Finally, the equitable relief Plaintiffs seek is unavailable. Injunctive relief cannot be granted against a judge. 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted." This leaves Plaintiffs with a bare request for a declaration that their rights have been violated in the past. But a declaration—untethered to any prospective injunction—that a plaintiff's rights have been violated in the past is not available against state officials in their official capacity. *Green v. Mansour*, 474 U.S. 64 (1985). In addition, declaratory relief against a state judge is improper if there is a suitable state-court remedy. *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (declaratory relief against state judge unavailable because Plaintiffs could more suitably have obtained relief by filing a motion under state procedure). Here, it cannot be doubted that Plaintiff Carter has an available state-court remedy. Carter has never filed a Rule 8 motion. If Plaintiff Carter would merely file a Rule 8 motion under state criminal procedure, rather than bringing a separate lawsuit against the judges of Washington County, then this matter could be completely resolved through the criminal procedures in place under state law and which are now practiced faithfully in Washington County under a new administration. As for Plaintiff Feenstra, her claims are now completely moot because she has no more reason to interact with the Washington County District Court. *See* Stat. of Sigler [Doc. 102-45 at ¶8].

In addition, the fact that Judge Thomas has replaced Judge DeLapp as the Washington County District Judge and the fact that she has corrected any deficient practices with respect to fines, fees, and costs, makes equitable relief improper. *See* Stat.

of Thomas [Doc. 102-44 (outlining procedures)]. When a plaintiff seeks equitable relief against the enforcement of a practice or unwritten policy, the burden is on the plaintiff to show a need for relief by demonstrating that the successor in office is likely to continue the contested practice. *See Mayor of City of Philadelphia v. Educ. Equal. League*, 415 U.S. 605 (1974). Here the undisputed facts show that Judge Thomas has corrected any problems with fines, fees, and costs issues in Washington County and she does not intend to return to any prior practices. Stat. of Thomas at ¶8 [Doc. 102-44 ("I do not intend to return to any prior fines, fees, or costs practices or procedures that existed in Washington County prior to my becoming District Judge.")]. A plaintiff cannot sustain a claim for prospective relief that is based on "speculative future harm." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019).

Plaintiffs attempt to escape these problem by ignoring in their brief the fact that they cannot seek retrospective relief. Instead, Plaintiffs rely on *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) and its progeny to assert that they need only prove a past unconstitutional policy, practice, or custom. But *Monell* is about obtaining *damages* against non-state governmental entities. Here, there is no damages claim and Plaintiff's reliance on *Monell* and other damages cases is inapposite.

For all of these reasons, Plaintiffs cannot succeed on their federal claims.

## B.  State Constitutional Claims

The Oklahoma Constitution guarantees due process of law. Article 2, Section 7 of the Oklahoma Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. art. 2, § 7. The Oklahoma Supreme

29

Court applies a two-prong test to determine whether an individual was denied procedural due process: 1) whether the individual possessed a protected interest to which due process protection applies; and 2) whether the individual was afforded an appropriate level of process. *Hill v. Am. Med. Response*, 2018 OK 57, ¶ 43, 423 P.3d 1119; *In re Adoption of K.P.M.A.*, 2014 OK 85, ¶ 17, 341 P.3d 38; *Thompson v. State, ex rel., Bd. of Trustees of Okla. Pub. Employees Ret. Sys.*, 2011 OK 89, ¶ 16, 264 P.3d 1251. The Due Process Clause does not by itself mandate any particular form of procedure. *Powers v. Dist. Ct. of Tulsa Cnty.*, 2009 OK 91, n. 42, 227 P.3d 1060, 1074; *Rogers v. Bailey*, 2011 OK 69, ¶ 19, 261 P.3d 1150, 1158 ("Due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.'... '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.); *Flandermeyer v. Bonner*, 2006 OK 87, ¶ 10, 152 P.3d 195, 199 ("Due process is flexible and calls for such procedural protections as the particular situation demands. Before a party's due process rights are violated, it must be shown that the action or error was arbitrary, oppressive and shocking to the conscience of the court.") The Oklahoma Court of Civil Appeals has explained that "[n]ot every malfeasance, misfeasance, or nonfeasance rises to the level of a violation of constitutional rights. *GJA v. Okla. Dep't of Human Serv.*, 2015 OK CIV APP 32, ¶33, 347 P.3d 310.

The collection of costs, fees, and fines is a mandatory duty expressly placed upon the judiciary acting through the district courts and their court clerks. *See e.g.* 28 O.S. §§ 151-153; 28 O.S. § 162; 20 O.S. §§ 1313.2-1313.5. The procedural rules implemented by the Court of Criminal Appeals based on the legislative directive of 22 O.S. § 983(D) provide the contours of what is generally necessary to meet due process protections, but

those procedural rules do not define the minimum requirements for due process compliance. Despite Plaintiffs' efforts to distort the cost collection procedures established by the Court of Criminal Appeals, "it is clear a defendant's arrest on an active bench warrant is not tantamount to incarceration of the indigent without a court finding that their failure to pay costs, fines, and fees was willful. To the contrary, it is nothing more than a means by which the court may compel recalcitrant offenders like Plaintiffs to appear and participate in the cost review process when they have voluntarily chosen not to do so." *Graff, supra.*

Each Plaintiff was given notice of the installment amount and due date, as well as court dates for appearance at the cost dockets. It was Plaintiffs' own actions, generally missing court dates, but also missing payments and failing to contact the court, which prompted the court to issue bench warrants for non-compliance/failure to appear. Bench warrants are part of the courts authority to bring persons before it and seek an explanation for non-compliance. To the extent that Plaintiffs base their claims on the court's decision regarding the bond on the face of a warrant or after appearance following arrest, Plaintiffs' are challenging an individual decision by a judge on an issue not before this Court and for which an appeal process already exists. Plaintiffs have not, and cannot, establish any due process violations on these fact. Plaintiffs' Motion for Partial Summary Judgment should be denied.

## PROPOSITION II: PLAINTIFFS CANNOT ESTABLISH A RIGHT TO RELIEF FOR ANY VIOLATIONS OF RULE 8

Defendant State Judges continue to assert that the Oklahoma Court of Criminal Appeals Rules do not confer a separate, independent cause of action. Rather than repeat

31

that proposition, undersigned will direct the court to Defendant State Judges' Motion for Summary Judgment Proposition VI(B).

### A. *Plaintiff Carter's claims for relief under Rule 8.1 should be denied*

As noted above, the Oklahoma Legislature directed the Court of Criminal Appeals to "implement procedures and rules for methods of establishing payment plans of fines, costs, fees, and assessments by indigents, which procedures and rules shall be distributed to all district courts and municipal courts by the Administrative Office of the Courts". 22 O.S. § 983(D). The Court of Criminal Appeals promulgated Rule 8 for this purpose, to govern the collection of collecting these funds. Collection by the district courts is mandated by the Oklahoma Supreme Court. *See e.g.* 28 O.S. §§ 151-153; 28 O.S. § 162; 20 O.S. §§ 1313.2-1313.5.

Rule 8.1 Judicial Hearings states:

> When the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs. See Section 983(D) of Title 22.

22 O.S. Ch. 18 Appx. Rule 8.1. Plaintiff Carter[1] was incarcerated at both the original sentencing on the youthful offender charge and the sentencing upon the stipulation to the Motion to Revoke. *DeRonde v State*, 1986 OK CR 29, 715 P.2d 84, 87 ("ability to pay

---

[1] Any claim based on acts at the time of sentencing is time barred by the statute of limitations. Plaintiff Carter was sentenced on a YO charge in 2011, entered her first installment plan in 2013, and then stipulated to revocation, including plea to reaffirm prior assessed costs, fines, and fees in 2016. [Doc. 102-16]. In the interest of judicial economy, Defendant State Judges will not repeat this argument raised in their Motion for Summary Judgment. [Doc. 102]. But those arguments, including the statute of limitations argument, show why Plaintiffs' motion for summary judgment must be denied.

court costs, in a criminal action, is properly determined after his release from incarceration." (*citing Jones v. State*, 682 P.2d 757 (Okl.Cr.1984)). *See also*, *Dyer v. State*, 1991 OK CR 89, 815 P.3d 689, 691 (as long as the imposition of fines, fees, costs are within statutory bounds, the ability to pay inquiry is proper when monies become due. "While the appellant may presently be an indigent, this Court has no way of knowing his financial statuts at the time the fines are due to be paid.")   Therefore, no hearing on ability to pay under Rule 8.1 was required at the time of either sentencing. Further, Rule 8.1 only requires the court to inquire as to whether a defendant can *immediately satisfy* the fines and costs. The agreement to an installment plan is acknowledgement that the fines and costs cannot be satisfied in one immediate payment.

Plaintiff Carter had multiple opportunities to appeal the financial terms of her sentences. She did not, and has not done so. Imposition of costs, fines and fees can and should be challenged through direct appeal or upon the order of the installment payment plan. Carter has never challenged her sentences nor the payment orders through the proper channels. There is no dispute that Plaintiff Carter could not immediately satisfy the financial terms of her sentence, either upon initial sentencing in 2011, upon release from juvenile custody, or upon revocation in 2016. A Rule 8.1 hearing was not required at the time of either sentencing, as no payments were yet due. After appearing before the court upon release from custody, Plaintiff Carter entered multiple installment plans and has never appealed those orders, nor filed a Rule 8 Motion to seek an in depth review of her circumstances. Plaintiff Carter has not shown that her rights under Rule 8.1 have been violated.

**B. *Plaintiffs' claims under Rule 8.5 should be denied***

Rule 8.5 Inability to Pay Installments Because of Physical Disability or Poverty states:

> In the event the defendant, because of physical disability or poverty, is unable to pay fine and/or costs either immediately or in installment payments, he/she must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change of condition has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs.

22 O.S. Ch. 18 Appx. Rule 8.5

Contrary to the Plaintiffs' assertions in their Motion, rulings under Rule 8.5 are discretionary. The plain language of the Rule allows a court to either waive all or some portion of the outstanding balance, but also allows a court to suspend payments and require the defendant to return to determine if a change in conditions will allow for further payment to be made. Plaintiffs may believe that because of their poverty their outstanding financial obligations should have been relieved, but the rule on its face allows for a court to require the defendant to report back for a reassessment of a defendant's circumstances. Plaintiff Feenstra received a reduction in the monthly payment amount at the hearing on May 12, 2017, which she uses to support her claim that her rights were violated under Rule 8.5. *See* Court Minute of May 12, 2017 reflected in the docket sheet. [Doc. 102-1]. Plaintiff Feenstra received relief under Rule 8.5 in the form of suspended payment on May 22, 2020, after appearing before Judge Thomas and seeking relief. *See* Court Minute of May 22, 2020 reflected in the docket sheet. [Doc. 102-1]. To the extent Plaintiffs are challenging the discretionary decisions made regarding whether they qualified for relief under Rule 8.5, and if so, what sort of relief, that challenge is improper in a civil action and should be taken up through an appeal of the installment order or a writ to the Oklahoma Court of Criminal

34

Appeals. Similarly, according Plaintiff Carter, she appeared before Judge DeLapp in 2014 and before Judge Sigler in 2018, and was denied relief. Judge DeLapp required Plaintiff Carter to pay the bond on the outstanding warrant. Judge Sigler required a reduced payment toward satisfaction of her costs and fees after a period of non-payment. Judge Sigler then required a new installment plan. Rather than seek a lower monthly payment, Plaintiff Carter again agreed to a $75 monthly payment. Oklahoma does not have a set standard for "poverty" in criminal law context. It is within a judge's discretion to determine whether a defendant is entitled to some relief under Rule 8.5. The proper mechanism to challenge those decisions is to appeal or file a writ to the Court of Criminal Appeals. Neither Plaintiff sought such relief. [Doc. 102-1] [Doc. 102-16].

### C. Plaintiffs' claims under Rule 8.4 should be denied

Rule 8.4 Failure to Make Installment Payments When Due states:

> If the defendant fails to make an installment payment when due, he/she must be given an opportunity to be heard as to the refusal or neglect to pay the installment when due. If no satisfactory explanation is given at the hearing on failure to pay, the defendant may then be incarcerated. If a defendant has the ability to pay but due to exigent circumstances or misfortune fails to make payment of a particular installment when due, he/she may be given further opportunity to satisfy the fine and/or costs, at the discretion of the court, to be governed by the facts and circumstances of each particular case.

As noted above, neither Plaintiff was ever subject to a final order of detention nor incarcerated for willful failure to pay their costs, fines, and fees. The facts Plaintiffs rely on to support their claims under Rule 8.4 describe instances in which warrants were issued for failure to comply with the court's orders to appear and make installment payments. Defendant State Judges did not and do not have a policy or practice to remand defendants for failure to pay. Plaintiffs do not claim that Defendants Thomas or Vaclaw follow such a

35

policy or practice. Furthermore, Judge Sigler never had a "practice" of jailing defendants for not paying their fines and costs. Judge Sigler testified that the number of people he ever jailed for not paying fines and costs was "very few," and that he has not done this since 2017 or 2018. Sigler Dep. at 29:23 - 30:3; 30:8-10 [Doc. 103-2]. To the extent that either Plaintiffs were subject to arrest and detention pursuant to a bench warrant for failing to comply with the obligations under the installment plans, such detention is not the conversion of outstanding financial obligations to a jail sentence, and is not violative of Rule 8.4. Plaintiffs have not shown that they are entitled to judgment for claims under Rule 8.4. Summary judgment should be denied.

## CONCLUSION

Defendant State Judges respectfully request that pursuant to Fed. R. Civ. P. 56, this Court deny summary judgment to Plaintiffs.

Respectfully submitted,

  s/ Devan A. Pederson
**STEFANIE E. LAWSON, OBA #22422**
**DEVAN A. PEDERSON, OBA #16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:    (405) 521-3921
Facsimile:    (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
            devan.pederson@oag.ok.gov
*Attorneys for Defendant State Judges*

36

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2021, a true and correct copy of the foregoing instrument was sent via e-mail to the following:

J. Spencer Bryan
Steven J. Terrill
Bryan & Terrill Law, PLLC
3015 E. Skelly Dr., Ste. 400
Tulsa, OK 74105
sjterrill@bryanterrill.com
(918) 935-2777
*Attorneys for Plaintiffs*

Michael Lacovara
Lilia Vazova
Latham & Watkins, LLP
885 Third Avenue
New York, NY 10022
Michael.Lacovara@lw.com
Lilia.Vazova@lw.com
(212) 906-1200
*Attorneys for Plaintiffs*

Arthur Ago
John Fowler
Lawyers Committee for
Civil Rights Under Law
1500 K Street NW, Ste 900
Washington D.C., 20005
lwatson@lawyerscommittee.org
mbraden@lawyerscommittee.org
(202) 662-8340
*Attorneys for Plaintiffs*

Jon Williford
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
John.williford@oag.ok.gov
(405) 521-3921
*Attorney for Defendants OIDS and Sutter*

 s/ Devan A. Pederson
**Devan A. Pederson**