## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

AMANDA FEENSTRA and
SHARONICA CARTER,

                    Plaintiffs,

v.

JARED SIGLER, *et al.*,

                    Defendants.

No. 19-cv-00234- JFH-CDL

**PLAINTIFFS' REPLY TO THE JUDICIAL DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago*
John Fowler*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara*
Lilia Vazova*
LATHAM & WATKINS
LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1200
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*

* = admitted pro hac vice

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

UNDISPUTED MATERIAL FACTS ...............................................................................2

ARGUMENT ....................................................................................................................5

     I.       PLAINTIFFS HAVE ESTABLISHED A RIGHT TO RELIEF. ...........................5

           A.     Plaintiffs Were Incarcerated For Failure To Pay Fines, Fees, and Costs They Could Not Afford To Pay. ........................................................5

           B.     Plaintiffs Were Denied an Inquiry into Their Ability To Pay at Sentencing or at Any Point Thereafter. .........................................................7

     II.      THIS COURT CAN PROVIDE THE REQUESTED RELIEF. ..........................10

           A.     *Heck v. Humphrey* Does Not Bar Plaintiffs' Claims. ...............................10

           B.     Plaintiffs Continue To Suffer the Impact of the Judicial Defendants' Violations. .............................................................................11

CONCLUSION................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bearden v. Georgia*,
    461 U.S. 660 (1983)....................................................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................................................5

*The Cherokee Nation W. v. U.S. Army Corps of Eng'rs*,
    No. 14-CV-612-JED-TLW, 2016 WL 4548441 (N.D. Okla. Aug. 31, 2016)........................13

*Comm. for First Amend. v. Campbell*,
    962 F.2d 1517 (10th Cir. 1992) ...................................................................................5

*Gagnon v. Scarpelli*,
    411 U.S. 778 (1973)....................................................................................................9

*Graff v. Aberdeen Enterprizes, II, Inc.*,
    No. 17-cv-606-TCK-JFJ, 2021 WL 951017 (N.D. Okla. Mar. 12, 2021) ...............................10

*Heck v. Humphrey*,
    512 U.S. 477 (1994)............................................................................................10, 11

*State v. Claborn*,
    870 P.2d 169 (Crim. App. 1994)...............................................................................11

*Turner v. Rodgers*,
    564 U.S. 431 (2011)....................................................................................................9

### STATUTES

42 U.S.C. § 1983 ...............................................................................................................7

Okla. Stat. Ann. tit. 22, § 983b(B) ..........................................................................4, 8, 12

### RULES

Okla. Stat. Ann. tit. 22, ch. 18 app. § VIII, Rule 8 (West 2021) .......................2, 3, 7, 12

Okla. Stat. Ann. tit. 22, ch. 18 app. § VIII, Rule 8.1 (West 2021) .................7, 8, 10, 12

Okla. Stat. Ann. tit. 22, ch. 18 app. § VIII, Rule 8.4 (West 2021) .............................5, 7

Okla. Stat. Ann. tit. 22, ch. 18 app. § VIII, Rule 8.5 (West 2021) .................7, 9, 10, 12

Okla. Stat. Ann. tit. 22, ch. 18 app. § VIII, Rule 8.7 (West 2021) ................................................12

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. XIV ................................................................................................................9

Pursuant to the Court's Minute Order dated March 9, 2021 (Dkt. No. 107), Plaintiffs Amanda Feenstra and Sharonica Carter, by and through their undersigned counsel, respectfully submit this reply to Defendants Linda Thomas', Russell Vaclaw's, and Jared Sigler's (together, the "Judicial Defendants") Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support (Dkt. No. 112) ("Response").

## PRELIMINARY STATEMENT

In their Response, the Judicial Defendants urge this Court to turn a blind eye to both the past and the current practices of the District Court. The Judicial Defendants advance two core propositions in opposing Plaintiffs' request for summary judgment: (1) that this Court should assume, against the overwhelming weight of the record, that Judge DeLapp and Judge Sigler provided Ms. Carter and Mrs. Feenstra with notice and opportunity to be heard, inquired into their ability to pay, and did not put them in jail for failure to pay; and (2) that this Court should refrain from providing any relief, and instead leave the enforcement of Plaintiffs' statutory and constitutional rights to the District Court's unguided discretion. Neither stands up to scrutiny. The record (most of which the Judicial Defendants studiously ignore) is that both Judge Sigler and Judge DeLapp consistently failed to ask even the most basic questions about Plaintiffs' ability to pay; deliberately ignored their indigence when Plaintiffs raised it; and incarcerated Plaintiffs for failing to pay amounts they could not afford. As important, the record is equally clear that the limited discretionary changes implemented by the District Court in the wake of this litigation remain deficient; the Judicial Defendants still do not meet their constitutional and statutory obligations, and, absent judicial intervention here, Plaintiffs have no means to ensure that the Judicial Defendants will ever meet those obligations.

1

## UNDISPUTED MATERIAL FACTS

The Judicial Defendants do not meaningfully dispute any of the core facts underlying Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 104). They do not dispute that former Judge Curtis DeLapp's policy and practice was *not* to inform criminal defendants of the total of their fines, fees, and costs when he imposed a sentence and *not* to conduct an inquiry into the sentenced individuals' ability pay these fines, fees, and costs, immediately or in installments. Dkt. No. 112 ¶¶ 4, 6, 36, 73. Instead, as the Judicial Defendants admit, Judge DeLapp's "general practice" was to follow his own unilateral "unwritten rule" that individuals must pay a minimum of $75 per month and to avoid lowering the amount assessed against any individual. *Id*. ¶¶ 14, 20, 42, 54. (The Judicial Defendants do not even try to harmonize that "unwritten rule" with the *written* ones embodied in Rule 8.) When individuals inevitably fell behind on their payments, Judge DeLapp's standard practice was to set a bond for the total overdue amount, which could run to thousands of dollars; if they could not pay that amount immediately, he put them in jail. *Id*. ¶¶ 21-22. The Judicial Defendants also admit that, consistent with that general practice, Judge DeLapp conducted no inquiry into Mrs. Feenstra's or Ms. Carter's ability to pay—either at sentencing or when Ms. Carter appeared before him upon her release from juvenile detention— and never considered waiving or reducing Ms. Carter's or Mrs. Feenstra's fines, fees, and costs. *Id*. ¶¶ 37, 39-41, 43, 55-56, 74, 78. They also admit that when Ms. Carter appeared before Judge DeLapp for cost docket proceedings and specifically told him (again, he never asked) that she could not afford to pay the ordered amounts, his responses ranged from "[w]ell that's tough," "[p]ack your toothbrush," and "Bailiff, take her." *Id*. ¶¶ 46-49, 56.

The Judicial Defendants also do not meaningfully dispute that court debtors, including Ms. Carter and Mrs. Feenstra, have fared no better under Judge DeLapp's successor, Special Judge Jared Sigler. The Judicial Defendants admit that Judge Sigler does not have a consistent list of

questions to examine ability to pay fines, fees, and costs during cost docket proceedings. *Id.* ¶¶ 28, 114, 119. They also admit that Judge Sigler does not inquire whether the individual was previously represented by court-appointed counsel, and that he does not consistently know whether the individual is employed, has a disability, has dependents, or has court debts in other jurisdictions in Oklahoma. *Id.* ¶ 121. The Judicial Defendants' sole attempt to address these undisputed (albeit uncomfortable) facts is to claim that, instead of a systematic, consistent inquiry into criminal defendants' ability to pay, Judge Sigler "engages in a conversation with the defendants to determine their circumstances and their requests, if any." *Id.* ¶¶ 28, 114, 119. That statement comes after his deposition, without the scrutiny of cross examination, and is not consistent with the testimony he gave under oath and when subject to cross examination. *Id.*; Dkt. No. 103-2 at 15:24-16:11, 16:16-18:7, 18:20-20:13.

The Judicial Defendants also attempt to explain away the (undisputed) language in Washington County's Rule 8 form providing that individuals may be remanded to jail for failure to pay fines, fees, and costs by claiming the form "was used in error" and "[d]espite its verbiage," Judge Sigler "never *used the form* to incarcerate anyone for 'failure to pay.'" Dkt. No. 112 ¶¶ 30, 91 (emphasis added). At the same time, they admit that Judge Sigler *has* remanded individuals to jail when they were behind on their monthly payments and unable to pay an arrearage on the spot. *Id.* ¶ 29. The Judicial Defendants also admit that on or around May 9, 2018, Mrs. Feenstra was taken into custody outside of Judge Sigler's chambers (ostensibly for failure to appear for a cost docket proceeding she had inadvertently missed) and that the next day, after she spent the night in jail because she could not afford a bond, Judge Sigler informed her that she was not current on her payments, gave her the option to either "sit it out or . . . bond out," and told her it "wasn't his problem" that Mrs. Feenstra could not make the payment he demanded. *Id.* ¶ 97. That day, he

ordered her remanded, to stay at the jail until the bond was paid (*id*.)—*another* detention order issued in violation of the Constitution.

The Judicial Defendants' only real response to these undisputed facts is "we don't do that anymore." The Judicial Defendants rely entirely on discretionary changes implemented by the current Washington County Chief Judge, Linda Thomas, in the wake of this litigation (*id*. ¶¶ 24, 29-30, 112), and claim that Judge Thomas "has no intention of returning the Washington County District Court to the practices of former Judge DeLapp with respect to fines, fees, and costs." *Id*. ¶ 29. At the same time, the Judicial Defendants admit any such changes are discretionary, that there is no written policy, procedure, or administrative order prohibiting the District Court's judicial officers from incarcerating individuals for failure to pay, and that at any time, Judge Thomas (or her successor) can return to the policies and practices described above. *Id*. ¶ 122. The Judicial Defendants also admit that salient features of the DeLapp regime remain unchanged: neither judges nor criminal defendants know at sentencing the total fines, fees, and costs that will be imposed (Dkt. No. 112 ¶ 113); the calculation of that total is put in the hands of administrative clerks who do not and cannot inquire into ability to pay (*id*. ¶¶ 113, 117); that total is later endorsed by the judge outside the presence of individuals and their counsel (*id*. ¶ 116); and there is no consistent practice and no requirement for judges to inquire about the existence of disabilities, child support obligations, education, income, court debts from other counties, food stamp eligibility, or other indicia of poverty *(id*. ¶ 114). And while Judge Thomas now states that the District Court will incarcerate individuals only "in compliance with Oklahoma law" (Dkt. No. 112-44 ¶ 7), both she and Judge Sigler admit that they do *not* comply with the judicial ability-to-pay inquiry required by Okla. Stat. Ann. tit. 22, § 983b(B), including questions on court debt and child support obligations. *See* Dkt. No. 103-2 at 38:2-40:1; Dkt. No. 103-4 at 69:1-13, 71:8-24,

72:13-73:1.  As the Judicial Defendants admit, there *still* is no practice to lower the total amount of fines, fees, and costs a defendant owes at sentencing due to indigence or disability.  Dkt. No. 112 ¶ 115.[1]

## ARGUMENT

### I.   PLAINTIFFS HAVE ESTABLISHED A RIGHT TO RELIEF.

**A.   <u>Plaintiffs Were Incarcerated For Failure To Pay Fines, Fees, and Costs They Could Not Afford To Pay.</u>**

The Judicial Defendants do not dispute that Plaintiffs were repeatedly incarcerated by Judges Sigler and DeLapp.  *See* Dkt. No. 112 at 25-36.  Instead, the Judicial Defendants suggest that those incarcerations do not amount to constitutional violations or violations of Rule 8.4 of the Oklahoma Court of Criminal Appeals because Plaintiffs were actually arrested for failure to appear, not for failure to pay.  *Id.* at 25-31, 35-36.  The Judicial Defendants' argument ignores the undisputed facts of Plaintiffs' incarcerations.

With respect to Ms. Carter, the Judicial Defendants do not dispute that in January 2014, Judge DeLapp ordered the bailiff to "take her" to jail after Ms. Carter pleaded that she could not pay the outstanding $150 in minimum payments, pursuant to an order entitled "Order Remanding Defendant for Failure to Pay Fines and Costs."  Dkt. No. 103-3 at 33:3-24, 35:8-36:6; Dkt. 103-13.  Instead, the Judicial Defendants seek to confuse the facts by conflating Ms. Carter's January 2014 incarceration with a different arrest warrant dated a month later, which the Judicial Defendants claim was issued for failure to appear, not failure to pay.  (Even that assertion is

---

[1] In response to the Judicial Defendants' objections to Dkt. No. 104 ¶¶ 44-45, 63, Plaintiffs will establish these facts at trial through admissible evidence such that they are undisputed.  *See Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1526 (10th Cir. 1992) ("In opposing a motion for summary judgment, the nonmovant must make a showing that, '*if reduced to admissible evidence*,' would be sufficient to carry the nonmovant's burden of proof at trial." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (emphasis added)).

contradicted by the record, as the docket indicates that Ms. Carter was *also* jailed for failure to pay in February 2014.  *See* Dkt. No. 102-16 (02/07/2014 entry).).

Similarly, the Judicial Defendants do not dispute that on May 10, 2018, Judge Sigler ordered Mrs. Feenstra to remain in jail because, according to Judge Sigler, she was not current on her fines, fees, and costs payments, and she was unable to pay the $330 bond he ordered.  *See* Dkt. No. 103-33; Dkt. No. 103-34; Dkt. No. 103-5 at 73:24-74:5, 74:11-19.  That admission is further borne out by Judge Sigler's testimony that he has remanded criminal defendants to jail for failure to pay fines, fees, and costs.  Dkt. No. 103-2 at 29:11-30:11, 79:23-80:5.[2]  Ignoring Mrs. Feenstra's actual stay in jail and interaction with Judge Sigler, the Judicial Defendants claim that a bench warrant issued against her three days earlier, on May 7, 2018, was for failure to appear, not failure to pay.  Again, this is just misdirection:  regardless of the grounds for that *initial* order, the record shows that Mrs. Feenstra sat in jail because she was not "current" on her payments and could not afford to make the payment demanded by the judge.  Dkt. No. 103-5 at 74:11-19; Dkt. No. 103-33; Dkt. No. 103-34.  Judge Sigler's bond order, and denial of Mrs. Feenstra's request for release, was therefore a *second* detention order imposed in violation of the Constitution and Oklahoma law.

Thus, even accepting the Judicial Defendants' (questionable) interpretation that certain arrest warrants against Ms. Carter and Mrs. Feenstra were issued for failure to appear, the undisputed facts remain that Judge DeLapp and Judge Sigler ordered both Plaintiffs to go to, or stay in, jail because they could not pay the amounts ordered by the court, and despite their pleas

---

[2] That testimony, together with Judge DeLapp's admission that he ordered defendants to jail for failure to pay, Dkt. No. 103-1 at 78:4-10, 78:22-79:5, 201:22-202:23, contradicts the Judicial Defendants' argument that neither judge had a "policy" or "practice" of jailing defendants for not paying their fines, fees, and costs.  Dkt. No. 112 at 35-36.

that they could not afford to make those payments.  Dkt. No. 103-3 at 33:3-24, 35:8-36:6; Dkt. 103-13; Dkt. No. 103-5 at 74:11-19; Dkt. No. 103-33; Dkt. No. 103-34.  Judge DeLapp and Judge Sigler's actions—which the Judicial Defendants do not dispute were carried out in their official capacity—violated Plaintiffs' constitutional and statutory rights.  Summary judgment is therefore appropriate on Plaintiffs' Section 1983 claims (Counts 2 and 3), claim under the Oklahoma Constitution (Count 5), and Rule 8.4 claim (Count 7).

### B. Plaintiffs Were Denied an Inquiry into Their Ability To Pay at Sentencing or at Any Point Thereafter.

The Judicial Defendants also ask this Court to infer, against the overwhelming evidence on the record, that Judges Curtis and DeLapp actually *did* inquire into Plaintiffs' ability to pay when they denied Plaintiffs relief under Rule 8.1 (at the time of sentencing) and Rule 8.5 (at any point thereafter).  The Judicial Defendants further urge the Court to ignore any failure to do so on the ground that "rulings under Rule 8.5 are discretionary" (Dkt. No. 112 at 34)—a reading that not only flies in the face of the mandatory provisions of the Rule, but also highlights the inadequacy of any court practice which (like the District Court's current practice) leaves the enforcement of constitutional and statutory rights to individual judges' discretion.

The Judicial Defendants do not dispute that Ms. Carter was never provided a judicial hearing to determine her ability to pay—either following her release from prison or at any point before or after.  *See* Dkt. No. 103-1 at 134:4-17; Dkt. No. 103-22 at 5 (10/31/13 minute entry).  Instead, the Judicial Defendants argue that Judge DeLapp's order of an installment plan represented some sort of implicit  means of "relief" and thus complied with Rule 8.  Dkt. 112 at 33 ("The agreement to an installment plan is acknowledgement that the fines and costs cannot be satisfied in one immediate payment.").  The undisputed facts are to the contrary.  As the Judicial Defendants admit, Judge DeLapp set Ms. Carter's installment plan at a pre-set amount of $75 per

month based on his own "unwritten rule" and untethered to a single question about Ms. Carter's ability to pay that amount.  Dkt. No. 103-2 at 53:9-15, 53:18-54:9; Dkt. No. 103-1 at 132:6-22, 134:18-23; Dkt. No. 103-18.  Ms. Carter did not "agree[] to" a $75 monthly payment plan.  Dkt. No. 112 at 35.  She unequivocally told Judge Sigler that she was unable to make her $75 payment because she had no money; in response, he told her she had to pay $50 by 3:00 p.m. that afternoon or go to jail.  Dkt. No. 103-3 at 36:15-24; *id.*, 38:6-10, 61:16-19, 77:15-18, 78:16-79:4, 114:8-115:17.

And even if Ms. Carter had not raised her indigence, pursuant to the plain language of Rule 8.1 ("a judicial hearing *shall* be conducted and judicial determination made") and Okla. Stat. Ann. tit. 22, § 983b(B), Judge DeLapp was *required* to ascertain Ms. Carter's ability to pay.  Okla. Stat. Ann. tit. 22, § 983b(B), which was passed in 2016, a year before Ms. Carter's release, expressly required that "[i]n determining the ability of the person [released from Department of Corrections custody] to satisfy fines, fees, costs or assessments owed to a district or municipal court, the court *shall inquire of the person at the time of the hearing* which counties and municipalities the person owes fines, fees, costs or assessments in every felony or misdemeanor criminal case filed against the person and shall consider all court-ordered debt, including restitution and child support, in determining the ability of the person to pay."  Okla. Stat. Ann. tit. 22, § 983b(B) (emphasis added); Dkt. No. 103-18.  The Judicial Defendants also resort to suggesting that "Oklahoma does not have a set standard for 'poverty' in criminal law context [sic]" (Dkt. No. 112 at 35) and that "neither the U.S. Constitution nor state law require [sic] judges to ask an inflexible set of ability-to-pay questions," (Dkt. No. 114 at 3), but Oklahoma law in fact *mandates* a specific set of questions to be asked of individuals related to ability to pay.  The Judicial Defendants have *never* asked Ms. Carter the questions required under the statute and have admitted they do not ask the statutorily

required questions as a matter of course.  *See, e.g.*, Dkt. No. 103-2 at 38:2-40:1.  Thus, Judicial

Defendants' argument that "Judge Thomas has corrected any problems with fines, fees, and costs

issues in Washington County" (Dkt. No. 112 at 29) is wrong.  Rather, testimonial admissions from

the Judicial Defendants show that violations of the Constitution and Oklahoma law remain

ongoing.[3]

The Judicial Defendants also do not dispute that Mrs. Feenstra could not afford her

minimum installment payments when she appeared before Judge Sigler at the cost docket

proceeding in May 2017.  Dkt. No. 103-5 at 52:12-53:2, 54:13-55:8, 56:20-57:4.  Though Judge

Sigler reduced Mrs. Feenstra's monthly payments from $50 to $40 per month, the uncontroverted

evidence reflects that Mrs. Feenstra was *still* not able to make this monthly payment, and that, like

Ms. Carter, she proactively raised her financial hardship with Judge Sigler.  *See* Dkt. No. 103-35

at 3 (5/12/17 minute entry); Dkt. No. 103-36 at 3 (5/12/17 minute entry); Dkt. No. 103-5 at 52:12-

53:2, 56:20-57:4.  And just like with Ms. Carter, Judge Sigler dismissed her concerns as well—in

violation of Rule 8.5—stating that if she "couldn't pay it, then [she] would go to jail."  Dkt. No.

103-5 at 54:13-55:8.

---

[3] The suggestion that Judge Thomas "has corrected any problems with fines, fees, and costs issues in Washington County" also ignores that the District Court has never appointed, and has no plans to appoint, state-funded attorneys for indigent defendants' cost docket proceedings when the District Court is considering incarceration for failure to pay.  Individuals at those hearings have a Fourteenth Amendment right to state-funded attorneys when incarceration is a possibility.  *See, e.g.*, *Turner v. Rodgers*, 564 U.S. 431, 446-48 (2011) (Fourteenth Amendment's due process clause may require appointment of counsel at debt collection proceedings); *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) (Fourteenth Amendment's due process clause provides right to court-appointed counsel at probation or parole revocation hearing, if (1) probationer or parolee claims not to have committed the violation or (2) there are "substantial reasons which justified or mitigated the violation," thereby making imposition of incarceration inappropriate).  *See also, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 668–69 (1983).  Judge Thomas states only that individuals facing incarceration have the "right to be represented by counsel" at cost docket proceedings (Dkt. No. 102-44 ¶ 7)—a misunderstanding of the right to be represented by *court-appointed* counsel, particularly when the issue relates to an individual's poverty.

The undisputed evidence reflects that neither Judge DeLapp nor Judge Sigler was somehow confused or unaware of Plaintiffs' financial hardship.  Neither tried to afford appropriate relief.  Instead, both knowingly and deliberately derogated from their obligations.  It was incumbent on them to inquire into Plaintiffs' ability to pay and to relieve Plaintiffs of the obligation to make payments they could not afford.  Neither judge did.  Instead, with full knowledge of Plaintiffs' inability to pay, both judges proceeded to threaten and incarcerate Plaintiffs.  Summary judgment is therefore appropriate on Plaintiffs' Rule 8.1 and Rule 8.5 claims (Counts 1 and 6).[4]

## II.     THIS COURT CAN PROVIDE THE REQUESTED RELIEF.

Having failed to meaningfully challenge their constitutional and statutory violations, the Judicial Defendants dedicate the majority of their Response to urging this Court to stay out of it.  The Judicial Defendants principally rely on two arguments:  (1) that the Court should abstain from any involvement in this matter; and (2) that Plaintiffs' claims have been mooted by recent discretionary measures taken by the District Court.  Neither argument has merit.

### A.     *Heck v. Humphrey* Does Not Bar Plaintiffs' Claims.

The Judicial Defendants' Response relies heavily on principles of abstention under *Heck v. Humphrey*, 512 U.S. 477 (1994).  Plaintiffs' reliance on *Heck v. Humphrey* and other cases that invoke *Heck*, including *Graff v. Aberdeen Enterprizes, II, Inc.*, No. 17-cv-606-TCK-JFJ, 2021 WL 951017 (N.D. Okla. Mar. 12, 2021), is misplaced.  These cases establish merely that parties cannot re-litigate their state-court sentences through a subsequent federal court action.  *Heck* makes clear, however, that "if the district court determines that the plaintiff's action, even if successful, will *not*

---

[4] As discussed more fully at Dkt. No. 104 n.3, Plaintiffs are entitled to an evidentiary presumption in their favor (or other sanction) on the practices of the District Court at cost docket proceedings.  In their Response, the Judicial Defendants do not address, let alone deny, what amounts to knowing, durable, and systemic spoliation and/or failure to create required records.  The Court should therefore apply the evidentiary presumption in Plaintiffs' favor.

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." 512 U.S. at 487 (emphasis in original). As this Court found already, Plaintiffs seek only to challenge the procedure for the imposition of fines, fees, and costs, not to re-litigate the District Court's sentences. *See* Dkt. No. 48 at 13-14 (citing a string of cases and rejecting argument under *Heck*); *see also State v. Claborn*, 870 P.2d 169, 174 (Crim. App. 1994) ("[T]he statutory assessments at issue in this case *are not 'fines' to be imposed as part of punishment*.") (emphasis added) (cited by the Judicial Defendants, Dkt. No. 112 at 2). Moreover, unlike the plaintiffs in *Graff*, Plaintiffs initiated this case in the state court; it was the *Judicial Defendants*, not Plaintiffs, who removed the litigation to the federal courts. Dkt. No. 3. Having deliberately brought this case to this Court, the Judicial Defendants cannot now argue that, to obtain their requested relief, Plaintiffs should have gone elsewhere.

## B.   **Plaintiffs Continue To Suffer the Impact of the Judicial Defendants' Violations.**

The Judicial Defendants next make a series of arguments that all rest on the notion that this Court cannot provide further relief to Plaintiffs because their injuries are purely retrospective. Dkt. No. 112 at 26-29. That argument ignores both Plaintiffs' claims and their requested relief. Ms. Carter continues to toil under the direct financial hardship that flows from the Judicial Defendants' initial wrongful imposition of court debts on Ms. Carter (and repeated failures to relieve Ms. Carter of these debts when she appeared before them), despite uncontroverted evidence that those sums were imposed in violation of Ms. Carter's constitutional rights. *See* Dkt. No. 103-1 at 129:8-25, 130:1-10, 130:17-25, 131:6-9, 132:6-22, 133:20-134:23, 136:5-24; Dkt. No. 103-3 at 33:3-24, 35:8-18. Both Plaintiffs also continue to suffer ongoing harm from the presence of public records documenting their past arrests and warrants for failure to pay that were void *ab initio*. Dkt. No.

103-3 at 21:7-22, 22:5-23:9, 58:8-59:18, 117:12-118:12.  Plaintiffs seek relief (including vacatur) to remedy that ongoing harm.

The recent changes to the District Court practices are both inadequate to ensure compliance with the Constitution and Oklahoma law and are subject to modification and withdrawal at any point.  The deficient, voluntary (and perhaps ephemeral) changes do not eliminate this harm and render Plaintiffs' case moot.  Indeed, Judge Thomas' own affidavit (which, of course, Plaintiffs have had no opportunity to test) admits that the changes are not binding and can be modified or withdrawn on nothing more than Judge Thomas' say-so:  Judge Thomas carefully attests only that she "do[es] not *intend* to return to any prior fines, fees, or costs practices . . . that are inconsistent with" the present practices, thus necessarily conceding that she can also reinstate the old practices at any time.  Dkt. No. 102-44 ¶ 8.  But even her discretionary changes remain deficient.  The *only* potential vehicle by which an individual *might* receive an ability-to-pay hearing is the "Rule 8 docket" over which Judge Sigler now presides.  Dkt. No. 103-2 at 35:4-16, 35:18-24, 36:8-12. However, an individual must request a Rule 8 hearing to obtain one—a burden that violates the explicit mandate of Rules 8.1 and 8.5.  *Id.*, 37:9-17; Okla. Stat. tit. 22, ch. 18, R. 8.1; Okla. Stat. tit. 22, ch. 18, R. 8.5.  And even if the "new" Rule 8 hearings *could* in theory be part of a remedy for prior wrongs, the record proves that those hearings are not that remedy *in fact*.  As the Judicial Defendants admit, at Rule 8 hearings, Judge Sigler does not consistently know or ask whether the individual is employed, has a disability, has dependents, or has court debts in other jurisdictions in Oklahoma—the most basic of questions required to ascertain ability to pay, some of which are required by statute.  Dkt. No. 103-2 at 38:2-40:1; Okla. Stat. Ann. tit. 22, § 983b(B).

It is, therefore, far from "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" and that "interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation." *The Cherokee Nation W. v. U.S. Army Corps of Eng'rs*, No. 14-CV-612-JED-TLW, 2016 WL 4548441, at *2-3 (N.D. Okla. Aug. 31, 2016) (finding plaintiffs' case has not been rendered moot by intervening changes).   Rather, the undisputed facts are to the contrary, Dkt. No. 112 ¶¶ 111, 113-18, 122, and this Court should order Plaintiffs' requested relief to remedy the District Court's constitutional and statutory violations.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Plaintiffs' motion for partial summary judgment.

Dated:  April 19, 2021

By: */s Michael Lacovara*
Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago (admitted pro hac vice)
John Fowler (admitted pro hac vice)
Lawyers' Committee for
Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org
JFowler@lawyerscommittee.org

Michael Lacovara (admitted pro hac vice)
Lilia Vazova (admitted pro hac vice)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T: (212) 906-1200
F: (212) 751-4864
michael.lacovara@lw.com
lilia.vazova@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*