UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA FEENSTRA and SHARONICA CARTER,<br><br>  Plaintiffs,<br><br>v.<br><br>JARED SIGLER, *et al.*,<br><br>  Defendants. | No. 19-cv-00234- JAR-CDL<br><br>**PLAINTIFFS' OPPOSITION TO JUDICIAL DEFENDANTS' SUPPLEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
2500 S. Broadway
Suite 122
Edmond, OK 73013
T/F: (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
T: (202) 662-8600
F: (202) 783-0857
AAgo@lawyerscommittee.org

Lilia Vazova*
Matthew Salerno**
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020-4864
T: (212) 906-1200
F: (212) 751-4864
lilia.vazova@lw.com
matthew.salerno@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*

\* = *admitted pro hac vice*

\*\* = *pro hac vice forthcoming*

Plaintiffs Amanda Feenstra and Sharonica Carter, by and through their undersigned counsel, respectfully submit this Opposition to Defendants Linda Thomas, Russell Vaclaw, and Jared Sigler's (together, the "Defendants") Supplement in Support of Their Motion for Summary Judgment (Dkt. No. 146) (the "Motion").[1]

## PRELIMINARY STATEMENT

Neither Defendants' initial summary judgment motion nor their current Motion denies the core undisputed facts that give rise to this litigation: Plaintiffs were unlawfully ordered to pay fines, fees, and costs they could not afford; they were repeatedly haled into court to answer for their failure to pay those amounts; and they were incarcerated as a result. Instead, Defendants asserted in their initial summary judgment motion that Plaintiffs' claims were moot because the Washington County District Court had voluntarily introduced a set of limited corrective measures after the commencement of this case. In the current Motion, Defendants again insist that this case is moot because a recently passed statutory amendment—scheduled to go into effect four months from now—"largely codif[ies]" these corrective measures. Defendants' arguments fail now as they did two years ago. The amendment, even when it becomes effective, does not undo Defendants' constitutional and statutory violations, eradicate the effects of those violations on Plaintiffs, or ensure that such violations will not recur. Defendants fail to carry the heavy burden of showing that Plaintiffs no longer maintain an interest in obtaining injunctive and declaratory relief, as well as vacatur of the public records of the charges, arrest warrants, and incarcerations resulting from their inability to pay the unlawfully imposed amounts. Defendants' motion for summary judgment should be denied.

---

[1] Unless otherwise indicated, internal citations and quotation marks are omitted and emphasis is added. All capitalized terms not defined herein are used as defined in Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 104).

1

**BACKGROUND**

The core facts in this case are uncontested. There is no genuine dispute that until this litigation, the Washington County District Court carried out a policy and practice of failing to inquire into an individual's ability to pay judicially imposed fines, fees, and costs. Sentencing judges—who did not disclose or even know the total payment obligations imposed on a criminal defendant—did not make such an inquiry at sentencing. Dkt. No. 103-1, DeLapp Dep. 47:16-22, 47:23-48:1, 76:25-77:3. Nor was such an inquiry conducted thereafter, when indigent individuals ordered to pay amounts they could not afford inevitably missed payments and faced incarceration as a result. *Id.* 85:4-86:2, 86:23-87:1, 183:23-184:13, 141:22-142:5; Dkt. 103-2, Sigler Dep. 15:3-9; 15:24-16:11. Instead, individuals were summoned to a "cost docket" where they were remanded to jail if they could not make a payment. Dkt. 103-1, DeLapp Dep. 78:4-10, 78:22-79:5, 201:22-202:23; Dkt. No. 103-2, Sigler Dep. 29:11-30:11, 79:23-80:5.

There is also no dispute that Plaintiffs Sharonica Carter and Amanda Feenstra were both ordered to pay amounts they could not afford without any inquiry into their ability to pay. Neither at sentencing nor at the "cost docket" were they asked about their ability to pay. Dkt. No. 103-1, DeLapp Dep. 160:16-161:2, 207:25-208:9; Dkt. No. 103-2, Sigler Dep. 53:9-15, 53:18-54:9; Dkt. 103-5, Feenstra Dep. 52:17-22, 54:13-55:8. When they attempted to explain their indigency, they were told by two Washington County District Court judges—former Judge DeLapp and sitting Judge Sigler—that they could either make a payment or go to jail. Dkt. No. 103-5, Feenstra Dep. 74:11-19; Dkt. No. 103-3, Carter Dep. 36:15-24, 38:6-10, 61:16-19, 77:15-18, 78:16-79:4, 114:8-115:17. Both Plaintiffs were incarcerated after missing payments they could not afford. Dkt. No. 103-33, 5/10/18 Court Minute (Feenstra); Ex. 34, 5/10/18 Order; Dkt. No. 103-3, Carter Dep. 33:3-34:5, 34:15-21, 35:8-36:6.

Defendants also do not seriously dispute that the foregoing facts constitute violations of

2

Plaintiffs' (1) constitutional rights to receive notice and opportunity to be heard prior to arrest and detention, and to be free from punishment on the basis of poverty, *Williams v. Illinois*, 399 U.S. 235, 243-44 (1970); *Tate v. Short*, 401 U.S. 395, 397-400 (1971); *Turner v. Rogers*, 564 U.S. 431, 447-48 (2011), and (2) statutory rights to a judicial inquiry into their ability to pay and to relief due to poverty or disability, OKLA. STAT. ANN. Tit. 22, ch. 18 app. § VIII, Rule 8 (West 2021).

Instead, Defendants' central defense is that Plaintiffs no longer have standing to bring their claims because they have been "mooted" by events that took place after this litigation started. In their initial motion, Defendants argued that, under new presiding Judge Linda Thomas, Washington County District Court judges no longer treat indigent defendants the way they treated Ms. Carter and Mrs. Feenstra. Dkt. No. 102 ¶¶ 38-39. They also claimed that Plaintiffs' constitutional and statutory rights were protected through a newly-implemented "Rule 8 docket," over which Judge Sigler presided. *Id.* ¶¶ 40-44. As detailed in Plaintiffs' Opposition to Defendants' motion, these revised procedures remained deficient because neither Judge Thomas nor Judge Sigler consistently or regularly inquired about key financial information that determines ability to pay, lowered the amounts owed due to indigence, or informed individuals that they may be eligible for a waiver of those amounts. Dkt. No. 110 at 17-19. Nor was there any administrative order, written policy, or other document requiring that court personnel follow the revised procedures Judge Thomas implemented at her discretion. *Id.* at 20.

In the present Motion, Defendants argue that a new amendment to Oklahoma statute 22 O.S. § 983 ("Section 983"), "which largely governs the procedures for collecting court costs, fines, and fees," "largely codif[i]es" the changes implemented by Judge Thomas, and that the amended statute is "in many ways, more comprehensive than [the procedures] already put in place by Defendants." Mot. at 1, 4. This amendment, passed by the Oklahoma legislature in May 2023,

3

follows and expands on an earlier amendment to Section 983, which was passed in 2022 and was due to go into effect on July 1, 2023. *See* 2021 O.K. HB3925 (enacted May 26, 2022). Six weeks ago, Defendants claimed the 2022 amendment (which never went into effect) "mooted" Plaintiffs' claims. Dkt. No. 144 at 2-3. That was plainly not the case, as evident from the very existence of the newer, 2023 amendment, on which Defendants now rely. The 2023 amendment, though certainly an improvement relative to its 2022 precursor, likewise falls short.

The new amendment, due to go into effect on November 1, 2023, broadly (a) allows Oklahoma courts to make determinations on defendants' ability to pay court costs; (b) allows courts to grant a hardship waiver for all or part of the owed amount; and (c) requires courts to schedule cost hearings for defendants who request such a hearing or are delinquent on their payments. 22 O.S. § 983 (B)(1)-(2), (C)(1)-(4), (G)(2) (effective Nov. 1, 2023). The amended statute is prospective only. All orders to pay fines, fees, and costs issued prior to the effective date of the amendment remain in place. *Id.* (H)(6). Likewise, all warrants for failure to appear at a cost hearing or for failure to pay court financial obligations issued prior to the effective date of the amendment remain in effect. *Id.*

## STANDARD OF REVIEW

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017); *see* Fed. R. Civ. P. 56(a). "All disputed facts must be resolved in favor of the party resisting summary judgment." *White v. Gen. Motors Corp.*, 908 F.2d 669, 670 (10th Cir. 1990).

When Defendants assert that subsequent events have mooted a case, they carry the "heavy" burden of showing "with assurance that there is no reasonable expectation that the alleged violation will recur," *and* that the interim events "have completely and irrevocably eradicated the effects of

4

the alleged violation." *Am. Const. L. Found., Inc. v. Meyer*, 1997 WL 282874, at *2 (10th Cir. May 29, 1997); *see also Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n. 1 (2017). A case is not moot "as long as the parties have a concrete interest, however small, in the outcome of the litigation." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012). "[T]he availability of 'a partial remedy' will prevent the case from being moot." *Utah Env't Cong. v. Russell*, 518 F.3d 817, 824 (10th Cir. 2008).

## ARGUMENT

### A. Defendants Have Not Shown That the "New" Fines and Fees System in Washington County Meets Constitutional and Statutory Standards

As detailed in Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 104 at 27-35, there is no genuine dispute that, acting pursuant to the policies and practices of the Washington County District Court carried out at least until 2019, Defendants violated Plaintiffs' constitutional and statutory rights. Therefore, the core question before this Court for purposes of Defendants' Motion is whether Defendants have shown that those violations are incapable of repetition, thus mooting Plaintiffs' claims. *Meyer*, 1997 WL 282874, at *2, *5. The answer is clearly "no."

First, as Plaintiffs previously explained, the revised cost procedures of the Washington County District Court, as they currently exist, are still deficient. *See* Dkt. No. 110 at 16-21. And that will remain the case even when (and if) Defendants implement the Section 983 amendment. Among other things, the amended statute keeps the onus on individuals to *request* both an initial cost hearing and subsequent cost hearings. *See* 22 O.S. § 983 (C)(4) ("The district court for each county and all municipal courts shall provide a cost hearing for any defendant *upon request*."). That is contrary to the plain language of Rule 8 of the Oklahoma Rules of Criminal Procedure—a statute which, like Section 983, governs the collection of court costs, and which was designed to codify the constitutional requirements related to the imposition and collection of such costs.

5

OKLA. STAT. ANN. Tit. 22, ch. 18 app. § VIII, Rule 8; *Rutledge v. Turner*, 495 P.2d 119, 122-24 (Okla. Crim. App. 1972). Rule 8.1 requires that "a judicial hearing *shall* be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs." OKLA. STAT. ANN. Tit. 22, ch. 18 app. § VIII, Rule 8.1 (West 2021). Rule 8.3 similarly requires that "a determination *shall* be made as to the defendant's ability to make installment payments after completion of the term of imprisonment." OKLA. STAT. ANN. Tit. 22, ch. 18 app. § VIII, Rule 8.3 (West 2021). Both provisions are mandatory, and neither conditions the duty to make the required determination on defendants' "request." *See generally* Rule 8.1, 8.3; *see also Woolen v. Coffman*, 676 P.2d 1375, 1377 (Okla. Crim. App. 1984) ("[t]he Legislature's choice of the word 'shall' is highly significant" because "[i]t is usually given the meaning of 'must', and is interpreted as implying a command or mandate").

Expecting individuals to proactively ask judges to consider their ability to pay also ignores the disparity between judges, with the power they wield over criminal defendants, and defendants, who are frequently indigent, largely of limited legal education, sometimes minors (like Ms. Carter was), and understandably intimidated about appearing before a judge. When faced with the perceived choice between accepting a fine that they are too poor to pay or risk being incarcerated, those individuals will naturally accept the full fine—regardless of whether this perceived choice is a reality. Common sense dictates—and Rule 8 requires—that it should not be incumbent on those individuals *to ask judges* to do what the judges are supposed to do in the first place.

Beyond this fundamental deficiency, the Section 983 amendment is silent on the following:

- When and how a court will assess an individual's total financial obligations, *see* 22 O.S. § 983 (C)(1) ("*If the total amount of court financial obligations owed is not available at the time of the plea or sentencing*, the court shall inform the defendant that court financial obligations have been incurred and the time and location where the defendant may learn of the total amount owed.");

- When and how payment plans that factor in an individual's ability to pay will be calculated, *see id.* (B)(1) ("[T]he court at the time of sentencing *may* immediately, *or at any point thereafter* until the debt is either paid or waived, determine the ability of a defendant to pay the court financial obligations.");

- Whether, when, and how a judge will review payment plans, *see id.* (C)(2) ("The court shall order the defendant to appear immediately after sentencing at the office of the court clerk to provide current contact information and to either select payment terms or request a cost hearing.");

- Whether a complete waiver of financial obligations is mandated upon a showing of indigency, *see id.* (E)(1) ("If at the initial cost hearing or any subsequent cost hearing, the court determines that the defendant is able to pay some or all of the court financial obligations, the court *may* order any of the following conditions for payment . . .").

The statute also makes clear that judges have broad discretion in assessing an individual's ability to pay, either at a cost hearing or in deciding whether to incarcerate an individual who is delinquent on payment. *See id.* (D) ("In determining the ability of the defendant to pay court financial obligations, the court *may* rely on testimony, relevant documents, and any information provided by the defendant using a cost hearing affidavit promulgated by the Court of Criminal Appeals."); *id.* (J)(1) ("Findings of a defendant's prior ability to pay *may* be considered as evidence of ability to pay or willfulness at the hearing."). And while the statute requires that judges conduct a "willfulness hearing" "on the record" and "memorialize" their findings in an order, *see id.* (J)(3), (K), it does not have the same requirements for a "cost hearing," in contravention of Rule 8.7. OKLA. STAT. ANN. Tit. 22, ch. 18 app. § VIII, Rule 8.7 (West 2021) ("A court reporter shall be present and report all such judicial hearings required by this Section []. Any order of the court [] shall be reduced to writing and filed of record in the case.").

<u>Second</u>, Defendants have not demonstrated that they now carry out, or will carry out in the future, a consistent policy and practice which complies with the constitutional and statutory requirements. Against the salient gaps on the face of the statute, the broad discretion afforded to judges, and Defendants' history of failing to comply with the statutes already in effect—such as

7

Rule 8—Defendants bear the heavy burden of showing that their prior violations are incapable of repetition. But Defendants make no effort to do that. They offer no written policy or practice, or any order of the court, which details the Washington County District Court's cost procedures, or how those procedures align with constitutional and statutory requirements. Nor do Defendants even attempt to explain how they intend to comply with the amended statute once it goes into effect on November 1, 2023 (let alone before that).

Instead, Defendants offer the glib response that "[a]ny allegation that the Judicial Defendants will not comply with the amended statute when dealing with these Plaintiffs would be purely speculative." Dkt. No. 146 at 7. This flips the applicable burden on its head. *Plaintiffs* do not need to *disprove* that Defendants will implement the amended statute in a manner that complies with their constitutional and statutory obligations; it is the other way around—*Defendants* bear the burden of *proving* they will do so, such that their prior offense is rendered incapable of repetition. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) ("[T]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again *lies with the party asserting mootness*.") (emphasis in original). But other than pointing to the language of the statute (which, as described above, reflects both notable gaps and notable gray areas), Defendants have made no effort to make any factual showing, let alone adduce any undisputed facts, that demonstrate that their prior violations will not recur.

Plaintiffs' concerns are not trivial. Defendants have now twice claimed before this Court that the problems that gave rise to Plaintiffs' claims were resolved: first through Judge Thomas's voluntary changes, and then through the 2022 amendment to Section 983 that initially gave rise to this Motion. *See* Dkt. No. 144 at 2-3; Dkt. No. 102 at 20-23; Dkt. No. 146 at 4-6. Yet each time, the Oklahoma legislature has gone on to pass statutory amendments that went beyond the limited

changes Defendants claimed to be sufficient. Even the newest statutory amendment, which does not go into effect for another four months, leaves significant questions about whether individuals' constitutional and statutory rights will be observed in practice. Plaintiffs, and this Court, certainly have no way of knowing whether that would be the case.

On this record, the Section 983 amendment cannot be the basis for summary judgment. At a minimum, it remains a triable issue whether this (prospective) revised statute has, in practice, mooted Plaintiffs' claims. *See, e.g.*, *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010) (finding declaratory relief not mooted because plaintiff remained subject to defendants' policies and "a judgment in his favor may require ODOC to modify those policies"); *Tarrant Reg'l Water Dist. v. Herrmann*, 2009 WL 3922803, at *2 (W.D. Okla. Nov. 18, 2009), *aff'd*, 656 F.3d 1222 (10th Cir. 2011), *aff'd*, 569 U.S. 614 (2013) (finding that passage of new statute "has not rendered [a] controversy moot" when "there is [] a real question left in play by the nature of [the new statute]'s requirements and plaintiff's claims").

### B. Plaintiffs Maintain a Cognizable Interest in the Outcome of the Litigation

Regardless of the prospective effects of the amendment (or any other procedural changes voluntarily implemented by the Washington County District Court), the fact remains that Plaintiffs were assessed fines, fees, and costs despite their indigency, ordered to pay those amounts, and incarcerated when they failed to do so. All of that information continues to be a part of the public record and is readily available to any prospective employer, landlord, or credit search agency that looks into Ms. Carter or Mrs. Feenstra. *See* Dkt. No. 103-3, Carter Dep. 58:8-59:18 (noting that Ms. Carter was not selected by prospective employers because of outstanding warrants and fines), 117:12-118:12 (same). The Section 983 amendment does not purport to address the past issuance of unlawful payment orders or arrest warrants; rather, it specifically makes clear that they remain in effect. 22 O.S. § 983 (H)(6).

A declaration from this Court that these judicial orders were unlawful, and vacatur of those orders, will allow Ms. Carter and Mrs. Feenstra to finally clear their records of the purported "offenses" that were the direct result of Defendants' constitutional and statutory violations. *See WildEarth Guardians v. United States Bureau of Land Mgmt.*, 870 F.3d 1222, 1232 (10th Cir. 2017) (finding that plaintiffs had standing to seek vacatur of agency orders because vacatur "would redress the Appellants' members' injuries"); *Anadarko Mun. Hosp. v. Shalala*, 1998 WL 34007421, at *3 (W.D. Okla. Apr. 13, 1998) (plaintiffs' declaratory judgment claims not mooted when intervening regulation "does not provide complete relief as it is prospective only"). A declaratory judgment from the Court will also "have persuasive value and practical effect in any future dispute" about the legality of any fines, fees, and costs imposed on Plaintiffs. *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir. 1999).

Finally, Ms. Carter continues to owe over $5,000 in outstanding fees to the Washington County District Court, and has outstanding warrants associated with these debts. *See* Dkt. No. 103-22, Carter Docket Sheet (9/22/11 minute entry); Dkt. No. 103-31, 5/7/18 Bench Warrant. Ms. Carter faces the continuing injury of owing amounts she cannot pay (and should have never been ordered to pay) and facing arrest and incarceration as a result. *Abdulhaseeb*, 600 F.3d at 1312.

## CONCLUSION

The Washington County District Court—and the State of Oklahoma—have undoubtedly taken meaningful strides towards bringing their practices on judicially imposed fines, fees, and costs in line with the constitutional and statutory requirements. Plaintiffs recognize and commend those efforts. The deficiencies that remain are, perhaps, not difficult to address. However, for as long as they continue to exist, they preclude a finding of mootness. Defendants' summary judgment motion should be denied.

Dated:  July 7, 2023

By: */s Lilia Vazova*
Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL
2500 S. Broadway
Suite 122
Edmond, OK 73013
T/F:  (918) 935-2777
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

Arthur Ago (admitted *pro hac vice*)
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
T:  (202) 662-8600
F:  (202) 783-0857
AAgo@lawyerscommittee.org

Lilia Vazova (admitted *pro hac vice*)
Matthew Salerno (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
T:  (212) 906-1200
F:  (212) 751-4864
lilia.vazova@lw.com
matthew.salerno@lw.com

*Counsel for Plaintiffs Amanda Feenstra and Sharonica Carter*