IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA FEENSTRA and SHARONICA CARTER,<br><br>    Plaintiffs,<br><br>v.<br><br>JARED SIGLER, et al.,<br><br>    Defendants. | Case No. 4:19-cv-00234-JAR-CDL |

**OPINION AND ORDER**

Jane A. Restani, Judge[*]:

This case involves the procedures used in Washington County, Oklahoma, to collect costs, fines, and fess related to criminal proceedings. Plaintiffs Amanda Feenstra ("Feenstra") and Sharonica Carter ("Carter") seek declaratory and injunctive relief against three judges of the District Court of Washington County ("State Judges") for violations of the Fifth and Fourteenth Amendments of the United States Constitution, the Oklahoma Constitution, and Oklahoma law. Specifically, plaintiffs allege that Judge Linda Thomas, Associate Judge Russell Vaclaw, and Special Judge Jared Sigler engaged in misconduct while administering costs, fines, and fees associated with prior criminal convictions.[1] Before the court are cross-

---

[*] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.
[1] Plaintiffs also brought their initial action against former Judge Curtis DeLapp, but terminated Judge DeLapp from this action on January 31, 2020, after plaintiffs filed the amended complaint. Am. Compl., ECF No. 66 (Jan. 31, 2020) ("Compl.").

1

motions for summary judgment. Def. Mot. Summ. J., ECF No. 102 (Feb. 22, 2021) ("Def. Br."); Pl. Mot. Partial Summ. J., ECF No. 104 (Feb. 23, 2021) ("Pl. Br.").

## JURISDICTION AND STANDARD OF REVIEW

Plaintiffs seek relief for violations of the Fifth and Fourteenth Amendments under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331, 1343. Compl. at ¶ 21. Plaintiffs also assert the court's supplemental jurisdiction over the related state court claims pursuant to 28 U.S.C. § 1367. Compl. at ¶ 21.

The court shall grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering summary judgment, the court must view all facts and inferences drawn from the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Only disputes over material facts, however, preclude summary judgment. Id. at 248.

Parties may dispute facts using any evidentiary materials listed in Federal Rule of Civil Procedure 56(c), except the pleadings themselves. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). While the form of the evidence need not be admissible, the content or substance of the evidence must be admissible. Thomas v. Int'l Bus. Machines, 48 F.3d 478, 485 (10th Cir. 1995) (citing Celotex Corp., 477 U.S. at 324). If a party fails to properly support an asserted fact or dispute an opposing party's asserted fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

Article III of the Constitution, however, necessitates that courts decline to exercise jurisdiction "where the award of any requested relief would be moot—i.e., where the controversy is no longer live and ongoing." Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994) (citing Lewis v. Continental Bank Corp., 494 U.S. 472, 477–78 (1990)). A court must decide whether a case is moot as to "each form of relief sought." Collins v. Daniels, 916 F.3d 1302, 1314 (10th Cir. 2019) (citing Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir. 2006)). A claim will be deemed moot unless a "proper judicial resolution" settles "some dispute which affects the behavior of the defendant towards the plaintiff." Hewitt v. Helms, 482 U.S. 755, 761 (1987). As the Supreme Court explained in O'Shea v. Littleton, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects." 414 U.S. 488, 495–96 (1974). The crucial question is whether granting a present determination of the issues offered will have some effect in the real world. Smith v. Becerra, 44 F.4th 1238, 1247 (10th Cir. 2022) (citing Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000)).

## UNDISPUTED FACTS

The court draws the following undisputed material facts from the record.

### I. Plaintiff Amanda Feenstra

On April 29, 2015, Feenstra[2] pled guilty to three criminal counts and agreed to pay costs, fines, and fees as part of the plea agreement. Pl. Br. at ¶ 68–70; Def. Br.

---

[2] At the time, Feenstra was known by her maiden name Ackerson.

3

at ¶ 1. After leaving custody in January 2017, Feenstra reported to the District Court of Washington County for a costs and fines review and signed an installment plan agreement requiring that she pay $50 every month. Pl. Br. at ¶ 82–85; Def. Br. at ¶ 2. Feenstra did not appear before any judge prior to the signing and imposition of the initial installment plan. Id. On May 12, 2017, Feenstra appeared before Judge Sigler for a cost docket proceeding. Pl. Br. at ¶ 86; Def. Br. at ¶ 3. At this proceeding, although the court lowered Feenstra's payments from $50 per month to $40 per month, Judge Sigler noted that if Feenstra "couldn't pay it, then [she] would go to jail." Pl. Br. at ¶ 87–88 (citing Pl. Br., Ex. 5 at 52:12-53:2); Def. Br. at ¶ 3.

A year later, on May 4, 2018, Feenstra failed to appear at a cost docket proceeding. Pl. Br. at ¶ 91; Def. Br. at ¶ 5. In response, the District Court of Washington County issued a bench warrant with the words "FAILURE TO PAY" listed in bold at the top of the order. Pl. Br. at ¶ 91; Def. Br., Ex. 9. The warrant set a cash bond of $330. Id. On or about May 9, 2018, Feenstra contacted Judge Sigler's clerk and became aware of the missed proceeding and warrant, and asked what she should do to resolve the matter. Pl. Br. at ¶ 93; Def. Resp. Br. at ¶ 93, ECF No. 112 (Mar. 29, 2021) ("Def. Resp. Br."). Judge Sigler's clerk informed Feenstra that she either needed to pay the warrant or come to the court to speak to Judge Sigler about the matter. Pl. Br. at ¶ 92–94; Def. Resp. Br. at ¶ 92–94. Feenstra and her husband immediately went to the courthouse, and while waiting to speak to Judge Sigler, a police officer arrested her and explained that Judge Sigler did not "have time to talk to [her]." Pl. Br. at ¶ 95; Def. Resp. Br. ¶ 95. Unable to pay the $330 bond, Feenstra

4

was held overnight in jail and spoke to Judge Sigler the following day. Pl. Br. at ¶ 96; Def. Resp. Br. ¶ 96. Feenstra then informed Judge Sigler that she was unable to pay; Judge Sigler, however, responded that "it wasn't his problem" and remanded Feenstra to jail "for failure to pay fines and costs." Pl. Br. at ¶ 97 (citing Pl. Br., Ex. 5 at 73:24–74:19); Def. Resp. Br. ¶ 97; Def. Br. at ¶ 6; Def. Br., Ex. 10. One day later, Feenstra's husband secured $330, paid the bond, and Feenstra was released. Pl. Br. at ¶ 98; Def. Br. at ¶ 6.

After May 2018, Feenstra either appeared at or rescheduled all fines and cost reviews, until December 11, 2020, when she appeared seeking relief from financial obligations. Pl. Br. at ¶ 106; Def. Br. at ¶ 7–10. The case was assigned to Judge Gibson in Nowata County and Judge Gibson vacated Feenstra's outstanding amounts of fines, fees, and costs owed under 22 O.S. § 983(a) on December 16, 2020. Pl. Br. at ¶ 106; Def. Br. at ¶ 10–11; Def. Br., Ex. 15. Feenstra has no outstanding debt before the District Court of Washington County. Id.

## II. Plaintiff Sharonica Carter

On September 22, 2011, Carter pled no contest to a youthful offender charge of attempted robbery. Pl. Br. at ¶ 34; Def. Br. at ¶ 12–13. As part of her plea, Carter agreed to pay fines and costs associated with the charge. Pl. Br. at ¶ 35; Def. Resp. Br. ¶ 35. Carter was released from custody on October 31, 2013, and signed an installment payment plan on November 20, 2013. Pl. Br. at ¶ 41–43; Def. Br. at ¶ 14–15. After failing to make two payments, Carter appeared at a cost docket proceeding before Judge DeLapp on January 9, 2014. Pl. Br. at ¶ 46; Def. Resp. Br.

at ¶ 46. Despite Carter's explanation that she could not pay because she did not have any money and could not find a job, Judge DeLapp ordered Carter incarcerated and set a bond for her release in the amount of $150. Pl. Br. at ¶ 47–50; Def. Resp. Br. at ¶ 47–50. Carter was released shortly after incarceration once her mother paid the bond amount. Pl. Br. at ¶ 51; Def. Resp. Br. at ¶ 51.

Carter signed a new installment plan on October 17, 2017, for $75 per month despite explaining at the time of signing that she "couldn't pay $75." Pl. Br. at ¶ 54; Def. Br. at ¶ 19. On March 2, 2018, the District Court of Washington County issued a bench warrant with a $250 bond for Carter after she failed to appear for a fines and costs review. Def. Br. at ¶ 21; Pl. Resp. Br. at ¶ 21, ECF No. 110 (Mar. 29, 2021) ("Pl. Resp. Br."). On April 4, 2018, the District Court of Washington County recalled the bench warrant after Carter contacted the court and received a new fines and costs review. Def. Br. at ¶ 24; Pl. Resp. Br. at ¶ 22.

As of June 22, 2023, all outstanding bench warrants issued by the District Court of Washington County against Carter have been recalled. Def. Supp. Br. Reply. at 1–2, ECF No. 150 (July 21, 2023); Court Docket, State v. Carter, Docket No. YO-2011-01 (Okla. Dist. Ct. July 5, 2023). Additionally, Judge Guten has issued an order granting the waiver of Carter's outstanding financial obligations and Carter has no remaining debt. Order Discharging Debt, State v. Carter, Docket No. YO-2011-01 (Okla. Dist. Ct. July 19, 2023).

### III. Standard Court Procedures Regarding the "Cost Docket"

From 2007 to 2017 Judge DeLapp presided over thousands of fines and costs hearings against criminal defendants in the District Court of Washington County. Pl. Br., Ex. 1 at 24:19–25:1 ("Delapp Depo"); Pl. Br. at ¶ 1–2. Def. Resp. Br. at ¶ 1–2. Judge DeLapp had the practice of setting a bond for any overdue amount and remanding an individual to jail if he or she did not pay the bond amount upfront. Pl. Br. at ¶ 21–22; Def. Resp. Br. at ¶ 21–22. Judge Sigler, upon joining the District Court of Washington County January 2017, jailed some individuals for failure to pay fines and costs, but reevaluated the practice after Judge DeLapp's retirement in August 2018. Pl. Br. at ¶ 29; Def. Resp. Br. at ¶ 29.

Judge Linda Thomas was sworn into office in January 2019 and began reviewing the fines and costs procedures at the court. Def. Br. at ¶ 35–36; Pl. Resp. Br. at ¶ 35–36. Since then, no person has been remanded to jail for failure to pay fines, fees, or costs. Def. Br. at ¶ 39; Pl. Resp. Br. at ¶ 39. Under the court's current procedures, as advised by Judge Thomas's review, if a defendant fails to make his or her monthly payment and fails to appear for the fines and costs review hearing as previously ordered, the Costs Administrator sends a one-time courtesy letter reminding the defendant of their duty to pay and instructing them to contact the court. Def. Br. at ¶ 37(g), Ex. 44 at ¶ 5; Pl. Resp. Br. at ¶ 37(g). If the defendant does not call the court as directed or fails to appear at the subsequent hearing, a "FAILURE TO APPEAR" warrant is issued with a bond amount of $50. Id. If a defendant is incarcerated for failure to appear and the bond amount is not paid, the defendant receives a $25 credit per day served and is released after two days in jail.

Id. Finally, the defendant receives a $50 credit towards satisfaction of the remaining balance of fines, fees, and costs. Id.

Additionally, the Oklahoma Legislature passed an amendment to 22 O.S. § 983 and the amendment goes into effect November 1, 2023. See COURT FINANCIAL OBLIGATIONS, 2023 Okla. Sess. Law Serv. Ch. 247 (H.B. 2259) (WEST) (amending 22 O.S. § 983). Section 983(J) of the amended law allows a court to impose a jail sentence only after a cost hearing is conducted on the record pursuant to the rules promulgated by the Court of Criminal Appeals, and the defendant is represented by counsel or expressly waives his or her right to counsel. Id.; 22 O.S. § 983(J)(3) (effective Nov. 1, 2023).

## DISCUSSION

**I.     Federal Law Claims**

In their complaint, the plaintiffs allege the following claims under 42 U.S.C. § 1983: Count 1 alleges a violation of Feenstra's right to due process by the State Judges' failure to provide notice and an opportunity to be heard prior to arrest and detention; Count 2 alleges a violation of Feenstra and Carter's right to due process by punishing them solely on the basis of poverty.[3] Compl. at ¶¶ 60–71. For relief, plaintiffs request: a judgment in favor of plaintiffs; permanent injunctive relief to prevent defendants from engaging in the unlawful and unconstitutional acts alleged; declaratory judgment that defendants' conduct as alleged is unlawful; vacatur of all

---

[3] Defendants argue that Carter's claim is barred by the statute of limitations. Def. Br. at 16–18. In view of the jurisdictional ruling, the court does not address this anew.

8

outstanding fines, fees and costs currently outstanding; plaintiffs' reasonable attorney's fees; all costs of this action; and any such other relief the court deems just and proper. As stated in the court's prior opinion and order on the motion to dismiss, plaintiffs' request for injunctive relief with respect to the federal claims fails.[4] See Opinion and Order at 22, ECF No. 47 (Nov. 13, 2019); see also, Knox v. Bland, 632 F.3d 1290, 1292 (10th Cir. 2011).

Plaintiffs' claim for a declaratory judgment, however, is not barred.[5] The Tenth Circuit has continued to recognize that judicial immunity is not a bar to declaratory relief under § 1983. Lawrence v. Kuenhold, 271 Fed. Appx. 763, 766 (10th Cir. 2008) (citing Schepp v. Fremont County, 900 F.2d 1448, 1452 (10th Cir. 1990)). Defendants, however, argue that plaintiffs' request for a declaratory judgment is moot. Def. Br. at 18–23. Accordingly, the court examines whether it has jurisdiction to address the claim for declaratory relief.

---

[4] Under the Federal Courts Improvement Act of 1996, injunctive relief against judges "shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996), codified at 42 U.S.C. § 1983. Here, no declaratory decree was violated and plaintiffs have not argued that, assuming jurisdiction, declaratory relief would not be available. Injunctive relief is not available here under § 1983.

[5] Defendants wrongly assert that state judges in their official capacities are not persons under § 1983. While it is true that the state court itself is not a "person" under § 1983 as the court is an arm of the state, the plaintiffs are not suing the court itself. Harris v. Champion, 51 F.3d 901, 906 (10th Cir. 1995). Rather, this action is against the defendants in their official capacity, and "official capacity actions for prospective relief are not treated as actions against the state." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). Accordingly, the defendants are "persons" for the purposes of prospective relief under § 1983.

**A. Declaratory Relief**

The defendants hinge their mootness argument on two points: first, defendants argue that under the doctrine of constitutional mootness the action is moot because there is no live controversy; second defendants argue that under the doctrine of prudential mootness the action is moot because the District Court of Washington County willingly updated its procedures to prevent potential future constitutional violations. Id. at 21, 23. Plaintiffs contend that the processes implemented by defendants are "easily-undone" and that the processes may still result in constitutional violations. Pl. Resp. Br. at 17–18. Additionally, plaintiffs argue both Feenstra and Carter continue to suffer from unredressed injuries such as "extant public records that portray them falsely as willful violators of valid court orders." Id. at 26.[6]

The Declaratory Judgment Act states in the pertinent part that, "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Tenth Circuit has observed that this text presents two separate hurdles for parties seeking a declaratory judgment to

---

[6] Plaintiffs did not assert in their complaint a claim for expungement of state records, which is in the nature of injunctive relief and not available under § 1983. Further, this action is not against the state and to the extent any such relief is within the judicial power of this court with respect to the named defendants, comity considerations also apply and weigh against taking jurisdiction. See infra Discussion § II.

10

overcome. Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1240 (10th Cir. 2008) (citing Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1273 (10th Cir. 1989)). First, a declaratory judgment plaintiff must present the court with a suit based on an "actual controversy," a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement. Id. (citing Aetna Life Ins. Co. of Hartford, Conn. V. Haworth, 300 U.S. 227, 239–40 (1937)). This first hurdle is often referred to as "constitutional mootness." See e.g., Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1121–22 (10th Cir. 2010). Second, even where a constitutionally cognizable controversy exists, the Act stipulates only that "district courts 'may'—not 'must'—make a declaration on the merits of the controversy," granting district courts the discretion to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority. Surefoot, 531 F.3d at 1240 (citing State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 982–83 (10th Cir. 1994)). This second hurdle is often referred to as "prudential mootness." See e.g., Rio Grande, 601 F.3d at 1121–22.

The court first addresses constitutional mootness. A declaratory judgment suit "must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' must be 'real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from having an opinion advising what the law would be upon a hypothetical state of facts.'" Surefoot, 531 F.3d at 1244 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)). Simply put, a declaratory judgement action is not constitutionally moot when it results in the

11

"settling of some dispute which affects the behavior of the defendant towards the plaintiff." Rio Grande, 601 F.3d at 1109–10 (10th Cir. 2010) (quoting Cox v. Phelps Dodge Corp, 43 F.3d 1345, 1348 (10th Cir. 1994)). Here, however, there is no ongoing behavior by defendants that will affect these plaintiffs.

Without speculating, the court has no reason to believe Feenstra or Carter will appear before the defendants in the future. Both parties agree that Feenstra has no outstanding debt before the District Court of Washington County, and plaintiffs do not argue that Feenstra will appear before the defendants for another reason. Supra at Undisputed Facts § I. Similarly, as of July 19, 2023, Carter has no outstanding debt before the District Court of Washington County, and plaintiffs do not argue that Carter will appear before the defendants for another reason. Supra at Undisputed Facts § II. While plaintiffs argue that they maintain an interest in the litigation, plaintiffs do not assert that the defendants will interact with the plaintiffs in the future absent outstanding warrants or debt. Pl. Supp. Br. Resp. at 9–10. Absent any likelihood of ongoing behavior, no constitutionally cognizable controversy exists here.

Assuming arguendo that Article III of the constitution is satisfied, the doctrine of prudential mootness gives the court discretion not to grant relief when considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand. Rio Grande, 601 F.3d at 1121 (citing Fletcher v. U.S., 116 F.3d 1315, 1321 (10th Cir. 1997)). Specifically, the court may consider factors such as:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations

12

> at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

Surefoot, 531 f.3d at 1248 (quoting State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994)). As the Tenth Circuit explained, even if a case is not constitutionally moot, "any party invoking the equitable remedial powers of the federal courts must still 'satisfy the court that relief is needed,' and when it comes to assessing that question, a remedial promise always qualifies as 'one of the factors to be considered.'" Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1211–12 (10th Cir. 2012) (quoting U.S. v. W. T. Grant Co., 345 U.S. 629, 632–33 (1953)). Here, a declaratory judgment is not necessary to prevent future constitutional violations.

The changes defendants have implemented, as well as the passage of the amendment to 22 O.S. § 983, indicate a constitutional violation is unlikely to recur. Although plaintiffs speculate as to ways that the current procedures may result in the deprivation of rights, either through lack of sufficient notice or through punishment on the basis of poverty, defendants have provided undisputed evidence that in the past four years no person has been remanded to jail for failure to pay fines, fees, or costs. Pl. Opp. To Def. Supp. Br. at 7–9, ECF No. 149 (July 7, 2023) ("Pl. Supp. Br. Resp."); supra at Undisputed Facts § III. The amendment 22 O.S. § 983 takes additional steps to ensure this practice continues by outlawing the imposition of jail sentences without a hearing where the defendant has the opportunity to be represented by counsel. 22 O.S. § 983(J) (2023). Thus, it is clear that both the District

Court of Washington County and the Oklahoma Legislature have taken steps to address the risk of constitutional violations. Considering these actions, the controversy here is prudentially moot.

The evidence before the court at this stage indicates that Feenstra and Carter were likely punished for poverty.[7] Nevertheless, it is unlikely that Feenstra or Carter will appear before the defendants again, and the state has taken apparently successful steps to prevent future constitutional violations. In consideration of these factors, plaintiffs' request for declaratory relief is moot as judicially resolving this dispute is unlikely to have a real-world impact and is likely unnecessary considering the actions of coordinate branches of government.[8] Accordingly, the federal claims are dismissed.

## II.  State Law Claims

In addition to their § 1983 claim, plaintiffs have also alleged various state law claims. The court, however, has disposed of all claims over which it has original jurisdiction. Under 28 U.S.C. § 1367(c), a federal district court may decline

---

[7] The Due Process Clause and Equal Protection Clause prohibit incarceration for nonpayment of court debt absent a finding that nonpayment was willful and not due to poverty. Bearden v. Georgia, 461 U.S. 660, 671–73 (1983). Here, Feenstra and Carter were each incarcerated despite attempts to inform the court of their poverty, and in neither case did the court undertake efforts to investigate Feenstra or Carter's poverty and potential inability to pay, nor did it explore any alternatives to incarceration. Def. Br. at ¶¶ 1, 16; Pl. Resp. Br. at ¶¶ 1, 16. Although the order itself utilized standard language that the nonpayment was willful, there is no evidence that the defendants undertook efforts to establish that fact. See e.g., Def. Br. at Ex. 10; see generally supra Undisputed Facts §1, 2.

[8] The court does not imply that there is no type of relief that would have a real-world impact. That relief, however, is not available under § 1983.

supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." Although the court recognizes that it has discretion to retain jurisdiction over supplemental state law claims in some circumstances, "[supplemental] jurisdiction is a doctrine of discretion, not of plaintiffs' right." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

A federal district court should consider at every stage of the litigation "the values of judicial economy, convenience, fairness and comity" in order to determine the appropriateness of maintaining jurisdiction. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (superseded on other grounds by statute as recognized in Fent v. Okla. Water. Res. Bd., 235 F.3d 533, 557 (10th Cir. 2000). The Tenth Circuit has stated that "a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." Foxfield Villa Assocs., LLC v. Robben, 967 F.3d 1082, 1103 (10th Cir. 2020), cert. denied, 209 L.Ed. 2d 128, 141 S. Ct. 1385 (2021) (quoting United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002)).

Here, the court does not have original jurisdiction over any of the surviving causes of action under the Oklahoma Constitution and Oklahoma law. The parties dispute, however, whether the Oklahoma Court of Criminal Appeals Rules provide a separate or private cause of action. Def. Br. at 32; Pl. Resp. Br. at 36. Additionally, the parties dispute the availability of relief under the Oklahoma state appeals process. Def. Br. at 30–31; Pl. Resp. Br. at 28 n.7. Lastly, this court is already laboring under the administrative strain on its docket following the Supreme Court

decision McGirt v. Oklahoma, 207 L.Ed. 2d 985, 140 S. Ct. 2452 (2020). Because of the administrative demands on this court, the important state-law issues that are best resolved by the Oklahoma courts, and the general disfavor for retaining supplemental jurisdiction over state-law claims prior to trial, the court finds that declining to exercise supplemental jurisdiction is appropriate in this case.

This case was removed from the District Court of Washington County, State of Oklahoma, thus the court may dismiss plaintiffs' remaining claims or remand the case to the state court for further proceedings. Robles v. City of Fort Wayne, 113 F.3d 732, 738 (7th Cir. 1997) ("[I]t is clear that a district court retains the discretion to dismiss as well as to remand such claims.") (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 353–54 (1988)); Thompson v. City of Shawnee, 464 F. App'x 720, 726 (10th Cir. 2012) ("The district court had discretion either to remand the claims to the state court or to dismiss them."). As the court cannot readily determine that the state law claims have no merit, remand is appropriate in this case.

## CONCLUSION

Based on the summary judgment record, plaintiffs' federal claims are dismissed as moot. Only state law claims remain, and because the court declines to exercise supplemental jurisdiction over those claims, the case is remanded to the District Court of Washington County, Oklahoma. The court is neither unmindful nor unsympathetic to the injuries experienced by the plaintiffs. The fact remains, however, that any remaining injury is not redressable under § 1983. In the light of the foregoing, it is

**ORDERED** that defendants' motion for summary judgment (Dkt. # 102) is **GRANTED in part and DENIED in part**. The motion is granted to the extent that the court lacks jurisdiction over plaintiffs federal claims; and denied to the extent that the court does not reach the state law claims; and it is further

**ORDERED** that plaintiffs' state law claims are **REMANDED** to the District Court of Washington County, State of Oklahoma, pursuant to 28 U.S.C. § 1367(c). The Clerk of the Court is directed to take all necessary actions required to remand the remaining portion of this case to the District Court of Washington County, State of Oklahoma.

**IT IS SO ORDERED** this 7th day of September 2023.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: September 7, 2023
New York, New York